1                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF SOUTH CAROLINA
2                        CHARLESTON DIVISION

3
UNITED STATES OF AMERICA        :
4                               :
            vs.                 :
5                               :
DYLANN STORM ROOF               :        2:15 – CR – 472
6

7
          Bar Meeting in the above matter held on Tuesday,
8
    June 7th, 2016, commencing at 2:05 p.m., before the
9
    Hon. Richard M. Gergel, in the United States Courthouse,
10
    Courtroom VI, 85 Broad St., Charleston, South Carolina,
11
    29401.
12

13
APPEARED ON BEHALF OF THE UNITED STATES:
14
      JAY N. RICHARDSON, ESQ., 1441 Main St., Columbia, SC.
15
      NATHAN WILLIAMS, ESQ., P.O. Box 978, Charleston, SC.
16

17  APPEARED ON BEHALF OF THE DEFENSE:

18      DAVID I. BRUCK, ESQ., Washington & Lee School of Law,
        Lexington, VA.
19
        MICHAEL P. O'CONNELL, ESQ., 109 Wappoo Creek Dr.,
20      Charleston, SC.

21

22

23          REPORTED BY DEBRA L. POTOCKI, RMR, RDR, CRR
          Official Court Reporter for the U.S. District Court
24                          P.O. Box 835
                      Charleston, SC  29402
25                        843/723-2208

1          THE COURT:  Mr. Richardson, are you ready to call

2     your next case, sir?

3          MR. RICHARDSON:  Thank you, Your Honor, United States

4     of America versus Dylann Storm Roof, Criminal No. 2:15-472.

5          THE COURT:  Very good.  And counsel for the defense

6     is here?

7          MR. BRUCK:  Yes, Your Honor, David Bruck for the

8     defense, and Michael O'Connell.

9          THE COURT:  Thank you very much.

10     Folks, let's talk a little bit about where we are and what

11     we need to address today.  I have received a notice from the

12     defendant wishing to -- indicating a desire to come -- be

13     called to trial on November 7, 2016.

14     I have received since, a joint statement from the

15     Government and the defense, proposing a scheduling order

16     providing for the initiation of jury -- individualized voir

17     dire, beginning on November 7, 2016.

18     Now, I've got to say that there's a question in my mind

19     about whether we can do this between now and November 7.  And

20     I want to take our time today to walk through in some detail

21     what we've got to talk about, the issues, things we've got to

22     accomplish.  I've got some quarrel with some aspects of the

23     proposed scheduling order.  Y'all seem to be very kind to

24     yourselves and not so kind to the Court in terms of having

25     time to write orders.  And I want to -- I think these are

1    important issues, they require not only the parties to have

2    adequate time, but the Court to have adequate time to fully

3    appreciate these issues.

4        So I want to walk through them.  We're not in a rush.

5    Let's take our time, let's walk through, let's break down the

6    parts.  And then, at the end, I will need to make a

7    determination whether it's practicable to call the case to

8    trial, just to give us the proper framework for this.

9        The Speedy Trial Act is often quoted about the clock, the

10   time clock, and what does and does not suspend or toll the

11   time clock.  But there's another provision of the Speedy Trial

12   Act, which is actually the first paragraph of the Act, which

13   says that I have a duty to call to trial, as early as

14   practicable, any case.

15       So the question I have here is, is it practicable to do

16   this by November 7.  And that will be in small pieces, then

17   collectively, what I will be addressing to you today.

18       So let me first start, first question, what is the

19   anticipated length of trial, from jury selection -- and I'm

20   talking about individual voir dire -- to final jury verdict,

21   assuming for purposes of this question, a both guilt and

22   sentencing phase.

23       What is the Government's estimate?

24           MR. RICHARDSON:  Your Honor, I think the most

25   difficult part of that is the jury selection process.

1          THE COURT:  I share that.  But let me say, by the

2    way, for our analysis here, that's less important to me.  I'd

3    like to have a framework for this in terms of scheduling, but

4    it will take whatever time it takes.  Right?

5          MR. RICHARDSON:  I understand that, Your Honor.  But

6    we've estimated, depending on the degree of limitations on the

7    scope and nature of the questionings, that it's around two

8    weeks.  It could take longer than that.

9          THE COURT:  That's just individual voir dire?

10         MR. RICHARDSON:  Correct, to select the jury.

11         THE COURT:  And then how about the trial itself?

12         MR. RICHARDSON:  We anticipate that it's

13   approximately two weeks for a guilt phase.  We would

14   anticipate, as would be standard in these cases, to be some

15   short break in between a guilt phase and a penalty phase, and

16   then a penalty phase that's also approximately two weeks.

17     Certainly the Government wants to do everything it can to

18   try this as expeditiously as possible, but obviously there are

19   quite a few issues that will have to be addressed.

20         THE COURT:  Again, we're going to take the time it

21   takes to try the case.  We're not getting rushed.

22     Okay.  Mr. Bruck, what's your estimate?

23         MR. BRUCK:  I think jury selection two weeks is

24   optimistic, but it's --

25         THE COURT:  I was guessing more like three weeks.

1          MR. BRUCK:  I think that's probably closer to right.

2     As the Court is aware, the defendant has offered to plead

3  guilty.  And we anticipate that we will not have any

4  substantial amount of evidence to present at the guilt or

5  innocence phase of the case.  So that obviously --

6          THE COURT:  This is really what the Government's

7  evidence would present, whatever that time would take to

8  present its evidence.

9          MR. BRUCK:  I think the defense and Government have

10  the same witnesses in this case.

11          THE COURT:  Okay.

12          MR. BRUCK:  As for the defense, sentencing, I would

13  guess perhaps two weeks.  Could be a little less, it could be

14  a little more, but in that ballpark, I would think.

15          THE COURT:  And what type of break would you seek to

16  persuade the Court to do between guilt and sentencing?

17          MR. BRUCK:  I have to admit I had not thought about

18  that until this moment.

19          THE COURT:  Mr. Bruck, it's hard, on a capital case,

20  to imagine something you hadn't thought about.

21          MR. BRUCK:  Well, in South Carolina state practice,

22  there is a statutory break of 24 hours.  I would certainly ask

23  for a good deal more than that.  One to two weeks?  Ten days?

24          THE COURT:  We may, at some later point, need to

25  discuss that in more detail, because obviously I'm concerned

1   with the jurors' lives and getting them back to their -- we're

2   asking a lot of our prospective jurors, and I want to limit

3   the inconvenience, to the extent that can reasonably be done,

4   without sacrificing a fair trial.

5        MR. BRUCK:  Having mentioned the issue of the

6   defendant's plea, I guess this is as good a time as any to

7   make clear that our plea offer has not been withdrawn and will

8   never be withdrawn at any time.  Should the Government elect

9   to accept the plea, obviously these scheduling issues will

10  become moot.

11       THE COURT:  Fair enough.

12   Now let's turn to some of the specific tasks we would need

13  to accomplish to actually get the case ready for individual

14  voir dire on November the 7th.  And I've sort of broken it

15  down in a sense that made sense to me, but not entirely the

16  way y'all had set it up.

17   The first issue is establishing procedures for Rule 12.2

18  submissions.  And just to get our context here, 12.2 is

19  certain notice requirements for a mental health defenses.  And

20  the parties have proposed different dates for that.  The

21  Government has proposed June 24th, and the defendant

22  August 15th.

23   Mr. Bruck, let me just address this to you.  You'll hear

24  me, throughout this, talking about that my desire is on things

25  we can address early, I want to do it, because I think it's a

 1    favor to everybody that later on you aren't focusing on

 2    procedural matters, you're dealing with getting the case ready

 3    for trial.  And one of my sort of criticisms of the scheduling

 4    order is it backfills some stuff towards the end, and I don't

 5    think that's in anybody's interests.  I don't like getting

 6    rushed.  I want y'all to be able to focus on the trial itself.

 7    So I think we all have a common purpose.

 8         So my notion is, is getting, you know, these issues sorted

 9    out about what date the notice should be provided, and the

10    substance of the notice and procedures for Government

11    examination, all these kind of things that float around that.

12    Am I right; those are the sort of issues in dispute?

13              MR. RICHARDSON:  Absolutely, Your Honor.

14              THE COURT:  I'd just like to get them on the table

15    early, so we can, in a reasonable way, not rushed, get them in

16    place.  Because, again, having tried a lot of complex cases

17    myself, knowing the rules early is like really helpful in

18    terms of planning, long term, your resources.

19         So I would propose that we adopt the date recommended by

20    the Government of June 24.  What I want on that day is, first

21    of all, for y'all to confer before then on what y'all can

22    agree on, and then to submit to me your alternative proposals,

23    to the extent they're not common.

24         This is obviously -- these 12.2 submissions are something

25    I've never seen in my six years on the bench, you know, it's

1    not something I do, it's a capital -- it's a different kind of

2    case.  And y'all forgot -- Mr. Bruck, I know you've got some

3    experience in doing this, and I just would welcome what the

4    Government and the defense would offer me in those, because

5    I'm sure there's nuances and subtleties to these things I

6    haven't even thought of.  And rather than me just sort of

7    issue something, and y'all squawk at something you consider

8    important, does anybody have a problem with doing that

9    initial, y'all conferring before June 24th, and on June 24th,

10   to the extent you have things in common, you'll file that with

11   me, and to things there's a disagreement, y'all will each file

12   your own.  Does that seem reasonable?

13           MR. RICHARDSON:  Certainly to the Government, Your

14   Honor.

15           MR. BRUCK:  The problem with a very early date is

16   that it's more than just a triggering for some legal

17   discussion, it is notice by the defense that the defense

18   intends to present a certain type of evidence.

19           THE COURT:  But we would address that in the June 24

20   proceeding, when that date was.  We're not yet --

21           MR. BRUCK:  Oh, I'm sorry.

22           THE COURT:  All I'm doing is trying to set up a

23   procedure.  You see where I'm going here?

24           MR. BRUCK:  Absolutely, yes.

25           THE COURT:  So you'll know when that date to give the

1    notice, and what that notice would have to involve.

2              MR. BRUCK:  I jumped the gun.  I now understand.

3              THE COURT:  Does that seem reasonable?

4              MR. BRUCK:  Yes.  Yes, I think we can do that.

5              THE COURT:  Okay.  Let's talk about establishing the

6    jury selection procedures.  Y'all actually combined, in your

7    proposed scheduling order, both a proposed case-specific

8    questionnaire and jury selection procedures for July 25.  Let

9    me decouple them for just a minute.

10        I think we need to go ahead and get the procedures

11   straight.  And I have studied a bit the Boston experience and

12   some other capital cases regarding how jury selection has been

13   done.  And I had my own ideas, and I want to hear from y'all

14   about what you want to do.  And I want to do that early.  And

15   as part then of our establishing the procedures, we'll set a

16   date for trying to sort out the case-specific questionnaire.

17   But I'd like to go ahead and get the procedures set that we're

18   all -- we all know the schedule.  And, you know, so my notion

19   is that y'all -- when y'all are conferring about the 12.2

20   procedures, y'all confer about the jury selection procedures.

21   And the things y'all have in common, you'll submit those to

22   me; the things which you dispute, you'll let me know.  And

23   then to the extent there is a -- and I'll say this about the

24   12.2 submissions as well.  What I'm envisioning is on

25   June 24th, each party giving me some of their idea, and on

1    July 1, giving y'all a chance to respond to the other one's,

2    about why that might not be a good idea or why that presents a

3    problem to the other party.

4          MR. BRUCK:  This is on the 12.2?

5          THE COURT:  12.2, and then on the jury selection

6    procedures.  What I'm trying to do is kind of get the schedule

7    set out so that all of us, the Court and the parties, kind of

8    know what's coming.  And I would like to do that, that

9    procedure, by June 24, to get the procedures.

10     And let me share with you just for a minute before I ask

11   you, does this seem to make sense.  Let me just sort of give

12   you a little bit of idea about how -- in my head, about how

13   this works.  I've talked to a lot of folks, my jury

14   coordinator for the district, Jeff Cargile, has been talking

15   to folks around the country about jury selection procedures in

16   capital cases.  A couple ideas I have right now, and I'm

17   prepared to hear if someone has a problem about that, is we

18   would use 12 jurors and six alternates, in light of the length

19   of the case.  I would use a statewide venire, unless somebody

20   tells me that's a bad idea.  I would want to use our standard

21   juror questionnaire in the initial summons of the jurors.  And

22   I do that because it may well screen out people we know, for

23   one reason or another, wouldn't be in the pool.  And I think

24   that's a good way to narrow, so when we get to the case-

25   specific questionnaire, we're bringing in a smaller group to

1   the courthouse that we actually think may be potential --

2   seriously potential jurors.

3       And then my idea is that we would go through a process in

4   which the parties would confer on a case-specific

5   questionnaire, relying on questionnaires that may be available

6   in other cases and other ideas folks have, y'all confer.  And

7   then to the extent you have disagreements, we would follow

8   some format, y'all propose to me a date.  The kind of idea I

9   had is that I believe it was like sometime in July, I was

10  thinking about -- I'm trying to think about when I had, in my

11  head, envisioned that.  I'll need to sort of sort that out.

12  Let me see here.  Yeah, I actually thought the submission of

13  the proposed case-specific questionnaires could wait till like

14  August 15th.  You're going to hear some more substantive

15  issues I'm going to do, but we're talking about using those

16  questionnaires in late September.  So I thought we might take

17  some of these more substantive legal issues early on, and

18  y'all would confer before then, and then that would give us

19  time between August 15th and the September timing, which I

20  would summon the -- as y'all have suggested -- summoning the

21  venire to the -- and I would do it in the Columbia courthouse,

22  simply because we're doing statewide, so -- and we would do

23  it, y'all estimated two days, I'm estimating more like four

24  days for doing that, and I'll tell y'all why that in a minute.

25      So I envision an initial standard questionnaire sent out

1    with a summons, followed by a bringing the prospective jurors

2    to the Columbia courthouse to complete the case-specific

3    questionnaire.  We would have a process for striking, and I

4    frankly would like to give y'all an opportunity to consider

5    that at both the standard questionnaire stage and at the

6    case-specific questionnaire stage.  Again, I'm trying to get

7    us to focus on the people that we need to spend time on, and

8    not have -- and limit the number of people who would not be,

9    for one reason or another, seriously considered as appropriate

10   jurors.

11        And let me just -- I'll probably make no friends on this

12   one.  You know, they say if you want a friend, you ought to

13   get a dog, right?  I view that the voir dire, individual voir

14   dire would be directed by me initially.  I would afford y'all

15   an opportunity, as they did in Boston, David, to -- Mr. Bruck,

16   to allow parties to submit questions for individual

17   questioning.  I would consider some limited attorney-directed

18   voir dire that is not duplicative of what's already been

19   questioned.  And I'm a little -- that's not our tradition in

20   this courthouse to do attorney directed, and if you overdo

21   your welcome, I probably will stop you.  But I think there may

22   be some value that we get down to a few questions that might

23   be appropriate, based upon what we've learned in the standard

24   questionnaire, the case-specific questionnaire, the

25   questioning I will have done in response to y'all when you

1  have already asked me to do, if there's something else that

2  needs to go a little further, we would consult briefly, and

3  then I would allow -- my inclination is to allow y'all to do

4  that.  That's sort of how I view the -- And that process, I

5  just think taking our time, I'm not big on rushing, I think

6  that takes us about three weeks to draw a jury.  We've got to

7  do -- we have peremptory strikes, 20 each, we have alternates,

8  we have to create a much larger strike list than we normally

9  do in a criminal case.

10      So now you've sort of heard my sort of vision of this.

11      What do you think about y'all doing an initial submission

12  to me on June 24th of proposed jury procedures, hearing kind

13  of what I'm thinking, and a response on July 1 to the other

14  party's, to the extent there's a dispute.

15      Mr. Richardson?

16          MR. RICHARDSON:  That sounds great to us, Your Honor.

17          THE COURT:  Mr. Bruck?

18          MR. BRUCK:  Well, that's hard to follow.  But of

19  course that means that we will be submitting both the Rule

20  12.2 and the jury selection on the same day.

21          THE COURT:  That is correct.

22          MR. BRUCK:  I think we can do it.

23          THE COURT:  I think you can do it.

24          MR. BRUCK:  It would not have been my choice.

25          THE COURT:  I bet it wouldn't be, but I have a

1  feeling that when we get to some of these other issues, you're

2  going to be glad you're not distracted by them, that we kind

3  of know the rules.

4     Okay.  So I take it then that's something that's doable,

5  is that correct?

6          MR. BRUCK:  Yes.

7          THE COURT:  There was a discussion in the --

8  provision in the joint scheduling order proposal, of a

9  deadline for the defendant challenging the indictment and

10  other dispositive motions.  The scheduling order provided for

11  the defendant to file that motion by July 5, and the

12  Government to file a response by August 20.

13     I guess y'all were planning on vacation during that time,

14  Mr. Richardson.  I don't normally anticipate that type of

15  delay on briefing, 45 days.  I don't act like these are not

16  important issues, because they are, they're complex.  You and

17  I both know what they are, it's not like it's a surprise.

18  Right?

19     And so I want to set up a schedule where I think the

20  July 5 date is fine, but I think the Government needs to

21  respond in 20 days to that motion.  And you'll see throughout

22  this, that's my pattern, because we just don't -- otherwise,

23  we're going to be on top of trial, trying to deal with things

24  that should have been dealt with earlier.

25     So my question is July 5 date to filing is suggested;

```
 1    July 25 -- yes -- July 25 for response.
 2           MR. RICHARDSON:  Your Honor, that is a -- I think
 3    that is a set of issues that have -- if I'm anticipating,
 4    again, one of the challenges that we play with is we don't
 5    actually know what those issues are.
 6           THE COURT:  Let me say this.  I think you have a
 7    pretty good idea.
 8           MR. RICHARDSON:  I think we do have a good idea, at
 9    least of some of them.  I don't know if we know --
10           THE COURT:  Believe me, I don't know anything either.
11    I'm just saying when I saw the indictment, I knew exactly
12    where this was going.  Okay?  So maybe there are additional
13    issues, but I can anticipate what's coming.  And y'all have a
14    lot more resources than the defense will have.  I mean,
15    frankly, you have the Department of Justice behind you.  And
16    if you're asking Mr. Bruck's small team to get it done by
17    July 5, I don't think it's unreasonable to ask the Government
18    to respond in 20 days and get on with it now.  Y'all can
19    anticipate getting the research done and prepare argument.
20         So is there a problem with that 20-day response time?
21           MR. RICHARDSON:  Your Honor, if I might agree to it,
22    but with some leave, that given the nature of that briefing
23    and the issues that are raised, that we may at least
24    potentially petition the Court for a few additional days,
25    given that time.
```

 1            THE COURT:  Let me say this.  I am going to be
 2    reasonable, but I do not expect that the date is just a --
 3    deadline is a suggestion, okay?  It's a deadline.  And if,
 4    after making a very diligent effort, you need a day or two
 5    more, fine.  But we have too much work to do to have a debate
 6    society on these questions.  I think you can reasonably
 7    anticipate it, get to work on the substance of it.  My
 8    chambers is already working on it.  We're already working on
 9    these issues, so I don't know why the Government can't be.
10    And maybe Mr. Bruck will surprise us with a new argument none
11    of us have thought of, and then we'll have more work to do.
12    But I think they're reasonably predictable what the argument
13    is here.
14            MR. RICHARDSON:  Thank you, Your Honor.
15            THE COURT:  So I take it the Government is fine with
16    the July 25 response date.
17            MR. RICHARDSON:  Yes, Your Honor.
18            THE COURT:  Is that correct?
19        A motion to suppress evidence.  The suggestion is a
20    July 18 date for filing, and a response on September 2nd.  I'm
21    fine with July 18th, but I think 20 days is sufficient to
22    respond to a motion to suppress.
23        Any objection from the Government?
24            MR. RICHARDSON:  None, Your Honor.
25            THE COURT:  Venue motion, suggested July 25 filing

1    date and August 25 response.  I'm fine with the July 25, but I

2    want an August 15 response date.  Any problem?

3              MR. RICHARDSON:  None, Your Honor.

4              THE COURT:  Motion challenging the death penalty and

5    notice.  The scheduling order provides an August 1 file date

6    and a September 15 response.  August 1 is fine, but I suggest

7    a response date of August 21.  Any objection?

8              MR. RICHARDSON:  None, Your Honor.

9              THE COURT:  Somebody needs to help me understand this

10   sort of non-mental health mental health expert Rule 16

11   quandary, mental health, I'm struggling a little bit about

12   what all the parameters are here.  Let's just break it down.

13   The scheduling order has a -- challenging non-mental health

14   expert in the guilt phase only.

15       Talk to me about that, Mr. Richardson.

16             MR. RICHARDSON:  Your Honor, at the core, maybe I'll

17   start backwards and --

18             THE COURT:  Thank you.  Again, this is foreign to me.

19             MR. RICHARDSON:  I understand.  The defense has taken

20   the position in our discussions that it is not required to

21   disclose any penalty experts.  We think the case law is

22   against that, but that's an issue that we think --

23             THE COURT:  Don't you think that's an issue we need

24   to get resolved pretty early in the process?

25             MR. RICHARDSON:  I do, Your Honor, and this is one of

1    the things that we identify here at the bottom of that, that

2    we think that's an important issue.  And so, in essence, the

3    penalty phase experts, both for the Government and defense,

4    had sort been put to the side here, because of that issue, and

5    the need to resolve that.

6            THE COURT:  Well, first of all, we're talking about

7    non-mental health, we're talking about experts in areas other

8    than mental health, is that correct?  That's what we're

9    talking about?

10           MR. RICHARDSON:  In essence this is the non 12.2

11   experts.

12           THE COURT:  I gotcha.  Okay.  And then just for that,

13   the dates that were proposed in the scheduling order is a

14   July 22 disclosure, the right to do response to those

15   disclosures by August 15th.  Is that naming your own

16   witnesses, is that what we're talking about?

17           MR. RICHARDSON:  The idea there would be, Your Honor,

18   just to use an example, perhaps from July 22nd the Government

19   would introduce ballistics expert.

20           THE COURT:  Correct.

21           MR. RICHARDSON:  If then the defense chose that they

22   wanted to have a responsive expert --

23           THE COURT:  They name it on that date.

24           MR. RICHARDSON:  -- they would then name that

25   individual --

1          THE COURT:  Okay.  That's what I thought it meant.

2     And then there would be a date of September 6th for parties to

3     challenge these non-mental health guilt phase experts.  Is

4     that right?

5          MR. RICHARDSON:  Correct, Your Honor.

6          THE COURT:  And that would be sort of the Daubert

7     kind of challenge?

8          MR. RICHARDSON:  Depending.  It may be a relevance

9     challenge, may be Daubert, may be --

10          THE COURT:  Whatever.

11          MR. RICHARDSON:  Exactly.

12          THE COURT:  Okay.  And all those dates, up to that

13     point, makes sense.  But then in the scheduling order -- Let

14     me make sure I've got it.  When we got to the point on

15     September 6th, where there's a challenge, y'all wanted 30 days

16     to respond to that.  Do you see that on the right side of your

17     proposed scheduling order?

18          MR. RICHARDSON:  I do, Your Honor, and I anticipate

19     20 days seems better to you.

20          THE COURT:  You got it.  You were reading my mind.

21          MR. RICHARDSON:  Thank you, Your Honor, that seems

22     perfect.

23          THE COURT:  Okay.  Thank you.

24       Now let's move to the penalty phase non-mental health

25     disclosures.  Mr. Bruck, what's the basis for arguing that you

1    don't have to disclose anything about the penalty phase?

2            MR. BRUCK:  Well, I wasn't prepared to argue the

3    issue now.  There's actually relatively little law on the

4    topic.

5            THE COURT:  I can't find much.

6            MR. BRUCK:  The entire theory of pretrial disclosure

7    about the sentencing phase in a case where there has not yet

8    been an adjudication of guilt, is replete with Fifth Amendment

9    issues.  And so the notion that the litigation of the

10   sentencing, for a case that has not yet gone to trial in a

11   capital case where you have a bifurcated trial, is a complete

12   two-way street where there's a simple balance of the

13   Government --

14           THE COURT:  But you want the Government to disclose

15   its witnesses for the penalty phase, don't you?

16           MR. BRUCK:  Yes, the Government does not have a Fifth

17   Amendment privilege.

18           THE COURT:  Well, let me say this.  We don't want

19   trial by ambush for anybody.  Okay?  We don't want it for the

20   defense.  We want the parties to be adequately prepared to

21   address the evidence on the merits.

22       I know there's Fourth Circuit case law that says it's the

23   inherent authority of the Court to set a deadline for the

24   disclosure of experts, and I would be inclined to set a

25   schedule.  I want it to be a reasonable schedule, I want it to

1    work, but I don't want a trial by ambush.  And I want

2    everybody to have a chance to have notice and an opportunity.

3    So I'm going to require that penalty -- unless you persuade

4    me -- and I'll give you a chance to address that --

5                MR. BRUCK:  Thank you.

6                THE COURT:  -- but my own inclination, I tell you

7    that, and I want to go ahead and address this issue.  So to

8    the extent that you think penalty phase non-mental health

9    expert disclosure is not required, I want you to file a brief

10   with me by June 27th on that issue, and then I want a response

11   by July 7th from the Government.  I want to get this out of

12   the way and get it done.

13               MR. BRUCK:  Is this with respect to identified

14   experts, or simply --

15               THE COURT:  General principle.  I'm just trying to --

16   I can't find much, Mr. Bruck, I find this sort of inherent

17   authority issue, which makes plenty of sense to me, but I want

18   to hear from you before I make a final decision.  And if you,

19   looking at it, say I just don't -- I'm just going to leave it

20   be, that's fine, too.  Just notify us and we'll --

21        Okay.  Motions in limine and other pretrial motions.  The

22   scheduling order provides for October 4, and responses for

23   October 24.  Folks, I just don't want to get on top of --

24   something could be important in these, so we need to spend

25   some time on it.  And I don't want to get rushed, so I want to

1    back this up.  Tell me why we can't do the motions in limine

2    earlier.  I know traditionally in cases we do the motion in

3    limine late, and we do it really late because a lot of times

4    the parties are trying to work the case out or something would

5    be kind of useless.  But these may be very important motions.

6    And I think the way you're preparing for trial, and what you

7    even have to call would be -- might be very fundamentally

8    affected by the Court's rulings.

9        So tell me why we couldn't do, say, a September 1 filing

10    on the motions in limine and a response on September 22.

11        MR. RICHARDSON:  Your Honor, the Government thinks

12    September 1 is fine.  The one issue that I think is important

13    to tell the Court about on the front end is that a significant

14    number, based on our experience, obviously not my experience,

15    but our experience in capital cases, addresses the mitigating

16    factors and the evidence that the defense intends to put on

17    with respect to mitigating factors, both timing, scope and

18    manner of proof, as well as the propriety of certain

19    mitigators, which there is a significant body of case law on

20    the issue.

21        THE COURT:  This is a hot area, and, you know, the

22    standards for admissibility are relaxed at this stage.

23        MR. RICHARDSON:  Absolutely, Your Honor.  And I think

24    it's a relatively narrow set of those circumstances, but in

25    order for us to make those motions in limine, obviously we

1    will need to know what the mitigating factors the defense is

2    proposing, even just a week in advance.  I don't think we need

3    a significant amount of --

4             THE COURT:  I'll get to that, I have that on my

5    checklist to do, is whether there's a duty to -- you know,

6    use/disclosure aggravating factors, and I'll get to that

7    issue.  But to the issues on a motion in limine schedule of a

8    September 1 file date and a September 22 response date, is

9    there an objection from the Government?

10            MR. RICHARDSON:  No objection, Your Honor.

11            THE COURT:  Mr. Bruck?

12            MR. BRUCK:  Our problem -- The motions in limine have

13   to do with evidentiary issues.  If we're going to have the

14   Government's witness list and their exhibit list, and we know

15   basically what's coming, by September 1st, we will be in a

16   much better position to know what we want to raise.

17            THE COURT:  Have we set forth here when that witness

18   list is going to be provided?

19            MR. RICHARDSON:  Your Honor, this is also in the

20   areas of disagreement below.  We had suggested October 13th.

21   This was the dispute primarily about whether the defense was

22   required to disclose from mid jury selection or not.

23            THE COURT:  And this gets to another issue which I

24   want to discuss.  And I see, Mr. Bruck, that that is a

25   relevant consideration, if you don't know who's coming, it's

1    sort of hard to do the motions in limine.  So let's turn for

2    just a moment to the issue of whether you have a duty, prior

3    to jury selection, to disclose a witness list.

4        The reason I do that is I'm worried about the jury.  And I

5    don't want somebody that's -- you don't want someone on the

6    jury who has a relationship with a victim's family, and the

7    Government doesn't want someone who has a relationship to the

8    defendant.  I'm going to tell you something, I've had this

9    come up where, when we discover relationships, and we do it

10   because the name of a witness was called out, oh, that's my

11   next-door neighbor, and it's an investigating officer or

12   something.  We don't want that.

13       And so talk to me about not disclosing witness list.  I am

14   concerned about that.

15            MR. BRUCK:  There is a way to -- there is a way to

16   accommodate that.  Maybe --

17            THE COURT:  Tell me how to do that.  I'm open to it.

18            MR. BRUCK:  We file a witness list with the Court.

19   The juror, before individual voir dire, reads the list,

20   advises -- a jury -- at the beginning of voir dire, did you

21   know any names on that list?  Yes.  Which one?  Eventually

22   some of the names may be disclosed through that process, but

23   it maximizes the confidentiality.

24            THE COURT:  My only concern, I've got to say, is I

25   think you're -- I mean, it's very typical in these cases to

1    have dozens of names.  Dozens of names.  And I make sure that

2    we do it slow enough so our jury pool can hear the names.  And

3    I think that -- I think that would not be a particularly

4    efficient way to do it.

5        Now, what I am sensitive to, is I don't think you need

6    to -- I don't want the Government necessarily to be standing

7    up reading 72 names, and you name three names or something,

8    you know, like somehow wronged your defense, if that were to

9    be the case.  Of course, the defendant has no duty to offer

10   any witnesses, right?

11          MR. BRUCK:  Right.

12          THE COURT:  Has no burden, the burden is on the

13   Government.  So I wouldn't hesitate to be the one to read all

14   names.  If y'all want me to do that, I would be more than

15   happy to be the one just to list them.  But I am very

16   concerned from the fairness of the trial for defendant, that

17   he not have someone on the jury -- And I wouldn't want to

18   rely, first of all, I'm not thinking about a jury selection

19   process in which someone has to read 100 names every time the

20   individual voir dire.  We would slow to a creep to do that.

21   So I'm not high on that.

22          MR. BRUCK:  Well, the way that works is while the

23   juror is sort of -- they can be reviewing the list.  It

24   doesn't have to be done while we watch paint dry in the

25   courtroom.

1           THE COURT:  You're trying to keep the names from the

2    Government.  And I kind of, you know, again, trial by ambush,

3    okay?  I am very sensitive to a fair trial process.  I'm very

4    sensitive to it.  But you know, at some point it's just sort

5    of everybody gets disclosure, and not in a way to prejudice

6    your client, but you're benefited tremendously from

7    disclosure, what's coming, and I think we ought to have a

8    reasonable notice, so parties can adequately prepare, and the

9    jury gets the very best information to make the fairest

10   decision it can.

11          MR. BRUCK:  There is another consideration, and I

12   know this weighed heavily in Boston.  And it may weigh heavily

13   here.  And that is public disclosure long in advance of trial

14   of people who are going to take the stand on behalf of or at

15   least called by this defendant in this case.  People read a

16   lot more into that than is warranted.

17          THE COURT:  And this gets into an issue which is very

18   important, which is how do we, consistent with the First

19   Amendment, freedom of press, freedom of speech, balance that

20   with the Fifth and Sixth Amendment rights to a fair trial

21   before an impartial jury.  Right?  I mean, we've got to do

22   that.

23          MR. BRUCK:  Yes.

24          THE COURT:  And I know that Judge O'Toole limited

25   disclosure of certain information by the press.  I mean, I

1    would walk, you know, very hesitantly, for instance, we don't

2    allow disclosure of jurors' identities, prospective juror

3    identities, or juror identities, right?  And I would be

4    open -- I think y'all ought to talk about it first -- but I

5    would be open to discussing, you know, some limitation on the

6    disclosure of witness names pretrial, that is, to prevent

7    intimidation of witnesses or attaining of testimony or

8    anything like that.  I think that's fair.

9        There's a way to balance this in which, of course, once

10    the person takes the stand, it's fair game.  I mean, it's

11    going to be tough.  And a lot of these orders that I will

12    seal, and I have sealed, I will unseal it when the trial is

13    over.  I have no desire to keep things from the public; I just

14    try to protect the defendant's right to a fair trial, and

15    there's a way to balance that.  It's just timing.

16        So I will tell you that on the witness list disclosure,

17    that I'm open to hearing -- I wish y'all would consult -- and

18    I may give some public notice of that to give the media an

19    opportunity to respond to it, if they wish.  But I would be

20    inclined to limit the disclosure of names of witnesses until

21    they've testified, or at the end of trial, whatever it is

22    later.  So I think we should address that problem.

23            MR. BRUCK:  Okay.

24            THE COURT:  But I do -- and I do have this notion

25    that we ought to not do trial by ambush on the inside, okay?

1    So let me do this.  I had the June 27th date for the issue of

2    the penalty, you know, disclosure at penalty phase.  Let's

3    just go ahead and address it the same time, the whole idea of

4    witness list disclosure generally.

5        I mean just -- and I tell you, Mr. Bruck, just candidly,

6    I'm inclined to require you to disclose.  We can talk about

7    when that is.  I am concerned how that then interplays with

8    motions in limine.  I mean, I think there is a legitimate

9    interplay there that I haven't thought about; I think you've

10   now mentioned that.  And we need -- I'd like to do it sooner

11   than we have in the scheduling order, just because I think you

12   all need answers before you're walking to the courthouse to

13   try cases.  I never thought having rulings on important

14   matters on the morning of trial is very helpful to anybody.

15       So do y'all want to talk among yourselves about that and

16   talk about the interplay where we might back up the motions in

17   limine, but that then necessitates us to figure out about

18   witness list disclosures.

19            MR. RICHARDSON:  Your Honor, I will state, just as

20   reflected here, I don't want to restate the obvious, but both

21   the defense and the Government agree for this October 13th

22   date.  Understanding that moved, we all understood that that

23   was after the motion in limine deadline.  The motion deadline

24   on our proposed schedule is October 4th, and the witness list

25   was disclosed on October 13th.  I think we understood that

1    they weren't going to necessarily come in the sequence that

2    Mr. Bruck is now suggesting.

3          THE COURT:  I think it makes sense, frankly, but we

4    may have to do some earlier.  And, you know, the initial

5    disclosure of witnesses can be done under seal.  So we're not

6    worrying about it getting out to the public initially.  What

7    we're worried about is, and I share this, is I don't want any

8    witness' involvement in the case to be affected by public

9    discussion one way or the other.  And the public will know

10   well enough when they take the witness stand, who's

11   testifying.

12         MR. RICHARDSON:  Yes.  And we're happy to work to

13   provide that whenever the Court --

14         THE COURT:  So I'm going to -- you know, every motion

15   needs to be, you know, needs to be preceded by consultation.

16   And why don't y'all go back and revisit this issue.  You've

17   made me think about it a bit, about when we might have these

18   disclosures in a way that makes the time for the motion in

19   limine meaningful.  Okay?  That we can actually file, so

20   some -- I think we do need to have the witness disclosure

21   followed by the motions in limine.  So let's think about that.

22         And what I'm going to ask you to do is, you know, we're

23   talking about this issue of, on June 27th, of filing --

24   Mr. Bruck feels like that the nondisclosure penalty phase, I

25   want him to brief that, nondisclosure of witnesses, to brief

1   that.  And I'd like y'all to talk, assuming that he does not

2   prevail on that, or how we do something that best protects the

3   rights of the defendant, but accomplishes the purposes that

4   everybody is aware of what's coming for trial.  Okay?  Does

5   that make sense?

6           MR. RICHARDSON:  Yes, Your Honor.

7           THE COURT:  Okay.  Proposed jury instructions.  Now,

8   I know traditionally they land -- a big thud lands in my

9   office like the day before trial, and I'm supposed to figure

10  all this stuff out, which are some of the most complicated

11  issues possible.

12      I know y'all both have most of your jury charges already

13  in the can.  And why can't we file them earlier?  Let's break

14  tradition on that, and let's -- it will give me a chance when

15  we're not rushed.  I suggest -- y'all suggested October 28th.

16  I'm going to suggest to you September 16th.  And let's get

17  them there, and it will give me a chance to get on top of

18  where y'all are disputing with each other, where the

19  differences are.  And to the extent I need to hear from y'all

20  on that, I'd like to do it not in the middle of trial, I mean,

21  it's just enough exhaustion and stress associated with trial,

22  maybe we can sort some of this stuff out early, so again, it's

23  kind of put to bed and we have to worry about more important

24  things for the trial.

25          Does the September 16 date make sense?

1          MR. RICHARDSON:  Sounds great to the Government, Your

2    Honor.

3          THE COURT:  Mr. Bruck?

4          MR. BRUCK:  Yes, we can do that.

5          THE COURT:  Let's talk a minute about the date for

6    giving 12.2 notice.  The scheduling order, the Government

7    wants it on July 11th, and the defendant wants it on

8    September 12th.  I'm concerned with this coming late, because

9    I think there are things that we might need to address about

10   all this, Government examination, Daubert issues, all kinds of

11   issues that I don't want to do at the last minute.  These are

12   too important.  So I am inclined to go with the July 11 date.

13   Mr. Bruck, tell me why that's a problem with the defense, if

14   it is.

15         MR. BRUCK:  Well, my biggest concern about it is not

16   so much the timing of the notice, but if there flows a

17   Government examination --

18         THE COURT:  Which may happen.

19         MR. BRUCK:  -- which has been known to happen.

20         THE COURT:  Yes, it has.  Which is their right under

21   the rule under certain circumstances.

22         MR. BRUCK:  But the question is when.

23         THE COURT:  Correct.

24         MR. BRUCK:  And we'd be finished before they start.

25   I mean, clearly you have to be.  And now the Government

1     doesn't get the benefit of their own evaluation.

2          THE COURT:  Correct, it gets sealed -- either gets

3     sealed -- and I know there's this issue which we'll have to

4     address in this process about firewall counsel and all that, I

5     mean, these are issues we've got to get into.  And I'm not

6     trying to address them today; that's for a later day.  But I

7     do think that process is fairly involved on all parts, and

8     waiting till September 12 makes no sense to me for anybody.

9     Because everybody's -- and so tell me the problem you would

10    have with July 11th, of giving -- because all you're doing is

11    giving a notice.  I mean, we'll get into the substance of the

12    notice, but you're not delivering the report there or

13    anything, that's just the notice.

14          MR. BRUCK:  I understand.  The most important phase,

15    we don't want to deliver -- we don't want the Government to

16    have access to the defendant -- if it comes to that, if we

17    trigger that and that happens -- early in the process.

18    Because we're still doing our work.  So if the notice came,

19    and they could identify their experts and get ready to go, I'm

20    more concerned that the time for their actual evaluation --

21          THE COURT:  When do you want their evaluation to be,

22    Mr. Bruck?

23          MR. BRUCK:  I'm sorry?

24          THE COURT:  When do you want their evaluation to be,

25    if you could control it?  Three days after the trial?  I

1    mean --

2            MR. BRUCK:  No.  Starting 45 days before trial is

3    plenty of time.  Gracious plenty.  How long does it take?

4            THE COURT:  I've got to tell you, then we get into

5    these sort of Daubert type challenges.  I know specifically

6    rules of evidence may not apply in the penalty phase, but at

7    least a sort of modified 403 standard.  And I need to sort out

8    those reports, hear your objections, maybe have a hearing on

9    the thing.  I mean, I would never, in a civil trial, wait that

10   long, if I had a choice.  And I know this is different in a

11   criminal, but there's much wisdom here in complex civil cases

12   in getting things out of the way that take up the time and

13   attention of lawyers, when they need to be working getting

14   ready for the trial.

15           MR. BRUCK:  With respect, I think the one thing that

16   is different about 12.2, is that no one sees these reports

17   until after the guilt phase, so there can't be any Daubert.

18           THE COURT:  I guess you're right.  Daubert would

19   actually come if we unsealed them.  So they're really talking

20   about the Government having adequate time to do the

21   examination.

22           MR. BRUCK:  That's all.

23           THE COURT:  Mr. Richardson, what type of time do we

24   need?

25           MR. RICHARDSON:  Your Honor, one of the challenges we

1     face is we don't know what the 12.2 notice is going to say.

2     There's been some suggestion --

3          THE COURT:  Again, let me just say, you don't know

4     specifically; you have a pretty good idea.

5          MR. RICHARDSON:  Well, potentially we have an idea,

6     Your Honor, but there have been some suggestions, just reading

7     in the media and the State Court case, that there's a

8     neuropsych eval involved, that there are brain scans being

9     done, that potentially require the use of multiple experts.

10     That's the issue here.

11          THE COURT:  And I'll expect that a notice would

12     include -- give y'all opportunity to know that, okay?  And

13     part of the process, you know, I hired, in my day, a lot of

14     experts.  Okay?  You've got to go find them, first of all,

15     there's a period of time before you can do the examination,

16     you have to know exactly what type of experts are they using,

17     and what areas are they -- the tests they're running.  That

18     will give your experts pretty good clues.  You're already

19     reading in the press, I get -- I have that same unique source.

20     And so I've got a pretty good idea what the defense will

21     assert here.

22     I want to get the date, I want you to know -- be able to

23     go hire your experts, which isn't the day you go examine.

24     Because you have to hire your experts, and then you have to

25     get on their schedules and you have to work out a time that's

1   not disruptive to the defense of the case, to do the

2   examination of the defendant.  So assuming that it's

3   appropriate under these circumstances.

4        So how much time do you need from notice to completing the

5   examination?

6            MR. RICHARDSON:  Your Honor, I think we picked the

7   July date for that reason, because -- well --

8            THE COURT:  Let's be more specific.  You have to help

9   me on this.

10           MR. RICHARDSON:  I understand, I'm going there.  But

11  the thought process here -- and we went and looked at a number

12  of other examples.  We looked at Fulks/Basham up in Columbia,

13  that was a six-month time period, 12.2 notice provided six

14  months in advance.  Con-Ui, which is a case in the Middle

15  District of Pennsylvania that's getting ready to go, was a

16  five-month notice prior to the trial.  We went back and looked

17  at those, and the issue --

18           THE COURT:  Let me say this.  We can't -- you know,

19  what Mr. Bruck is asking to do in this case, is to go to trial

20  far faster than most capital defendants go.  He may have his

21  own reasons to do that, I don't question him, that's his right

22  to do that.  I will question him in a little while about is he

23  satisfied that he can provide effective and quality

24  representation to his client.  But those cases go on for

25  years, which on my docket doesn't normally happen.  And so the

1   desire of the defendant to go forward is very consistent with

2   the way I run my docket, okay?  So the fact that they took a

3   leisurely five months because nobody was in a hurry, well,

4   time is a factor here.  So the question is, you know, you pick

5   up -- I mean, you're already anticipating, you've read

6   something, so neuropsychological, certain brain scans, I mean,

7   you could already -- expertise within the DOJ, they have an

8   idea of maybe the kind of tests that are being done and the

9   kind of evidence that might be -- expert evidence that might

10  be required.  So you can make -- and I'm sure the Department

11  of Justice has certain experts from time to time who they call

12  upon to offer evidence in these types of cases.

13      But you need to know specifically, and that's why I think

14  an early notice date is important.  Mr. Bruck raises the

15  point, a legitimate one, about how much time do you really

16  need.  Because a little bit later in the process allows them

17  to complete what they're doing.  So my question to you is,

18  from the point of notice to the point of completing the

19  examination, how much time do you really need?

20          MR. RICHARDSON:  From the point -- Just so I

21  understand.

22          THE COURT:  Notice of intent to --

23          MR. RICHARDSON:  You mean between the notice and the

24  examination?  Well, I think notice is going to trigger a

25  number of things.

1          THE COURT:  Yes.

2          MR. RICHARDSON:  Likely a discussion, with firewall

3     counsel or not, about the appropriateness and the

4     circumstances and availability of an evaluation, as permitted

5     or at least contemplated under 12.2.  That, I think, is going

6     to require some litigation, unless there can be some

7     agreement, which I would be a little surprised about.  So that

8     has to be resolved.  But in that time frame, then you're also

9     getting in and finding a time when --

10         THE COURT:  My original thing, I started with these

11    12.2 procedures, I was hoping y'all would work that out where

12    y'all would have a schedule where maybe the notice occurs on

13    July 11th, we may have objections at a certain date, hearing

14    on that issue, and then examination, to the extent that the

15    Court was persuaded that examination was appropriate.  Okay?

16    I mean so --

17         MR. RICHARDSON:  I think that's exactly right, Your

18    Honor.  And I think from our perspective, the issue that

19    creates the concern about delay is if that examination takes

20    place, one of the things that that expert is evaluating, is

21    based on that examination, is an additional specialist

22    necessary.  Right?  And so that's why doing it early allows

23    that opportunity.  They've had access to Mr. Roof for quite

24    some time.  It allows us a window to get the necessary

25    experts, so that we're not doing this on the eve of trial.

1          THE COURT:  Okay.  Let's do this.  I think the

2    July 11 date for just the notice is fine.  Okay?  Y'all -- I'm

3    asking y'all to work out what that notice is going to involve.

4    And why don't y'all try to address this process, because it

5    may require some litigation, and try to sort out the issue of

6    when that examination -- that doesn't -- July 11 doesn't

7    represent the date of the examination.  Y'all try to work that

8    out so the Government has an adequate time to get the

9    examination completed, Mr. Bruck's correct, and the peculiar

10   procedures of that rule, it's not available to trial counsel

11   in the case.  So we're not going to have any Daubert or other

12   issues to address, or Daubert-like issues, since the rules of

13   evidence don't specifically apply.  Though I frankly find that

14   suggested standard of out -- that the prejudice outweighs the

15   probative value, is pretty close to what Daubert, as a

16   practical matter, is anyway.

17        So I want us to afford that -- I want y'all to work on

18   trying to sort those dates out.  But I'm going to require the

19   notice of July 11th, but look to y'all before I enter a final

20   order about when examination is going to be.  And I welcome

21   your advice on that.

22          MR. RICHARDSON:  Thank you, Your Honor.

23          THE COURT:  Okay.  Let me go back to an issue that I

24   mentioned in passing.  I want to use the standard

25   questionnaire with the jury summons.  I just think we get a

1    lot of basic information that's pretty valuable.  And

2    specifically, a question that might go to whether you'll

3    follow the instructions of the judge, whether he can be fair

4    in certain cases.  And if people say no, we routinely just

5    toss them from the pool.  Okay?  We do that.  Okay?  And I

6    probably want to work out something where we might agree ahead

7    of time, which in the standard questionnaire might be

8    questions that we would allow the clerk staff just to remove

9    them, if they answered a certain way.

10        But is there an objection to using the standard

11    questionnaire?

12        MR. RICHARDSON:  No objection, Your Honor.  And the

13    Government has, in a previous case, allowed, and with consent

14    of the defendant, to look at what, in essence, in the standard

15    questionnaire, are questions 37 through 45, and allow the

16    Court -- in that case the Court actually did it -- clerk's

17    office, I think, provided a list, and the Court --

18        THE COURT:  Actually the Court does it.  But my staff

19    goes through, and my judicial assistant, Miss Tapscott, does

20    this, she goes through, and she knows if someone says they're

21    not listening to the judge, that's runaway jury material, they

22    go.

23        MR. RICHARDSON:  And we certainly think that's an

24    appropriate resolution in this case.  If they indicate they

25    can not follow the judge's instructions, I can't imagine that

1    either side would want that individual on the jury.

2            THE COURT:  Correct.  And if they can't be fair under

3    certain circumstances, you know, can't be fair to criminal

4    defendant, to law enforcement, whatever, we don't need those

5    people on this jury, okay?  We need a fair and impartial jury.

6    And so I like the -- you know, we have it now 75 percent of

7    our people respond on line.  They get it and they respond on

8    line.  That's great, it gives us quickly, gives y'all quickly

9    some information.  And that pool -- We're now debating, by the

10   way, how many folks we're going to summon.  I understand the

11   state had talked about 600.  We're talking 12 to 1500.  Okay?

12   We -- you know, we're concerned.  And we want -- we don't want

13   to get in a situation where we start drawing a jury, and

14   suddenly we don't have enough people to constitute the jury.

15   And you can always trim back; you can't add very easily.  So

16   we're going to have a substantial summons.  And I think that's

17   comparable, Mr. Bruck, to what Boston did.  I think Boston did

18   1200, isn't that right?

19           MR. BRUCK:  Boston had a very large number, a number

20   of many more than we thought would be needed and many more

21   than were needed.

22           THE COURT:  You better err that way than to err the

23   other, right?  That you don't have enough for a jury.

24           MR. BRUCK:  Now, if I could insert one thing --

25           THE COURT:  Yes.

1          MR. BRUCK:  -- with respect to the standard

2     questionnaire, not having it in front of me --

3          THE COURT:  You need to go look at it, I agree.

4          MR. BRUCK:  -- deciding on this.  But the one caution

5     is the extent to which people feel that they have locked

6     themselves in to a statement of impartiality, before the

7     issues have really been put before them.

8          THE COURT:  Well, listen, that's not what I want to

9     use it for.  And I just want to -- I want to use it as a

10    screening device only.  And I don't think -- I haven't ever

11    had the impression that people feel somehow locked in.  They

12    don't even remember what they wrote, right?  But it does tend

13    to screen out the hot heads, basically, is what it does.  And

14    if we -- let's say hypothetically we have 1200, we'll -- that

15    number will not be 1200 when we start talking about the next

16    phase of this thing, or bringing them.  And I don't want to

17    bring people to the courthouse and do a case-specific

18    questionnaire who we know wouldn't be appropriate.  I mean, we

19    can already discern they're not in the pool of people.

20         So, Mr. Bruck, why don't you look at the standard

21    questionnaire; it's on our web site.  I think you'll find it

22    generally pretty unobjectionable.  But why don't you take a

23    look at it and let me know next week sometime if you have

24    concerns about it, and we might need to -- y'all might need to

25    confer with each other and talk to anybody that you might want

1    to tweak on it.  But it's just a general screening device.  Is

2    that fair enough?

3            MR. BRUCK:  Yes.

4            THE COURT:  Okay.  Let me talk to you a second about

5    how I envision the second phase.  If we consider the summoning

6    as to the standard questionnaire as phase one; phase two, we

7    bring them to the Columbia courthouse, so I don't have people

8    traveling all the way to Charleston, this whole group of

9    people traveling that far, it's a convenience of the jury.  Of

10   the jury pool.  If we're going to conduct that individual case

11   voir dire in the courtroom -- I mean, sorry, not voir dire --

12   the process where I meet with the jury initially, tell them

13   this is this case, here's a questionnaire, I need for you to

14   complete the questionnaire, that process.  If I have to do

15   that in the courtroom, I have -- my capacity is about 100

16   people.  If I do it in the jury assembly room in Columbia,

17   it's about 175 people.  So we can do it more rapidly.

18       But here's the question, Mr. Bruck.  Would the defendant

19   need to be present for that?  Because if he does, I'll need to

20   do it in the courtroom.  Any thoughts about that?

21           MR. BRUCK:  I would need to obviously talk with him

22   and the -- but my feeling is probably not.  But I really have

23   not thought about that.

24           THE COURT:  It's an interesting -- you know, it is

25   only a question of space.  And whatever he wishes and you

1    wish, is fine with me.

2            MR. BRUCK:  Okay.  All right.

3            THE COURT:  It just involves us, you know, spending a

4    little more time doing it, but if it's necessary, we do it.

5    Why don't you -- you know, I mentioned to you about looking at

6    the -- What's next Wednesday?  Let's look.  The 15th.  Why

7    don't we, on the 15th, you let me know about the standard

8    questionnaire, and whether the defendant would need to attend

9    that -- the process where I would initially meet with the jury

10   and have the case-specific questionnaire completed.

11      Yes, Mr. Richardson.

12            MR. RICHARDSON:  Just a suggestion, Your Honor,

13   which -- feel free to ignore.  I have considered the idea that

14   the Court would put jurors in several courtrooms, and then we

15   could go from courtroom to courtroom, you could do your

16   introduction, have the discussion with them, leave them with

17   the questionnaires, and then from that point, move from

18   Courtroom I to Courtroom II, and --

19            THE COURT:  That's one possibility.  You know --

20            MR. RICHARDSON:  That's a suggestion.

21            THE COURT:  That's an idea, and we'll think about

22   that.  Another, they were bringing them in, in shifts of 200

23   in Boston.  So part of it is the capacity for security to

24   handle it and all that.  But all those are ideas, nobody

25   doesn't -- not very many people have done it, and that's an

1  idea we'll consider. But the question is, does the defendant

2  need to attend, and if he does, we will accommodate that, and

3  that is entirely the defense call. Okay?

4        MR. BRUCK: I should ask one question, Your Honor.

5        THE COURT: Yes.

6        MR. BRUCK: I have to say, until today, we had not

7  discussed about or thought about the question of a statewide

8  rather than a Charleston --

9        THE COURT: Talk to me about that. How do you feel

10  about that?

11        MR. BRUCK: Well, it seems like a lot more travel

12  stress on jurors to make them come a long way. And I don't

13  know what the advantage would be. This is obviously a case

14  that publicity is nationwide, not just statewide.

15        THE COURT: Let me tell you something. I do it just

16  simply on the notion that you might get -- you have a little

17  bit more diverse pool statewide, it might help among jury

18  selection. If you want to do a Charleston division, I would

19  probably defer to you on that.

20        MR. BRUCK: Can we huddle on that?

21        THE COURT: Let's do that July -- Let's do that on

22  the June 15th as well. Why don't you think about it.

23        MR. BRUCK: Thank you.

24        THE COURT: And, you know, I had another case where I

25  mentioned statewide venire, and I thought the defendant would

1   have wanted it, and the defendant stood up and said no, I live

2   here, I want the case here, which, you know, I said fine.

3   It's only done in the interest of the defendant.  And if the

4   defendant does not think it serves his interests -- But,

5   Mr. Bruck, what I don't want is for you to get me to agree to

6   the Charleston division, and then move for a change of venue,

7   okay?  You hear me?

8          MR. BRUCK:  I do.

9          THE COURT:  I don't want a two-step on this one,

10  okay?  I mean, if -- you know, if you're planning to move for

11  a change in venue, then I'm going to probably want to use a

12  statewide venire.  Do you hear what I'm saying?

13         MR. BRUCK:  Yes, sir, loud and clear.

14         THE COURT:  Okay.  Now, Mr. Richardson, you raised

15  this question of a list.  I notice you asked it as a request

16  that the defendant list mitigating factors.  Is there any

17  right to the list of mitigating factors?

18         MR. RICHARDSON:  Your Honor, we think there is some

19  support for that.  Obviously it's within the Court's inherent

20  authority.  We have not briefed that issue, and I can honestly

21  tell you I understand that there is some support for that

22  notion, but I have not personally done the research to fully

23  articulate that.  We think, again, it goes back to this basic

24  principle of allowing a trial to proceed in a reasonable

25  manner and to allow the Court to resolve issues in advance,

1     rather than as they come up during the middle of trial.

2          THE COURT:  Here's good news.  Mr. Bruck would not be

3     the only one filing some things on June 24th, because if you

4     want to get that list, you need to brief it, and Mr. Bruck can

5     respond on July 1.  Okay?

6          MR. RICHARDSON:  Happy to do so, Your Honor.

7          THE COURT:  By the way, we'll issue an order that

8     kind of list all the stuff so y'all don't have to keep up with

9     it.

10          MR. RICHARDSON:  That's immensely helpful, Your

11     Honor.

12          THE COURT:  Make sure we have all the deadlines on

13     things I'm asking you in the short-term.

14          MR. RICHARDSON:  Thank you very much, Your Honor.

15          THE COURT:  There was also discussion,

16     Mr. Richardson, about challenging death penalty phase experts;

17     we sort of addressed this just a little bit, the issue of your

18     wanting to have sort of a Daubert type challenge.  And again,

19     I want that to be part of the 12.2 procedures, when y'all

20     talk -- when the parties confer, and to the extent y'all have

21     a disagreement, let me know and we'll address that issue.

22          MR. RICHARDSON:  Absolutely, Your Honor.

23          THE COURT:  Okay.  Let me look over my list here.

24     Okay.  I'm going to ask a series of questions, first to the

25     Government and then to Mr. Bruck.

1        Mr. Richardson, does the Government feel that November 7

2   start date -- and when I use that start date, that's for the

3   questioning -- starting of individual jury voir dire -- does a

4   November 7 start date provide you an adequate time to complete

5   all expert evaluations?

6            MR. RICHARDSON:  I believe it would, Your Honor.

7            THE COURT:  And your experts would be available on

8   that trial schedule?

9            MR. RICHARDSON:  We will find an expert that will be

10  available, Your Honor.

11           THE COURT:  Will you have an opportunity to timely

12  complete all investigations?

13           MR. RICHARDSON:  Yes, Your Honor.

14           THE COURT:  Will you have an opportunity to timely

15  prepare and complete all legal research and motions?

16           MR. RICHARDSON:  Yes, Your Honor.

17           THE COURT:  Will you have an opportunity to timely

18  prepare jury charges?

19           MR. RICHARDSON:  Yes, Your Honor.

20           THE COURT:  Will you have an opportunity to timely

21  address all suppression issues?

22           MR. RICHARDSON:  Yes, Your Honor.

23           THE COURT:  Can you be fully prepared for trial on

24  all aspects of your case?

25           MR. RICHARDSON:  Absolutely, Your Honor.

1            THE COURT:  Are you aware of any factor that might

2   necessitate a delay in the start of the trial?

3            MR. RICHARDSON:  None, Your Honor.

4            THE COURT:  And do you understand that if I accept

5   the case for November 7th, that is the date the trial will

6   begin?

7            MR. RICHARDSON:  Absolutely, Your Honor.

8            THE COURT:  And does the Government anticipate or

9   plan to seek a superseding indictment?

10           MR. RICHARDSON:  We do not, Your Honor.

11           THE COURT:  Okay, Mr. Bruck, your turn.  Does

12   November 7 trial start date provide you an adequate time to

13   complete all expert evaluations?

14           MR. BRUCK:  Yes, Your Honor.

15           THE COURT:  Does it provide you adequate time to

16   complete all investigations?

17           MR. BRUCK:  Yes, Your Honor.  I should say, with

18   respect to all of these questions, and I have a sense that I

19   know what the rest of them will be --

20           THE COURT:  Good guess.

21           MR. BRUCK:  -- that this, by definition, is based on

22   what we know now and what is reasonably foreseeable.

23           THE COURT:  Correct.  Mr. Bruck, here's the -- you

24   just -- I think this is important to understand.  Obviously a

25   shot out of the dark is one thing.

1          MR. BRUCK:  Yes.

2          THE COURT:  Things that I can figure are reasonably

3     foreseeable are another.  And only the shot out of the dark

4     would result in any continuance.  And I think the chances of

5     that are extremely remote.

6        So I'm calling upon your knowledge of foreseeability and

7     your vast experience in this area.  It wasn't an accident that

8     you were selected for this case, I did not pull your name out

9     of a Fun Book, okay?  So the question is, do you have an

10    adequate time to complete all investigations?

11         MR. BRUCK:  Yes.

12         THE COURT:  Do you have an adequate time to prepare

13    and complete all legal research and all motions?

14         MR. BRUCK:  Yes.

15         THE COURT:  Do you have an adequate time to prepare

16    jury charges?

17         MR. BRUCK:  Yes.

18         THE COURT:  Do you have an adequate time to prepare

19    all suppression-related issues?

20         MR. BRUCK:  Yes.

21         THE COURT:  Do you have an adequate time to fully

22    prepare for trial on all aspects of the defense?

23         MR. BRUCK:  Yes.

24         THE COURT:  Are you personally satisfied that a

25    November 7 date does not raise any question regarding

 1    ineffective assistance of counsel because of an inadequate

 2    time to prepare?

 3              MR. BRUCK:  Yes.

 4              THE COURT:  Are you aware of any factor that might

 5    necessitate a delay in the start of the trial?

 6              MR. BRUCK:  I have indicated that we intend to ask

 7    for additional assistance for the defense.  And I, in

 8    answering these questions, I am factoring in my belief --

 9              THE COURT:  You think you know the answer to the

10    question, hum?

11              MR. BRUCK:  I think the Court would --

12              THE COURT:  You have a good guess, okay?

13              MR. BRUCK:  Thank you.  On that assumption, which

14    perhaps I had no right to make, but I appreciate it, the

15    answer is yes.

16              THE COURT:  And do you understand that if we set the

17    trial for November 7, that will be the beginning date for the

18    trial?

19              MR. BRUCK:  Yes.

20              THE COURT:  Any other matters that the parties wish

21    to address with me on -- regarding the scheduling of the

22    trial?

23         Mr. Richardson.

24              MR. RICHARDSON:  Just as a general matter, I'm sure

25    Your Honor is getting to this, the speedy trial waiver up

1    through November 7th would still need to be continued, based

2    on the complexity of the issues that are raised and the need

3    for briefing and the variety of issues that we've discussed

4    previously.

5              THE COURT:  Mr. Bruck, do you consent to a

6    continuance of the case until November 7th to afford you an

7    adequate time to prepare your defense?

8              MR. BRUCK:  Yes.

9              THE COURT:  I do find that the continuance in this

10   matter is in the interests of justice and outweighs the

11   interest of the defendant and the public in a speedy trial.

12   And I base that upon the specific provisions of the Speedy

13   Trial Act that affords the defense an adequate opportunity to

14   prepare a defense, and I think that is present here.

15        So the motion for continuance until November 7 is granted.

16   Okay?

17        Any other matters, Mr. Richardson?

18             MR. RICHARDSON:  Nothing further from the Government,

19   Your Honor.

20             THE COURT:  Mr. Bruck, any matters, additional

21   matters for you to bring to my attention?

22             MR. BRUCK:  I understand the Court to say that you

23   will issue a written order?

24             THE COURT:  I will.  I'm going to issue a brief

25   written order about the things that I've asked you in the next

1   couple weeks to respond to.  Some of the other things, I'm

2   hoping to do in a scheduling order once we sort all this out,

3   but to make it so we don't inadvertently, in the rush of going

4   through this, miss a deadline, I will issue an order, probably

5   today or tomorrow, that lays out those pretty fast turnaround

6   times I provided for here.

7          MR. BRUCK:  Thank you very much.

8          THE COURT:  Anything further?

9          MR. BRUCK:  No, sir.

10         THE COURT:  I do find that the parties, after

11  consulting with counsel, that it is practicable to call the

12  case for trial as of November 7, and the case is called for

13  trial.  It will commence with selection of individual voir

14  dire on November 7th, and proceed until the jury renders a

15  final verdict in the matter.

16     Are there other matters to come before the Court, first

17  from the Government.

18         MR. RICHARDSON:  Nothing, Your Honor.

19         THE COURT:  From defense?

20         MR. BRUCK:  No, sir.

21         THE COURT:  Hearing is adjourned.

22

23     (Court adjourned at 3:16 p.m.)

24

25

1                          REPORTER'S CERTIFICATION

2

3              I, Debra L. Potocki, RMR, RDR, CRR, Official Court

4    Reporter for the United States District Court for the District

5    of South Carolina, hereby certify that the foregoing is a true

6    and correct transcript of the stenographically recorded above

7    proceedings.

8

9

10
     S/Debra L. Potocki
11   _____

12   Debra L. Potocki, RMR, RDR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25