IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal No. 2:15-CR-00472-RMG |
| ) | |
| v. ) | |
| ) | |
| DYLANN STORM ROOF ) | |
| ) | |

**GOVERNMENT'S MOTION SEEKING JURY SELECTION PROCEDURES**

On June 7, 2016, the Court ordered the parties to "confer on the matter of jury selection procedures and to submit to the Court on or before June 24, 2016, a joint proposal regarding any areas of common agreement and separate proposals for any areas of dispute." The parties have conferred in good faith on multiple occasions and have reached agreement on a significant number of jury procedure issues. *See* Joint Jury Selection Proposal, DE 206 (Jun. 23, 2016) (detailing the areas of agreement and those that remain in dispute).

Three areas of disagreement remain. First, as addressed in the government's previous filing and not re-argued here, the government requests that the Court use a district-wide venire if the defendant refuses to waive any venue challenge. *See* DE 194. Second, the government requests that voir dire questioning be conducted exclusively by the Court, incorporating follow up questions submitted by counsel. Third, the government requests that the Court use its standard "struck jury" procedure by which preemptory strikes are conducted on the qualified jury panel after questioning and strikes for cause have been exercised and a panel of sufficient size has been qualified. *See* Special Instructions for Cases Before Judge Richard Mark Gergel at 6-7; Order, DE 180 at ¶13.

1

### A.  Attorney-led voir dire is not required in capital cases and is no likelier than judicial questioning to yield a fair and impartial jury

The parties were unable to agree on whether the voir dire process should include attorney-led follow up questioning. The defendant's proposal recommends that any follow up questioning to the Court's initial voir dire be conducted by the attorneys. In contrast, the government recommends that follow up questioning be conducted by the Court, with the parties submitting any desired follow up questions to the Court for its consideration.

The parties have no legal right to attorney-led voir dire questioning. Fed. R. Crim. Pro. 24(a)(1); *see also Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981) ("federal judges [are] accorded ample discretion in determining how best to conduct the voir dire"); *United States v. Barber*, 80 F.3d 964, 967 (4th Cir. 1996) (noting that voir dire "must be committed to the good judgment of the trial judge whose immediate perceptions determine what questions are appropriate for ferreting out relevant prejudices" (internal quotations omitted)). If the trial court conducts the initial questioning of jurors, "the court may limit participation to the submission of additional questions, which the court must ask only as it deems proper." *Rosales–Lopez*, 451 U.S. at 189 (internal quotations omitted); Fed. R. Crim. Pro. 24(a)(2).

While some federal trial judges have allowed follow-up questioning by attorneys, other courts have exercised their authority to frame and ask all questions with input from counsel. In *Trujillo v. Sullivan*, 815 F.2d 597, 607 (10th Cir. 1987), the Tenth Circuit rejected a challenge to the "trial court's choice to exclusively conduct the death-qualifying portion of the voir dire" without involvement of counsel. *See also United States v. Ortiz*, 315 F.3d 873 (8th Cir. 2002) (affirming the trial court's handling of capital voir dire, where the judge conducted voir dire including questions submitted by the parties (but asked by the court)). The Fourth Circuit also has affirmed the district judge's handling of capital voir dire where the Court conducted the

questioning. *United States v. Caro*, 597 F.3d 608, 613 (4th Cir. 2010); *see also United States v. Caro*, 461 F. Supp. 2d 459, 462 (W.D. Va. 2006) (rejecting a request for attorney-led voir dire).[1]

Permitting attorney-led voir dire poses risks of abuse and does not inherently lead to fairer or more impartial juries. Experience suggests that attorneys, particularly in capital cases, often ask improper and prejudicial questions, questions that misinform jurors about the law, and questions designed to manipulate jurors. *Cf. United States v. Wilson*, 571 F.Supp.1422, 1428-29 (S.D.N.Y. 1983) (recognizing that although many lawyers "speak of the constitutional importance of . . . an impartial and unbiased jury, in fact they do not seek an impartial jury. What they generally want selected is a jury fairly disposed toward the principles of their client's cause.").[2] Indeed, capital defense attorneys are taught to manipulate the voir dire process for

---

[1] It also appears from the Court's decision in *United States v. Tipton*, 90 F.3d 861, 877 (4th Cir. 1996), that the trial judge directed voir dire questioning while permitting defense counsel to submit proposed questions. *See id.* (describing the trial court's rejection of the defense request to "permitted detailed participation in jury voir dire questioning on possible racial biases"); *id.* at 878-79 (detailing the court's questioning).

[2] The full text of Judge Weinfeld's discussion in *Wilson* is particularly instructive:

This Court, throughout its more than three decades of judicial service, has always conducted the voir dire examination in civil and criminal cases. . . . [T]hat method, without exception, has resulted in the empanelling of fair and impartial juries. They have been selected expeditiously and with full protection of a defendant's constitutional right to an impartial jury. And this has been true of cases that have attracted in advance of trial the widest publicity in the news media over extended periods of time. *United States v. Corallo*, 284 F.Supp. 240 (S.D.N.Y. 1968); *United States v. Kahaner*, 204 F.Supp. 921 (S.D.N.Y. 1962). . . . While lawyers often speak of the constitutional importance of . . . an impartial and unbiased jury, in fact they do not seek an impartial jury. What they generally want selected is a jury fairly disposed toward the principles of their client's cause. . . . It is notorious that in the state courts, where lawyers conduct the examination, the selection of a jury may take longer than the trial proper and in cases that have received publicity, even a month or more may be consumed before a jury is empanelled . . . all with little effect on the ultimate fairness of the trial. . . .

purposes beyond those appropriate for selecting a fair and impartial death-qualified jury. *Cf.* Carlos Garcia, *Death Penalty Jury Selection Presentation Materials* (attached as Exhibit A); *Overview of the Colorado Method of Capital Voir Dire*, The Champion (Nov. 2010) (attached as Exhibit B).[3] Moreover, jurors' respect for the Court will likely lead to more candid responses to the questions actually required to qualify that juror. *See United States v. Skilling*, 561 U.S. 358, 372-73 (2010) (discussing the trial judge's rejection of the need for questioning by counsel in light of the pretrial publicity and noting the trial judge's explanation that jurors provide more forthcoming responses to judge-led questioning). In this case, the government believes that reserving to the Court the determination of whether to ask, and how to frame fairly, questions proposed by the parties will result in a more balanced and expeditious process for selecting a panel of fair and impartial jurors.

### B.   The Court should use its standard procedure for exercising preemptory challenges after panel is qualified

The parties also were unable to agree on a recommendation for the process of conducting peremptory strikes. The defendant proposes requiring the parties to exercise peremptory challenges on a juror-by-juror basis, immediately after the individual questioning of that juror. The government requests – in accord with the Court's June 9, 2016, Order – that the Court use its standard "struck jury" procedure by which preemptory strikes are conducted on the qualified jury

---

> The voir dire . . . is of critical importance to protect a defendant's Sixth Amendment right to a trial free of prejudice. However, the right is not a license to 'propound any question' nor does it mean that limitless time must be devoted to preliminary voir dire. . . . [T]here are countervailing state interests in the expeditious conduct of criminal trials and the avoidance of jury intimidation.

571 F.Supp. at 1428-29 (citations and footnotes omitted).

[3]   These Exhibits are publically available online at http://www.tcdla.com/cleandevents/docs/A060712/Garcia,Carlos_CapJurySelection.pdf and www.nhd.uscourts.gov/pdf/FPI/Overview%20CO%20Method%20Capital%20Voir%20Dire.pdf.

4

panel after individual voir dire has been conducted on enough potential jurors to seat a jury of 12 members and 6 alternates after preemptory strikes. *See* DE 180 at ¶13.

In its standard procedures, this Court – like others in this district – uses what is sometimes referred to as a "struck jury" system for exercising preemptory challenges. *See* Special Instructions for Cases Before Judge Richard Mark Gergel at 6-7; Order, DE 180 at ¶13. To do so, the Court takes a panel from the full venire and determines whether grounds exist to strike any of the jurors for cause (including through case-specific voir dire). Once the panel has a sufficient number of qualified jurors to allow for a full jury after peremptory strikes, the parties are given time to evaluate the use of their allocated preemptory strikes before exercising their respective strikes on the qualified panel.

The government believes there is no reason to deviate from the Court's standard procedure, which the Court has already indicated it would use in this case, for exercising peremptory strikes. Moreover, the procedure advocated by the defendant would unnecessarily complicate the process of exercising preemptory strikes. For example, in contrast to the Court's standard procedure, the defendant's proposed process would necessitate a break after each juror to allow counsel to review the submitted materials and discuss the juror's answers to the voir dire questions before deciding whether to exercise a preemptory challenge. This Court's well-tested approach was used in the Boston Marathon bombing case, *see* Order Regarding Jury Selection Procedures, *United States v. Tsarnaev*, Dkt 895 (attached as Exhibit C), and should be used in this case as well.

Here, the Court has indicated that it plans to use six alternates in addition to the twelve jurors. Under the Court's standard jury selection approach, a panel of sixty-four qualified jurors will be needed before the parties begin the process of using the twenty peremptory strikes and

three additional strikes for alternates that each side is allotted. *See* Fed. R. Crim. Pro. 24(b)(1) & (c)(4)(C). To address any potential last-minute issues, the government recommends that the Court add six jurors for a total of seventy jurors on the qualified panel from which the parties may then exercise their strikes.

                    Respectfully submitted,

                    BETH DRAKE
                    ACTING UNITED STATES ATTORNEY

                    BY: s/*Julius N. Richardson*
                    JULIUS N. RICHARDSON (ID #9823)
                    NATHAN WILLIAMS
                    Assistant United States Attorneys
                    1441 Main Street, Suite 500
                    Columbia, SC 29201

June 24, 2016          Tel. (803) 929-3000