IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | ) <br> ) Criminal No. 2:15-CR-00472-RMG <br> ) |
| **v.** | ) <br> ) |
| **DYLANN STORM ROOF** | ) <br> ) |

**GOVERNMENT'S MOTION TO ESTABLISH RULE 12.2 PROCEDURES**

Procedures Requested by Government ............................................................................... 2
Law and Argument .............................................................................................................. 4
    A.   The Defense Must Provide an Adequate 12.2 Notice to Permit the Government to Prepare for a Meaningful Rebuttal ........................................... 4
    B.   Government "Firewall" Counsel Should be Appointed .................................... 6
    C.   The Government's Expert Should be Permitted to Examine the Defendant ...... 8
    D.   The Defense Should be Ordered to Disclose Information Relied Upon by Defendant's Experts ....................................................................................... 11
Conclusion ........................................................................................................................ 16

On June 7, 2016, the Court ordered the Government to "confer on the matter of Rule 12.2 procedures and to submit to the Court on or before June 24, 2016, a joint proposal regarding any areas of common agreement and separate proposals for any areas of dispute." The parties have conferred in good faith on multiple occasions pursuant to the Court's order but have not been able reach agreement on Rule 12.2 procedures. By this motion, the government requests the Court issue an order adopting certain procedures that the government believes are necessary for the fair, timely, and efficient litigation of any mental health issues raised by the defendant.

1

**Procedures Requested by Government**

To ensure that both parties have ample time to review, address issues with the court in advance, and prepare to present at trial the complex issues involved with Rule 12.2 mental health evidence, while also respecting the defendant's request for a November 7, 2016, trial and preserving his constitutional privileges until he waives them by affirming his intention to present mental health evidence, the government requests that the Court issue an order establishing the following basic procedures:

1.     The defendant's Rule 12.2 notice, due on July 11, 2016, shall provide the names and professional qualifications of any mental health experts whose testimony he may introduce at trial, a list of any tests used by those experts in evaluating the defendant, and a summary of any matters those expert will address that is sufficient to permit the government to determine the areas its expert(s) must be able to address. The notice filed on July 11, 2016, is final and not subject to revision at will.

2.     After the defendant files his Rule 12.2 notice, and upon the government filing a motion for its own mental health expert(s) to have access to the defendant for purposes of conducting evaluations on or by July 15, 2016, the Court will issue an Order granting such access to conduct evaluations.

3.     If the defendant's Rule 12.2 notice relates only to an intention to offer mental health evidence in the penalty phase of his capital trial,[1] the Court will authorize

---

[1] If the defendant's Rule 12.2 notice relates to insanity, the government will file a motion for the defendant to be examined under 18 U.S.C. §4242. Moreover, if the defendant's Rule 12.2 notice relates to introduction of mental health evidence bearing on the issue of guilt, the government requests that the Court order that, no later than July 31, 2016, the defense provide the government with a report summarizing the defense mental health expert's diagnoses, opinions, bases and reasons for those

the appointment of a firewall Assistant U.S. Attorney from outside the District of South Carolina to handle all pretrial matters – including any issues that need to be negotiated or presented to the Court – relating to mental health issues. Use of a firewall attorney will help avoid trial delay by enabling the government to timely prepare for its penalty phase case, while simultaneously protecting the defendant's Fifth Amendment privilege against self-incrimination. This firewall attorney will provide no information to the government's trial team until after the defendant's disclosures are required by Rule 12.2 (*i.e.*, after a capital count conviction and subsequent reassertion of his intention to offer mental health evidence in the punishment phase of trial).[2]

4.      If the defendant's Rule 12.2 notice relates only to his intention to offer mental health evidence in the penalty phase, then no later than August 22, 2016, the defendant will disclose to the firewall attorney a report summarizing the defense mental health expert's diagnoses, opinions, bases and reasons for those opinions, test results and

---

opinions, test results and raw data, and copies of all information reviewed by the defendant's experts; and the government's expert provide a reciprocal report and discovery no later than October 15, 2016.

[2] In particular, the government recommends firewall counsel be subject to the following restrictions:
- Prior to the punishment phase of trial, mental health-related documents, records and information disclosed by the defendant shall be provided only to firewall counsel.
- Prior to the punishment phase, mental health-related documents, records and information shall not be provided, directly or indirectly, to the "Trial Team," that is, Assistant United States Attorneys in the District of South Carolina working on the case (including Jay Richardson and Nathan Williams); U.S. Department of Justice Trial Attorneys working on the case (including Stephen Curran, Mary Hahn, and Richard Burns); or to other individuals working with or supervising the Trial Team.
- Any communications from firewall counsel to a member of the Trial Team prior to the punishment phase should be in writing and also provided to defense counsel.
- Any pre-punishment phase submissions to the Court referring to mental health-related documents, records, or information shall be filed under seal and served only on defense counsel and firewalled counsel.

raw data, and copies of all information reviewed by the defendant's experts. This information will be provided by firewall counsel to the government's expert(s) to permit an informed approach to evaluating the defendant for purposes of responding to any mental health-related evidence asserted at trial. This information will be provided to the trial team only after a capital count conviction and subsequent reassertion of the defendant's intention to offer mental health evidence in the punishment phase of trial.[3]

## Law and Argument

The Government seeks four types of procedural orders to permit an efficient and effective review of and preparation for responding to any mental health mitigation offered by the defendant during the penalty phase of his trial: (1) an adequate Rule 12.2 notice; (2) the appointment of firewall counsel to address mental health issues without involvement of the trial team; (3) adequate access for government experts to examine the defendant; and (4) timely and comprehensive disclosure of the opinions and information relied upon by the defense expert.

### A.     The Defense Must Provide an Adequate 12.2 Notice to Permit the Government to Prepare for a Meaningful Rebuttal

A meaningful Rule 12.2(b) notice must "provid[e] the government with an opportunity to conduct the kind of investigation needed to acquire rebuttal testimony." *United States v. Johnson*, 362 F. Supp. 2d 1043, 1079 (N.D. Iowa 2005) (summarizing

---

[3] If the Court orders such disclosure and fulsome examinations are permitted to be completed in a timely manner, then the Government will agree that, no later than October 31, 2016, the firewall attorney will provide the defendant with reciprocal discovery, to include a report summarizing the government expert's diagnoses, opinions, bases and reasons for those opinions, test results and raw data, and copies of all information reviewed by the government's experts.

4

*United States v. Sampson*, 335 F. Supp. 2d 166, 242-243 (D. Mass. 2004)). Meaningful notice under Rule 12.2(b) should include the names and professional qualifications of the defense mental health experts on whom the defendant may rely at trial, *United States v. Beckford*, 962 F.Supp. 748, 763-34 (E.D. Va. 1997); *United States v. McClusky*, Cr. No. 10-2734 (D.N.M. Sept. 9, 2011) (ordering defendant's 12.2 notice include "the name and professional qualifications of any mental health professional who will testify as an expert and a brief, general summary of the topics to be addressed that is sufficient to permit the Government to determine the area in which its expert must be versed") (Order Attached as Exhibit A). Adequate notice also should identify "the nature of the tests that the defendant's experts have performed or will perform, *e.g.*, the MMPI-2, the WAIS-2, etc., in the course of their evaluations of the defendant." *Johnson*, 362 F. Supp. 2d 1080 (citing *Sampson*, 335 F. Supp. 2d at 242-43); *accord United States v. Edelin*, 134 F.Supp.2d 45, 58 (D.D.C. 2001); *United States v. Minerd*, 197 F. Supp. 2d 272 (W.D. Pa. 2002). This type of notice is necessary to permit the prosecution team to hire the appropriate expert(s) to respond appropriately to any mental health claims the defense asserts. *Cf.* Rule 12.2(c)(4) (providing that the Government's mental health expert is offered only in rebuttal).[4]

---

[4] In conferring regarding potential Rule 12.2 procedures, defense counsel suggested that they should be permitted to amend their notice up to September 12, 2016, which is the date that the defendant previously proposed that the 12.2 notice be provided. Such a procedure, by which counsel may amend their notice at will, effectively delays the ability of the government to hire the necessary experts and prepare to respond to the defendant's mental health claims. This supplementation procedure undermines the purpose of the July 11 disclosure date and would permit gamesmanship that could undermine the government's preparation for rebuttal. Thus, the government requests that the July 11 deadline for notice be a final notice.

### B.     Government "Firewall" Counsel Should be Appointed

This Court should follow the precedent of other courts that have faced this issue and fashion a disclosure process that uses firewall counsel to both protect the defendant's constitutional and speedy trial rights and preserve the government's right to prepare to respond to the defendant's mental health contentions. To facilitate the goal of full and fair preparation with regard to penalty phase mental health issues, courts repeatedly have authorized the government to rely on "firewalled" attorneys to receive pretrial defense disclosures that may contain information subject to constitutional or other protections. *See United States v. Williams*, 731 F. Supp. 2d 1012, 1027 (D. Haw. 2008); *Wilson*, 493 F. Supp. 2d at 356; *Johnson*, 362 F. Supp. 2d at 1084; *see also United States v. Sampson*, 82 F. Supp. 3d 502, 515 (D. Mass. 2014) (addressing procedure for use of firewall attorney); *United States v. Umana*, 3:08-CR-134, 2009 WL 2489309, at *4 (W.D.N.C. Aug. 12, 2009) (designating firewall counsel); *United States v. McClusky*, Cr. No. 10-2734 (D.N.M. Sept. 9, 2011) (Order Attached as Exhibit A) (authorizing firewall counsel). As these cases illustrate, this Court has the inherent authority to order the use of firewall counsel to effectively and efficiently manage the complex issues presented by the assertion of mental health issues by the defendant.[5] The adoption of a firewalled process permits the Court to protect the defendant's rights, including the right to assert mental

---

[5] Even prior to the adoption of the current Rule 12.2 procedures, Courts recognized their inherent authority to manage these types of mental health issues. *See*, *e.g.*, *United States v. Allen*, 247 F.3d 741, 773 (8th Cir. 2001); *United States v. Webster*, 162 F.3d 308, 338-39 (5th Cir. 1998); *United States v. Edelin*, 134 F.Supp.2d 45, 47-49 (D.D.C. 2001); *United States v. Beckford*, 962 F.Supp. 748, 754-57 (E.D. Va. 1997). The 2002 amendments to Rule 12.2 relied heavily upon the procedures adopted by courts under their inherent authority prior to 2002. Advisory Committee Notes to Fed. R. Crim. P. 12.2, 2002 Amendments.

6

health evidence and arguments, while also ensuring that the government has a meaningful opportunity to review and respond to the defendant's assertions without unduly delaying the trial process.[6]

To ensure the fair and efficient disclosure of penalty phase mental health evidence without infringing the defendant's constitutional rights, the government proposes the naming of "firewalled" attorneys to receive mental health evidence, litigate mental health-related related issues, and otherwise facilitate its investigation of the defendant's mental health as it pertains to the penalty phase of trial. If the defendant provides notice of his intent to use mental health information in the penalty phase of this trial, the government requests that all further mental health disclosures, including those required by Rule 16(b)(1)(C) and this Court's order, be provided only to a designated firewall attorney and not shared with the "trial team" unless and until a finding of the defendant's guilt. Firewalled counsel will not share mental health information with the trial prosecutors before the defendant would be required to disclose it to them under the rules. The firewalled attorney should be authorized to address independently any mental health related issues, including the government's separate mental health examination, discovery and procedural disputes, as well as any litigation related to the defendant's proposed mental health evidence. Such firewall arrangements are a constitutionally sufficient and

---

[6] While Rule 12.2(c)(2) provides that the results and reports resulting from the Government expert's examination of the defendant must not be disclosed to any "attorney for the government" prior to a guilty verdict, this phrase applies only to the prosecution's trial team and not firewalled counsel. *United States v. Johnson*, 383 F. Supp. 2d 1145, 1166 (N.D. Iowa, 2005); *United States v. Johnson*, 362 F. Supp. 2d 1043, 1082-83 (N.D. Iowa 2005). Thus, permitting firewall counsel to communicate with the Government's expert – as well as receive evidence, facilitate the mental health examination, and litigate any issues that arise – is not barred by Rule 12.2.

7

effective means of ensuring that any appropriate mental health issues are raised in a manner that is fair to all parties without compromising the defendant's constitutional and speedy trial rights. *See Wilson*, 493 F. Supp. 2d at 356, 363; *see also id.* at 359 (citing with approval *Beckford* for the proposition that courts should encourage open and early disclosures of mental health information to avoid delay between guilt and penalty phases of a capital trial).

### C. The Government's Expert Should be Permitted to Examine the Defendant

The purpose of Rule 12.2's obligations on a defendant is to give the government time to prepare to respond to any mental health issues the defendant raises and avoid unnecessary delays during trial. *See* Fed. R. Crim. Pro. 12.2, advisory committee notes. As the Eleventh Circuit has explained:

> Rule 12.2 serves both efficiency and fairness purposes in criminal trials. It implicates fairness because it alerts the Government to a defendant's intention to introduce expert mental-health evidence, thereby giving the Government a chance to prepare its own mental-health evidence in rebuttal. This, in turn, implicates efficiency in the courts because the preparation of mental-health evidence frequently requires the use of expensive and time-consuming experts. Early notice and reciprocity, then motivate the Rule 12.2 requirement.

*LeCroy v. United States*, 739 F.3d 1297, 1305 n.6 (11th Cir. 2014); *see generally Wilson,* 493 F. Supp. 2d 348; *United States v. Johnson*, 383 F. Supp. 2d 1145 (N.D. Iowa 2005); *United States v. Fell*, 372 F. Supp. 2d 753 (D. Vt. 2005); *Johnson*, 362 F. Supp. 2d 1043; *Sampson*, 335 F.Supp.2d 166.

If the defense provides a Rule 12.2(b) notice, Rule 12.2(c) permits the court to order a defendant to submit to an examination by a government expert. Fed. R. Crim. P.

8

12.2(c); *United States v. Lewis*, 53 F.3d 29, 35 n.9 (4th Cir. 1995) (finding no error in a district court's order compelling a government mental health examination in light of the defendant's 12.2(b) notice). Such an order directing the defendant to submit to a mental health examination by the government's retained experts is necessary for the Government to be able to rebut any expert mental health evidence offered by the Defendant.

The Government has a compelling need to conduct its own examinations of the defendant to further the truth-seeking function of trial through its review and response to any mental health evidence the defendant chooses to present in any penalty phase hearing. The Fourth Circuit has emphasized the value and importance of medical examinations by government experts:

> Not only to enable the government to carry its full load, but also to respect the inviolability of the human personality, the [mental] examination [of the defendant by government experts] here was indicated. . . . The government, to meet its burden of proof, would have access to only three kinds of proof: cross-examination of defendant's experts, lay testimony, and testimony of government experts predicated upon courtroom observations and hypothetical questions. *Medical science . . . deems these poor and unsatisfactory substitutes for testimony based upon prolonged and intimate interviews between the psychiatrist and the defendant.* Half truths derived from these unsatisfactory substitutes do more to violate human personality than full disclosure, especially because there is always the possibility that the psychiatrist who examines for the government and thus has full knowledge of a defendant, may corroborate his contention that he is legally insane.

*United States v. Albright*, 388 F.2d 719, 724-25 (4th Cir. 1968) (emphasis added) (internal citations and quotations omitted), *cited in Beckford*, 962 F. Supp. at 758. *See also United States v. Haworth*, 942 F. Supp. 1406, 1407-08 (D.N.M. 1996) (recognizing that "the basic tool of psychiatric study remains the personal interview …. [and] [t]he

Government's expert cannot meaningfully address the defense expert's conclusions unless the Government's expert is given similar access to the 'basic tool' of his or her area of expertise: an independent review with and examination of the defendant.").

Moreover, when a defendant places his own mental health at issue by filing a Rule 12.2 notice, he waives the right to remain silent and creates the need for the type of government examination that is essential to the review and consideration of the defendant's assertions. *See*, *e.g.*, *United States v. Curtis*, 328 F.3d 141, 144-45 (4th Cir. 2003) ("When a defendant asserts a mental status defense and introduces psychiatric testimony in support of that defense … he may be required to submit to an evaluation conducted by the prosecution's own expert. That defendant has no Fifth Amendment protection …. [T]he defendant waives his right to remain silent ... by indicating that he intends to introduce psychiatric testimony.") (quoting *Savino v. Murray*, 82 F.3d 593, 604 (4th Cir. 1996) and citing *Buchanan v. Kentucky*, 483 U.S. 402, 422-23 (1987)); *Beckford*, 962 F. Supp. at 763 ("if a defendant elects, with the advice of counsel, to put his mental status into issue in the penalty phase, then he has waived his right to refrain from self-incrimination arising from a mental health examination, and there is no Fifth or Sixth Amendment concern").

To ensure compliance with Rule 12.2 and provide for fundamental fairness, judicial economy, and efficient proceedings, the government respectfully requests that this Court issue an order directing the defendant to submit to a mental health examination

by the Government's retained expert(s) if he files a Rule 12.2 notice.[7]

### D. The Defense Should be Ordered to Disclose Information Relied Upon by Defendant's Experts

The government also requests that the Court require the defendant to disclose (a)

---

[7] In conferring regarding potential Rule 12.2 procedures, defense counsel has suggested three inappropriate limitations on any such examination. First, the Government objects to any request to limit *ex ante* the types of examinations and testing that may be done by the Government's experts. To permit adequate rebuttal preparation, the defense cannot be permitted to dictate the choice of testing or manner of examination to government's mental health experts. Those decisions should be left to the experts based on their training, experience, and medical judgment. To the extent that defense counsel disagrees with the government experts' choice of tests or manner of examination, those matters should be addressed in a challenge to the expert opinions, a motion in limine, or the cross-examination of the experts. *United States v. Wilson*, 920 F. Supp. 2d 287, 290 (E.D.N.Y. 2012) (finding in a capital case that objections by the defense to particular tests were more properly made by the defense's experts, cross examination, or in motions after the examinations); *see also id.* at 298 (holding that because "psychiatric examination requires considerable freedom to the examiner" any perceived flaws in the examiner's choice of tests will be addressed in cross examination or briefing to the court after the examination); *United States v. Hardy*, 644 F.Supp.2d 749, 751 (E.D.La. 2008) (refusing in a capital case to "restrict the scope of the [Government's] examination" because the court was "not in a position to know what lines of inquiry are appropriate from the standpoint of the experts," and noting that the defense could later "object to the admission of any conclusions by the government expert that i[t] found to be based on improper lines of inquiry").

Second, defense counsel should not be present during the Government expert's examination. Rule 12.2 already protects the Defendant's constitutional rights by providing that "[n]o statement made by a defendant in the course of any examination conducted under this rule (whether conducted with or without the defendant's consent), no testimony by the expert based on the statement, and no other fruits of the statement may be admitted into evidence against the defendant in any criminal proceeding except on an issue regarding mental condition." Fed. R. Crim. Pro. 12.2(c)(4); *see also Johnson*, 362 F. Supp. 2d at 1087 (Rule 12.2(c)(4) provisions "specifically written to more accurately reflect the Fifth Amendment consideration at play") (quotation omitted). Moreover, "a substantial majority of state and federal jurisdictions have held that a defendant does not have the right to counsel during a psychiatric examination." *Sampson*, 335 F. Supp. 2d at 247 (collecting cases); *see also Wilson*, 920 F. Supp. 2d at 304-305 (rejecting capital defense counsel's request to be present for the Government's examination). Finally, there is "potential harm to [a] test's reliability if a defense representative were to attend." *Sampson*, 335 F. Supp. 2d at 248.

Third, the government is willing to agree that the examination be recorded by the Government's experts. *But see United States v. Runner*, No. CR 14-50033-JLV, 2014 WL 4384379, at *1 (D.S.D. Sept. 3, 2014) (rejecting argument that a mental health evaluation should be recorded); *Wilson*, 920 F.Supp.2d at 306 (rejecting a request for recording an examination and noting that "weight of authority [concludes] that the recording of a mental examination changes its tenor and feel in such a way that could potentially undermine its effectiveness"). Such recording, however, should be conducted by the experts to minimize any disruption and should be provided to both parties when the government's expert disclosures are made to the respective parties.

11

all medical records upon which his mental health experts rely to any extent for their reports; (b) all materials supplied on behalf of the defendant to the defense experts, including but not limited to interviews, third-party documents, reports and memoranda; and (c) a list of citations or copies of any and all research articles or studies on which any defense expert relied to any extent in reaching any conclusion or opinion; (d) the defense experts' raw data; and (e) the defense experts results and reports. *See Beckford*, 962 F.Supp. at 760 (right of rebuttal requires "notice, examination and discovery on mental health conditions in order to make that rebuttal right a meaningful one"). As the courts have recognized, the government's right to review and respond to a defendant's mental health evidence requires access to underlying information on which a defense expert relies. *E.g.*, *United States v. Fell*, 372 F. Supp 2d 753, 759 (D. Vt. 2005) ("The right to offer rebuttal testimony ... would be a hollow one indeed without discovery into the mental condition of an accused."). Such disclosures, in addition to the examination of the defendant, will permit the government's experts to consider the same set of operative facts as the defense experts, and thus make the expert opinions provided by both parties more meaningful to the jury. In addition, given the time constraints imposed by the defendant's requested trial setting, providing the defense experts' raw data, results and reports to the government's firewall team and experts will help ensure that the government is able to fully consider and respond to the defendant's contentions in a timely manner consistent with his desired trial schedule.[8]

---

[8] As already discussed, the designation of firewall counsel to receive this information, coordinate with the government's expert, and litigate any issues that arise serves to alleviate any defense concerns –

Rule 12.2 provides the basic framework for providing notice and leaves the establishment of the details of the parties' disclosure obligations to the Court, pursuant to its inherent authority, informed by the principles and purposes of Rule 12.2 and Rule 16. *See United States v. Wilson*, 493 F. Supp. 2d 348, 355 (E.D.N.Y. 2006) (noting the need to fill procedural gaps under Rules 12.2 and 16); *Beckford*, 962 F. Supp. at 754–55 (stating that "numerous courts, including the Fourth Circuit, have recognized that the discovery provisions in Rules 12.2 and 16(b) are not exclusive and do not supplant a district court's inherent authority to order discovery outside the rules"). In fact, the drafters' commentary for Rule 12.2 expressly indicates it was not intended to provide an exhaustive or exclusive set of procedures for the discovery of mental health evidence. *See* Advisory Committee Notes to Fed. R. Crim. P. 12.2, 2002 Amendments, ("The amendment leaves to the court the determination of what procedures should be used for a court-ordered examination on the defendant's mental condition").

Subsection (b)(1)(C) of Rule 16 addresses a defendant's disclosure obligations with respect to expert witnesses. It states, in relevant part:

> The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if—
>
> . . .
>
> (ii)  the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition.

---

constitutional or strategic in nature – from the early disclosure of this information, including the results or reports of examinations of the defendant.

13

> This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(b)(1)(C). The requirements of Rule 16(b) apply to the penalty phase of a death penalty trial. *Wilson,* 493 F. Supp. 2d at 355; *see also United States v. Catalan Roman*, 376 F. Supp. 2d 108, 113-114 (D.P.R. 2005). The reciprocal requirements of 16(b) should also be read to encompass opinion summaries, tests, examinations, and raw data in light of the express terms of the Federal Death Penalty Act (FDPA), which permits the government to "rebut any information received at the [penalty phase] hearing." 18 U.S.C. § 3592(c); *see also United States v. Vest*, 905 F. Supp. 651, 653 (W.D. MO 1995); *United States v. Webster*, 162 F.3d 308, 339-340 (5th Cir. 1998).

Furthermore, even apart from Rule 16, federal courts have inherent authority to require the disclosure, to firewall counsel, the results of tests and reports of examinations administered to defendants, as well as all of the raw data obtained and other information reviewed by defense experts. For example, in considering the government's request for Rule 12.2 notice regarding the bases of the defendant's experts' proposed testimony and the information relied upon by the experts, the court in *Wilson* conducted an exhaustive analysis of Rule 12.2, Rule 16, and its inherent authority to regulate the conduct of criminal proceedings and ordered full disclosure to the government's firewalled attorneys:

> Hence, for all of the above-mentioned reasons and pursuant to its inherent power, this court finds that the Defendant is required to disclose to the firewalled AUSA a written summary of expert testimony on the defendant's mental condition that the Defendant intends to admit during the penalty phase in accordance with Fed. R. Crim. P. 16(b)(1)(C)(ii). In accordance with the rule, this summary must "describe the witness's opinions, the

14

> bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C)(ii).
>
> In addition to the summaries of expert witness testimony, the Government also seeks an order directing Wilson to turn over to the firewalled AUSA the results of tests and reports of examinations administered to Wilson in the course of reaching the opinions, and all raw data obtained by defense experts. For the same reasons I find the requirements of Rule 16(b)(1)(C)(ii) applicable in the present case, the Defendant is directed to disclose this information to the firewalled attorney. Use of the firewall protects the Defendant's rights, Rule 12.2 [does] not prohibit this disclosure, and it will serve the purpose of eliminating unnecessary delay in allowing the Government to adequately prepare its rebuttal case.

*Wilson,* 493 F. Supp. 2d at 356; *see also Vest*, 905 F. Supp. at 653 (holding that the death penalty statutory scheme provides support for the production of expert reports and that "[a]t the very minimum, the government must have access to the reports prepared by a defendant's mental health experts in order to review the appropriateness of those experts' conclusions"); *Johnson*, 383 F. Supp. 2d at 1166-67 & n.2 (firewall team entitled to defense experts raw data and reports).

Accordingly, pursuant to Rule 12.2, Rule 16, and its inherent authority, the Government respectfully requests that the Court order defendant Roof to disclose to the firewall counsel and Government expert (a) all medical records upon which his experts rely to any extent for their reports; (b) all materials supplied on behalf of Roof to the defense experts, including but not limited to reports of interviews, third-party documents, reports and memoranda; and (c) a list of citations or copies of any and all research articles or studies on which any defense expert relied to any extent in reaching any conclusion or opinion; (d) the defense experts' raw data, including any testing and examinations; and (e) the defense experts results and reports.

## Conclusion

For the reasons stated above and to permit an efficient and effective rebuttal of any mental health mitigation offered by the defense during the penalty phase of Roof's trial, the United States respectfully requests that this Court order: (1) an adequate Rule 12.2 notice; (2) the appointment of firewall counsel to address mental health related issues without involvement of the prosecution team; (3) adequate access for Government experts to examine Roof; and (4) timely disclosure of the opinions and information relied upon by the defense expert.

                                          Respectfully submitted,

                                          BETH DRAKE
                                          ACTING UNITED STATES ATTORNEY

                                          BY: s/Julius N. Richardson
                                          JULIUS N. RICHARDSON (ID #9823)
                                          NATHAN WILLIAMS
                                          Assistant United States Attorney
                                          1441 Main Street, Suite 500
                                          Columbia, SC 29201
                                          (803) 929-3000
                                          Jay.N.Richardson@usdoj.gov

June 24, 2016