IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | Criminal No. 2:15-CR-00472-RMG |
| ) | |
| **v.** ) | |
| ) | |
| **DYLANN STORM ROOF** ) | |
| ) | |

### GOVERNMENT'S RESPONSE TO
### DEFENDANT'S PROPOSED RULE 12.2 PROCEDURES

The United States hereby responds to Defendant Roof's Proposed Rule 12.2 Procedures (DE 208). Defendant's submission requests that the Court adopt a modified version of procedures that were adopted by consent in a different federal capital case tried in this District more than 12 years ago. *Id.*; *see also United States v. Fulks,* 454 F.3d 410 (4th Cir. 2006). On June 30, the Court adopted preliminary Rule 12.2 procedures. DE 226. The government requests that at the appropriate time, the Court reject the defendant's attempt to unduly constrain the government's ability to evaluate and respond to Defendant's mental health evidence and, instead, adopt the procedures set forth in the government's Motion to Establish Rule 12.2 Procedures. DE 213.

Defendant's proposed procedures attempt to hamstring the government's ability to prepare to address mental health issues raised by the defense. *See* Defendant's Proposed Rule 12.2 Procedures at B(1) (limiting types of government testing); B(2) (permitting defense counsel be present to interject into the government's examination); B(3) (requiring prior notice of lists of tests); B(6) (precluding government recording of its examination); B(8) (restricting government access to mental health-related information).

1

For the reasons already set forth in the government's motion and the decisions cited therein, these restrictions would fundamentally undermine the government's ability to review and respond to Defendant's mental health information in a meaningful manner. As one example, Defendant's motion seeks to require that the government provide a list of tests its expert intends to conduct, with the goal of limiting the government's evaluation of the defendant to those tests defense counsel claims are necessary to assess whether Defendant has the precise disorder Defendant's expert found to exist. *See* Defendant's Proposed Rule 12.2 Procedures at B(3) (requiring prior notice of lists of tests). This procedure undermines an essential feature of diagnosing psychological maladies: the need to differentiate between complex disorders, many of which contain similar and overlapping symptoms.[1] If, for example, a defense expert were to diagnose the defendant with a depressive disorder, the government's expert might properly rebut that diagnosis by finding the defendant experiences manic episodes in conjunction with depressive episodes, such that a diagnosis of bipolar disorder is more appropriate. Or if a defendant presents mitigation testimony that depression in some manner contributed to his commission of the crime, proper government rebuttal might include testimony that, in addition to depression, the defendant also suffers from an antisocial personality disorder that better explains the defendant's commission of the crime. For the government to adequately prepare for potential rebuttal testimony, its expert must be able to perform the full range of testing and evaluation that the expert, based on his training and experience, deems necessary in his professional judgment. *See* Government's Motion To Establish Rule 12.2 Procedures at 11 n.7; *see also United States v.*

---

[1] *See*, *e.g.*, Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, American Psychiatric Association, p. 5 (recognizing that "many symptoms assigned to a single disorder may occur, at varying levels of severity, in many other disorders" and that diagnostic criteria "identify symptoms, behaviors, cognitive functions, personality traits, physical signs, syndrome combinations, and durations that require clinical expertise to differentiate from normal life variation and transient responses to stress").

*Montgomery*, No. 11-CR-20044-JPM (W.D. Tenn. March 27, 2014) (attached as Exhibit 1) (discussing and adopting procedures similar to those requested by the government in this case). While a mental health expert could be limited in trial *testimony* to information deemed after the fact to be irrelevant to rebutting evidence presented by the defendant at trial, the expert should not be limited in his pretrial *evaluation* of the defendant.[2]

For similar reasons, the government's expert should not be hampered in his evaluation by the presence of defense counsel. *See*, *e.g.*, *United States v. Moore*, No. 07-CR-161, 2008 WL 1944810 (E.D. Ark. May 2, 2008) (discussing relevant case law and denying request for presence of defendant's psychiatrist or a member of the defense legal team during government's mental health evaluation). A psychological evaluation depends on interaction between the psychologist and the examinee, which cannot be fairly conducted with a third party interjecting advice and objections during the course of the testing. *See* Government's Motion To Establish Rule 12.2 Procedures at 11 n.7. The defense is conducting its evaluations unrecorded and unfettered by the government's presence, and the same process should now be followed for the government's evaluation.[3]

Moreover, Defendant offers no substantive argument as to why these procedures should be adopted in this case. The underlying order from *Fulks* on which the defendant relies lacks even persuasive support for his position because the procedures were adopted by consent shortly

---

[2] Pre-examination knowledge of the tests can create legal and ethical issues for both examiners and attorneys. *See* Victor, T.L. & Abeles, N., *Coaching Clients to Take Neuropsychological and Neuropsychological Tests: A Clash of Ethical Obligations*, Professional Psychology: Research and Practice, Vol. 35, No. 4, 373–79 (2004); Youngjohn, J.R., *Confirmed Attorney Coaching Prior to Neuropsychological Evaluation*, Assessment, Vol. 2, 279–83 (1995).

[3] It is well recognized that the presence of third-party observers, particularly those who are not present to facilitate the examinee's ability to participate in the evaluation, can negatively affect the validity of an assessment. *See*, *e.g.*, "Statement on Third Party Observers in Psychological Testing and Assessment: A Framework for Decision Making," at 2-3 (attached as Exhibit 2).

after the new Rule 12.2 was adopted and were not based on the court's considered deliberation of the complex issues that underlie many of these procedures. *United States v. Fulks & Basham*, 02-cr-00992 (D.S.C. Jan. 8, 2004) (DE 284; Exhibit 1 to Defendant's Proposed Rule 12.2 Procedures). Moreover, review of the facts and mental health issues that were at issue in the *Fulks* case, which included extensive evidence relating to a diminished capacity defense, suggests there is little or no overlap with issues relevant to this case. *Fulks,* 454 F.3d at 419-20; *Fulks v. United States*, 875 F. Supp. 2d 535, 555-61 (D.S.C. 2010) (providing detailed summary of mental health mitigation case).

Consequently, the government recommends that, to ensure meaningful compliance with Rule 12.2, provide for fundamental fairness and judicial economy, and avoid undue delay, the Court reject the defendant's attempt to unfairly limit the government's ability to respond to his mental evidence and, instead, adopt the procedures requested by the government.

        Respectfully submitted,

        BETH DRAKE
        ACTING UNITED STATES ATTORNEY

        BY: s/Julius N. Richardson
        JULIUS N. RICHARDSON (ID #9823)
        NATHAN WILLIAMS
        Assistant United States Attorney
        1441 Main Street, Suite 500
        Columbia, SC 29201
        (803) 929-3000
        Jay.N.Richardson@usdoj.gov

July 1, 2016