IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:15-CR-472 |
| | ) | |
| DYLANN STORM ROOF | ) | |

**DEFENSE RESPONSE TO GOVERNMENT'S MOTION
FOR PRETRIAL DISCLOSURE OF
<u>DEFENDANT'S PROPOSED MITIGATING FACTORS</u>**

The defendant, Dylann Storm Roof, through counsel, hereby responds to the government's Motion for Pretrial Disclosure of Defendant's Proposed Mitigating Factors. In that motion, the government proposes that the Court require the defense to disclose its proposed mitigating factors before September 1, 2016, or – at the latest – October 1, 2016, despite the fact that no statute or rule requires such disclosure and that most courts have declined to require it.  Early disclosure not only infringes on the defendant's constitutional rights to prepare his defense and against self-incrimination, but creates serious practical difficulties.  The Court should deny the government's request.

**I.      No statute or rule supports the government's request.**

The government acknowledges that the Federal Death Penalty Act ("FDPA") imposes only on the government – and not on the defendant – an obligation to file pretrial notice of the sentencing factors on which it will rely.  Dkt. No. 216 at 1-2 (citing 18 U.S.C. § 3593(a)).  This Congressionally-authorized difference in disclosure obligations

was not accidental and does not warrant correction in the court's discretion, as suggested by the government. The Court should be aware that legislation has been proposed to create a defense pretrial duty to disclose mitigating factors, *see* Congressional Research Service, CRS Report for Congress, *The Death Penalty: Capital Punishment Legislation in the 110th Congress* (revised) (2008) at 13, but Congress has never enacted such a requirement.[1] The Court should not set requirements that Congress has declined to set.

The FDPA requires the government to provide notice of aggravating factors because they are part of the government's proof of the capital offense. Aggravating factors must be proven by the government, beyond a reasonable doubt and to the unanimous satisfaction of all 12 jurors. *See* 18 U.S.C. 3593(a), (c), (d). By contrast, no notice is required of mitigating factors, and they may be found by a mere preponderance, by any single juror. *See id.*

The defense is not required to prepare a list of mitigating factors at all, although in practice, it frequently does, in order to focus the jury on some of the reasons a client

---

[1] In 2006, the Justice Department supported legislation that, *inter alia*, would have amended 18 USC § 3593 to add a new subsection, 18 U.S.C. § 3593(b)(1), as follows:

> "(1) If, as required under subsection (a), the government has filed notice seeking a sentence of death, the defendant shall, a reasonable time before the trial, sign and file with the court and serve on the attorney for the government, notice setting forth the mitigating factor or factors that the defendant proposes to prove mitigate against imposition of a sentence of death. . ."

H.R. 5040, "Death Penalty Reform Act of 2006," §3(1), Congressional Research Service, *supra, at n.59.* Following a hearing before the House Judiciary Subcommittee on Crime, Terrorism, Homeland Security, and Investigations on March 30, 2006, at which a Fifth Amendment objection was directed at the notice-of-mitigation proposal, Congress took no further action on the proposed FDPA amendments, and no proposal to require defense notice of mitigating factors has been reintroduced in the years since then.

2

should be spared the death penalty.  Notably, however, the FDPA permits jurors to reject the death penalty based on *any* factor that may occur to an individual juror, even reasons that are not listed as mitigating factors by the defense.  18 U.S.C. § 3592(a)(8); *United States v. Basham*, 561 F.3d 302, 338 (4th Cir. 2009) ("[T]he district court, correctly and concisely, instructed the jury that it was free to consider any factor in mitigation, including factors not specifically raised.").  Thus, requiring a list of mitigating factors does not ensure that the government will have advance notice of all mitigating factors considered by the jury.

The government is protected – insofar as it can be – from "trial by ambush" or other unfair surprise in this context by formal rules, including Federal Rules of Criminal Procedure 12.2 and 16,[2] designed to balance the defendant's rights to prepare his defense and against self-incrimination versus the need for a fair and efficient trial.  *See* Fed. R. Crim P. 12.2 advisory committee's note (2002); Fed. R. Crim. P. 16 advisory committee's notes (2002, 1974).  The quotations offered by the government about the truth-seeking process – "a criminal trial is not 'a poker game'" and "the rule only compelled [the defendant] to accelerate the timing of his disclosure, forcing him to divulge at an earlier date information that [he] planned to divulge at trial" – *see* Dkt. No. 216 at 5 (citing *Michigan v. Lucas*, 500 U.S. 145, 150 (1991)), come from a Supreme Court case discussing the supportability of *legislatively-approved* discovery rules.  *See*

---

[2] The parties have agreed to fair deadlines under both rules for disclosure of penalty phase materials.  *See* Dkt. Nos. 180, 223.

*id*.[3] Here, the government is asking the Court to order early disclosure where no legislatively-authorized rule requiring it exists. There are good legal and practical reasons for the Court to decline that invitation.

## II. Important constitutional interests support Congress' decision not to require pretrial disclosure of mitigating factors.

As the Court is aware, the Fifth Amendment right against self-incrimination extends to sentencing. *See Mitchell v. United States*, 526 U.S. 314, 329-30 (1999); *Estelle v. Smith*, 451 U.S. 454, 462-63 (1981). The government's request here ignores this fundamental precept of sentencing procedure. On the government's view, because the defense will – at some point – disclose information, it may be forced to disclose that information at any time convenient to the government and the Court. *See* Dkt. No. 216 at 4-5. Under the Fifth Amendment and Supreme Court precedent, that simply is not the case. Indeed, unless approved, legislatively-authorized rules say otherwise, a defendant may not be forced to reveal self-incriminating information even after he has pleaded guilty. *See Mitchell*, 526 U.S. at 329-30.

Requiring notice of intent to rely on many of the statutory mitigating factors set forth in 18 U.S.C. § 3592(a) – including impaired capacity, duress, minor participation, equally culpable defendants, and mental or emotional disturbance – would infringe on the

---

[3] *Lucas* held only that the rape shield law at issue was not unconstitutional in precluding evidence of a rape victim's prior sexual relationship with a defendant when the defendant failed to give notice of intent to offer the evidence. The Court allowed, however, "[i]t is not inconceivable that Michigan's notice requirement, which demands a written motion and an offer of proof to be filed within 10 days after arraignment, is overly restrictive." 500 U.S. at 151.

defendant's Fifth Amendment rights because such factors implicitly acknowledge the defendant's culpability for the capital offense.  The same may be true of many non-statutory mitigating factors a defendant could choose to offer, including, by way of example only, exposure to a childhood history of trauma, neglect or impoverishment, lack of appropriate parental guidance, exposure to environmental toxins, head injuries, substance abuse or low IQ – any of which could impact a defendant's culpability.   That is why the FDPA, like every modern capital sentencing statute, separates the determination of punishment from the adjudication of guilt or innocence, and why federal law establishes a careful balance between disclosure and the defendant's constitutional rights. *See, e.g.*, Fed. R. Crim. P. 12.2(c)(2) (withholding from the government all results of defendant's pretrial mental health evaluations until after conviction).[4]

In addition to the Fifth Amendment right against self-incrimination, requiring early disclosure of *potential* mitigating factors also threatens the defendant's right to prepare his defense, implicating Fifth Amendment Due Process rights and the Sixth Amendment right to effective assistance of counsel.  Disclosure of mitigation themes prior to the penalty phase necessarily reveals defense strategies for sentencing, which is privileged work product.  A defendant's reasonable fear that such themes may be prematurely disclosed, permitting the government to modify its guilt-innocence presentation, may chill attorney-client communication, hampering the defense.  In the

---

[4] The defense has also filed today a Response to Government's Proposed Rule 12.2 Procedures, which discusses in detail the Fifth Amendment underpinnings of Rule 12.2.  *See* Dkt. No. 240.

end, such defendants would prejudiced compared to non-capital defendants by any such legislatively unsanctioned effort to create a "level" playing field for capital cases only.

"The general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order." *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947). For constitutional as well as practical reasons, discussed *infra* at Part IV, the government cannot meet that burden here.

### III.    Few courts have ever ordered pretrial disclosure, and it is unprecedented in this Circuit.

Over the course of the nearly twenty-two-year history of the Federal Death Penalty Act and of roughly 250 trials, the government cites just a handful of cases in which courts have ordered pretrial disclosure of mitigating factors, – and only one approving disclosure as early as the government is requesting. None of the cited cases arose in the Fourth Circuit. Nor did any of the opinions in those cases give serious treatment to the Fifth Amendment concerns raised here. The Court should not afford them weight.

*Catalan Roman*'s point about the FDPA's silence on procedure, *see United States v. Catalan Roman*, 376 F. Supp. 2d 108, 115 (D. Puerto Rico 2005), is inapposite. The FDPA is not truly silent on procedure regarding disclosure of aggravating and mitigating factors. It specifically requires disclosure of aggravating factors. *See* 18 U.S.C. § 3593(a). Against this backdrop, it stands to reason that, had Congress intended disclosure

of mitigating factors, it would have said so. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (holding Federal Rule of Civil Procedure 9 does not require specificity of pleading for § 1983 claims under canon of *expressio unius est exclusio alterius*, because § 1983 is not mentioned in the rule). Here, the parties have already agreed to the Rule 16 expert disclosures that were at issue in *Catalan Roman*.[5]

*United States v. Sampson*, Gov't Ex. 3, and *United States v. Taveras*, 2006 WL 1875339 (E.D.N.Y. July 5, 2006), offer absolutely no legal analysis.[6]  This leaves *United States v. Tsarnaev*, Gov't Ex. 1, an opinion involving less than one page of analysis on disclosure of mitigating factors – which does not address the Fifth Amendment concerns raised here, and which consists largely of generalities about fairness – and *United States v. Wilson*, 493 F. Supp. 2d 464, 466-67 (E.D.N.Y. 2006), which in addition to offering a sparse rationale, only ordered mid-trial disclosure.

The handful of cases ordering disclosure are unpersuasive, and this Court should not follow them.

---

[5] Federal Rule of Criminal Procedure 16 truly does not speak to penalty phase disclosures – for either side.  Moreover, the disclosures approved in *Catalan-Roman* were much later than the ones proposed here.  *See* 376 F. Supp. 2d at 110 (ordering disclosure just prior to commencement of penalty phase).

[6] It is worth noting that *Sampson* was a retrial, following grant of a 28 U.S.C. § 2255 motion, so the Fifth Amendment concerns may have been different.

IV.    **The government's proposal is unnecessary and impractical.**

Given the combined expertise of the United States Attorney's Office, the Justice Department's Civil Rights Division, and the Capital Case Section of the Justice Department's Criminal Division, the extensive publicity about this case, and the investigation conducted by the federal and state authorities to date, the government already knows or can easily figure out what mitigating factors are likely to be relevant in jury selection or to motions *in limine*.  In addition, the defense has agreed to a significant amount of pretrial disclosure in accord with Federal Rules of Criminal Procedure 12.2 and 16, and this Court's scheduling orders, which will provide the government with mental health and non-mental health expert information, medical records, and witness lists prior to trial.

Beyond that, since mitigating factors depend on the evidence admitted during the penalty phase, it is impossible for the defense to predict with accuracy or certainty what factors it will ultimately submit to the jury.  To be accurate, the mitigating factors must be drafted to conform to the evidence that the Court actually receives during the penalty phase of the defendant's capital trial.  Only after the Court has admitted testimony and records into evidence at the penalty phase of the trial can any comprehensive list of non-statutory mitigating factors be drafted, approved by this Court, and submitted for the jury's consideration.

Particularly in this case, where the pretrial schedule has been accelerated, penalty phase investigation and strategy development is likely to continue through the guilt-innocence phase, in preparation for a possible conviction.  It is unrealistic to expect that

the defense should be prepared in September or October to announce its plans for a December or January sentencing hearing.    In fact, most courts that have ordered advanced disclosure *at all* tend to order disclosure only at the conclusion of the trial phase of the case – which would be November or December at the earliest here.  *See, e.g.*, *United States v. McCluskey*, Case No. 10-CR 02734, Doc. 1072, at 5 (D. N.M. July, 2013); *United States v. Aquart*, Case No. 06-CR-160, Doc. 833 (verdict form), 838 (proposed mitigating factors, filed same day) (D. Conn. May 23, 2011); *United States v. Candelerio-Santana*, Case No. 09-CR-427, Doc. 985 (verdict form), 1000 (proposed mitigating factors filed five days later) (D.P.R. Mar. 8, 2013).[7]

If the Court orders disclosure of mitigating factors at any time after the guilt phase, but prior to the conclusion of defense penalty-phase case, the defense requests detailed reciprocal discovery regarding the government's proposed case in rebuttal, in accord with *Wardius v. Oregon*, 412 U.S. 470, 472 (1983) (holding that Due Process Clause forbids enforcement of alibi rules unless reciprocal discovery about state's plan to refute alibi is afforded to defendant).  "The [government] may not insist that trials be run as a 'search for truth' so far as [the] defense … [is] concerned, while maintaining 'poker game' secrecy for it[self]. It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of [that] which he disclosed . . . ."  *Id.* at 475-76.

---

[7] The referenced docket entries in *Aquart* are attached as Exhibit 1 and in *Candelerio-Santana* as Exhibit 2.

## CONCLUSION

For the foregoing reasons, the Court should deny the government's motion to require the defense to file a list of mitigating factors on September 1st or October 1st, or at any time prior to the conclusion of the defense penalty-phase case.

Respectfully submitted,

/s *Sarah S. Gannett*
Sarah S. Gannett
Assistant Federal Public Defender
Federal Public Defender for the District of Arizona
850 W. Adams Street, Suite 201
Phoenix, AZ 85007
602-382-2862
sarah_gannett@fd.org

David I. Bruck
Washington & Lee School of Law
Lexington VA 24450
540-458-8188
bruckd@wlu.edu

Michael P. O'Connell
PO Box 828
Mt. Pleasant, SC 29464
843-577-9890
moconnell@stirlingoconnell.com

Attorneys for Dylann S. Roof