# EXHIBIT 7

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of South Carolina

SEALED

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | )<br>) Case No. |
| ☐ Garners Ferry Road, Eastover, South Carolina, 29044 | )<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____  -_____  District of _____  South Carolina _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before    July 11, 2015    *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Hon. Mary Gordon Baker    .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    June 27, 2015  6:35 pm.    _____
*Judge's signature*

City and state:    Mount Pleasant, SC    Hon. Mary Gordon Baker, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

### Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

US-017713

RESTRICTED MATERIAL

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage.

19

RESTRICTED MATERIAL

US-017714

RESTRICTED MATERIAL

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of South Carolina

SEALED
COPY

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Garners Ferry Road, Eastover, South Carolina,
29044

)
)
)
)
)

Case No.

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ South Carolina _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 249 | Hate Crime Acts |
| 18 USC 924(j) | Causing the Death of a Person Through the Use of a Firearm |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA Joseph Hamski, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 27, 2015

*Judge's signature*

City and state: Mount Pleasant, SC

Hon. Mary Gordon Baker, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

IN THE MATTER OF THE SEARCH OF
▮▮▮▮ GARNERS FERRY ROAD,
EASTOVER, SOUTH CAROLINA, 29044

Case No. _____

**Filed Under Seal**

## MOTION TO SEAL

The United States of America, by and through its undersigned Assistant United States Attorney, hereby moves this Court to seal the application, warrant, affidavit and its attachments. The purpose of the Government's request is to protect the information contained within these documents to avoid premature disclosure of the investigation, except that working copies should be made available to the United States Attorney's Office, the Federal Bureau of Investigation, and any other law enforcement agency designated by the United States Attorney's Office. The Court has the inherent authority to seal these documents. *See Baltimore Sun v. Goetz*, 886 F. 2d 60 (4th Cir. 1988); *In re Application of the United States for an Order Pursuant to 18 U.S.C Section 2703(D)*, 707 F.3d 283 (4th Cir. 2013).

Based on the foregoing, the Government requests that the application, warrant, affidavit and its attachments be filed under seal.

WILLIAM N. NETTLES
UNITED STATES ATTORNEY

By:___ s/Nathan Williams_____
Nathan S. Williams (#10400)
Assistant United States Attorney

Charleston, South Carolina
June 27, 2015

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

IN THE MATTER OF THE SEARCH OF
▇▇▇ GARNERS FERRY ROAD,
EASTOVER, SOUTH CAROLINA, 29044

Case No. _____

**Filed Under Seal**

### ORDER TO SEAL

This matter comes before the court on motion of the United States to file the application, warrant, affidavit and its attachments under seal. The purpose of the Government=s request is to protect the information contained within these documents as release of the information would jeopardize an ongoing investigation.

Based on the foregoing, the Court finds that the interests of justice are best served by filing the affidavit and its attachments under seal, except that working copies may be made available to the United States Attorney's Office, the Federal Bureau of Investigation, and any other law enforcement agency designated by the United States Attorney's Office. It is therefore,

ORDERED that the application, warrant, affidavit and its attachments be filed under seal.

IT IS SO ORDERED.

HONORABLE MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

Charleston, South Carolina
June 27, 2015

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

IN THE MATTER OF THE SEARCH OF       Case No. _____
10428 GARNERS FERRY ROAD,
EASTOVER, SOUTH CAROLINA, 29044      **Filed Under Seal**

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Joseph Hamski, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant authorizing

the seizure and examination of evidence at the residence of Amelia "Amy" H. Roof, ▬▬▬

Garners Ferry Road, Eastover, South Carolina, 29044 (Premise to be Searched), to include any

outbuildings and appurtenances, for evidence of violations of 18 U.S.C. § 249 (Hate crime acts)

and 18 U.S.C. § 924(j) (Causing the death of a person through the use of a firearm). The premise

to be searched is further described in Attachment A. The evidence to be seized is described in

the following paragraphs and in Attachment B.

2.     I am a Special Agent with the Federal Bureau of Investigation (FBI), and as such I

am an "investigative or law enforcement officer" of the United States within the meaning of

Section 2510 (7) of Title 18, United States Code and am empowered by law to conduct

investigations and to make arrests for offenses enumerated in Section 2516 of Title 18, United

States Code.

3.     I have been employed as a Special Agent (SA) of the FBI since April 2008. I have

been assigned investigative responsibility in the areas of public corruption, civil rights, white

collar crime, violent crime and computer crime in the Columbia Division, Charleston Resident

1

Agency, of the FBI. Prior to my appointment as a Special Agent, I was employed as a Military Police Officer in the United States Army for approximately four (4) years. In my work with the FBI, I have participated in both violent crime and computer crime investigations to include the execution of search warrants on several facets of electronic media. I have also received training, both formal and informal, on computer crime, violent crime and criminal organizations and the way they utilize electronic communications to further their activities. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

5.      On the evening of June 17, 2015, nine people were murdered as the result of a shooting at the Emanuel African Methodist Episcopal (AME) church located at 110 Calhoun Street, Charleston, South Carolina. During the investigation of these murders, law enforcement officials obtained video surveillance footage from areas near the church, and identified the shooter as a white male who was driving a dark in color car.

6.      At approximately 6:00 a.m. the next morning, June 18, 2015, law enforcement officials published photographs from the video surveillance and began soliciting assistance from the general public via a tip line. A caller (who identified himself) indicated that the shooter in the video that was released was named DYLANN ROOF. The caller knew DYLANN ROOF's parents to live in Lexington, South Carolina. The caller further stated that DYLANN ROOF

2

drove a car with a confederate tag that says "South will rise again." The caller related that DYLANN ROOF visited Charleston a lot and always talked about segregation and another Civil War.

7.      Shortly after the above-described call, the tip line received another call from a female identifying herself as ROOF's sister. She indicated the subject she observed in the publicly released surveillance footage was her brother, DYLANN ROOF. She stated DYLANN ROOF had been living in his black in color Hyundai or Honda. She further stated that their parents live in Columbia and both of her parents had called her "in tears" when they saw the pictures on the news. The parent's names are Bennett Roof (father) and Amy Roof (mother). She indicated that DYLANN ROOF does own a gun, as her mother has seen it.

8.      After the call from the individual that identified herself as DYLANN ROOF's sister, the first caller called back in to the tip line, and indicated he had taken screen shots from the Facebook page belonging to DYLANN ROOF. He provided these screen shots to law enforcement. The person and vehicle depicted in the screen shot images strongly resembled the individual and car appearing in the video footage obtained from the church.

9.      As the investigation continued investigators were contacted by DYLANN ROOF's father, Bennett Roof.  Bennett Roof first told investigators over the phone that the images he had seen on the news regarding this incident were images of his son, DYLANN ROOF. He subsequently confirmed the identity of the suspect upon viewing the photos in person, during an interview with investigators. Bennett Roof stated his son DYLANN ROOF's closest friend was JOEY MEEK.

3

10.     On June 18, 2015, at approximately 10:33 hours, the Shelby Police Department received a call from a motorist indicating the suspect from this incident was traveling west on US Highway 74 through Shelby, North Carolina. This motorist gave a description of the car and suspect that matched the information previously obtained by law enforcement. This vehicle was stopped by law enforcement on US Highway 74 in North Carolina. The driver of the car was identified as DYLANN ROOF (DOB: ███████) and he was taken into custody. He was provided *Miranda* warnings and agreed to be interviewed.  During the interview, DYLANN ROOF admitted to shooting black individuals at the Emanuel AME Church in Charleston, South Carolina. DYLANN ROOF stated he had to shoot the individuals because someone had to stick up for white people. DYLANN ROOF stated he formed his views on race after conducting internet research, in part on the subject of black males raping white women. DYLANN ROOF also stated that he lived with his mother in "Eastover" but that "lately" he has been living with his father in Columbia, too.

11.     On June 18, 2015, a State of South Carolina, County of Richland search warrant was conducted on DYLANN ROOF's vehicle, a 2000 Dark in color 4-door sedan, Hyundai Elantra GLS Automobile, VIN#: KMHJF35F8YU964587, bearing South Carolina License Plate #: LGF-330. The vehicle was registered to DYLANN ROOF at 10428 Garners Ferry Road in Eastover, South Carolina (Premises to be Searched). The South Carolina Law Enforcement Division seized from the vehicle various electronic devices and media, including one black Dell Latitude E5400 Laptop, Serial 5LXX5L1 and one Black Garmin Nuvi 205 GPS # 1SB545472. The Dell Latitude E5400 Laptop was missing a hard drive.  Also found in the car were various papers, including a "journal", detailed below in ¶16, and several handwritten "notes".  Some of these notes listed church locations in the Charleston area, with the first church on one of the lists

4

being "Emanuel AME." Other churches were listed, and included addresses, hours and phone numbers. The lists included churches in the Charleston area as well as in the other parts of South Carolina. One listed church had a note next to it "just to tour", which was not listed among other church locations.

12.    On June 17, 2015, law enforcement interviewed Amy Roof at her residence ▮▮▮ Garners Ferry Road, Eastover, South Carolina 29044. Amy Roof stated she lived at her residence for approximately three years with her boyfriend, Danny Beard. The residence ▮▮▮ Garners Ferry Road, Eastover, South Caorlina 29044 is owned by Danny Beard. Amy Roof stated she was the biological mother of DYLANN ROOF. Franklin Bennett "Ben" Roof was the biological father. Amy Roof stated DYLANN ROOF sometimes stays at her residence ▮▮▮ Garners Ferry Road, Eastover, South Carolina 29044. Amy Roof stated DYLANN ROOF has an assigned room within the residence where some of his belongings remain.

13.    Amy Roof stated that DYLANN ROOF last spent the night at her residence on June 15, 2015. Amy Roof stated DYLANN ROOF had been by the residence on June 17, 2015 (the day of the shootings) and asked to borrow Amy Roof's GPS for travel in his vehicle. Amy Roof stated her digital camera, which was located in DYLANN ROOF's room, was also shared by her and DYLANN ROOF. Amy Roof stated she would share her electronic devices with her son DYLANN ROOF.

14.    On June 17, 2015, Danny Beard gave consent to law enforcement officers to search the residence at ▮▮▮ Garners Ferry Road, Eastover, South Carolina 29044 for evidence pertaining to the Emanuel AME Church shootings. The State Law Enforcement Division (SLED) executed the consent search and took photographs inside and outside of the residence. During the

5

consent to search, the camera referred to by Amy Roof, which she explained was shared by her

and DYLANN ROOF was located and seized. The camera is further identified as a blue Eastman

Kodak Easyshare C1530 digital camera ("Kodak camera" hereinafter).

15.     On June 26, 2015, a law enforcement forensic review of the Kodak camera was

conducted. The review identified several photographs of DYLANN ROOF at his mother Amy

Roof's residence, to include photographs of DYLANN ROOF next to two backyard sheds, at

times pointing a firearm at the camera or the shed and at times holding a confederate flag. Other

photographs depicted DYLANN ROOF in the room attributed to him by Amy Roof, at the

Premises to be Searched. Similar to the earlier described photos, DYLANN ROOF is often

depicted posing while holding and pointing a handgun and holding a confederate flag while in

the room.  In one of the photos (Attachment C), while DYLANN ROOF poses, items can be seen

on the bed behind him.  These items include a black laptop consistent with the laptop seized from

DYLANN ROOF's vehicle, which was missing a hard drive.  The photograph from the camera

(Attachment C) also depicts what appear to be several black USB drives lying on the same bed,

in the same room.

16.     On June 20, 2015, national media outlets attributed a website,

http://lastrhodesian.com, to DYLANN ROOF. Law enforcement imaged and preserved the

website for review. A review of the website reflected a link to a racist manifesto and a link to

numerous photographs of DYLANN ROOF. The manifesto consists of racist comments

regarding hate for blacks and stated, among other things, "I have no choice. I am not in the

position to, alone, go into the ghetto and fight. I chose Charleston because it is most historic city

in my state, and at one time had the highest ratio of blacks to Whites in the country."  During the

6

search of the vehicle DYLANN ROOF was driving at the time of arrest, a handwritten "journal" was located. This journal contained a very similar "manifesto" to what was posted on line, though in the journal it was hand written. The journal also had a reference to the website, lastrhodesian.com, where the manifesto was posted. The photographs that were posted on the lastrhodesion.com website depict DYLANN ROOF holding Confederate flags, burning an American flag, spitting on an American flag, and pictures of Charleston, South Carolina. The photographs posted on the web site were also located on the Kodak camera when it was examined.

17.     On June 18, 2015, when investigators searched Amy Roof's residence at ▮▮▮▮ Garners Ferry Road, Eastover, South Carolina 29044 they took photographs of several rooms, including the room attributed to DYLANN ROOF. One of the photographs (Attachment D) clearly depicts one desktop computer, with a second desktop computer located under the first, located in this room. Other photos depict portable drives in a bowl on a desk (Attachment E). Another photo depicts what appears to be a game console (Attachment F). These items were not seized at the time of the consent search and affiant has received no information that would lead him to believe the items have been removed from the Premises to be Searched since they were last seen.

18.     Law Enforcement interviewed JOEY MEEK on June 18, 2015. MEEK stated he was a friend of DYLANN ROOF. DYLANN ROOF and MEEK had hung out and drank alcohol at MEEK's residence on the night of June 11, 2015. During the night, DYLANN ROOF advised MEEK that the black race was bringing down the white race, and DYLANN ROOF wanted to

7

start a race war. DYLANN ROOF stated he wanted to start something big and crazy, to hurt people, was going to do something crazy in Charleston, and to make it big on the news.

19.    MEEK related he communicated electronically with DYLANN ROOF via their Facebook accounts. MEEK stated he would communicate with DYLANN ROOF utilizing his Verizon black tablet. MEEK allowed law enforcement to image certain Facebook communications from DYLANN ROOF to MEEK located on his black Verizon tablet. Those messages reflected Facebook communications between DYLANN ROOF and MEEK, including discussions of DYLANN ROOF's prior arrests, drug use, DYLANN ROOF's lack of a cellular telephone, meetings between DYLANN ROOF and MEEK, and DYLANN ROOF's use of the computers at the library.

20.    On June 20, 2015, law enforcement re-interviewed MEEK. MEEK changed his account of events, including admitting DYLANN ROOF had given MEEK details of the plan to commit a church shooting. MEEK stated DYLANN ROOF told him he was committing the shooting to kill black people and ignite a race war. In addition, DYLANN ROOF told MEEK he was specifically targeting the Emanuel AME Church in Charleston, South Carolina

21.    On June 18, 2015, an interview of Bennett Roof was conducted at his residence, 1020 Cedar Street, Columbia, South Carolina. Bennett Roof relayed to law enforcement his son, DYLANN ROOF, utilized electronic devices to communicate while at Bennett Roof's residence. Bennett Roof provided law enforcement with a desktop computer which Bennett Roof stated DYLANN ROOF utilized. Bennett Roof further stated that the computer was owned and used by Bennett Roof, but that he allowed DYLANN ROOF to use the computer as well. Bennett Roof consented to law enforcement searching his desktop computer. FBI personnel at the residence

8

did not seize the computer, at Bennett Roof's request, but imaged the computer to an FBI-owned hard drive.

22.     On June 19, 2015, U.S. Magistrate Judge Mary Gordon Baker approved a search warrant for various electronic devices and media seized from the vehicle DYLANN ROOF was driving as well as a hard-drive image seized from the computer provided by Bennett Roof. On June 22, 2015, a forensic examiner reviewed these items and discovered evidence of DYLANN ROOF's racist motivation to commit the church shooting.  For example, a text document with racist content; images of DYLANN ROOF with a handgun at locations in the Charleston, South Carolina area; images of DYLANN ROOF with a handgun at Amy Roof's residence; and website content, including the website manifesto text and images of DYLANN ROOF relating to http://lastrhodesian.com.

23.     Based on the forgoing, and in light of my training, experience and knowledge of this investigation, I believe there is probable cause to believe that Amy Roof's residence, ███ Garners Ferry Road, Eastover, South Carolina 29044 will contain digital and other evidence relevant to the murder of nine individuals at the Emanuel AME church in Charleston, South Carolina on June 17, 2015. In addition, there is probable cause to believe content from the residence will also contain evidence of the motive and intent relevant to the murders, provide information regarding the identity of the individual(s) involved in the murders, and more fully develop who was involved with the murders and the scope of the planning of and preparation of the crimes.

## TECHNICAL TERMS

9

US-017696

24.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Cell phone: A wireless telephone (or mobile telephone, or cellular telephone, or cell phone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  USB drives, CDs and DVRs are all devices designed primarily to store digital data.

c.   GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to

10

another location.  These devices can contain records of the addresses or locations
involved in such navigation.  The Global Positioning System (generally
abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each
satellite contains an extremely accurate clock.  Each satellite repeatedly transmits
by radio a mathematical representation of the current time, combined with a
special sequence of numbers.  These signals are sent by radio, using specifications
that are publicly available.  A GPS antenna on Earth can receive those signals.
When a GPS antenna receives signals from at least four satellites, a computer
connected to that antenna can mathematically calculate the antenna's latitude,
longitude, and sometimes altitude with a high level of precision.

    d.  A hard drive is a digital data storage device, often used in a computer to store the
        computer's operating system, software and other digital data.

    25.    Based on my training and experience, I know that computers and media devices,
such as the computer and drives described in ¶ 17 above, as well and the devices described in ¶
24 immediately above, have capabilities that allow them to serve as digital storage devices. In
my training and experience, examining data stored on devices of this type can uncover, among
other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

    26.    Based on my knowledge, training, and experience, I know that a computer's hard
drive can store information for long periods of time. Similarly, things that have been viewed via

RESTRICTED MATERIAL        US-017698

the Internet are typically stored for some period of time on the device. This information can

sometimes be recovered with forensics tools.

27.     There is probable cause to believe that things that were once stored on the hard

drive may still be stored there, for at least the following reasons:

a.  Based on my knowledge, training, and experience, I know that computer files or

remnants of such files can be recovered months or even years after they have been

downloaded onto a storage medium, deleted, or viewed via the Internet.

Electronic files downloaded to a storage medium can be stored for years at little

or no cost.  Even when files have been deleted, they can be recovered months or

years later using forensic tools.  This is so because when a person "deletes" a file

on a computer, the data contained in the file does not actually disappear; rather,

that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or

slack space—that is, in space on the storage medium that is not currently being

used by an active file—for long periods of time before they are overwritten.  In

addition, a computer's operating system may also keep a record of deleted data in

a "swap" or "recovery" file.

1.  Wholly apart from user-generated files, computer storage media—in

particular, computers' internal hard drives—contain electronic evidence of

how a computer has been used, what it has been used for, and who has

used it.  To give a few examples, this forensic evidence can take the form

12

of operating system configurations, artifacts from operating system or
application operation, file system data structures, and virtual memory
"swap" or paging files. Computer users typically do not erase or delete
this evidence, because special software is typically required for that task.
However, it is technically possible to delete this information.

2.  Similarly, files that have been viewed via the Internet are sometimes
automatically downloaded into a temporary Internet directory or "cache."

c.  *Forensic evidence.*  As further described in Attachment B, this application seeks
permission to locate not only electronically stored information that might serve as
direct evidence of the crimes described on the warrant, but also forensic evidence
that establishes how the devices were used, the purpose of their use, who used
them, and when. There is probable cause to believe that this forensic electronic
evidence might be on or contained in the items to be seized because:

1.  Data on the storage medium can provide evidence of a file that was once
on the storage medium but has since been deleted or edited, or of a deleted
portion of a file (such as a paragraph that has been deleted from a word
processing file). With respect to the hard drive, virtual memory paging
systems can leave traces of information on the storage medium that show
what tasks and processes were recently active. Web browsers, e-mail
programs, and chat programs store configuration information on the
storage medium that can reveal information such as online nicknames and
passwords.  Operating systems can record additional information, such as

13

the attachment of peripherals, the attachment of USB flash storage devices (thumb drives) or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

2.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

3.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

4.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

14

5.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

d.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the evidence to be seized, consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

28.  I submit that this affidavit supports probable cause for a search warrant authorizing the search and seizure of the items described in Attachment B.

29.  AUSA Nathan Williams has reviewed this affidavit.

Respectfully submitted,

Joseph Hamski
Special Agent
FBI

Subscribed and sworn to before me on ___June 27___, 2015

HON. MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

15

## ATTACHMENT A

### Description of Premise to be Searched

The residence located at ▇▇▇ Garners Ferry Road, Eastover, South Carolina, 29044 is further described as a two story brown wood structure with a front staircase, front porch and a tin roof. The residence is situated approximately 100 yards off of Garners Ferry Road. The backyard contains two wooden structured storage sheds. The structure closest to the main house is a brown painted wooden structure with a wooden roof. The back wooden shed is grey in color with a grey wooden roof.





## ATTACHMENT B

### Evidence to be Seized

1.     All digital evidence, records, communications, firearms that relate to violations of 18 U.S.C. § 249 (Hate crime acts) and 18 U.S.C. § 924(j) (Causing the death of a person through the use of a firearm), including communications involving DYLANN ROOF and including:

     a.  Black desktop computers.

     b.  Gaming systems or consoles.

     c.  Cell phones.

     d.  A computer hard drive.

     e.  USB or other external drives, as well as any items capable of storing such drives, such as gaming systems or consoles.

     f.  Articles and evidence of computer-assisted research into matters of race relations, racist ideology; hate groups and white supremacist organizations.

     g.  Articles and evidence of computer-assisted research on crimes committed by African Americans against Caucasians.

     h.  Articles and evidence of computer-assisted research on the Emanuel AME Church, and in particular, such churches in the Charleston, South Carolina area, or elsewhere in South Carolina.

     i.  Any information recording DYLANN ROOF or MEEK's schedule or travel;

US-017704

j.  Information about friends, family and acquaintances who shared DYLANN

ROOF's view of race relations or who may have assisted DYLANN ROOF in

purchasing any firearm or ammunition or carrying out the June 17, 2015, attack at

the Emanuel AME Church in Charleston.

k.  Email or other electronic communications bearing on the attack described above,

or any motivation for the same.

l.  IP addresses during Internet use.

m.  Articles and evidence of any device used in creating, viewing or populating racist

websites, specifically the website http://lastrhodesian.com.

n.  Articles and evidence of electronic device locations and user access.

2.     Any handwritten, typed, or printed notes, journals or other documentation relating

to the murders committed on June 17, 2015 in Charleston, SC, the planning and preparation for

the commission of the murders or other violence against individuals, the motivation of any

individuals involved with the murders, and any information relating to the identification of the

individuals involved in any planning, preparation or commission of the murders.

3.     Evidence of user attribution showing who used the items to be seized at the time

the items to be seized described in this warrant were created, edited, or deleted, such as logs,

phonebooks, saved usernames and passwords, documents, and browsing history;

18

US-017705

RESTRICTED MATERIAL

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage.

19

US-017706

## ATTACHMENT C





20

## ATTACHMENT D



21

US-017708

RESTRICTED MATERIAL

**ATTACHMENT E**





22

RESTRICTED MATERIAL

**ATTACHMENT F**



RESTRICTED MATERIAL

US-017710

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF 10428 GARNERS FERRY ROAD, EASTOVER, SOUTH CAROLINA, 29044 | Case No. _____<br><br>**Filed Under Seal** |

**ORDER TO SEAL**

This matter comes before the court on motion of the United States to file the application, warrant, affidavit and its attachments under seal. The purpose of the Government=s request is to protect the information contained within these documents as release of the information would jeopardize an ongoing investigation.

Based on the foregoing, the Court finds that the interests of justice are best served by filing the affidavit and its attachments under seal, except that working copies may be made available to the United States Attorney's Office, the Federal Bureau of Investigation, and any other law enforcement agency designated by the United States Attorney's Office. It is therefore,

ORDERED that the application, warrant, affidavit and its attachments be filed under seal.

IT IS SO ORDERED.

Mary Gordon Baker
HONORABLE MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

Charleston, South Carolina
June 27, 2015