IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:15-CR-472 |
| | ) | |
| DYLANN STORM ROOF | ) | |

**DEFENSE REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT**

The defendant, through counsel, hereby replies to the government's Response to

Defendant's Motion to Dismiss Indictment. This reply briefly addresses the

government's arguments on our interstate commerce and 13th Amendment challenges,

but is primarily devoted to the *Johnson* issues, because of the rapidly evolving law in that

area. We maintain that the charges against the defendant are improper for the reasons

given in our Motion, but Mr. Roof is prepared nonetheless to plead guilty to all charges

and serve a sentence of life without the possibility of release, should the death notice be

withdrawn.

**I.     Section 247(a)(2) is an unconstitutional exercise of Congress' power under
the Commerce Clause.**

The government's assertion that § 247(a)(2) is a valid exercise of the Commerce

Clause because the statute restates Congress' commerce power is a tautology that

supports the defense challenge, rather than the government's position. *See* Govt. Resp. at

6 (asserting that § 247(a)(1) requires proof that "the offense is in or affects interstate or

foreign commerce," § 247(b)). The government's reliance on the felon-in-possession,

murder-for-hire, Travel Act, and other statutes also is unavailing.  *See* Dkt. 279 ("Govt. Resp.") at 15-16.  In contrast to § 247(a)(2), all of these statutes by their terms require activity involving use of a means of interstate commerce or affecting interstate commerce in the commission of the crime, even if the crime is wholly intrastate.  *See*, *e.g.*, 18 U.S.C. § 1958(a) (prohibiting contract killing involving the use of a facility of interstate commerce).  *See* Dkt. 233 ("Def. Mot.") at 7 (providing other examples).  Section 247(a)(2) contains only the broad assertion of full commerce power noted above.

Here, the government can point to no interstate commerce directly involved in, or substantially affected by, the alleged obstruction of religious exercise.  *See* Dkt. 277 (Bill of Particulars); *United States v. Ballinger*, 395 F.3d 1218, 1235-36 (11th Cir. 2005) (majority opinion) (relying upon interstate travel to commit the crimes, hotel stays, and other purchases during travel); *see also Ballinger*, 395 F.3d at 1245, 1248, 1256 (dissenting opinions).  Indeed, the examples offered in the government's Bill of Particulars, Dkt. 277, are as attenuated as we predicted:  *e.g.*, the defendant used a GPS device for directions; the defendant used a belt pouch produced out of state to carry ammunition; the defendant used the internet for research; the defendant traveled to North Carolina after the offense; the church receives and pays out funds.  *See* Dkt. 277 at ¶¶ 2, 3, 4, 8, 10, 12, 13.  *See also United States v. Lamont*, 330 F.3d 1249, 1254 (9th Cir. 2003) (holding that "a church ordinarily has insufficient connections to interstate commerce" to fulfill commerce element of 18 U.S.C. § 844(i) – a similar commerce element to that in § 247(a)(2)).

The variety and oddity of these alleged commerce connections lend power to the defense vagueness challenge to the interstate commerce element, which is premised not just on notice, but on the fact that the language of the broad jurisdictional element in § 247(a)(2) is "so standardless that it invites arbitrary enforcement." *See Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). Contrary to the government's claim, courts have indeed struggled with the limits of the definition of the phrase "substantially affects interstate commerce." *See* Def. Mot. at 15; *see also United States v. Shavers*, 693 F.3d 363, 376 (3d Cir. 2012), *cert. granted, judgment vacated on other grounds*, *Shavers v. United States*, 133 S. Ct. 2877 (2013) (conceding, "it is far from obvious which cases are purely matters for state prosecution"). And it is particularly problematic in the context of an entirely non-economic activity, like obstruction of religious exercise.

Beyond these points, the defense rests on its original motion and memorandum in support.

## II.     Section 249(a)(1) is an unconstitutional exercise of Congress' Thirteenth Amendment Authority.

The government's response fails to address the thrust of the defendant's motion here: although hate crimes may be a badge and incident of slavery, the federal government irrationally intervened in enacting § 249(a)(1), because hate crimes were being adequately addressed by the states. Concurrent federal and state jurisdiction in some areas (*e.g.*, drug control, sex trafficking) may be required, because neither sovereign can address the problem alone. Here, the government must concede that the states were adequately addressing hate crimes when § 249 was enacted, *see* Def. Mot. at

17 (noting lack of evidence that hate crimes were going unpunished); indeed, the government offers evidence that Congress intended states to "continue to be responsible for prosecuting the overwhelming majority" of these crimes, *see* Govt. Resp. at 33-34.

In avoiding this, the government also ignores the plain language of the Thirteenth Amendment, which authorizes Congress to enact "appropriate legislation." The case law cited by the government does not, however. *Jones v. Alfred H. Mayer, Co*., 392 U.S. 409, 439 (1968), explains that the Thirteenth Amendment "clothed Congress with power to pass all laws *necessary and proper* for abolishing all badges and incidents of slavery." (emphasis added) (internal quotation omitted). *See also* Govt. Resp. at 28-29 & n.13 (referencing "*effective* legislation" and "*appropriate* remedial measures") (emphasis added). Given that the Thirteenth, Fourteenth, and Fifteenth Amendments were adopted at almost the same time, it makes sense that their enforcement standards would be similar, and the Supreme Court's Fourteenth and Fifteenth Amendment cases have logical relevance to this one. *See* Def. Mot. at 18-20 (discussing Reconstruction Amendments, use of common term "appropriate," and recent cases requiring current remedial need and tailored means to address that need).

The government's argument on the certification requirement presents another tautology: if the Attorney General's certification is not made to anyone and is unreviewable, *see* Govt. Resp. at 40-42, then it offers no constraint on federal power, and does not support the constitutionality of the statute.

Beyond these points, the defense rests on the arguments already advanced in its motion and memorandum in support.

**III.**     **Counts 25-33 must be dismissed under *Johnson v. United States*, because the predicate offenses alleged under 18 U.S.C. §§ 924(c)(3) and 924(j) do not qualify as crimes of violence.**

We devote the bulk of our reply to the *Johnson* issues. Although none of the government's arguments in support of §§ 247(a)(2) and 249(a)(1) as crimes of violence under § 924(c) is persuasive, this area of the law is complex and less explored than the extent of Congress' power under the Constitution. We address four main issues here: first, why Congress' intent in enacting § 924(c) is irrelevant to interpreting of the statute after *Johnson*; second, how the Supreme Court and Fourth Circuit *Johnson* precedent should be interpreted; third, why the statutes at issue are not crimes of violence under the "force" clause (because each may be accomplished without use or threatened use of violent force); and fourth, that § 924(c)'s residual clause is materially identical to the ACCA's, and so is equally invalid under *Johnson*. Unlike the government's submission, the defense position is consistent with Supreme Court precedent, the weight of Circuit authority and the canons of statutory interpretation.

**A.**     **The government's appeal to intuition and Congressional intent ignores the effect of § 924(c)'s now-defunct residual clause and Congress' ability to implement a *Johnson* fix.**

According to the government, the defense interpretation of § 924(c) cannot be squared with Congressional intent and leads to absurd results. Any absurdity perceived by the government, however, derives solely from the Supreme Court's decisions invalidating the residual clause and requiring application of the categorical approach.

Should Congress wish, it may enact new law to address these decisions.[1] But it has not.

The government ignores the prior role of § 924(c)'s residual clause. Although the residual clause has been invalidated by *Johnson*, it was intended to do (and previously did) meaningfully work in expanding the definition of a crime of violence beyond the limited reach of the "force" clause. The two clauses were designed to work together to define the totality of offenses constituting crimes of violence. Indeed, the residual clause was designed to "sweep[ ] more broadly" than the "force" clause. *See Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004).

After *Johnson*, § 924(c)(3) is like a puzzle that has had its central piece removed by a constitutional ruling of the Supreme Court. The government looks at the resulting picture and complains that it does not depict what Congress drew. But that logic (which implictly blames the defense for the statute's current shortcomings) is flawed: we are merely assembling the remaining pieces. It is the government's views that are inconsistent with standard approaches to statutory construction. *See Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987) ("Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law") (quoting *Buckley v. Valeo*, 424 U.S. 1, 108 (1976) (per curiam)).

---

[1] Notably, the Sentencing Commission has taken action to fix similar concerns regarding the career offender guideline, following *Johnson*. *See* http://www.ussc.gov/sites/default/files/20150121_FR_Final.pdf.

In deciding this case, the Court need not find that Congress intended §§ 247 and 249 – or murder, *see* Govt. Resp. at 59-60 – to fall outside the overall crime-of-violence definition. In fact, the Court can assume that Congress affirmatively intended these crimes to qualify as crimes of violence under § 924(c). Whatever else can be assumed about Congressional intent regarding § 924(c)'s crime-of-violence definition, Congress did not define crimes of violence through the "force" clause alone.

The Court must decline the government's invitation to abandon the clear text of that clause so that § 924(c)'s overall crime-of-violence definition – now missing the residual clause – leads to results that "seem" right. "It is axiomatic that statutes creating and defining crimes cannot be extended by intendment, and that no act, however wrongful, can be punished under such a statute unless clearly within its terms." *Todd v. United States*, 158 U.S. 278, 282 (1895). It may be true that the federal murder statute does not categorically qualify as a crime of violence under § 924(c)'s "force" clause – a surprising proposition. But that only shows how much of the work previously done in § 924(c) was done by the residual clause. It does not matter whether anyone would intuitively classify the crimes at issue here as crimes of violence. The question is whether they meet the now-narrowed (even hobbled) statutory definition under § 924(c)(3)(A).

**B.     The government misreads several precedents critical to correctly deciding the *Johnson* claims made here.**

The government posits that the Supreme Court's holding in *United States v. Castleman*, -- U.S. --, 134 S. Ct. 1405 (2014), precludes the defense argument that the crimes at issue here are not crimes of violence because they may be committed without the use of violent physical force. This misapplies *Castleman*, which involved a different statutory definition, and specifically reserved the question at issue here.

In *Castleman*, the Supreme Court held that a prior Tennessee domestic violence offense that had an element of physical injury qualified as a misdemeanor crime of domestic violence under the "force" clause of 18 U.S.C. § 922(g)(9). *Id.* at 1413-15. However, the "force" clause of § 922(g)(9) is critically different from the one applicable here and addressed in *United States v. Torres- Miguel*, 701 F.3d 165 (4th Cir. 2012), and the other cases from the Second, Fifth, and Tenth Circuits cited by the Fourth Circuit therein. In fact, in *Castleman*, the Supreme Court carefully explained that it was applying a definition of "physical force" in the context of § 922(g)(9) that was quite different from that of the ACCA § 924(c)(3) "force" clause, which requires violent physical force. 134 S. Ct. at 1410-15. The *Castleman* Court applied the common law definition of "physical force" that encompasses "even the slightest offense touching" – *i.e.*, *de minimis* force. *Id.* at 1410. The Court held that Congress likely meant for offensive-touching-type force to apply in the misdemeanor domestic violence context, whereas it meant violent force to apply in the crimes of violence context. *Id.* at 1411; *see also Voisine v. United States*, --

U.S. --, 136 S. Ct. 2272, 2281 n.5 (2016). Thus, the findings in *Castleman* regarding use of force do not, as the government suggests, apply here (nor in *Torres-Miguel*, nor *Curtis Johnson v. United States*, 559 U.S. 133 (2010)).

As importantly, the Supreme Court in *Castleman* explicitly refused to evaluate the validity of the other rule that the government asserts controls whether §§ 247 and 249 constitute crimes of violence. The *Castleman* Court wrote that "[w]hether or not the causation of bodily injury necessarily entails violent force [is] a question we do not reach." *Id.* at 1413.[2] That, of course, is the question any decision abrogating the cases cited in our motion must answer. Because *Castleman* failed to reach the question, *Torres-Miguel* and the cases following its logic retain their vitality.

The Fourth Circuit recently interpreted *Castleman* the same way, in *United States v. McNeal*, -- F.3d --, 2016 WL 1178823, at *12 n.10 (Mar. 28, 2016). The Court stated:

> "The government suggests that the Supreme Court's 2014 decision in *United States v. Castleman* . . . has abrogated the distinction that we recognized in *Torres-Miguel* between the use of force and the causation of injury. That strikes us as a dubious proposition. Writing for the *Castleman* majority, Justice Sotomayor expressly reserved the question of whether causation of bodily injury 'necessarily entails violent force.'" *Id.*

The government also misreads *(Curtis) Johnson v. United States*, 559 U.S. 133 (2010), in which the Supreme Court established the definition of "physical force" applied in this context. In *(Curtis) Johnson*, the Court did not just differentiate between intellectual or emotional force and physical force, *see* Govt. Resp. at 45; rather, it

---

[2] The government's error is in conflating the questions whether causing bodily injury requires force, and whether it requires violent force. *See* Govt. Resp. at 45-50, and cases cited therein.

determined that "the phrase 'physical force' means *violent* force—that is force capable of causing physical pain or injury to another person."  559 U.S. at 140 (emphasis in original).  In so doing, the Court cited to the Seventh Circuit's decision in *Flores v. Ashcroft*, 350 F.3d 666, 672 (7th Cir. 2003) (Easterbrook, J.).  In *Flores*, the Seventh Circuit distinguished between contact and physical force, *see id.*, refusing to categorize the battery crime in question as a crime of violence because, under the statute, "if the paper airplane inflicts a paper cut, the snowball causes a yelp of pain, or a squeeze of the arm causes a bruise, the aggressor has committed a Class A misdemeanor (provided that the act was rude, angry or insolent).  It is hard to describe any of this as 'violence.'"  *Id.* at 670.  Thus, the government's assumption that "'bodily injury' . . . on its own, satisfies the degree of force required . . . under *Johnson*," Govt. Resp. at 50, cannot be correct.[3] As discussed more below, this is exactly the distinction that the *Castleman* Court made. *See* 134 S. Ct. 1412.

Finally, the categorical approach requires the Court to look at the elements of the offenses at issue and "determine whether the conduct criminalized, including the most innocent conduct, qualifies as a crime of violence."  *United States v. Montes–Flores*, 736 F.3d 357, 364 (4th Cir. 2013).  Unsurprisingly, the government wishes to focus on the actual crimes committed here, which appear to satisfy any definition of crimes of violence.  But, as Judge Easterbrook noted in *Flores*, in discussing a battery offense that

---

[3] *United States v. Chisolm*, 579 Fed. App'x 187 (4th Cir. 2014), and the other cases cited by the government, *see* Govt. Resp. at 48-49, are not to the contrary.  *Chisolm*, for example, involved a statute requiring, at minimum, a threat to commit violent injury upon another.  *See id.* at 194-195 (citing state cases interpreting statute).

covered both violent and nonviolent conduct, "[a]n offensive touching is on the 'contact' side of the [qualitative] line, a punch on the 'force' side; and even though we know that Flores's acts were on the 'force' side of this legal line, the elements of his *offense* are on the 'contact' side." 350 F.3d at 672 (emphasis in original). As noted, Congress will have to redraw the legal "line," in order for the outcome of this analysis to shift.

*United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), is therefore controlling here. In *Torres-Miguel*, the Court stated that "a crime may *result* in death or serious injury without involving use of physical force." *Id.* at 168 (emphasis in original). Thus, the question in determining whether an offense is a crime of violence is whether an "element of the statute at issue necessarily include[s] [the use or] threatened use of physical force to accomplish that result." *Id.* (internal quotation marks and citation omitted).[4] As discussed below, that is not the case with either of the challenged statutes here.

## C. Because neither § 247(a)(2) nor § 249(a)(1) requires use of violent physical force, neither may be considered a crime of violence under § 924(c)(B)(3), and therefore neither may serve as a predicate offense for § 924(j) (Counts 25-33).

The government does not contest that, in evaluating whether an offense constitutes a crime of violence, the Court must consider "the most innocent conduct" covered by the statute. *See Torres-Miguel*, 701 F.3d at 167. Nor does it dispute that, under *Mathis v.*

---

[4] The government's effort to distinguish *Torres-Miguel* because of the *mens rea* and *actus reus* required by the statute, *see* Govt. Resp. at 53-54. The *mens rea* point is incorrect, because *Torres-Miguel* itself involved intentional conduct. The *actus reus* point must also be incorrect; since the crime of violence definition involves force or threat of force, the Court's decision could not have turned on the act being a mere threat.

*United States*, the statutes at issue here are not divisible, but offer multiple means for commission of the crimes. *See Mathis*, -- U.S. --, 136 S. Ct. 2243, 2248-50, 2253-54 (2016). The government fails to address, however, the examples provided in the defense motion, which squarely establish that §§ 247 and 249 may be committed without the use or threat of use of physical force, and that these offenses described in these statutes are therefore not crimes of violence triggering application of § 924(j).

> **1.    Section 247(a)(2) may not serve as a § 924(j) predicate under the force clause, because it does not require the use or attempted use of violent physical force.**

As discussed above, "force" is a term of art in the § 924(c)(3)(B) context. Indeed, the government itself goes to great lengths in its Response to undermine the definition established by Supreme Court and Circuit precedent. *See* Govt. Resp. at 45-47, 53-58. After *Curtis Johnson*, however, the term – as used in the residual clause – must be read to connote violent conduct. The debate has always been whether the use of the term in other statutes matches its use in § 924(c)(3)(B) or provisions like it (*e.g.*, the ACCA or Sentencing Guidelines' residual clauses). Section 247, although it refers to the use of force, simply does not require violent action.

This is apparent from the text of the statute, which requires only that the offender "intentionally obstruct, by force or threat of force, any person in the enjoyment of that person's free exercise of religious beliefs." The penalty provision provides that, "if death results," the offender may be sentenced to death. 18 U.S.C. § 247(a)(2). Undoubtedly, the statute may be violated by violent conduct. The point is that it may also be violated by non-violent conduct. When that is the case, under the categorical approach, an offense

does not qualify as a crime of violence. *See Descamps v. United States*, -- U.S. --, 133 S. Ct. 2276, 2285-86 (2013).

In our motion, we offered several examples of non-violent conduct that might violate § 247. The government meaningfully addressed none of them. These included: blockading the entrance to a church, spreading hazardous chemicals in a parking lot, or pushing or restraining a parishioner. *See* Def. Mot. at 26. None of these require violent conduct, but any could result in death, depending on the circumstances (*e.g.*, heat exhaustion, poisoning, heart attack). *Cf. Torres-Miguel*, 701 F.3d at 168. Committing an action "resulting" in death, in which the actor may not have intended the consequence, is simply different from committing violent conduct. *Cf. McNeal*, 818 F.3d at 153 (holding that bank robbery was crime of violence because it required taking by "force and violence").

### 2. Section 249(a)(1) may not serve as a § 924(j) predicate under the force clause, because it does not require the use or attempted use of violent physical force.

The government's argument regarding § 249 relies on the assumption that "causing bodily injury" equates to violent conduct sufficient to meet the definition of § 924(c)(3)(B). As discussed above, however, "causing" something to happen is not the same as committing violent conduct. Concomitantly, the term "bodily injury" is too broadly defined in § 249(a)(1) to categorically bring the statute within the definition of "crime of violence."

In discussing the difference between the two types of force at issue in § 922(g)(9) and the Armed Career Criminal Act, on the one hand, and § 924(c), on the other, the

13

Supreme Court in *Castleman* noted that "[m]inor uses of force may not constitute 'violence' in the generic sense":

> For example, in an opinion that we cited with approval in [*Curtis Johnson*, the Seventh Circuit noted that it was 'hard to describe … as "violence"' 'a squeeze of the arm [that] causes a bruise.' *Flores v. Ashcroft*, 350 F.3d 666, 670 (2003). But an act of this nature is easy to describe as 'domestic violence,' when the accumulation of such acts over time can subject one intimate partner to the other's control. If a seemingly minor act like this draws the attention of authorities and leads to a successful prosecution for a misdemeanor offense, it does not offend common sense or the English language to characterize the resulting conviction as a 'misdemeanor crime of domestic violence.'

*Id.* at 1412. So, although *some* force is required to cause bodily injury, *violent* force is not necessarily required, and the government is incorrect in suggesting that any offense involving causation of bodily injury is categorically a crime of violence. *See id.* at 1414-15 (explaining that while force of some kind may have been involved in Castleman's crime, it was not "violent force").

Thus, the minor bodily injuries in § 249(a)(1)'s definition – including bruises, which the Court said in *Castleman* are "hard to describe" as resulting from violent force – do not suffice to make the statute a crime of violence under § 924(c)(B)(3). To the contrary, under *Castleman*, they establish that the statute is *not* a crime of violence, because the offense may be committed in a manner that does not require the use of *violent* force. *See* 134 S. Ct. at 1412. This is because the victim may be injured, resulting in death, without violent force having been exerted – for example, because the victim is traumatized (resulting in "mental impairment"), trips and falls in response to the defendant's action (resulting in a "bruise" or "abrasion"), or has a stroke or heart attack.

**D.    Section 924(c)'s residual clause is – like the Armed Career Criminal Act residual clause – void for vagueness under *Johnson*, and any distinctions the government makes "are, ultimately, distinctions without a difference."**

Much of the government's purported "response" to the *Johnson* vagueness argument is predicted in our opening pleading, which discusses how the Armed Career Criminal Act's ("ACCA") residual clause and § 924(c)(3)(B) are the same, for purposes of the constitutional vagueness analysis, *see* Def. Mot. at 30-33 (including a government concession to that effect in *Johnson*), addressing Govt. Resp. at 71-72.  We do not repeat those points here.  The remainder of the government's argument is readily dispatched by reference to *Johnson* and *Welch v. United States*, -- U.S. --, 136 S. Ct. 1257 (Apr. 18, 2016), in which the Supreme Court made *Johnson* retroactive, and – in the process – clarified its meaning.

**1.    After *Johnson*, § 924(c)(3)(B)'s residual clause cannot survive a vagueness challenge on an "as-applied" basis.**

The government suggests that § 924(c)'s residual clause may survive a vagueness challenge in this case because it is not vague "as applied" to the statutes at issue here. This argument fails because, as noted above and in our opening memorandum, there is no distinction between the residual clause in § 924(c) and the residual clause in the ACCA for this – or any other – purpose.  *See also United States v. Avila*, 770 F.3d 1100, 1106-07 (4th Cir. 2014) (applying ACCA residual clause case law in context of crime of violence definition identical to § 924(c)(3)(B)).  In *Johnson*, the Supreme Court found the ACCA's residual clause to be facially invalid, without requiring an "as applied" analysis,

even though the Court previously had found certain crimes – *e.g.*, attempted burglary, *James v. United States*, 550 U.S. 192 (2007), vehicular flight, *Sykes v. United States*, 564 U.S. 1 (2011) – were violent felonies under the residual clause.  In response to Justice Alito's dissenting criticism that the Court should have used an "as applied" approach (the same argument that the government levels here), the Court explained that a hopelessly indeterminate statute is unconstitutional even if "there is some conduct that clearly falls within the provision's grasp." 135 S. Ct. at 2561.  The same result should obtain here.

> **2.    The distinctions the government notes between the ACCA and 924(c) residual clauses "are, ultimately, distinctions without a difference."**

As the Sixth Circuit held in discussing the § 16(b) residual clause, which is identical to § 924(c)(3)(B), *see* Def. Mot. at 23, "the government attempts to narrowly characterize *Johnson*'s holding and precedential effect.  These points are . . .  ultimately, distinctions without a difference."  *Shuti v. Lynch,* – F.3d --, 2016 WL 3632539, at *7 (6th Cir. July 7, 2016).  Given the government's concession before the Supreme Court that holding the ACCA residual clause unconstitutional would require also holding § 16(b) unconstitutional, its defense of the identical § 924(c)(3)(B) is awkward at best.  *See* Def. Mot. at 33.  Both the Seventh and Ninth Circuits agree with the Sixth regarding § 16(b), which does not portend well for § 924(c)(3)(B).  *See United States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015).

The government is correct that after *Johnson* a (divided) panel of the Sixth Circuit has held that § 924(c)(3)(B) is not void for vagueness.  *See United States v. Taylor*, 814 F.3d 340 (6th Cir. 2016).  The rationale for *Taylor's* holding, however, as described in

*Shuti*, was that § 924(c) does not require use of the categorical approach. *See Shuti*, 2016 WL 3632539, at *8 ("as district courts have engaged with 18 U.S.C. § 924(c) on the front lines, they have often a 'appl[ied] the substantial risk element … to the *actual conduct in the present case*'") (emphasis added, internal citation omitted).[5]  The Fourth Circuit, by contrast, requires application of the categorical approach (and the ordinary case analysis) in the § 924(c) context.  *See United States v. Fuertes*, 805 F.3d 485, 500 & n.6 (4th Cir. 2015).  The Sixth Circuit precedent therefore may not be applied here.

The Second and Fifth Circuits have recently held that § 16(b) is not void for vagueness.  *See United States v. Gonzalez-Longoria*, -- F.3d --, 2016 WL --, Appeal No. 15-40041 (5th Cir. Aug. 4, 2016) (en banc) (over dissent); *United States v. Hill*, -- F.3d --, 2016 WL 4120667, at *7-12 (Aug. 3, 2016).  For the reasons discussed in our Motion at 28-33, and below, these decisions are also in error.

### 3. The Johnson decision rested on the ordinary case analysis, not the other aspects of the ACCA residual clause cited by the government.

The government's other arguments fail to recognize the centrality of the ordinary case analysis to *Johnson's* vagueness holding.  When the Supreme Court made *Johnson*'s holding retroactive in *Welch*, it reiterated that "[t]he vagueness of the residual clause rests in large part on its operation under the categorical approach."

> The residual clause failed not because it adopted a "serious potential risk" standard but because applying that standard under the categorical approach required courts to assess the hypothetical risk

---

[5] Oddly, *Taylor* itself acknowledges that § 924(c) requires use of the categorical approach and the ordinary case analysis, and relies on other distinctions in denying the vagueness challenge.  *See* 814 F.3d at 378.  We address those below.

posed by an abstract generic version of the offense. In the *Johnson* Court's view, the "indeterminacy of the wide-ranging inquiry" made the residual clause more unpredictable and arbitrary in its application than the Constitution allows. "Invoking so shapeless a provision to condemn someone to prison for 15 years to life," the Court held, "does not comport with the Constitution's guarantee of due process."

*Welch*, 136 S. Ct. at 1262 (internal citations omitted). *See also Johnson*, 135 S. Ct. at 2557 ("Two features of the residual clause" – the ordinary case analysis and the requirement to assess the degree of risk – "conspire to make it unconstitutionally vague"). Thus, it was not the timing of the risk, the comparison to the enumerated crimes, nor any judicial confusion that drove the Supreme Court's decision. *See* Govt. Resp. at 69-76. Three of the circuits to have addressed *Johnson* in the context of the identical § 16(b) context agree. *See Shuti*, 2016 WL 3632593, at *7-9; *Vivas-Ceja*, 808 F.3d at 723; *Dimaya*, 803 F.3d at 1118-19. *But see Gonzalez-Longoria* and *Hill*, *supra*.

The government raises three arguments in its Response that are not addressed in our Motion, and which we address below – that 924(c)'s residual clause is temporally narrower than the ACCA's; that it lacks enumerated offenses like the ones in the ACCA; and that § 924(c)'s residual clause purportedly has not generated the same confusion among the courts as the ACCA's.

*Timing.* The government claims that § 924(c)(3)(B) is temporally "narrower" than the ACCA's residual clause because it looks to the risk of force only "in the course of committing the offense." *See* Govt. Resp. at 72-73. But this simply has no bearing on the threshold inquiry that the Supreme Court determined is impossibly arbitrary: the determination of what the "ordinary case" of the predicate crime looks like at the outset

18

of its commission.  *See Johnson*, 135 S. Ct. at 2557.  If a court cannot hypothesize the "idealized" "typical" scenario in which an offender embarks on a predicate crime, it cannot proceed to determine how an offense is likely to "play[] out," and thus it cannot gauge the riskiness of the probable ensuing conduct.  *Johnson*, 135 S. Ct. at 2558.

Moreover, the Supreme Court's determinations of whether certain crimes were sufficiently risky under the ACCA also focused on the risk *during* the commission of the offense, rather than at some later time after it had ended.  *See, e.g., James*, 550 U.S. at 203-04, 210 (looking to conduct that typically occurs "while the crime [attempted burglary] is in progress," "while the break-in is occurring," and "during attempted burglaries"); *Sykes*, 131 S. Ct. at 2273-74 (same, for crime of vehicular flight from police).  Likewise, the supposedly "typical" conduct the Court found sufficiently risky in the ACCA cases that have now been now repudiated by *Johnson* involved actions that occur during the predicate crime, rather than at some later time.  *See, e.g., James*, 550 U.S. at 211-12 ("An armed would-be burglar may be spotted by a police officer, a private security guard, or a participant in a neighborhood watch program. Or a homeowner . . . may give chase"); *Sykes*, 131 S. Ct. at 2274 (holding that driver's knowingly fleeing law enforcement officer is a violent felony given risk that, during the pursuit, driver might cause an accident or commit another crime to avoid capture).

*Enumerated offenses*.  The Supreme Court's decision in *Johnson* did not hinge on the list of enumerated offenses that precedes the residual clause in the ACCA either.  *See* Govt. Resp. at 73-74.  As the Court recognized, that list bears only on the determination of "how much risk it takes for a crime to qualify as a violent felony." *Johnson*, 135 S. Ct.

19

2558. But a lower court still must first determine the "idealized ordinary case" of the predicate offense before it can even begin to evaluate the type and level of risk presented by that offense. *Id.* at 2557. Because courts cannot answer the threshold question with any certainty, the residual clause is constitutionally void. If a court cannot determine the ordinary case of the predicate offense, then it cannot proceed with the rest of the analysis – whether aided by a list of enumerated offenses or not. In fact, the absence of the enumerated offenses in § 924(c)(B)(3) actually cuts against the government's argument. Their presence in the ACCA at least offered some benchmark for quantifying risk, though it did not suffice to rescue the residual clause. Section 924(c)(3)(B), on the other hand, provides no benchmark. Here, quantifying risk is even more abstract, lacking any point of comparison.

*Confusion.* Finally, the same level of confusion surrounds § 924(c)(3)(B) as surrounded the ACCA's residual clause. The government notes that, before *Johnson*, several dissenting Supreme Court opinions criticized the ACCA's residual clause, yet the Justices have not made similar comments about § 924(c)(3)(B) or § 16(b). *See* Govt. Resp. at 74-75. But cases addressing the residual clauses of § 924(c)(3)(B) and § 16(b) regularly rely on ACCA cases, and vice-versa. In ACCA cases prior to *Johnson*, the Supreme Court treated 18 U.S.C.§ 16(b), a provision identical to § 924(c)(3)(B), as the functional equivalent of the ACCA's residual clause. Thus, in performing or describing "ordinary case" analysis under the ACCA, the Court cited *Leocal v. Ashcroft*, 543 U.S. 1 (2004), in which the Court conducted a similar analysis under § 16(b). *See Begay v. United States*, 553 U.S. 137, 143, 145 (2008); *James v. United States*, 550 U.S. 192, 216,

219, 224 (2007) (Scalia, Stevens & Ginsburg, JJ., dissenting).  *See also Chambers v. United States*, 555 U.S. 122, 133 n.2 (2009) (Alito & Thomas, JJ., concurring) (citing cases under § 16(b) because it "closely resembles ACCA's residual clause").[6]  In short, controversy surrounding the ACCA necessarily reflects difficulties with § 924(c)(3)(B) and § 16(b), even absent the same explicit criticism. And confusion about the meaning of the residual clauses in § 924(c)(3)(B) and §16(b) is subsumed in the confusion surrounding the ACCA.

---

[6] *Leocal* itself, moreover, invoked ACCA precedent in determining whether the predicate offense there was a "crime of violence" under the residual clause of § 16(b).  543 U.S. at 10.

## **CONCLUSION**

It is no doubt difficult, when confronted with the facts of this case, to acknowledge that the statutes governing the charges in the federal indictment cannot capture the harm inflicted.  The defense maintains, however, that the crimes are not properly charged.  The defendant therefore requests that the indictment be dismissed.

Respectfully submitted,

s/ *Sarah S. Gannett*
Sarah S. Gannett
Assistant Federal Public Defender
Federal Public Defender for the District of Arizona
850 W. Adams Street, Suite 201
Phoenix, AZ 85007
602-382-2862
sarah_gannett@fd.org

David I. Bruck
Washington & Lee School of Law
Lexington VA 24450
540-458-8188
bruckd@wlu.edu

Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender, District of Oregon
1070-1 Tunnel Road, Suite 10-215
Asheville, NC 28805
(336) 788-3779
kim_stevens@fd.org

Attorneys for Dylann S. Roof