RESTRICTED MATERIAL

# ORIGINAL

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of South Carolina

# SEALED

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

ONE CELL PHONE, THREE USB DRIVES, ONE IMAGE COPY OF A HARD DRIVE, TWO DVD'S, AND FOUR CD'S, LOCATED AT FBI COLUMBIA FIELD OFFICE

)
)
)
)
)
)

Case No.

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ South Carolina _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____ July 3, 2015 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Mary Gordon Baker _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    4:50 p.m.
                        06/19/2015 ~~9:00 am~~

_____ Mary Gordon Baker _____
*Judge's signature*

City and state:    Charleston, South Carolina

Hon. Mary Gordon Baker, U.S. Magistrate Judge
*Printed name and title*

RESTRICTED MATERIAL    US-017780

RESTRICTED MATERIAL

## ATTACHMENT A

1.     The property to be searched is described as

a.   One FBI-owned Western Digital Hard Drive WXC1E33JAEF1, consisting of an
image of a Western Digital Hard Drive, Serial Number WCC2EHM95070 from a
Gateway Desktop Computer - Serial Number DTGECAA0013300227F3000

b.   One Black USB Drive HP, 4GB , Serial Number 096SMSET18011

c.   One Black USB Drive Adata S102,  64GB, Serial Number 1305093649G64C

d.   One Yellow and Black USB Drive

e.   One Black Garmin Nuvi 205 GPS # 1SB545472

f.   One Black Smart Phone, Huawei 5.0 AF

g.   Two Sony DVD-R ,120 Minutes 4.7GB

h.   Two Imation CD-R, 700MB/80 Minutes

i.   One Memorex CD-R 48X, 700MB/80 Minutes

j.   One Memorex CD-RW 12X, 700MB/80 Minutes

2.     The Media are currently located at FBI Columbia Field Office, 107 Westpark
Boulevard, Columbia SC 29210.

This warrant authorizes the forensic examination of the above media for the purpose of
identifying the electronically stored information described in Attachment B.

RESTRICTED MATERIAL

## ATTACHMENT B

1.    All records on the Media described in Attachment A that relate to violations of 18 U.S.C. § 249 and involve DYLANN STORM ROOF, including:

    a.  Articles and evidence of computer-assisted research into matters of race relations;

    b.  Articles and evidence of computer-assisted research on crimes committed by African Americans against Caucasians.

    c.  Articles and evidence of computer-assisted research on the African Methodist Episcopal (AME) Church, and in particular, such churches in the Charleston, South Carolina area.

    d.  Any information recording ROOF's schedule or travel;

    e.  Information about friends, family and acquaintances who shared ROOF's view of race relations or who may have assisted ROOF in purchasing any firearm or ammunition or carrying out the June 17, 2015, attack at the Emanuel AME Church in Charleston.

    f.  Email or other electronic communications bearing on the attack described above, or any motivation for the same.

    g.  IP addresses during Internet use.

2.    Evidence of user attribution showing who used or owned the Media at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

RESTRICTED MATERIAL    

2:15-cv-00472-RMG   Date Filed 01/30/18   Entry Number 907-4 *SEALED*   Page 4 of 21

RESTRICTED MATERIAL

      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage.

2

RESTRICTED MATERIAL                                        US-017783

RESTRICTED MATERIAL

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

RESTRICTED MATERIAL

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of South Carolina

**SEALED**

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

ONE CELL PHONE, THREE USB DRIVES, ONE IMAGE
COPY OF A HARD DRIVE, TWO DVD'S, AND FOUR
CD'S, LOCATED AT FBI COLUMBIA FIELD OFFICE

)
)
)
)
)
)

Case No.

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:     See Attachment A.

located in the _____ District of _____ South Carolina _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B,

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 249 | Hate Crime Resulting in Death |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI Special Agent Neil T. Power
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 06/19/2015 _____

*Judge's signature*

City and state:  Charleston, South Carolina

Hon. Mary Gordon Baker, U.S. Magistrate Judge
*Printed name and title*

RESTRICTED MATERIAL

RESTRICTED MATERIAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE CELL PHONE, THREE USB DRIVES, ONE IMAGE COPY OF A HARD DRIVE, TWO DVD'S, AND FOUR CD'S, ALL CURRENTLY LOCATED AT FBI COLUMBIA FIELD OFFICE, 107 WESTPARK BOULEVARD, COLUMBIA SC 29210 | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Neil T. Power, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, that is, the digital devices and media described in Attachment A, which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation, and have been since 1999.  As such, I am vested with authority to investigate violations of Federal Law.  I am currently assigned to the FBI Columbia Field Office.  My experience includes but is not limited to, conducting investigations, executing arrest warrants and search warrants, collection of evidence, interviewing witnesses, use of force, firearms and other law enforcement related topics.  I am currently assigned to the White Collar Crimes Squad.  My duties include the

RESTRICTED MATERIAL                                    US-017786

RESTRICTED MATERIAL

investigation of civil rights violations.  During my employment as a Special Agent, I have received training pertaining to civil rights and computer crimes.  I have been the case Agent in past civil rights and computer crime investigations.  I have reviewed physical evidence derived from white collar search warrants and other media, including computer media.   This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

3.      The property to be searched is described in Attachment A, hereinafter collectively referred to as the "Media."  The Media are currently located at the FBI Columbia Field Office, 107 Westpark Boulevard, Columbia SC 29210.

4.      The applied-for warrant would authorize the forensic examination of the Media for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

5.      On the evening of June 17, 2015, nine people were murdered as the result of a shooting at a church located at 110 Calhoun Street, Charleston, South Carolina.  During the investigation of these murders, Law Enforcement Officials ultimately obtained surveillance footage surrounding the incident and identified the shooter as a white male that was driving a dark in color car.   Witnesses to the shooting told Law Enforcement Officials that the shooter, a young white male, stated during the shooting that he was killing black people because they were raping white women.

2

US-017787

RESTRICTED MATERIAL

6.    At approximately 6:00 a.m. on June 18, 2015, law enforcement officials published photographs from the video surveillance and began soliciting assistance from the general public via a tip line. A caller (who identified himself) indicated that the shooter in the video that was released was named DYLANN ROOF. The caller knew ROOF's parents to live in Lexington, South Carolina. The caller further stated that ROOF drove a car with a confederate tag that says "South will rise again." ROOF visited Charleston a lot and always talked about segregation and another Civil War.

7.    Shortly after the above-described call, the tip line received another call from a female identifying herself as ROOF's sister. She indicated the subject she observed in the publicly released surveillance footage was her brother, DYLANN ROOF. She stated DYLANN ROOF had been living in his black Hyundai or Honda. She further stated that their parents live in Columbia and both of her parents had called her "in tears" when they saw the pictures on the news. The parent's names are Bennett Roof (father) and Amy Roof (mother). She indicated that DYLANN ROOF does own a gun as her mother has seen it.

8.    After the call from Amber Roof, the first caller called back in to the tip line and indicated he had taken screen shots of the Facebook pages belonging to DYLANN ROOF. He provided these screen shots to Law Enforcement Officials. The person and vehicle depicted in the images appearing in these screen shots were confirmed to be the same person that appeared in the surveillance footage of these crimes and the same vehicle that the shooter utilized during the commission of these crimes.

9.    Upon learning the aforementioned facts, investigators began ascertaining information regarding licensing and vehicle registrations of DYLANN ROOF. As investigators

3

were obtaining more information, contact was made with DYLANN ROOF's father, Bennett Roof. Bennett Roof first told investigators over the phone that the images he had seen on the news regarding this incident were images of his son, DYLANN ROOF. He subsequently confirmed the identity of the suspect upon viewing the photos in person, during an interview with investigators.

10. On June 18, 2015 at approximately 10:33 a.m., the Shelby Police Department received a call from a motorist indicating the suspect from this incident was traveling west on US Highway 74 through Shelby. This motorist gave a description of the car and suspect. This vehicle was ultimately stopped on US Highway 74. The driver of the car, DYLANN STORM ROOF (DOB: ▮▮▮▮▮), was taken into custody. He was provided Miranda warnings and agreed to be interviewed. During the interview, he stated he formed his views on race after conducting internet research, in part on the subject of black males raping white women.

11. On June 18, 2015, a State of South Carolina, County of Richland search warrant was conducted on DYLANN STORMS ROOF's vehicle, a 2000 Dark in color 4-door sedan, Hyundai Elantra GLS Automobile, VIN#: KMHJF35F8YU964587, bearing South Carolina License Plate #: LGF-330, registered to DYLANN STORM ROOF at ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ The South Carolina Law Enforcement Division seized from the vehicle the various electronic devices and media described in Attachment A, paragraphs 1.b. through 1.j.

12. On June 18, 2015, an interview of Bennett Roof was conducted at his residence, ▮▮▮▮▮▮▮▮▮▮. Bennett Roof relayed to law enforcement his son, DYLANN STORM ROOF, had stayed infrequently at Bennett Roof's residence and utilized

4



RESTRICTED MATERIAL

RESTRICTED MATERIAL

Bennett Roof's desktop computer. Bennett Roof provided law enforcement a desktop computer, which Bennett Roof stated DYLANN STORM ROOF utilized. Bennett consented to law enforcement to search his desktop computer. FBI personnel at the residence did not seize the computer, at Bennett Roof's request, but imaged the computer to the FBI-owned hard drive described in Attachment A1.a.

13.    As described above, the Media is currently in the lawful possession of the FBI. Therefore, while the FBI might already have all necessary authority to examine the media, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Media will comply with the Fourth Amendment and other applicable laws.

14.    The Media is currently in storage at the FBI Columbia Field Office, 107 Westpark Boulevard, Columbia SC 29210.

15.    In my training and experience, I know that the Media have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Media first came into the possession of the FBI.

16.    Based on the foregoing, I believe and submit that there is probable cause to believe the Media will contain evidence of ROOF's racist motivation and intent in the form of articles and internet research about race, and communications with individuals who share ROOF's views on race, as well as whether other friends, acquaintances and family may have been involved with or had knowledge of the Emanuel AME Church attack.

5

RESTRICTED MATERIAL

## TECHNICAL TERMS

17.    Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.  Cell phone:  A wireless telephone (or mobile telephone, or cellular telephone, or cell phone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b.  USB drives, CDs and DVRs are all devices designed primarily to store digital data.

6

RESTRICTED MATERIAL

c.   GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d.   A hard drive is a digital data storage device, often used in a computer to store the computer's operating system, software and other digital data.

e.   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP

7

RESTRICTED MATERIAL

addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    f.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

18.    Based on my training and experience, I know that the Media have capabilities that allow them to serve as devices that store or otherwise contain digital data. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19.    Based on my knowledge, training, and experience, I know that a computer's hard drive can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20.    There is probable cause to believe that things that were once stored on the hard drive may still be stored there, for at least the following reasons:

    a.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.

8

RESTRICTED MATERIAL

Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

9

RESTRICTED MATERIAL

21.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Media because:

a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). With respect to the hard drive, virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices (thumb drives) or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.    Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

10

RESTRICTED MATERIAL

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Media consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

23.  *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve

11

2:15-cr-00472-RMG    Date Filed 01/30/17    Entry Number 907-4 *SEALED*    Page 18 of
2:15-cr-00472-RMG    Date Filed 08/10/16    Entry Number 298-5    Page 18 of 21
RESTRICTED MATERIAL

the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the

court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24.    I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Media described in Attachment A to seek the items described

in Attachment B.

25.    AUSA Eric Klumb has reviewed this affidavit.

Respectfully submitted,

NEIL T. POWER
Special Agent
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn to before me
on June 19, 2015:

HON. MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

12

RESTRICTED MATERIAL

## ATTACHMENT A

1.    The property to be searched is described as

    a.  One FBI-owned Western Digital Hard Drive WXC1E33JAEF1, consisting of an image of a Western Digital Hard Drive, Serial Number WCC2EHM95070 from a Gateway Desktop Computer - Serial Number DTGECAA0013300227F3000

    b.  One Black USB Drive HP, 4GB , Serial Number 096SMSET18011

    c.  One Black USB Drive Adata S102,  64GB, Serial Number 1305093649G64C

    d.  One Yellow and Black USB Drive

    e.  One Black Garmin Nuvi 205 GPS # 1SB545472

    f.  One Black Smart Phone, Huawei 5.0 AF

    g.  Two Sony DVD-R ,120 Minutes 4.7GB

    h.  Two Imation CD-R, 700MB/80 Minutes

    i.  One Memorex CD-R 48X, 700MB/80 Minutes

    j.  One Memorex CD-RW 12X, 700MB/80 Minutes

2.    The Media are currently located at FBI Columbia Field Office, 107 Westpark Boulevard, Columbia SC 29210.

This warrant authorizes the forensic examination of the above media for the purpose of identifying the electronically stored information described in Attachment B.

RESTRICTED MATERIAL

## ATTACHMENT B

1.      All records on the Media described in Attachment A that relate to violations of 18

U.S.C. § 249 and involve DYLANN STORM ROOF, including:

  a.   Articles and evidence of computer-assisted research into matters of race relations;

  b.   Articles and evidence of computer-assisted research on crimes committed by
       African Americans against Caucasians.

  c.   Articles and evidence of computer-assisted research on the African Methodist
       Episcopal (AME) Church, and in particular, such churches in the Charleston,
       South Carolina area.

  d.   Any information recording ROOF's schedule or travel;

  e.   Information about friends, family and acquaintances who shared ROOF's view of
       race relations or who may have assisted ROOF in purchasing any firearm or
       ammunition or carrying out the June 17, 2015, attack at the Emanuel AME
       Church in Charleston.

  f.   Email or other electronic communications bearing on the attack described above,
       or any motivation for the same.

  g.   IP addresses during Internet use.

2.      Evidence of user attribution showing who used or owned the Media at the time

the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,

saved usernames and passwords, documents, and browsing history;

RESTRICTED MATERIAL                           US-017799

RESTRICTED MATERIAL

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage.

2