IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

**FILED UNDER SEAL**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:15-CR-472 |
| | ) | |
| DYLANN STORM ROOF | ) | |

**DEFENDANT'S CONSOLIDATED REPLY TO
GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS TO SUPPRESS**

This pleading replies both to the government's Response to Defendant's Motion to

Suppress Statements and Evidence (Dkt. 298, responding to Dkt. 266), and to its

Response to Defendant's Motion to Suppress Writings (Docket 299, responding to Dkt.

268). The Court has set a hearing on these motions for Thursday, September 1, 2016, at

10:00 a.m. Dkt. 300. In this reply, we address legal and factual issues that do not require

evidentiary development. We request that, following the September 1 hearing, the Court

permit further briefing on the remaining issues.

I.    **The defense submits the motion to suppress statements on the pleadings
       and supporting materials filed to date.**

The defense has no further evidence to present in support of the motion to

suppress statements. We therefore submit this motion on the pleadings and supporting

materials filed to date. It is the defense position that no hearing is required on this

motion.

II.    **The search warrant for the defendant's car did not describe the items to be seized with sufficient particularity, and no other doctrine validates the unconstitutionally overbroad search.**

The government's interpretation of the particularity requirement – authorizing seizure of items "that could aid in the investigation of murder," Dkt. 298 at 17 – strips "particularity" of any meaning, and would leave officers authorized to seize items indiscriminately, in hopes of obtaining evidence. *Cf. Florida v. Wells*, 495 U.S. 1, 4 (1990). Every warrant, of course, seeks items that could aid in the investigation of some crime. The purpose of the particularity requirement is to prevent the kind of "general rummaging" that the government's aid-in-investigation approach implies. *See* Dkt. 266 at 7 (citing *Andresen v. Maryland*, 427 U.S. 463, 480 (1976), and other authority).

Far from being "hypertechnical," the defense simply asks the Court to impose a commonsense and realistic approach, requiring some limit on officers' ability to seize items pursuant to a warrant. Dkt. 298 at 18. This is consistent with *United States v. Fawole*, 785 F.2d 1141 (4th Cir. 1986), and *United States v. Ladd*, 704 F.2d 134 (4th Cir. 1983), cited by the government, both of which involve seizures of items more closely related both to the items described in the warrants and to the crimes at issue. *See Fawole*, 785 F.2d at 1144 (involving seizure of passport, when warrant authorized seizure of documents as evidence of "theft by taking"); *Ladd*, 704 F.2d at 134 (involving seizure of drugs, when warrant authorized seizure of evidence of drug smuggling, packing, distribution and use of controlled substances). The post-hoc rationalization the government offers for the seizures here is different. Dkt. 298 at 19 (offering potential rationales for seizure of various items from the defendant's car).

The good-faith exception cannot save a warrant so facially deficient. *See United States v. Leon*, 468 U.S. 897, 922 (1984) ("[D]epending on the circumstances of the particular case, a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid"). Nor can the other exceptions cited in the government's response. The search incident to arrest exception applies only if the defendant was within reach of the vehicle at the time of the search (which he was not), or if police had reason to believe the vehicle contained evidence of a crime. *Arizona v. Gant*, 556 U.S. 332, 351 (2009).[1] This – and the motor vehicle and plain view exceptions – begs the question raised in the defendant's motion: whether the items seized *were* evidence of a crime, as contemplated by the warrant. *See* Dkt. 266 at 8.

Finally, the government's suggestion that because the defendant had confessed to the crime, every item associated with him must be evidence of the offense, *see* Dkt. 298 at 20 n.10, cannot be correct. The cases cited by the government, which involve a felon and a gang member in possession of firearms, and a drug dealer in possession of a stack of money, are distinguishable from this one, in which the defendant possessed various items that any citizen might commonly possess (a laptop, a flash drive, a GPS), and the police had information only that he had committed murder by shooting. *See* Dkt. 298 (citing cases); *see also* Dkt. 266-1 (defendant's statement to FBI).

---

[1] The same is true for application of the automobile exception: the police must have probable cause to believe that they will find evidence of the crime in the vehicle (or container within the vehicle). *See California v. Acevedo*, 500 U.S. 565, 580 (1982).

Beyond these points, the defense submits this aspect of the motion to suppress evidence on the pleadings and supporting materials filed to date. It is the defense position that no hearing is required on this motion.

### III. The government's Response misses the point of the defense challenge to the search of the Beard/Roof home: it is not that investigators lacked reason to believe the items seized would be present at the location to be searched, but that they lacked reason to believe the items seized would be of evidentiary value.

The government's response emphasizes that police had reason to believe that the electronic items seized from the Beard/Roof home would be present when the location was searched. *See* Dkt. 298 at 21 (describing photographs taken during consent search). This misses the point. The question is not just whether the items would be present, but also whether the items would have evidentiary value. That is, police must have probable cause not just that they may find certain objects – like a camera, computer or USB drive – in a particular location (like the Beard/Roof home), but that they will find *contraband or evidence of a crime* there. *See* Dkt. 266 at 9 (citing cases).

The government offers only that – by the time of the search – the defendant was known to have used a computer. But by the time of the search, investigators knew that the defendant had been living at a different location and only sometimes stayed at the Beard/Roof home; Bennett Roof had told them that the defendant was using the computer at his home; they had seized electronic media from that home; and they had found evidence of the crime on *that* media, as well as media seized from the defendant's car. *See* Dkt. 266-7 at 5, 8-9. As discussed in the defense motion, Dkt. 266 at 10, the warrant established no reason to believe that additional evidence could be retrieved from the

4

electronic media at the Beard/Roof residence.  As a result, the warrant was deficient, and the results of the search should be suppressed.

Beyond this point, the defense submits this aspect of the motion to suppress evidence on the pleadings and supporting materials filed to date.

I.    **The seizure of the defendant's notebook from his cell was unreasonable under the Fourth and Sixth Amendments to the Constitution, as will be established at the evidentiary hearing scheduled for September 1.**

The government urges the Court to deny the defendant's Motion to Suppress Writings because we have not offered sufficient evidence in support of our Sixth Amendment assertions.  But the majority of cases it cites for this proposition depended on evidentiary hearings.  *See* Dkt. 299 at 20-22 (citing cases decided after, or remanding for, evidentiary hearings).  The Court properly has set this matter for evidentiary hearing on September 1, and it should reserve decision pending the taking of testimony and exhibits on that date, and the submission of supplemental briefing thereafter.  *See United States v. Taylor*, 13 F.3d 786, 789 (4th Cir. 1994) ("When material facts that affect the resolution of a motion to suppress evidence seized during a warrantless search are in conflict, the appropriate way to resolve the conflict is by holding an evidentiary hearing after which the district court will be in a position to make findings").

A.  **Jail officials violated the Fourth Amendment in searching the defendant's cell and seizing writings that were neither contraband nor otherwise related to any security interest.**

*United States v. Jeffus*, 22 F.3d 554, 559 (4th Cir. 1994), does not control here. *Jeffus* addressed neither the Supreme Court's assumption that pretrial detainees retain some expectation of privacy, *see Bell v. Wolfish*, 441 U.S. 520, 556-57 (1979), nor

Jeffus's argument based on *United States v. Cohen*, 796 F.2d 20 (2d Cir. 1986). The opinion's perfunctory discussion of the suppression issue begins with the premise (not challenged here) that pretrial detainees have no privacy interest against routine jail searches, and ends in the same paragraph with the assertion that "inherent in imprisonment is the loss of freedom, choice and privacy" – a proposition that ignores the Supreme Court's implication in *Bell* that inmates in pretrial detention may enjoy some greater degree of privacy than those serving sentences. *See Jeffus*, 22 F.3d at 559. It makes no mention at all of *Cohen*. The Fourth Circuit has not issued a precedential opinion on the question of jailhouse searches since.

*Cohen* offers a sensible limit on the power of jail and prosecutorial authorities to coordinate criminal investigations against pretrial detainees. The cases cited in the government's response show that courts take seriously the contention that defendants pending trial require some protection from prosecutors' intrusions in their jail cells. Far from categorically rejecting *Cohen*, the courts analyze the facts of each case to determine whether *Cohen* applies. *See, e.g., United States v. Hogan*, 539 F.3d 916, 924 (8th Cir. 2008) (holding that search of cell was initiated for security reasons related to detainee's threat against jail captain, so that *Cohen* did not apply). No precedent prevents the Court from doing so here.[2]

---

[2] *Whren v. United States*, 517 U.S. 806 (1996), is inapposite. As the Court explained in *Whren*, pretext is relevant in the context of searches conducted in the absence of probable cause, such as administrative searches. 517 U.S. at 811-12 ("[O]nly an undiscerning reader would regard [the administrative search cases] as endorsing the principle that ulterior motives can invalidate police conduct that is justifiable on the basis of probable cause to believe that a violation of law has occurred. In each case we were addressing the validity of a search conducted in the absence of

In asserting that "Defendant has provided no direct or circumstantial evidence from which the Court could conclude that anyone other than jail officials played a role in the seizure" here, the government fails to acknowledge Officer Mosher's multiple law enforcement roles.  In addition to being a member of the Sheriff's Office Criminal Intelligence Unit, and head of the jail's Intelligence Unit, she is also:

- a member of the South Carolina Law Enforcement Division;

- a member of inter-governmental law enforcement task forces, including Project SeaHawk;

- a member of the team that pursued and apprehended the defendant; and

- routinely in contact with the state and federal prosecution teams since.

Given Mosher's role in the search and seizures, not to mention the manner in which the search was conducted, *see* Dkt. 268 at 12-13, the law enforcement motivation here is sufficient to warrant a hearing under the law cited in the parties' briefing.

**B. The seized writings are privileged materials, which must be suppressed in order to protect the attorney-client privilege in the pretrial detention setting.**

The indictment in this matter belies the government's assertion that there are no "substantive indicia that the jail [writings are][3] legal in nature."  Dkt. 299 at 18.  The government has charged the defendant with obstruction of religious exercise and hate crimes involving use of a firearm and resulting in death.  Dkt. 2.  It has sought the death

---

probable cause. Our quoted statements simply explain that the exemption from the need for probable cause (and warrant), which is accorded to searches made for the purpose of inventory or administrative regulation, is not accorded to searches that are not made for those purposes").

[3] We object to the government's characterization of the document as a "manifesto."

penalty against him, alleging aggravating factors that relate to his lack of remorse, attempt to incite violence, racial motivation, and selection of victims. Dkt. 164. And under the Federal Death Penalty Act, in deciding what sentence to impose, the jury is to consider mitigating factors including "the defendant's background, record, or character or any [] circumstance of the offense." 18 U.S.C. § 3592(a)(8). As the government's response indicates, these issues are prominent in the seized writings. Indeed, the writings represent the beginnings of an answer to the question any competent lawyer would have asked a client in the early months of representation: "What do I need to know about you to defend this case?" *See generally* American Bar Association, *Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases*, 36 Hofstra L. Rev. 677 (2008) (describing the breadth of potentially mitigating evidence and variety of means to access it).

The government judges that the seized writings do not take the proper form, or have the proper content, to be considered legal communications between client and counsel. *See* Dkt. 299 at 18. This misunderstands the realities of working with detained, indigent clients,[4] many of whom suffer mental health or cognitive impairments or educational deficits. *See, e.g*., Dep't of Justice, Office of Justice Programs, *Disabilities Among Prison and Jail Inmates, 2011-2012* 3 (2015) ("cognitive disability was the most commonly reported disability among inmates"); Dep't of Justice, Office of Justice Programs, *Mental Health Problems of Prison and Jail Inmates* 1 (2006) (reporting that

---

[4] Nearly all of the cases cited by the government involve white-collar crimes and defendants.

"more than half of all prison and jail inmates had a mental health problem"); Rand

Corporation, *How Effective is Correctional Education, and Where Do We Go From*

*Here?; The Results of a Comprehensive Evaluation* 1 (2014) ("37 percent of individuals

in state prisons had attained less than a high school education," compared to "19 percent

of the general U.S. population age 16 and over;" "literacy levels for the prison population

also tend to be lower than that of the general U.S. population").   It is unrealistic to

expect such clients to label their case work, and maintain it separately from other

property, in the manner that corporate clients working from home or in offices might.[5]

*Cf. Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (noting that *pro se* pleadings are

treated to more liberal standards than counseled pleadings).  Nor should indigent,

detained clients be expected to produce orderly, reasoned outlines, on topics that occur to

*prosecutors* as relevant to a criminal prosecution.  *See* Dkt. 299 at 18.

When a defendant writes on issues relating to his case, intending that writing to be

communicated to his attorney(s), those writings are privileged.  *See United States v.*

*DeFonte*, 441 F.3d 92, 96 (2d Cir. 2006) (citing *Upjohn Co. v. United States*, 449 U.S.

383, 389 (1981)).  There is no disputing that the defendant wrote here on issues relating

to his case.  At the September 1 hearing, the defense intends to demonstrate that the

defendant intended the content of the writing to be communicated to his attorneys.  *See*

Dkt. 268 at 19-20.

---

[5] The government does not cite, nor have counsel have located, any Charleston County Detention
Center policy requiring that detainees label their legal work as such.

The government asserts that the seized document appears intended for publication. Dkt. 299 at 15-16.  This overlooks the fact that the Intelligence Unit returned the document to the defendant, who did *not* thereafter publish it.  Nor has the defendant published any other public statement of the sort the government contends he was making in these writings.  The fact that the defendant held the writings in confidence supports the contention that they were intended to be private, privileged communications.

## CONCLUSION

If a pretrial detainee is to retain any privacy or legal privilege, he must be protected against investigation by law enforcement agents that intrudes upon confidential papers maintained in connection with his case, without any legitimate security rationale. Because the search and seizure here violated the Fourth and Sixth Amendments, the seized documents must be suppressed.

Respectfully submitted,

s/ *Sarah S. Gannett*
Sarah S. Gannett
Assistant Federal Public Defender
Federal Public Defender for the District of Arizona
850 W. Adams Street, Suite 201
Phoenix, AZ 85007
602-382-2862
sarah_gannett@fd.org

David I. Bruck
Washington & Lee School of Law
Lexington VA 24450
540-458-8188
bruckd@wlu.edu

Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender, District of Oregon
1070-1 Tunnel Road, Suite 10-215
Asheville, NC 28805
(336) 788-3779
kim_stevens@fd.org

Attorneys for Dylann S. Roof