IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

**FILED UNDER SEAL**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:15-CR-472 |
| | ) | |
| DYLANN STORM ROOF | ) | |

**DEFENDANT'S RESPONSE TO GOVERNMENT MOTION IN LIMINE
TO PRECLUDE CERTAIN MITIGATING FACTORS**

On August 24, 2016, pursuant to this Court's order, the defendant disclosed a list of proposed mitigating factors not related to mental health. Dkt. No. 326. The disclosure was intended to provide notice to the government of some of the issues that might be raised in the defense penalty presentation, in order to permit the government to prepare its rebuttal case. The government subsequently availed itself of this pretrial notice by advising the defense that it had retained a responsive expert, retired Bureau of Prisons warden and administrator David Berkebile, to testify concerning "on correction facilities, inmate treatment, and BOP issues" to rebut three of the mitigating factors included in the defense notice. *See* Letter from AUSA Julius N. Richardson to David Bruck, September 9, 2016, attached as Exhibit 1. However, the government also seeks to convert the partial notice of mitigating factors into an opportunity to vet the defendant's case in mitigation long before trial. Thus, in Dkt. No. 359 (filed under seal), the government argues that several factors suggested by the defense are not authorized by law. This runs contrary to

1

the understanding of the Court and the parties that the Court-ordered disclosure of mitigating factors was not intended to be binding, and that the mitigating factors ultimately submitted for the sentencing jury's consideration would depend on the evidence adduced during the penalty phase.

The defense has not decided (and cannot decide until months from now, when the evidence has been presented) whether the factors complained of – numbers 2, 3, 4, and 8 from our disclosure – will be offered at all, or will be offered as pled. Likewise, the Court does not now have sufficient information to make an informed ruling. This is because each challenged potential mitigating factor depends on both the aggravating and mitigating evidence that may be adduced at trial and at the penalty phase.

As currently formulated, the mitigating factors which the government would have the Court categorically exclude in advance of trial are these:

2. Dylann Roof has offered to plead guilty as charged and to be sentenced life in prison without the possibility of release, knowing that the effect of this guilty plea would be that he would die in prison.

3. Due to his small size, youth, and notoriety, a sentence of life in prison without the possibility of release will be especially onerous for Dylann Roof, because the danger of violence he will face from other inmates will require that he serve his life sentence under isolating conditions of confinement.

4. A sentence of life in prison without the possibility of release will be especially onerous for Dylann Roof because he will serve his entire life sentence in fear of being targeted by other inmates.

8. In light of Dylann Roof's youth, a sentence of life in prison without the possibility of release offers the possibility of redemption and change.

2

Dkt. No. 326.

The government's objections to these factors are both premature and – to the extent that any determination can be made now – without merit.  Although it is difficult to argue the merits of the government's claims in the abstract, we believe our position sufficiently supported in the law to defend it.  In that regard, we note – as discussed further below – that each of the mitigating factors we have noticed bears in some respect on "factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence."  18 U.S.C. § 3592(a)(8).

## I. Under the circumstances of this case, including the government's case in aggravation, the Court would not abuse its discretion in admitting the defendant's offer to plead guilty in exchange for a life-without-release sentence.

The defense acknowledges the Fourth Circuit's holding in *United States v. Caro*, 597 F.3d 608, 635 (2010), that the district court did not abuse its discretion in excluding Caro's offer to plead guilty in exchange for a life sentence because "Caro's letter was calculated to persuade the government not to seek the death penalty, rather than express[] unqualified remorse."  The Court did not rule that such offers are inadmissible as a matter of law, however.[1]  Here, whether to admit the defendant's offer to plead guilty to all counts in the indictment – an offer first made in open court at the defendant's

---

[1] Federal Rule of Evidence 410 protects the defendant's interests, not the government's, and may be knowingly, intelligently, and voluntarily waived, like any other right or privilege.

3

arraignment on July 31, 2015, remains a matter that is at the very least entrusted to this Court's discretion. *Id.*

The jury is capable of assessing, and ought to be able to evaluate, the weight of the defendant's offer. *See United States v. Williams*, 2014 WL 2436215, at *2 (D. Haw. May 30, 2014). (denying government's motion to preclude mitigating factors based on defendant's plea offer because "[t]hat [the] Defendant offered a conditional guilty plea may show some degree of acceptance of responsibility, and it is ultimately up to the jury — not this court — to determine how such fact should be weighed in determining Defendant's sentence."). Nor is the time-consuming and confusing "mini-trial" anticipated by the government a real concern here. Many of the facts relevant to this issue – including the defendant's prompt and full confession – will be in evidence for other reasons by the time this factor is addressed. So will whatever evidence the government can adduce to support its nonstatutory aggravating factor that the defendant has demonstrated a lack of remorse. Other facts may develop during trial that also support inclusion of this factor.[2] For present purposes, it is clear that the Court need not and should not address, in advance of trial, the government's motion to bar this one item of potentially favorable evidence bearing on the defendant's demonstrated willingness to accept full responsibility and stringent punishment for his crimes.

---

[2] Among these may be survivor or victim family member testimony. The jury should know of the defendant's willingness to spare these witnesses the additional ordeal and trauma of testifying. At a minimum, the jury should not be left under the false and prejudicial impression that it was the defendant, rather than the prosecution, who insisted on going to trial.

**II.     In contrast to claims in other cases that prison generally is severe punishment, factors 3 & 4 are intended to address specific aspects of the defendant's crime, physical characteristics, and personal beliefs – and the reactions of others to those facts – that will make a prison sentence especially difficult for him.**

The government analogizes the defendant's proposed mitigating factors 3 & 4 to generic claims advanced in other cases to the effect that prison is a harsh environment. *See* Dkt. No. 359 at 6-7 (citing cases). A few jurisdictions, including the Seventh Circuit and Virginia, have precluded such "harsh environment" mitigating factors on the basis that they are not adequately tied to the circumstances of the offense or the defendant's background or characteristics, and could theoretically be argued in any case. *See, e.g., United States v. Johnson*, 223 F.3d 665, 675 (7th Cir. 2000); *Schmitt v. Kelly*, 189 Fed. Appx. 257, 263-66 (4th Cir. 2006) (holding that state court's exclusion of prison security evidence did not warrant federal habeas relief as an unreasonable application of Supreme Court precedent so as to warrant habeas relief, and that the facts did not support the defendant's due process denial-of-rebuttal claim). Even these cases are outnumbered by decisions upholding the right of capital defendants to rebut claims of future dangerousness by expert risk assessment testimony grounded in the violence-reduction features of modern high-security correctional facilities. *See, e.g.*, *United States v. Troya*, 733 F.3d 1125, 1134-35 (11th Cir. 2013); *United States v. Umana*, 2010 WL 1688441, at *3 (W.D.N.C. Apr. 26, 2010); *United States v. Wilson*, 493 F. Supp. 2d 491, 508-509 (E.D.N.Y. 2007); *United States v. Sampson,* 335 F. Supp. 2d 166, 226-228 (D. Mass. 2004). But the Court need not enter into this legal thicket, because the prison-related mitigating factors proposed here are clearly grounded in specific facts about the

5

defendant himself – his small size, his youth, and his notoriety – which will make service of a life sentence especially onerous for him.[3] They are therefore authorized by the Eighth Amendment and the FDPA, and they should be included. *See Lockett v. Ohio*, 438 U.S. 586, 604 (1978); 18 U.S.C. § 3592(a)(8). At a minimum, the Court should not exclude these mitigating factors in advance of trial, based on nothing more than a tentative one-line notice of the issues that the defense expects to emerge at trial and sentencing.

### III. Particularly in the context of this case, the defendant's capacity for redemption is a relevant and important concept which the jury should be able to consider.

The government is incorrect that the capacity for redemption and change is (a) the same thing as youth, or (b) a generic characteristic. The defendant's youth as a mitigating factor addresses his developmental immaturity. *See generally Roper v. Simmons*, 543 U.S. 551 (2005). It is well understood that the adolescent brain does not fully mature until around age 25, and that this impacts thought and behavior in the present. *See Gall v. United States*, 552 U.S. 38, 58 (2007) (referencing studies); *Roper*, 543 U.S. at 569-70. The capacity for redemption and change reflects the possibility that his youth creates for his future.

---

[3] As the Court may be aware, evidence of this has emerged during the defendant's pretrial confinement, during which he has been held on virtual lockdown, and – despite that – has been assaulted by another inmate.

6

This capacity is not a generic characteristic. At a minimum, as applied here, it is specific to a subset of capital defendants who are under age 25.[4] The Supreme Court has recognized the constitutional importance of mitigation that relates to such subsets of defendants. *See, e.g.*, *Johnson v. Texas,* 509 U.S. 350, 368 (1993) ("The relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside.") Indeed, in *Roper*, the capacity for redemption and change was an underpinning of the Court's decision to categorically forbid the application of the death penalty to juvenile defendants. *See* 545 U.S. at 570 (noting that "a greater possibility exists that a minor's character deficiencies will be reformed").

Redemption is a commonly-used term in this context. Other federal courts have submitted redemption as a mitigating factor, or have submitted factors like it. In fact, the term was used in *Roper*, *see* 543 U.S. at 571, and the concept was echoed in *Miller v. Alabama*, 132 S.Ct. 2455 (2012). Justices Sotomayor and Ginsburg recently used the term again in their concurring memorandum opinion in *Adams v. Alabama*, 136 S. Ct. 1796, 1800 (2016), referring to "this Court's repeated exhortation that the gruesomeness of a crime is not sufficient to demonstrate that a juvenile offender is beyond redemption".

Although the term may have religious roots, the first definition for "redemption" provided in the online version of the Merriam-Webster dictionary is "the act of making

---

[4] We anticipate that aspects of the defendant's character may bear on the likelihood of redemption and change, as well, but those are harder to state without knowing what the testimony will be at trial and without implicating mental health evidence.

7

something better or more acceptable." http://www.merriam-webster.com/dictionary/redemption.  Even if the word were deemed to have predominantly religious resonance, however, its use need not be proscribed at trial. Although courts tend to prohibit appeals by counsel based on the defendant's religion or on a particular religious doctrine, the requirement that jurors fashion "a reasoned *moral* response to the defendant's background, character and crime," *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring) (emphasis in original), implies that courts must not prevent capital defendants and their counsel from employing the moral vocabulary of the jury and of the larger society.  *See Hill v. State,* 263 Ga. 37, 46 (1993) (holding that the parties "'may allude to such principles of divine law relating to transactions of men as may be appropriate to the case.' *Conner v. State*, 251 Ga. 113, 122-123 (1983)."  *See also* Joseph F. Anderson, Jr., *The Lost Art: An Advocate's Guide to Effective Closing Argument*, 57, 165-171, 247 (S.C. Bar CLE Division, 1998) (providing numerous examples of effective and ethical jury arguments drawn from Biblical passages and precepts).

## CONCLUSION

For the foregoing reasons, the Court should overrule the government's objections to the defendant's proposed mitigating factors. At a minimum, the defense submits that the Court should make no such ruling before the aggravating and mitigating evidence to which these factors refer is presented at trial.

Respectfully submitted,

s/ *Sarah S. Gannett*
Sarah S. Gannett
Assistant Federal Public Defender
Federal Public Defender for the District of Arizona
850 W. Adams Street, Suite 201
Phoenix, AZ 85007
602-382-2862
sarah_gannett@fd.org

David I. Bruck
Washington & Lee School of Law
Lexington VA 24450
540-458-8188
bruckd@wlu.edu

Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender for the
District of Oregon
1070-1 Tunnel Road, Suite 10-215
Asheville, NC 28805
336-788-3779
kim_stevens@fd.org

Attorneys for Dylann S. Roof