# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Criminal No. 2:15-472-RMG |
| | ) | |
| v. | ) | **ORDER** |
| | ) | **UNDER SEAL** |
| Dylann Storm Roof. | ) | |
| | ) | |

This matter is before the Court on the Government's motion in limine to preclude certain mitigating factors (Dkt. No. 359). For the reasons set forth below, the Court grants in part and denies in part the motion.

## I. Background

Defendant Dylann Roof is accused of killing nine persons and attempting to kill three other persons at the Emanuel African Methodist Episcopal Church ("Mother Emanuel") in Charleston, South Carolina on June 17, 2015. The Government has served notice of intent to seek the death penalty, and, on July 26, 2016, the Court ordered pretrial disclosure of Defendant's proposed non-mental-health-related mitigating factors. (Dkt. No. 281.) On September 7, 2016, the Government moved to preclude the following factors as beyond the scope of permissible mitigation:

> 2. Dylann Roof has offered to plead guilty as charged and to be sentenced life in prison without the possibility of release, knowing that the effect of this guilty plea would be that he would die in prison.
>
> 3. Due to his small size, youth, and notoriety, a sentence of life in prison without the possibility of release will be especially onerous for Dylann Roof, because the danger of violence he will face from other inmates will require that he serve his life sentence under isolating conditions of confinement.
>
> 4. A sentence of life in prison without the possibility of release will be especially onerous for Dylann Roof because he will serve his entire life sentence in fear of being targeted by other inmates.
>
> 8. In light of Dylann Roof's youth, a sentence of life in prison without the possibility of release offers the possibility of redemption and change.

## II. Legal Standard

"[T]he Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of case, not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (footnotes omitted). The Federal Death Penalty Act codifies that constitutional rule. *See* 18 U.S.C. § 3592(a)(8). "This wide berth for the admission of mitigating evidence, however, does not mean that the defense has *carte blanche* to introduce any and all evidence that it wishes." *United States v. Lighty*, 616 F.3d 321, 363 (4th Cir. 2010) (internal quotation marks omitted). "The district court has the authority to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." *Id.* (internal quotation marks omitted). But the Federal Death Penalty Act does not limit consideration of mitigating factors to only those factors specific to the defendant. *United States v. Caro*, 433 F. Supp. 2d 726, 728 (W.D. Va. 2006), *aff'd in part, rev'd in part*, 461 F. Supp. 2d 459 (W.D. Va. 2006).[1] But the district court should exclude arguments that endorse jury nullification of federal law by arguing against the death penalty in general. *See, e.g.*, *United States v. Gabrion*, 719 F.3d 511, 522 (6th Cir. 2013) (en banc); *United States v. Johnson*, 223 F.3d 665, 675 (7th Cir. 2000).

## III. Discussion

Defendant claims his notice of mitigating factors was intended only to permit the government to prepare its rebuttal case, and "to convert the partial notice of mitigating factors into an opportunity to vet the defendant's case in mitigation long before trial" is "contrary to the

---

[1] The Government did not object to the Magistrate Judge's order on this point. *See* Government's Objections to Orders of Magistrate Judge, *Caro*, Crim. No. 1:06-1 (W.D. Va. June 3, 2006).

understanding of the Court and the parties." (Dkt. No. 427 at 1–2.) When seeking disclosure of mitigating factors, however, the Government stated that it sought disclosure "in advance of the motion in limine deadline (September 1)" to litigate "the propriety of the factors" before trial. (Dkt. No. 216 at 5.) The Government's motion therefore is not, as Defendant argues, unexpected or "contrary to the understanding of the Court and the parties." The Court recognizes Defendant's disclosure of mitigating factors is not binding, in that Defendant may choose not to argue some disclosed factors and that Defendant may choose to argue some factors not disclosed. Nonetheless, it is appropriate for the Court to rule on the legal challenges made to those factors Defendant did disclose. Defendant is in no way prejudiced by pretrial adjudication of the Government's challenges to the disclosed mitigating factors. Had Defendant not disclosed these mitigating factors until the sentencing proceeding, the Court's ruling would have been the same but Defendant would have had no time to adjust his trial strategy accordingly.

### A.   Defendant's conditional offer to plead guilty

Defendant has repeatedly offered to plead guilty if the Government would agree not to seek the death penalty, and he proposes that offer as his second non-statutory mitigating factor. (Dkt. No. 326 at 2.) The Government argues a conditional offer to plead guilty is a negotiation tactic, not an acceptance of responsibility and, therefore, not an appropriate mitigating factor. The Government's position relies heavily on the Fourth Circuit's decision in *United States v. Caro*, 597 F.3d 608 (4th Cir. 2010). In *Caro*, the Fourth Circuit affirmed the district court's exclusion of evidence of the defendant's conditional offer to plead guilty in exchange for a life sentence. 597 F.3d at 634–35. That affirmance merely confirms the district court's broad discretion when ruling on the relevance of evidence—the Fourth Circuit did not hold district courts *must* exclude evidence of offers to plead guilty conditioned on an agreement not to seek the death penalty. To the contrary, this Court must exercise its discretion to make a decision appropriate to the facts of

*this* case. Defendant has offered—repeatedly and publicly—to plead guilty, before the jury panel was sworn and even before the Government decided to seek the death penalty, and those offers were widely reported in national and regional media. *See, e.g.*, Alan Blinder, *Man Charged in Charleston Massacre Will Face Two Death Penalty Trials*, N.Y Times, May 25, 2016, at A11. The Government asks the Court to exclude information that is both commonly known and undisputed. The Court considers that an attempt to do so would be far more likely to confuse the jury than simply allowing the jury to weigh Defendant's argument and the Government's rebuttal.

Further, Defendant has unambiguously claimed responsibility for the charged conduct:

[FBI Agent Stansbury] MS: But, I, I guess what I'm asking, you, you've said it, I just want to, are you guilty of this?

[Defendant Dylann Roof] DR: Yes

MS: Would you consider this a crime?

DR: Yes

MS: And you're guilty? Say it again.

DR: (laughs) I am guilty. We all know I'm guilty.

(Dkt. No. 266-1 at 50.) The Government has argued for admission of the confession excerpted above, presumably to present it to the jury. To suggest that mention of Defendant's offer to plead guilty would confuse or mislead a jury shown a video of the Defendant stating, "I am guilty. We all know I'm guilty," strains credulity. Of course, how much mitigating weight, if any, should be accorded to his acceptance of responsibility is a matter for the jury.

The Court therefore denies the motion to exclude Defendant's second mitigating factor.

### B.     Conditions of confinement

Defendant disclosed two mitigating factors related to the conditions of confinement he would expect if sentenced to life imprisonment: He claims he would serve a life sentence in fear

of being targeted by other inmates and, because of that targeting, he would serve his sentence under isolating conditions of confinement. (Dkt. No. 326 at 2.) In essence, Defendant suggests life imprisonment is a sufficiently onerous punishment for his crimes because life imprisonment will be particularly onerous for him. The Government argues this is not a proper argument in mitigation, and the Court agrees. It is inappropriate to ask the jury to imagine conditions at some imaginary prison. If Defendant made this argument, the Government would have a right to present rebuttal evidence. To that end, the Government has already noticed David Berkebile as a rebuttal expert witness. (Dkt. No. 427-1.) His expected expert testimony covers the Bureau of Prison's "inmate classification and designation process, both initial and ongoing reevaluations; the services, programs, and conditions of confinement in correctional facilities; special confinement; and restrictive housing." (*Id.*) Defendant would presumably seek to rebut that expert testimony, likely with his own expert. But these details of prison administration are not a proper matter for a capital sentencing jury. *See Schmitt v. Kelly*, 189 Fed. App'x 257, 263–66 (4th Cir. 2006) (holding the claim that "general evidence of prison life and prison security features constitute relevant mitigating evidence . . . is without merit"); *United States v. Johnson*, 223 F.3d 665, 674–75 (7th Cir. 2000) ("The argument that life in prison without parole, especially if it is spent in the prison's control unit and thus in an approximation to solitary confinement, sufficiently achieves the objectives aimed at by the death penalty to make the latter otiose is an argument addressed to legislatures, not to a jury."). Further, it is entirely speculative whether Defendant, who faces South Carolina capital murder charges, would serve a federal life sentence in a Bureau of Prisons facility. *Cf. United States v. Wilson*, 493 F. Supp. 2d 491, 508 (E.D.N.Y. 2007) ("Testimony about a specific institution in which [the defendant] is unlikely to be housed would be unduly speculative and is likely to confuse the issues or mislead the jury." (footnote omitted)).

The Court therefore grants the motion to preclude as a mitigating factor evidence in support of speculation about Defendant's future conditions of confinement if sentenced to life imprisonment.

## C.     Defendant's youth

Defendant was barely 21 years old at the time of the charged offense. (Dkt. No. 326 at 1.) The Government concedes Defendant may argue his youth as a factor in mitigation. (*See* Dkt. No. 359 (not challenging youth as a mitigating factor).) But, according to the Government, he may not argue his youth allows the possibility of his future change and redemption. (*Id.* at 7–9.) The Government's argument is unpersuasive because the possibility of growth is a possible reason to consider youth as a mitigating factor. The characteristics of youth might contribute to a youthful defendant's criminal conduct, but that mitigates only if those characteristics might change in time—otherwise, they would just be an incorrigible propensity for criminality. *Cf. Graham v. Florida*, 130 S. Ct. 2011 (2010) (holding a sentence of life imprisonment without parole for a juvenile nonhomicide offender "is not appropriate in light of a juvenile nonhomicide offender's capacity for change and limited moral culpability"); *Workman v. Kentucky*, 429 S.W.2d 374, 378 (Ky. 1968) (stating, with regard to a 14 year old defendant, "incorrigibility is inconsistent with youth"). The extent to which that is persuasive regarding this particular Defendant—an adult charged with multiple coldly calculated homicides—is a matter for the jury.

The Government argues redemption is "a religiously based term" and "an improper attempt to interject religious canon as a mitigating factor." (Dkt. No. 359 at 7–8.) The Court is aware "redemption" is a term often used in Christian theology, but the Government errs in viewing "redemption" as a necessarily religious concept. "Redemption" is the nominalization of "redeem," which in the sense relevant here means "to make amends for; to atone for." Redeem, New Webster Dictionary (1971). The word comes from the Latin *redimo*, meaning "to buy back" or "to ransom,"

and it has come to mean "to make amends" or "to atone" likely through metaphorical use in Christianity. But that historical use should not bar Defendant from arguing his youth provides him opportunity for change. If Defendant actually attempts to make an improper religious argument, the Government may then object. The Court sees nothing in Defendant's notice of mitigating factors suggesting an intent to do so.

The Government also argues that a youthful defendant's potential for redemption or change is a general policy argument equally applicable to all capital defendants. That is untrue. First, most capital defendants were not 21 years old at the time of arrest. *Time on Death Row*, Death Penalty Information Center, http://www.deathpenaltyinfo.org/time-death-row (capital defendants' average age at arrest was 28 as of December 31, 2009). Again, the mitigating weight, if any, of Defendant's age is a matter for the jury. Second, and more importantly, the Government argues against a strawman. The Court has every confidence Defendant's counsel will relate any argument about the possibility for redemption or change to facts about Defendant adduced during trial and sentencing.

The Court therefore denies the motion to exclude Defendant's eighth mitigating factor.

## IV.   Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the Government's motion in limine (Dkt. No. 359). The motion is denied regarding Defendant's second and eighth proposed mitigating factors, and granted regarding Defendant's third and fourth proposed mitigating factors.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

October 14, 2016
Charleston, South Carolina

-7-