```
 1                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF SOUTH CAROLINA
 2                             CHARLESTON DIVISION

 3    UNITED STATES OF AMERICA        :
                                      :
 4              vs.                   :
                                      :
 5    DYLANN STORM ROOF               :    2:15 - CR - 472

 6

 7            Telephone conference in the above matter held on

 8    Tuesday, October 25, 2016, commencing at 11:30 a.m., before

 9    Hon. Richard M. Gergel, in camera, in the United States

10    Courthouse, 83 Meeting St., Charleston, South Carolina,

11    29401.

12

13   APPEARED VIA TELEPHONE ON BEHALF OF THE UNITED STATES:

14        JAY N. RICHARDSON, ESQ., 1441 Main St., Columbia, SC.
          NATHAN WILLIAMS, ESQ., P.O. Box 978, Charleston, SC.
15        STEPHEN CURRAN, ESQ. and MARY J. HAHN, ESQ.,
          601 D St. NW, Washington, DC.
16

17   APPEARED VIA TELEPHONE ON BEHALF OF THE DEFENSE:

18         DAVID I. BRUCK, ESQ., Washington & Lee School of Law,
           Lexington, VA.
19         KIMBERLY C. STEVENS, ESQ., 1070-1 Tunnel Rd.,
           Asheville, NC.
20         SARA S. GANNETT, ESQ., 850 W. Adams St., Phoenix, AZ.

21

22

23            REPORTED BY DEBRA L. POTOCKI, RMR, RDR, CRR
            Official Court Reporter for the U.S. District Court
24                           P.O. Box 835
                         Charleston, SC  29402
25                          843/723-2208
```

| | | |
|---|---|---|
| 11:31:44AM | 1 | THE COURT: For the record, this is the matter of |
| | 2 | United States versus Roof, 2:15-472. |
| 11:31:52AM | 3 | Could counsel identify themselves for the record, |
| | 4 | beginning with the Government counsel. |
| 11:31:58AM | 5 | MR. RICHARDSON: Yes. This is Jay Richardson, Your |
| | 6 | Honor. I've got Nathan Williams, Steve Curran, Mary Hahn, and |
| | 7 | hopefully in just a moment, Rich Burns, also on the phone. |
| 11:32:07AM | 8 | THE COURT: For the defense? |
| 11:32:10AM | 9 | MR. BRUCK: David Bruck for the defense; I have Kim |
| | 10 | Stevens in the room with me. |
| 11:32:15AM | 11 | MS. GANNETT: Your Honor, this is Sarah Gannett; I'm |
| | 12 | also on the phone. |
| 11:32:17AM | 13 | THE COURT: Good. Have all counsel received the |
| | 14 | letter from Dr. Dietz dated today, regarding his experience |
| | 15 | this morning at the jail? |
| 11:32:32AM | 16 | MR. RICHARDSON: Yes, Your Honor. |
| 11:32:33AM | 17 | THE COURT: Mr. Bruck? |
| 11:32:34AM | 18 | MR. BRUCK: Yes, sir, we have. |
| 11:32:35AM | 19 | THE COURT: Okay. For the record, that is document |
| | 20 | No. 503, which we have filed under seal. I would like the |
| | 21 | parties' response to what they would recommend the Government |
| | 22 | do with this development. |
| 11:32:52AM | 23 | Government first. |
| 11:32:55AM | 24 | MR. RICHARDSON: Your Honor, the Government's |
| | 25 | position is sort of twofold. First, we believe the Court's |

|              |    |                                                            |
|--------------|----|------------------------------------------------------------|
|              | 1  | order ought to govern, that the defendant in this case doesn't |
|              | 2  | get to dictate or control the process under which he is    |
|              | 3  | examined.  And so we think that's a sort of unfortunate choice |
|              | 4  | that he's made, but it's a choice that he has made to refuse |
|              | 5  | to cooperate and ignore the Court's order.                 |
| 11:33:20AM   | 6  | Secondarily, if the Court does consider acceding to the    |
|              | 7  | defendant's demands, then the Government needs to have an  |
|              | 8  | opportunity to speak with Dr. Dietz about, you know, the   |
|              | 9  | conditions the Court is considering changing or imposing upon |
|              | 10 | him, to determine whether those conditions would, and what |
|              | 11 | degree, would limit the effectiveness of any exam that's   |
|              | 12 | given.                                                     |
| 11:33:51AM   | 13 | Obviously we have not spoken with Dr. Dietz, you know,     |
|              | 14 | since this morning.  Since last night.  So in that regard  |
|              | 15 | we're at a little bit of a disadvantage here.              |
| 11:34:02AM   | 16 | THE COURT:  Mr. Bruck.                                     |
| 11:34:04AM   | 17 | MR. BRUCK:  Yes, sir.  Well, I think the Court should      |
|              | 18 | know that, as the Court will recall, we originally requested |
|              | 19 | recording, we originally requested a videotape for the     |
|              | 20 | defendant's protection.  On reflection, we changed that    |
|              | 21 | request to an audio and opposed a videotape; of course, the |
|              | 22 | Court ruled that the video should be taken.                |
| 11:34:30AM   | 23 | I have to say that we are not completely surprised.  We    |
|              | 24 | had hoped that the defendant would accede to the procedure, |
|              | 25 | and thought there was some reason that he might, because he |

|  |  |
|---|---|
| 1 | tends to be compliant in the face of authority, despite some |
| 2 | confounding psychological factors. |
| 11:34:54AM 3 | You should know that we have conducted our mental health |
| 4 | evaluation in the booth, because the defendant does not |
| 5 | tolerate contact visits, for reasons we believe have to do |
| 6 | with his neurodevelopmental and psychiatric deficits. |
| 11:35:19AM 7 | He has long expressed to us, and I informed the Government |
| 8 | of this when I met with the death penalty committee in |
| 9 | Washington on February 1st, that he believes that his face is |
| 10 | deformed, that his forehead is malshaped, is misshapen. And |
| 11 | he has a -- what seems to us to be a pathological fear of |
| 12 | people seeing his face. He devotes great attention to |
| 13 | controlling any photographs that are taken of his face. And |
| 14 | that photographs that he took himself, he selected out of |
| 15 | hundreds of photos that he took. The famous bowl haircut has |
| 16 | to do with his covering his forehead so that people can't see |
| 17 | what his forehead looks like. |
| 11:36:14AM 18 | The Court should also be aware that when our |
| 19 | neuropsychologist attempted to use a photographic device to |
| 20 | map his face, the defendant refused to allow that to be done, |
| 21 | even when it was explained to him that it wasn't going to |
| 22 | actually produce photographs, but merely a computer mapping |
| 23 | system, it was still intolerable for his face to be |
| 24 | photographed. |
| 11:36:45AM 25 | So under all those circumstances, I think what we are |

|  |  |
|---|---|
| 1 | dealing with is not willful noncompliance, but actual |
| 2 | symptomatology of a mental disorder. |
| 11:36:58AM 3 | THE COURT: Mr. Bruck, did the defendant complete his |
| 4 | evaluation for the defense expert in the noncontact visiting |
| 5 | booth? |
| 11:37:08AM 6 | MR. BRUCK: Yes. I should say that he has been seen, |
| 7 | to a limited extent, for physical exams, in a contact setting. |
| 8 | But he has increasingly made clear that this was intolerable, |
| 9 | and that he wasn't going to cooperate with us, to the extent |
| 10 | that our experts wanted to see him in a contact setting. And |
| 11 | at least since the late spring, I don't believe we have had |
| 12 | any contact visitation, although all of our experts would have |
| 13 | much preferred to conduct their evaluations in a contact |
| 14 | setting, but that simply has not been possible. |
| 11:37:48AM 15 | So I tell the Court this, and the Government, both to |
| 16 | explain that I think what we are running into is not defiance, |
| 17 | but actually the subject matter that, you know, that merits |
| 18 | the pretrial mental health evaluation. And also to |
| 19 | demonstrate that what we have here is not willful disobedience |
| 20 | to the Court's order, but a real lack of capacity to tolerate |
| 21 | the stress that comes with the conditions that have been set |
| 22 | by the Court. |
| 11:38:22AM 23 | THE COURT: Let me ask you this. The original |
| 24 | discussion regarding the taping, whether video or audio taping |
| 25 | of this, was made at the defense request. Do you now, in |

|  |  |
|---|---|
| 1 | light of your client's objections to audio or videotaping, |
| 2 | withdraw that request? |
| 11:38:39AM 3 | MR. BRUCK: We do. |
| 11:38:41AM 4 | THE COURT: Okay. Now, I want the Government to know |
| 5 | that I have, you know, obviously had dozens of people |
| 6 | evaluated, in which I have returned to me a written report. I |
| 7 | don't see a videotape or anything like that. Recognizing the |
| 8 | prize here is, the purpose here, is to obtain the psychiatric |
| 9 | evaluation, does the Government seriously object to not audio |
| 10 | and videotaping this if, in fact, it produces the desired |
| 11 | psychiatric evaluation? |
| 11:39:21AM 12 | MR. RICHARDSON: I think it's difficult for us to |
| 13 | answer that question without speaking with Dr. Dietz. I am -- |
| 11:39:28AM 14 | THE COURT: Let me say this. I am a little squirrely |
| 15 | about you guys, now that he's had contact with Roof, having |
| 16 | y'all communicate with him. He has provided me his phone |
| 17 | number, and I am intending to call him to ask him that very |
| 18 | question, which is, can he conduct a valid evaluation in a |
| 19 | noncontact booth. I intend to ask him that question before I |
| 20 | rule. |
| 11:39:54AM 21 | And so other than that, if he responds that he can -- he |
| 22 | believes he can conduct a valid evaluation, does the |
| 23 | Government object to proceeding without audio or video |
| 24 | recording? |
| 11:40:11AM 25 | MR. RICHARDSON: No, as long as he is able to conduct |

|  |  |
|---|---|
| 1 | the tests that he has indicated are necessary, as well as the |
| 2 | clinical evaluation. And I think it is also important to |
| 3 | advise him of what a noncontact booth is in this context, |
| 4 | which I understand, you know, to require the use of a |
| 5 | hand-held phone to communicate. |
| 11:40:38AM 6 | THE COURT: Yeah, he seems to know what it is; he |
| 7 | writes me a letter about it. I have the impression that |
| 8 | Dr. Dietz, this is not his first time inside of a secure |
| 9 | facility. |
| 11:40:52AM 10 | MR. RICHARDSON: We ultimately defer to Dr. Dietz, I |
| 11 | mean, his ability to conduct a meaningful and effective |
| 12 | evaluation is obviously something I'm not going to second |
| 13 | guess. |
| 11:41:03AM 14 | THE COURT: Okay. Anything further from either |
| 15 | counsel want to -- because my plan is to adjourn this hearing, |
| 16 | telephone hearing, and I intend to communicate with Dr. Dietz |
| 17 | on the record, court to expert, I'm going to ask him these |
| 18 | questions, and then I intend to rule. |
| 11:41:28AM 19 | MR. BRUCK: I think I should just mention one thing |
| 20 | to clarify, the professional contact booths do not involve a |
| 21 | hand-held phone. They do involve speaking through a small |
| 22 | sort of opening, voice opening, with no electrical |
| 23 | intermediary between the people on either side. |
| 11:41:53AM 24 | I will say that Dr. Dietz may well start, and then |
| 25 | complain that it is not an optimal setting. It has not been |

```
                1    an optimal setting for us.  This is how we have to meet with
                2    our clients, counsel.  It has not been an optimal setting for
                3    our experts, and it will not be an optimal setting for
                4    Dr. Dietz, and I regret that.  But that's the set-up at the
                5    jail, and that's the best they can do for noncontact
                6    visitation.  And I just wanted the Court to be aware of what
                7    it's like.
11:42:23AM      8              THE COURT:  Okay.  Let me communicate with Dr. Dietz.
                9    And I may actually ask him to go look at this non -- see if we
               10    can arrange for him to evaluate that or let me know if there's
               11    a problem.
11:42:41AM     12       But remember here, folks, our goal is to give the jury the
               13    very best information to make a just and fair and right
               14    decision, and that is not accomplished by, A, withholding all
               15    mental health evidence, and B, by trying to have one side --
               16    I'm not going to allow one side, under the rules, we would
               17    result in having no evidence.  So we obviously might want to
               18    accommodate a bit -- the word was accede, as if giving up -- I
               19    don't view that that way, I view it as a way of giving my jury
               20    the very best information to make a decision.
11:43:26AM     21       So with that, let me adjourn this hearing, and I will
               22    communicate with Dr. Dietz.
11:43:31AM     23       Thank you very much.  Hearing is adjourned.
11:43:33AM     24
11:43:33AM     25            (Hearing adjourned at 11:43 a.m.)
```

# REPORTER'S CERTIFICATION

I, Debra L. Potocki, RMR, RDR, CRR, Official Court Reporter for the United States District Court for the District of South Carolina, hereby certify that the foregoing is a true and correct transcript of the stenographically recorded above proceedings.

S/Debra L. Potocki
_____

Debra L. Potocki, RMR, RDR, CRR