```
                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF SOUTH CAROLINA
                            CHARLESTON DIVISION


UNITED STATES OF AMERICA        :
                                :
           vs.                  :
                                :
DYLANN STORM ROOF               :     2:15 - CR - 472


       Phone Conference in the above matter held on Friday,

   October 21, 2016, commencing at 1:00 p.m., before the

   Hon. Richard M. Gergel, in the United States Courthouse,

   Courtroom VI, 85 Broad St., Charleston, South Carolina,

   29401.



APPEARED VIA TELEPHONE ON BEHALF OF THE UNITED STATES:

     JAY N. RICHARDSON, ESQ., 1441 Main St., Columbia, SC.

     NATHAN WILLIAMS, ESQ., P.O. Box 978, Charleston, SC.

APPEARED VIA TELEPHONE ON BEHALF OF THE DEFENSE:

      DAVID I. BRUCK, ESQ., Washington & Lee School of Law,
      Lexington, VA.
```

REPORTED BY DEBRA L. POTOCKI, RMR, RDR, CRR
Official Court Reporter for the U.S. District Court
P.O. Box 835
Charleston, SC  29402
843/723-2208

```
1:00:26PM  1              THE COURT:  Let me, for the record, this is in the
           2    matter of United States of America versus Dylann Storm Roof,
           3    2:15-472.
1:00:33PM  4        Could counsel identify themselves for the record who will
           5    be speaking during this argument?
1:00:38PM  6              MR. RICHARDSON:  Jay Richardson from the Government,
           7    Your Honor.
1:00:41PM  8              MR. BRUCK:  David Bruck for the defendant.
1:00:44PM  9              THE COURT:  Counsel, let me just sort of go through,
          10    I've received these dueling memoranda, it's a little hard for
          11    me to keep up with them all, but let me just sort of walk
          12    through the issues as I've listed them, and let's just see --
          13    and if there are others, you can bring them to my attention.
1:01:06PM 14        First of all regarding the location of examination.
          15    Mr. Richardson, is there any reason we can not do it at the
          16    jail?
1:01:14PM 17              MR. RICHARDSON:  There's no reason it can not be done
          18    there, Your Honor.
1:01:17PM 19              THE COURT:  I order it to be done at the detention
          20    center.
1:01:20PM 21              MR. RICHARDSON:  Thank you.
1:01:22PM 22              THE COURT:  Secondly, there seemed to have been some
          23    confusion about the duty of disclosure, and I'm going to put a
          24    little bit on myself.  I thought I had done it, that I
          25    expected that the defendant and the Government would have
```

|  |  |
|---|---|
| 1 | reciprocal disclosure, that is, both the kinds of mental |
| 2 | health experts that the party -- the Government intends to |
| 3 | call, as well as the tests and examinations to be performed. |
| 1:01:50PM 4 | The Government apparently couldn't find anything in an |
| 5 | order, because I just thought it was there and it wasn't, to |
| 6 | make clear that the standard imposed on the defendant |
| 7 | regarding disclosure on June 30 was intended also to be |
| 8 | imposed on the Government. |
| 1:02:05PM 9 | So I'm going to issue an order today clarifying that so |
| 10 | there's no confusion.  So, Mr. Richardson, you need to |
| 11 | supplement your disclosure to disclose the kinds of mental |
| 12 | health experts the Government intends to call. |
| 1:02:20PM 13 | MR. RICHARDSON: Okay. |
| 1:02:21PM 14 | THE COURT: Okay.  Third issue.  Mr. Bruck has |
| 15 | expressed concern about whether it's understood that the |
| 16 | Government has a duty, its expert's duty to maintain |
| 17 | confidentiality.  I am not sure there really is confusion, but |
| 18 | let me see if I can set forth, and, Mr. Bruck, if this |
| 19 | satisfies your concern. |
| 1:02:46PM 20 | I have no problem, I don't think there's any problem with |
| 21 | the Government experts sharing information among themselves. |
| 22 | But basically, other than to deliver the sealed -- the things |
| 23 | to the Court under Docket 260, they should not be disclosing |
| 24 | it to anyone else.  Do we have any dispute about that until |
| 25 | the provisions of Rule 12.2(c)(2) are met?  Do we have any |

|  |  |
|---|---|
| 1 | dispute about that? |
| 1:03:18PM 2 | MR. RICHARDSON: Not from the Government, Your Honor. |
| 3 | It's our understanding that -- That is exactly our |
| 4 | understanding. |
| 1:03:23PM 5 | THE COURT: Mr. Bruck, does that satisfy your |
| 6 | concerns? I'm going to put that in an order to make it clear. |
| 1:03:29PM 7 | MR. BRUCK: Well, it does, except for the somewhat |
| 8 | open-ended -- until now, what has been the somewhat open-ended |
| 9 | description of who the Government's experts are. We don't |
| 10 | know how many, we don't know -- |
| 1:03:44PM 11 | THE COURT: Right. What you're going to get is a |
| 12 | disclosure of the kinds of experts. Their disclosure should |
| 13 | look very similar to your disclosure. |
| 1:03:53PM 14 | MR. BRUCK: Okay. |
| 1:03:55PM 15 | THE COURT: Fourth. Video recording. |
| 16 | Mr. Richardson, could you explain to me what the Government |
| 17 | wants to use the video recording for? Because we obviously |
| 18 | originally had intended it as a way to validate the |
| 19 | examination. |
| 1:04:10PM 20 | MR. RICHARDSON: That's correct, Your Honor, it's to |
| 21 | validate examination, but it's also so that our examining |
| 22 | expert need not be trying to furiously take notes at the same |
| 23 | time he's trying to have the discussion. |
| 1:04:24PM 24 | THE COURT: Let me stop you on that, first of all. |
| 25 | Mr. Bruck, do you have any problem with the examining expert |

|  |  |
|---|---|
| 1 | to be able to go back over the videotape as he's preparing his |
| 2 | evaluation and report? |
| 1:04:34PM 3 | MR. BRUCK: Well, you know, our position was that the |
| 4 | sole purpose of the videotape was to keep -- was to ensure |
| 5 | that our client wouldn't be misquoted. |
| 1:04:46PM 6 | THE COURT: That's okay, but there's also -- and you |
| 7 | and I both know there's case law out there that allows this -- |
| 8 | what's the problem with the expert himself going back over it, |
| 9 | so that he doesn't have to sit and write down verbatim what's |
| 10 | said? |
| 1:05:02PM 11 | MR. BRUCK: Well, I mean, we've stated our position. |
| 12 | I don't -- |
| 1:05:05PM 13 | THE COURT: Okay. I'm going to allow that. |
| 1:05:06PM 14 | Now, how about there was this discussion about |
| 15 | distributing it to other experts, and I understood the |
| 16 | government counsel to say that it would withhold distribution |
| 17 | to anyone until after the Rule 12.2(c)(2) requirements have |
| 18 | been met. |
| 1:05:28PM 19 | Is that right, Mr. Richardson? |
| 1:05:30PM 20 | MR. RICHARDSON: That's certainly fine with the |
| 21 | Government, Your Honor, we will limit it to the evaluating |
| 22 | expert, until the defense makes its disclosure. |
| 1:05:40PM 23 | THE COURT: And then once you disclose it to the |
| 24 | defense experts, if those requirements are satisfied, you have |
| 25 | no authority, you understand you have no authority to disclose |

|            |    |                                                               |
|------------|----|---------------------------------------------------------------|
|            |  1 | it to anyone else, correct?                                   |
| 1:05:54PM  |  2 | MR. RICHARDSON:  Well, the only person -- that's why          |
|            |  3 | I was trying to make clear -- the only person we would ask to |
|            |  4 | be able to disclose it to at that point would be our other    |
|            |  5 | experts.                                                      |
| 1:06:03PM  |  6 | THE COURT:  That's not a problem.  Anybody else?              |
| 1:06:05PM  |  7 | MR. BRUCK:  Well, if I may, Your Honor?                       |
| 1:06:06PM  |  8 | THE COURT:  Yes.                                              |
| 1:06:07PM  |  9 | MR. BRUCK:  You know, I think at that point the --            |
|            | 10 | we're -- the purpose of the videotape has sort of lost, you   |
|            | 11 | know, become unmoored from the original purpose.  It now is   |
|            | 12 | going to be used to strengthen or consolidate or reinforce the|
|            | 13 | opinions of experts who have never met the defendant, never   |
|            | 14 | laid eyes on him.  It's hard to see how that --               |
| 1:06:39PM  | 15 | THE COURT:  Mr. Bruck, speak a little louder; we're           |
|            | 16 | having trouble picking you up.                                |
| 1:06:41PM  | 17 | MR. BRUCK:  I'm sorry, excuse me.  You know, the              |
|            | 18 | Court had identified two purposes for the videotape, one is as|
|            | 19 | a protection for the defendant and the other is to make sure  |
|            | 20 | that the examining expert doesn't have to take notes and can  |
|            | 21 | have an accurate record for his own evaluation.               |
| 1:07:00PM  | 22 | THE COURT:  Okay.                                             |
| 1:07:01PM  | 23 | MR. BRUCK:  To then share the videotape with the              |
|            | 24 | other government examiners, seems to go beyond that, even     |
|            | 25 | though it's after the point when it then allows them to, in   |

|              |    |                                                                      |
|--------------|----|----------------------------------------------------------------------|
|              | 1  | effect, reinforce or, you know, sort of build upon and               |
|              | 2  | strengthen their own opinions after their work has been              |
|              | 3  | completed, for a reason that doesn't really -- that goes             |
|              | 4  | beyond any of the original reasons for the videotaping.  And         |
|              | 5  | really turns it from, you know, a tool of convenience and a          |
|              | 6  | protection for the defendant, into more of an aggressive or an       |
|              | 7  | adversarial tool for the Government.  And it, you know, that's       |
|              | 8  | the whole problem with this balance that has to be struck.           |
| 1:07:51PM    | 9  | THE COURT:  Let me hear from Mr. Richardson.  Why do                 |
|              | 10 | your other experts need to see it, to -- presumably they're          |
|              | 11 | going to get your examining expert's report; what other reason       |
|              | 12 | do they need it?                                                     |
| 1:08:03PM    | 13 | MR. RICHARDSON:  Your Honor, I think in order -- I                   |
|              | 14 | mean, it's a little hard to know, right, because we don't know       |
|              | 15 | what these opinions are going to be.  But the concern I've got       |
|              | 16 | is that we've got experts who are going to be potentially            |
|              | 17 | offering opinions, and they should be able to see the results        |
|              | 18 | and reports, both from the defense, but also the results and         |
|              | 19 | reports, which includes the video from the Government, in            |
|              | 20 | ensuring that their opinions take into account all the               |
|              | 21 | necessary information.                                               |
| 1:08:32PM    | 22 | THE COURT:  Let's do this.  I'm not going to -- I'm                  |
|              | 23 | going to -- if you have a specific reason to show it to one of       |
|              | 24 | your experts, if your examining expert's report for some             |
|              | 25 | reason is a problem, has a problem, they need to see the             |

|  |  |
|---|---|
| 1 | video, you can move before me, and I will consider it under |
| 2 | the facts that exist and the particular expert and the reason |
| 3 | justification.  But I'm not going to allow it at this point, |
| 4 | but I'm going to hold it in abeyance pending a need for it. |
| 5 | Okay? |
| 1:09:01PM 6 | MR. RICHARDSON:  And so I'm sure the Court's going to |
| 7 | write all this out. |
| 1:09:05PM 8 | THE COURT:  Yes. |
| 1:09:06PM 9 | MR. RICHARDSON:  Just so I'm clear, the video is not |
| 10 | to be provided, absent court order, to any expert outside the |
| 11 | examining expert. |
| 1:09:15PM 12 | THE COURT:  Correct.  But I'm not ruling that you're |
| 13 | not allowed to do that, I'm going to leave it.  I want to |
| 14 | hear, you know, your expert will have been given the examining |
| 15 | expert's report.  And one thing I would want to know is, well, |
| 16 | why do they need additional information.  You know, we are |
| 17 | starting to ship around this video, and for more purposes than |
| 18 | we intended, and I just want to make sure there's adequate |
| 19 | justification before we do that. |
| 1:09:40PM 20 | MR. RICHARDSON:  That's certainly fine by the |
| 21 | Government, Your Honor. |
| 1:09:42PM 22 | THE COURT:  Okay.  Mr. Bruck, does that relieve your |
| 23 | concerns at this point? |
| 1:09:46PM 24 | MR. BRUCK:  Yes, it does. |
| 1:09:47PM 25 | THE COURT:  Folks, the idea of these -- of telling |

|   |   |
|---|---|
| 1 | the experts what tests to perform, I'm not willing to do that, |
| 2 | Mr. Bruck.  I've looked at this issue, I'm very familiar with |
| 3 | these tests, and, you know, it's easy to envision how they are |
| 4 | relevant to rebuttal.  I am going to hold the Government to |
| 5 | using only -- they only can have rebuttal evidence, okay, it's |
| 6 | got to be rebuttal evidence.  But I'm not going to second |
| 7 | guess these experts and their expertise about what tests they |
| 8 | need, but I'm not preventing you, at a later point, once you |
| 9 | receive these reports, if you believe that there is something |
| 10 | improper about that testimony, and you wish to challenge their |
| 11 | expert opinion or the use of those reports, I will give you an |
| 12 | opportunity to do that. |
| 1:10:40PM 13 | MR. BRUCK:  Very well. |
| 1:10:40PM 14 | THE COURT:  Okay? |
| 1:10:41PM 15 | MR. BRUCK:  Yes, sir. |
| 1:10:42PM 16 | THE COURT:  Now, I've gone through my list.  Are |
| 17 | there additional issues to address? |
| 1:10:49PM 18 | MR. BRUCK:  I think that has covered everything that |
| 19 | we had.  I think Sarah Gannett may have joined the call, and |
| 20 | if so, and if I have missed something. |
| 1:10:58PM 21 | THE COURT:  It's always good to have your lawyer on |
| 22 | the phone, Mr. Bruck. |
| 1:11:02PM 23 | MR. BRUCK:  Absolutely.  You got that right. |
| 1:11:04PM 24 | MS. GANNETT:  I think that covers our -- as well. |
| 1:11:12PM 25 | MR. BRUCK:  That's my back-up. |

| | | |
|---|---|---|
| 1:11:13PM | 1 | THE COURT: Anything else we need to address today? |
| 1:11:16PM | 2 | MR. RICHARDSON: Your Honor, I have one issue, if you |
| | 3 | don't mind taking this up.  We've discussed this with defense |
| | 4 | counsel.  And one of the plans that we are discussing here is |
| | 5 | running a criminal background check on the prospective jurors. |
| | 6 | We would, of course, provide that information as soon as it |
| | 7 | was run, to defense counsel, so that they would have the same |
| | 8 | information that we do.  But we have some concern that if |
| | 9 | someone failed, inadvertently or intentionally, to disclose |
| | 10 | that information, that that might become a problem down the |
| | 11 | road.  And so we wanted to at least advise the Court of that, |
| | 12 | and mainly just make sure that the Court doesn't have some |
| | 13 | objection to us doing that, that we did not anticipate. |
| 1:12:06PM | 14 | THE COURT: Mr. Bruck, what's your view of that? |
| 1:12:09PM | 15 | MR. BRUCK: I'm not entirely sure I understand the |
| | 16 | problem.  Mr. Richardson tells us that they're going to run |
| | 17 | criminal background checks and provide us with the entire run, |
| | 18 | the entire result. |
| 1:12:22PM | 19 | THE COURT: Correct. |
| 1:12:23PM | 20 | MR. BRUCK: So both sides have the same information. |
| | 21 | What is -- Maybe I'm just dense, but what is the Government's |
| | 22 | concern?  It does often happen that jurors fail to provide |
| | 23 | their criminal background. |
| 1:12:35PM | 24 | THE COURT: Yeah, I just can't imagine how having |
| | 25 | that information harms anybody. |

```
1:12:39PM   1                MR. BRUCK:  Right.
1:12:40PM   2                MR. RICHARDSON:  I agree, I just -- I didn't want to
            3    go do it without making the Court aware, that's all.
1:12:46PM   4                THE COURT:  And I know -- I say this, it's obvious --
            5    obviously the prospective jurors will not know you did it,
            6    because there's no disclosure of that, right?
1:12:55PM   7                MR. RICHARDSON:  That is correct.  The only exception
            8    to that potentially being if the criminal history revealed a
            9    conviction that had not been disclosed, then we would
           10    potentially ask the Court to inquire of those facts in voir
           11    dire.
1:13:10PM  12                THE COURT:  How quickly are you able to do this?
1:13:13PM  13                MR. RICHARDSON:  Well, that's -- I don't know the
           14    answer to that question.  We are attempting to start that
           15    process.  I wanted to at least notify the Court that we were
           16    doing it.  But I think it will probably take us a week or
           17    better to run, you know, this, you know, now I think after
           18    strikes, 600 jurors that are left.
1:13:35PM  19                THE COURT:  Well, let me suggest this.  Start with
           20    Juror No. 1, because we're never going to get to Juror 785,
           21    okay?
1:13:45PM  22                MR. RICHARDSON:  That was our plan, Your Honor.
1:13:46PM  23                THE COURT:  You hear what I'm saying?  I thought you
           24    might. And as you get it, you know, start providing it to
           25    Mr. Bruck, so that, you know, the first week or so they could
```

|  |  |
|---|---|
| 1 | go ahead and process that.  Obviously someone who |
| 2 | misrepresented their criminal history, we ought to all be a |
| 3 | little skeptical about, you know, but I'm not going to make a |
| 4 | final decision based -- we have to determine what exactly it |
| 5 | was and the circumstances of it. |
| 1:14:13PM 6 | MR. RICHARDSON:  That is exactly our plan.  We |
| 7 | will -- I may not start this afternoon, just given Government |
| 8 | employees' schedules, but we will certainly get them started |
| 9 | first thing Monday morning. |
| 1:14:48PM 10 | THE COURT:  Okay.  Folks, I'm fine with that. |
| 11 | Mr. Bruck, anything you need to raise? |
| 1:14:52PM 12 | MR. BRUCK:  Yes, sir, just one additional issue that |
| 13 | has occurred to me since we've been on the phone.  And that is |
| 14 | that normally when the -- you know, we have not disclosed the |
| 15 | names of our experts, and the Government apparently -- or not |
| 16 | apparently -- the Government does not intend to disclose the |
| 17 | names of their experts. |
| 1:15:15PM 18 | THE COURT:  Correct. |
| 1:15:16PM 19 | MR. BRUCK:  But then this is another one of those |
| 20 | examples of why this is not actually a level -- it's supposed |
| 21 | to be a level playing field.  And the reason I say that is |
| 22 | that the Government discloses its expert when he goes to the |
| 23 | jail and introduces himself to the defendant, unless he is |
| 24 | going to be wearing a black hood, normally. |
| 1:15:37PM 25 | THE COURT:  Don't give them any ideas, Mr. Bruck. |

1:15:42PM 1         MR. BRUCK:  You know, he'll introduce himself, and
2    our client will know who he has been talking to, and he can
3    tell us the first time we confer with him.
1:15:52PM 4         So we're going to get the name of the -- I guess I'd call
5    him or her the primary evaluator.
1:15:59PM 6         THE COURT:  Let's just say the examining expert.
1:16:01PM 7         MR. BRUCK:  The examining expert.  The wrinkle is
8    that we now have or about to be provided further notice of
9    remote experts.  And that, it seems to me, changes what the
10   rule clearly contemplated, which is that the defendant is
11   going to meet whoever is evaluating him, and will know, not in
12   advance, but at the start of each session of the evaluation,
13   who the Government's experts are.  By having every -- all but
14   one expert do their work remotely, without ever coming face to
15   face with the defendant, that structure is altered in a way
16   that could not have been foreseen by the drafters of the rule.
1:16:50PM 17        And keeping in mind, as we always have to, throughout all
18   of this, that the Government is intruding on the defendant's
19   Fifth Amendment privilege not, in effect, to be deposed prior
20   to trial, which is exactly what this is.
1:17:06PM 21        So the idea that, well, we didn't provide the names of our
22   experts, and, therefore, it's perfectly fair that the
23   Government should gain this added advantage, doesn't really
24   compute.  These are not parallel situations.
1:17:20PM 25        And so I think to really -- to follow the way that Rule

|            |                                                                      |
|------------|----------------------------------------------------------------------|
| 1          | 12.2 was expected to work, and has worked in every other case,       |
| 2          | because this is an unusual approach the Government is taking,        |
| 3          | unprecedented but unusual, I think it's only fair that when          |
| 4          | the Government provides notice of the experts who are going to       |
| 5          | evaluate our client from afar, that we be told who they are.         |
| 1:17:46PM 6| THE COURT:  Mr. Richardson, your response?                           |
| 1:17:49PM 7| MR. RICHARDSON:  Your Honor, we oppose doing that.                   |
| 8          | We think that the playing field here is that they provided a         |
| 9          | list of experts.  It is true that they will learn by necessity       |
| 10         | the identity of our examining expert when that examination           |
| 11         | occurs.  But we do not think that the letter of Rule 12.2,           |
| 12         | which is what the defendant has demanded, requires or indeed         |
| 13         | needs the Government to make unilateral disclosure of its            |
| 14         | experts.                                                             |
| 1:18:18PM15| THE COURT:  I agree.  Okay.  Any other issues?                       |
| 1:18:24PM16| MR. GANNETT:  Your Honor, this is Sarah Gannett, and                 |
| 17         | I think I am going to act a little bit too much like a lawyer        |
| 18         | for a moment.  But just in case this is unclear, and for             |
| 19         | the -- at least for the record, I wanted to clarify one thing        |
| 20         | about the videotape and the use of the videotape.  And that is       |
| 21         | that the video itself is not a result of the examination in          |
| 22         | the sense that a report or test results would be.  The               |
| 23         | videotape is preserving the examination for the purposes that        |
| 24         | Your Honor and Mr. Bruck were discussing.  And my one concern        |
| 25         | about the discussion that we've been having about the                |

1      videotape is that it all points up what a slippery slope this
2      is.  Once we have a videotape, and once the Government
3      examiner gets to use it and review it in preparing the report,
4      and once we set aside for another day whether other experts
5      will get to use it, then there can be a lot of thought and a
6      lot of study put into justifying how it becomes evidence in
7      the case, as opposed to a tool to preserve what happened in
8      the examination for the defendant's benefit, especially if
9      their expert gets to study it in preparing his report, and
10     gets to think about, you know, what are the ways that we can
11     use to justify further disclosures of it to other experts.
12     And I just want to point up that problem at this point before
13     we get too far down the road to considering what the many
14     potential reasons that could be conceived might be.
1:20:16PM 15           THE COURT:  Well, thank you, Miss Gannett.  You know,
16     what I'm trying to do is just postpone having to deal with
17     that issue, to first determine whether we need to, that is,
18     whether anyone has any need to do it.  I'm very mindful that
19     the purpose of the 12.2 examination is rebuttal, it's not to
20     generate evidence to independently -- some independent
21     evidence against the defendant.  It is rebuttal evidence.
1:20:44PM 22           But I'm going to postpone to a later point any discussion
23     when there's shown to be some need to provide it.  It may well
24     be we don't need to address these issues.  Because no one will
25     have a need for it.  And what I found in this job is, I don't

|  |  |
|---|---|
| 1 | need to be answering questions I don't need to answer. There |
| 2 | are a enough of the ones I do need to answer, that I don't go |
| 3 | looking for ones that may one day not really require an |
| 4 | answer. |
| 1:21:11PM 5 | So I appreciate what you're saying. We'll wait until a |
| 6 | later date to address this issue. |
| 1:21:16PM 7 | MS. GANNETT: Thank you, Your Honor. |
| 1:21:17PM 8 | THE COURT: Anything further? |
| 1:21:19PM 9 | MR. BRUCK: One very quick final point. The reply |
| 10 | that I've filed all of about two hours ago -- |
| 1:21:27PM 11 | THE COURT: Yeah. |
| 1:21:28PM 12 | MR. BRUCK: May have inartfully made it appear that |
| 13 | we were only pressing the two issues that were raised in that |
| 14 | reply. I just would like to make it clear for the record that |
| 15 | we stood on all of the positions we took in our -- stand on |
| 16 | all of the objections that we made in our initial pleading |
| 17 | No. 480. |
| 1:21:47PM 18 | THE COURT: In fact, I addressed issues you didn't |
| 19 | raise in this thing in your reply, because I understood that. |
| 20 | Okay? |
| 1:21:54PM 21 | MR. BRUCK: Thank you. |
| 1:21:55PM 22 | THE COURT: Thank you. Good afternoon. Everyone |
| 23 | have a good weekend. |
| 1:21:58PM 24 |  |
| 1:21:58PM 25 | (Court adjourned at 1:21 p.m.) |

```
1:21:58PM  1                    REPORTER'S CERTIFICATION
1:21:58PM
1:21:58PM  2
1:21:58PM
1:21:58PM  3         I, Debra L. Potocki, RMR, RDR, CRR, Official Court
1:21:58PM
1:21:58PM  4   Reporter for the United States District Court for the District
1:21:58PM
1:21:58PM  5   of South Carolina, hereby certify that the foregoing is a true
1:21:58PM
1:21:58PM  6   and correct transcript of the stenographically recorded above
1:21:58PM
1:21:58PM  7   proceedings.
1:21:58PM
1:21:58PM  8
1:21:58PM
1:21:58PM  9
1:21:58PM
1:21:58PM 10
1:21:58PM      S/Debra L. Potocki
1:21:59PM 11   _____
1:21:59PM
1:21:59PM 12   Debra L. Potocki, RMR, RDR, CRR
          13
          14
          15
          16
          17
          18
          19
          20
          21
          22
          23
          24
          25
```