IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:15-CR-472 |
| | ) | |
| DYLANN STORM ROOF | ) | |

**DEFENSE REQUESTED VOIR DIRE QUESTIONS -- ALL JURORS**

The defendant, Dylann Storm Roof, by and through counsel, respectfully requests that the following voir dire questions be asked of each juror:

**A. Publicity and Personal Experiences**

1. Were you in the vicinity of Emanuel AME Church at 110 Calhoun Street in Charleston on the evening of June 17, 2015?

2. What stands out in your mind from everything you have heard, read or seen about the shooting at the Emanuel AME Church and the events that followed it?[1]

    a. [If juror has difficulty responding, prompt with: Do you recall anything . . .]
        i. About how the shootings occurred?
        ii. About the person who was supposed to have carried it out?
        iii. About any of the victims who died?
        iv. About any of the people in the church who survived the shootings?
        v. About the defendant, Dylann Storm Roof?
        vi. About any members of the victims' families or the survivors?
        vii. About any members of Mr. Roof's family?

3. Do you know, or do you have a family member or close personal friend who knows, someone who was present or who was killed in the June 17 shootings?

---

[1] *Skilling v. United States*, 561 U.S. 358, 371 (2010) (noting that jurors were asked on questionnaire "to report on 'what st[ood] out in [their] mind[s]' of 'all the things [they] ha[d] seen, heard or read about Enron.'"

1

4. Have you participated in any follow-up events surrounding Mother Emanuel in connection with the June 17 shootings?

5. Based on everything you have read, seen or heard about the Emanuel AME Church killings, do you have an opinion about whether *whoever* committed them should be sentenced to death? If you do, what is your opinion?

6. If you were the defendant on trial in this case, would you want someone on your jury who thinks about you the way you think about Dylann Roof?[2]

7. Do you *want* to be on this jury? [If the juror hesitates or is evasive, follow up with: . . . ]

   a. If I just left it up to you whether you were seated or excused from this jury, which would you choose? Would you rather be on the jury that will decide this case, or would you rather be excused?

**B. Emotional Responses to Evidence**

1. If you are chosen as a juror in this case, you will hear evidence about the deaths of nine people who were shot and killed while attending Bible study in a church. You may also see very disturbing and graphic pictures of the victims' bodies, and perhaps evidence from their autopsies. Do you think that hearing and seeing this type of evidence would make it difficult for you to serve as an impartial juror in this case? Please explain.

2. Have you or anyone close to you been a victim of a violent crime? [If yes, explain.] Do you think these experiences might affect you as you listen to and view the evidence of extreme violence in this case?

**C. Right Not to Testify**

1. Under the law, a defendant has the right not to testify. If a defendant does not testify, the jury is not permitted to consider that fact in any way in reaching a decision as to whether a defendant is guilty or not guilty; or whether a defendant should be sentenced to death or life imprisonment without release. Do you have an opinion regarding this rule of law? Please explain:

---

[2] *Irvin v. Dowd*, 356 U.S. 717, 727 (1961) ("A number [of veniremen] admitted that if they were in the accused's place in the dock and he in theirs in the jury with their opinions, they would not want him in the jury").

2. Do you think a defendant who has been convicted of intentional murder should be required to testify in order to show that he should be sentenced life imprisonment without release rather than the death penalty?

**D. Race**

1. In this case, the defendant is a white male who was twenty-one years old at the time of the offense. The victims and survivors were all African Americans of varying ages ranging from 6 to 87. Do you believe there is a possibility that the race of either the defendant or the victims could have an impact on you – whether in deciding the facts of the case, or in choosing between a sentence of life imprisonment and the death penalty – if the defendant is found guilty?

2. Is there anything about the alleged facts of this case as I have described them that causes you to doubt, even slightly, your ability to keep an open mind?

**E. Identifying General Death Penalty Opinions**

1. Describe for us your views, feelings and opinions regarding the death penalty.

2. How strong are those views, and how long have you had them?

3. Has anything in your life's experiences led you to your beliefs about the death penalty? If so, what?

4. Have you ever held a different opinion about the death penalty?

5. How do you feel about the concept of "an eye for an eye" and a "life for a life" as a punishment for the crime of murder?

6. Do you believe that the death penalty is used too often, appropriately, or not enough?

7. Are you concerned about the cost to the taxpayers of keeping a convicted murderer in prison on a sentence of life without the possibility of release? Please explain.

8. Are your beliefs about the death penalty such that you would always impose the death penalty, rather than life imprisonment without the

possibility of release, in any case involving multiple victims who were intentionally killed because of their race?

9. Are your beliefs about the death penalty such that you would always impose the death penalty, rather than life imprisonment without the possibility of release, in any case involving multiple victims who were intentionally killed while they were engaged in the free exercise of religion?

**F. General Views on Life Imprisonment**

1. Describe for us your views, feelings and opinions regarding life imprisonment.

2. Do you believe that life imprisonment without the possibility of release could ever be a severe enough punishment for a person who is found guilty of intentional murder? Or multiple intentional murders? Why or why not?

3. In the federal system, a "life" sentence means life in prison without the possibility of release. That is, if sentenced to life, the defendant will remain in prison until he dies. Do you have any doubts about whether this is truly the case? Please explain.

**G. Ability to consider punishments other than death:**

1. [For jurors who do not express opposition to the death penalty:] Do you believe that the death penalty should *always* be imposed for any defendant who intentionally kills multiple people without any legal excuse or justification (for example, not insane, not self-defense, not acting under the heat of passion, not duress, no reasonable doubt about guilt)?

2. [If the juror says words to the effect that the juror would want to know for sure the defendant was guilty, or that it was not an accident, or that he was not insane at the time of the crime, follow up with:] I want you to assume, for purposes of this question, that you and eleven other jurors have found that the defendant is in fact guilty of the intentional killing. That there is no defense, such as accident, or insanity, or alibi; it was not self-defense, it was not heat of passion, or duress. Assume that you have found that the defendant is guilty of intentional, premeditated murder. In that situation, would you always favor the death penalty, rather than life imprisonment without release, as the punishment for that murderer? Or could you think of cases in which you would favor punishing the convicted murderer with life imprisonment rather than the death penalty?

4

### H. Ability to Consider Mitigating Factors

1. Do you believe that the personal circumstances and background of a defendant should be taken into account when making the decision on whether to impose a sentence of death? Please tell us more about that.

2. Do you believe that the death penalty is the only appropriate punishment for a person who intentionally murdered nine people while they were engaged in the free exercise of their religious beliefs? Or could there be cases in which, after considering mitigating factors about the crime or the background of the defendant, you would favor life imprisonment – rather than the death penalty – for someone guilty of such a crime?

3. If you were convinced beyond a reasonable doubt that the defendant deliberately and intentionally shot nine people to death while they were engaged in the free exercise of their religious beliefs, could you nevertheless give meaningful consideration to mitigating factors (such as, for example, a defendant's age, lack of a prior criminal record, family background, or mental abnormality), and actually consider imposing a life sentence rather than the death penalty?

4. If you were convinced beyond a reasonable doubt that the defendant intentionally killed nine people because of their race, would you always vote for the death penalty as the only appropriate punishment in such a case? Or could there be cases in which you could consider and impose life imprisonment without release after considering mitigating factors (such as, for example, the defendant's young age, his lack of a prior violent criminal record, his family background, or mental abnormality)?

5. How do you feel about psychological or psychiatric testimony that may be offered in court regarding a criminal defendant?

6. The law provides that any relevant mitigating circumstance about the defendant's crime, record and background should be considered by the jury as a possible reason not to impose the death penalty. If the defense in this case were to present, for your consideration as a mitigating factor, evidence, which you believed, that the defendant had a history of mental or emotional difficulties, would you be able to follow the Court's instructions to give *meaningful* consideration to this evidence in deciding whether or

not the defendant should be sentenced to life imprisonment rather than death?[3] Please explain.

7. If you are selected for this jury and I instruct you to consider, in support of a life sentence, that the defendant had no prior history of violent criminal misconduct, will you consider that evidence in support of a life sentence?

8. I've explained to you that the law requires juries to take into account the personal circumstances and background of a defendant who has been convicted of intentional murder before deciding whether to impose a sentence of death. Do you personally agree with that requirement? Please explain why or why not.

### I. Opposition to the Death Penalty

1. [For jurors who express opposition to the death penalty in their questionnaire answers or during voir dire:] Understanding that you do not support the death penalty, could you meaningfully consider both life imprisonment without the possibility of release *and* the death penalty, and not be committed in advance to voting against the death penalty no matter what the evidence might turn out to be?

2. In thinking about this, please understand that the law never requires any juror to vote for the death penalty. The law requires only that each juror keep an open mind, and listen to and weigh the evidence before deciding whether to vote for the death penalty or for life imprisonment. The decision is always left up to each individual juror, based on that juror's view of the evidence and his or her own moral judgment. Understanding how the system works, could you wait until you hear the evidence before you decide between these two punishments for murder? And could you fairly consider both punishments before making up your mind?

3. Please understand that I am not asking you whether you would impose the death penalty in this particular case. Rather, I am asking only this: Could there *ever* be a case – involving especially horrible murders, for example, or a very dangerous defendant – in which you would be able to fairly consider voting for the death penalty as a member of a jury?

    a. (If yes): In other words, if I understand you correctly, are you telling me that while you do not support the death penalty and would be very reluctant to impose it, you could still consider both sentences

---
[3] *Morgan v. Illinois*, 504 U.S. 719 (1993); *Eddings v Oklahoma*, 455 U.S. 104 (1982).

that are provided by law – life imprisonment without release and the death penalty – and choose between them on the evidence presented in court about the crime and the convicted killer?

**J. General Concluding Questions**

1. Do you know anyone else who has filled out a questionnaire in this case? Who?

2. Do you know of any reason at all why you might not be able to serve as a completely objective and impartial juror in this case? Please explain.

3. Is there any other information that either I or the lawyers for the government or the defendant should know that you haven't yet told us about?

4. My last question is one that I've already asked you, but now that you heard all of my questions, I'll ask it again: if you were the defendant on trial in this case, would you want someone on your jury who thinks about you the way you think about Dylann Roof?

After the general outline above has been followed, please conduct follow-up inquiry on questions from the individual jurors' questionnaires as set forth in Exhibit 1.

Respectfully submitted,

*s/ Emily C. Paavola*

David I. Bruck
Washington & Lee School of Law
Lexington VA 24450
540-458-8188
bruckd@wlu.edu

Emily C. Paavola
900 Elmwood Ave., Suite 200
Columbia, SC 29201
803-765-1044
Emily@justice360sc.org

Kimberly C. Stevens

7

Capital Resource Counsel
Assistant Federal Public Defender for the
District of Oregon
1070-1 Tunnel Road, Suite 10-215
Asheville, NC 28805
336-788-3779
kim_stevens@fd.org

Attorneys for Dylann S. Roof