# Exhibit 1

Individual Juror Questions

Panels for November 10, 2015
and November 14, 2015

**Juror 167**. ███████████

After the general outline is followed, please conduct follow-up inquiry on questions (from the case specific questionnaire):

Q13:  "I think they should be controlled to a point."  Tell us what you mean by that.

Q18A:  What have you seen, heard or read about this case or Dylann Roof?  "A good bit."  What did you mean?

Q18B: "I think he was put up to it or tricked into it for political reasons."  What do you mean by that?  What if that proves not to be true?   What impact would that have on you?

Q28A:  Please follow up on response:  "sometimes it's called for."  Can you tell us more about this response?

Q28B:  "eye for an eye."  What does this mean to you?  Is this the Biblical principle of an eye for an eye, and a life for a life?  Tell me more about that.  So, if you were convinced that a person is guilty of taking a life, then should his life be forfeited in return? As appropriate, follow up with general outline questions E8-9; G1-2, and H 1-4.

Q29:  Please follow up on "I think it [a life sentence] is a waste of time and money."  What do you mean by that?  Does that mean that to you, death is the appropriate punishment upon conviction of intentional murder?  As appropriate, follow general outline section F 1-3.

Q30:  You circled "7" reflecting a belief that the death penalty should be imposed whenever the defendant has been convicted of intentional murder.  Tell me more about that?  Then, as appropriate, follow general outline questions E8-9, G1-2, and H 1-4.

Q31B: So, for you, if you were to find the defendant guilty of committing multiple murders, is the death penalty the automatic punishment?  As appropriate, follow questions E8-9, G1-2, H1-4.

**From the Standard Questionaire**:

Q23:  "Have you or any member of your family ever suffered long-term or permanent disability?  A:  Yes.  Q: If yes, please explain:  "My sister is crazy."  Please follow-up.

Q30:  Have you been the victim of a crime?  Yes.  Explain:  "All kinds."  Please follow up.

Q31: Have you been arrested or charged with a crime other than a traffic offense?  "I got charged for ?  [illegible]

Q35:  Yes.  Please follow-up.

**Juror 172**. ███████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q4:  Describe the career from which you retired?  What were your duties?

Q28A:  "I think our society demands the death penalty as punishment for the taking of a life.  It serves as closure for some.  Others see it as due justice.  It is, perhaps, a necessary evil."  Can you tell us more about your answer?  Do you think that society demands the death penalty each time a life is taken?  Please follow up with E8-9, G1-2, H1-4.

Q28B:  Describe for us how your "Catholic/Christian upbringing" and "documentaries" form the sources of your beliefs about the death penalty?  What has each taught you?

Q29: "Why would we give a person who is guilty of murder the 'luxury' of life? Is that penance?"  Tell me more about what you meant when you wrote this? If appropriate, please follow up with general outline questions E8-9, F2-3, G1-2, H1-4.

Q32:  You answered yes to each of the questions in 32A-D, and explained that "intentional murder is a senseless, heinous crime, regardless."  So, for you, then, is death the only appropriate punishment when a person is found guilty of committing an intentional, premeditated murder, committed without excuse or justification?  If appropriate, please follow up with general outline questions E8-9, G1-2, H1-4.

**Juror 175**. █████████████

After the general outline is followed, please conduct follow-up inquiry on questions:

Q19: "We talked about it in general at work when it happened – it (the talk) has died down since." Tell us what you talked about when it happened? Were any views expressed as to Dylann Roof? Or his guilt or innocence? Or what punishment he should receive?

Q28A: "I feel that if the death penalty is an option, and the crime demands that severe of punishment, then we should use it." Tell us what you meant by that? Under what circumstances do you think the "crime demands" the death penalty? If appropriate, follow up with general outline questions E8-9, G1-2, H1-4.

Q28B: "If we have stricter and more severe punishments, maybe the next person would think twice before committing the crime(s)." So, for you, does the deterrent effect of the death penalty play a part in your beliefs about the death penalty? Please follow up.

Q29: Life imprisonment "would keep the guilty person off the streets." Please follow up if appropriate with general outline questions F2-3.

Q38: You mention that you have an "ex-nephew-in-law" who claimed "he was a supremacist back in the 90's. We are friends on facebook, but he does not post about it now." Did you ever have conversations with him about his beliefs? Please tell us about that.

**Juror 177**. ████████████

After the general outline is followed, please conduct follow-up inquiry on questions:

Q24: Please describe how closely your sister worked with Rev. Clementa Pinckney. How do you think your sister's work with the Rev. Pinckney might affect you if you were called to serve on this jury?

Q28A: "I would prefer we didn't have the death penalty but it is the law." Tell us more about that? Would you have any trouble following the law as I instruct you in this case? If necessary, please follow up with general voir dire questions section I. 1-3.

Q31A-D: You answered yes to each of these. Can you tell me more about that? Are you saying that we should automatically impose the death penalty if a person is found guilty of intentional murder? Or, would you want to hear more before deciding between the two available penalties?

Q37B: You answered that your niece "is on the Asperger Syndrome Spectrum so I have seen her behavior." Can you tell us more about that? How often have you spent time with your niece? Do you feel that every person with Asperger Syndrome might be different? If you were to hear psychological testimony regarding Autism Spectrum Disorder in this case, would you be able to set aside what you know about your niece, and weigh any evidence or testimony as it comes in during this case?

**Juror 178**. ████████████

After the general outline is followed, please conduct follow-up inquiry on questions:

Q23:  You answered "Yes, I have blogged my thoughts on a Wordpress site, Twitter, and my own website."  Tell us what thoughts you have expressed on your blogs?  Did they relate to Dylann Roof's guilt or innocence? The punishment he should receive?

Q28A:  Tell us more about the opinions you have expressed here.

Q28B:  "My sources of my beliefs would be my life's experiences and personal upbringing."  Tell us more about this.  How have your life's experiences influenced your views on the death penalty?  And how has your personal upbringing affected your views on the death penalty?

Q29:  "Life in prison would be reserved for those who were legally insane or somehow not understanding of a certain action causing harm/death to someone.  Example, job accident, which leads to the death/harm of a coworker, self defense in which the law didn't protect the killer's right to defense.  Finally, someone who had a tough upbringing such as someone who grew up in a racist household, or was bullied in school."  Please follow up:  Do you believe that the death penalty should always be imposed for any defendant who intentionally kills multiple people without any legal excuse or justification (for example, not insane, not self-defense, not acting under heat of passion, not duress, no reasonable doubt about guilt?).  Follow up as appropriate with general voir dire outline questions E8-9; G2; H1-4.

Q30: You answered "7" to this question.  Please follow-up as appropriate with general voir dire outline questions E8-9; G1-2; H1-4.

Q32:  Even though you answered 7 to question 30, I see you circled both "d" and "e" to question 32.  Can you tell us more about your answer to question 32?

Q37: You answered that you struggle with ADD.  Have you had experience with psychiatrists or psychologists?  Please tell us about that.  Will you be able to weigh any psychological or psychiatric testimony in this case, and be able to set aside your personal experience, in evaluating any testimony that may be received regarding any psychological evidence in this case?

**Juror 182**. ███████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q18B:  To the question "what are your thoughts and opinions about this case or Dylann Roof?", you answered "A crime has been committed and the law should take its course." Do you presently hold the opinion that Dylann Roof has committed a crime?  Tell us about that.  What do you mean that "the law should take its course?"

Q28A:  You answered "I believe the death penalty is appropriate in some cases."  Can you tell us more about that please?

Q28B: You answered "personal belief."  Tell us, sir, what life experiences or other sources have influenced your personal beliefs regarding the death penalty?

Q29:  You answered "I believe life without parole is appropriate in some cases."  What cases might you have in mind when you answered this question?

**Juror 183.** ████████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q28A: "I wish it were never necessary to even contemplate a death penalty, but I do believe it is a deterrent to those who may consider committing like crimes in the future. When there is no question of the guilt and motivation, I think it may be necessary to consider." Tell us more about that, ma'am. Please follow up as necessary with general voir dire outline questions E1-9, G1-2, H1-8.

Q29: When you say life is a "viable option," please describe for us more your views on life imprisonment without parole. If necessary, follow up with questions F1-3.

Q37: You describe some personal experience with the issue of depression. Do you think you will be able to consider any psychological or psychiatric testimony that may be unique in this case, and set aside your personal experiences in doing so, and base any decisions on the evidence received in this case?

Q40: Tell us more about your answer to question 40. Would you be able to decide this case based solely on the evidence and the law in this case as I give it to you?

**Juror 186**. ██████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q28A:  Have you given further thought to your opinions on the death penalty, since filling out your questionnaire?  If so, please describe.

Q37:  Please tell us more about your answer to question 37.  If you were to hear evidence about any of the conditions raised in question 37A or B, how do you think your personal experience in this area may affect you?

**Juror 189**. ███████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q4: Please describe your duties at Community Long Term Care

Q18A: Tell me what you thought about the events at Emanuel AME church, when you first heard about it.  What did you think about the person who committed these acts?

Q28A: Please describe what you mean by:  "I don't have a problem with death penalty sentences if a jury agrees on this decision."  What might factor into this decision?  If necessary, please follow up with general voir dire outline section E1-9, G1-2.

Q28B:  Tell me what you meant by "family values" influencing your beliefs about the death penalty.  How so?  What family values are you referring to?

Q29:  "I don't have a problem with life without possibility of parole sentences if a jury agrees on this sentence."  Please follow up as necessary with general voir dire outline questions F1-3.

Q37:  Describe for us, please, the training you have received related to 37A and 37B.  How do you think that might impact you if you were to receive expert testimony on these areas in the upcoming trial?

Q39: Can you describe for us your church's teaching, if any, on the subject of capital punishment?

**Juror 196**. ███████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q9:  Sir, you have identified that you are the Pastor at Campbell Chapel AME Church. Please tell us about your experience there.  What are your duties as Pastor?  Have you given thought to how your personal experience may affect you if called to serve as a juror in this case, given what I have described to be the subject matter of this case?

Q10:  "I have participated in Black Life Matters protest; Stop the Violence March in Sumter, SC."  Describe those experiences for us.  Have you given thought to how these personal experiences may affect you if called to serve as a juror in this case?  Describe that for us, please.

Q12A:  "I was born in 1957.  I grew up under "Jim Crow" Segregation.  You have had personal experience with the subject of discrimination.  Can you describe that for us, and the impact that it has had on you?   What are your thoughts on this subject as it may relate to the upcoming trial?

Q17: "Personal knowledge: my close friend, Reb. Herbert Temoncy was the chaplain on duty at the Emanuel Nine event.  I spoke with him while he was at the scene.  Several of the victims were my friends."  Can we talk about how this may affect you as you hear the evidence about the murder of nine worshippers at the Emanuel AME Bible Study event? [please follow up].

Q18:  Please tell us about the articles and sermons you have written and conducted on the "Charleston Model" of healing.  [please follow up].

Q19: Please tell us more about your statement that "I believe Dylann Roof has owned up to the reason and nature of this crime.  I believe this case is about his right to be heard in court."  [please follow up].

Q24:  You have answered that Reverend Pinckney was your close friend; that Reverend Sharonda Coleman-Singleton was a student in your class; that Rev. Daniel Simmons was your friend and that you served on a board with Myra Thompson.  Please describe for us how this might affect you if you were called upon to serve as a juror on this case.

Q28A:  Please follow up with questions I. 1-3 from the general voir dire outline.

Q37:  Please describe your training as a Navy Chaplain on the issues described in Q37A and 37B.

Q44: You have indicated that, despite all that is covered above, you can be a fair and impartial juror in this case.  Can you describe your answer for us?

**Juror 197**. ████████████

After the general outline is followed, please conduct follow-up inquiry on questions:

Q19: "I have talked with my family and friends about the crime and case."  Please describe those conversations for us.  [please follow up regarding opinions on guilt or innocence and penalty].

Q28A:  "I think the death penalty is an appropriate punishment when there are aggravating circumstances."  Tell us more about that statement and your views.  What "aggravating circumstances" were you referring to? Do you have examples? [please follow up as necessary with general voir dire outline questions E1-9, G1-2, H1-4].

Q29:  "I believe life without parole can also be an appropriate punishment again depending on all of the factors."  Tell us more about that.  What factors might you be thinking of?  Do you have examples?  If necessary, please follow up with questions from general voir dire outline, Sections F and G.

Q37B:  You have described that your son has ADD.  Have you worked with or received training from any psychologists on this issue?  [please follow up].

Q39:  Has your church expressed any views or held discussions on the topic of capital punishment?  Please describe.

**Juror 199.** <span style="background:black;color:black">████████████</span>

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q4: Please describe your duties at NHC – National Healthcare of Charleston. Are you presently working as a social worker?

Q18B: You have answered that "my thoughts are that people should be able to come together with great fairness with efforts in moving forward and allowing this case to be a thing of the past." Tell us more about that. [please follow up].

Q19: Describe the "general and vague conversation about it happening at the church" that you have had. Can you recall what was said?

Q28A: "I view the death penalty as a positive punishment for murder if the evidence of the crime being committed." Please describe that. If necessary, follow up with general outline sections E8-9, G1-2 and H 1-4.

Q37: You describe your experience with the conditions set out in 37A and B, and your master's level social worker experience. Share with us your thoughts on how that may impact you if you were to hear and be asked to weigh psychiatric or psychological evidence in this case?

**Juror 208**. ███████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q18A: "That he's charged with killing 9 people at Emanuel AME Church." Can you tell us more about what you have heard? Was it recent, or at the time of the event, or both? [follow up].

Q18B: Have you given more consideration to what your thoughts may be about Dylann Roof? Have they changed since coming to court and filling out the questionnaire?

Q28A: "I don't know." Since coming to court and filling out this questionnaire, have you given further thought to any views or opinions you may have about the death penalty? Please share those with us.

Q39: You have answered that you have attended Baptist Churches and Light House of Jesus Christ, and that your religious faith would "greatly influence" your decision about the death penalty. Can you tell us more about that? [please follow up]. If necessary, please follow up with general voir dire outline sections E, G and H.

**Juror 209.** ████████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q4:  Please describe your duties at Roper / St. Francis Home Health.

Q13:  Tell us more about what you mean when you say "I believe in the 2nd Amendment."  [follow up].

Q18A: You have described that "I have seen and read news accounts of the shooting at Emanuel AME.  When it happened my family and friends and I discussed how awful it was. That 9 innocent people died."  Please tell us more about that.  [Please follow up on any issues of guilt or innocence or penalty].

Q18B: With regard to Dylann Roof, you describe that "this is a terrible thing for these people to have been killed like this and for it to have happened in a church is beyond belief."  Tell us more about that.  Based on what you have read and seen so far, do you believe that Dylann Roof is guilty? Do you have an opinion, as you sit here today and reflect on the case, on what punishment Dylann Roof should receive if in fact he is found guilty?  [please follow up].

Q19: You have spoken in the past, about Dylann Roof, "as above, how awful this whole situation is."  Describe that for us.  [Please follow up on any issues of guilt or innocence or penalty].

Q28A: "I believe that there are certain circumstances that warrant the death penalty." Tell us about those.  [If juror raises questions if self-defense, guilt beyond a reasonable doubt, insanity or other justifications or excuses to the crime of murder in the answer, please follow up with general voir dire outline questions E8-9, G1-2, H1-4].

Q28B:  Sources of beliefs:  "This is how I was raised and I feel that there are circumstances where it is appropriate."  How have your personal experiences and your background affected the development of your beliefs on the death penalty?  Please describe that for us.

Q37:  Please give us more description on your background in the area of mental illnesses. Please tell us how that may affect you if you are to receive evidence in this case of a psychiatric or psychological nature.  Do you have any experience or training specifically with persons who may have Autism Spectrum Disorder?

**Juror 214**. ████████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q4:  Please describe your duties at Heartland of Hannahan.

Q7: What type of law did Hugh W. Buyck practice?  What were your paralegal duties?

Q18A: "That Dylann Roof entered the Emanuel AME church and killed 9 people after attending their weekly meeting."  Please tell us more about what you recall being reported.  Do you currently hold opinions regarding Dylann Roof's guilt or innocence of the offense? Penalty? [please follow up].

Q18B: "That he murdered 9 innocent people."  [please follow up as above].

Q28A: "If the crime is great enough, I believe that the death penalty may be appropriate." Tell us what you mean by that.  If necessary, please conduct follow-up inquiry from general voir dire outline sections E1-9, G1-2 and H1-8.

Q28B: Tell us more about how the news, friends and family discussions have informed or contributed to your beliefs about the death penalty.

Q29: Follow up as necessary with general voir dire outline section F. 1-3.

Q37:  "I have learned about mental illness, Down Syndrome, Autism & Asperger's during my training to become an occupational therapist in terms of individualizing treatment plans."  Tell us more about your training.  When did you receive it? From whom?  How do you think this may affect you if you are to receive evidence in this trial of a psychiatric or psychological nature regarding some of these conditions?

**Juror 223.** ██████████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q11:  [This juror has been the victim of sexual abuse from ages 5 through 12 perpetrated by her brother, father and a cousin].  Ma'am, I would like to speak with you about your response to question 11, but I am assuming that you would prefer that this matter be discussed in private.  Would that be all right?  Without asking you to tell us any details about what happened, can you please share with us how this event and experience may impact you in a trial involving and depicting evidence of great violence?

Q18A: "It was a hate crime and he shot 9 people in a church downtown."  Describe for us what you recall hearing, and when you have heard discussion of this case.  Does anything that you heard cause you to have any opinions about the guilt or innocence of Dylann Roof, or what penalty he should receive?

Q19:  You have described that this event caused you to make a change temporarily to your facebook page.  Can you tell us more about that?

Q28A and B:  Since coming to the courthouse to fill out your detailed questionnaire, have you given more thought to any views you may hold on the death penalty?  If so, please share those with us. [Please follow up as necessary with general voir dire outline questions E1-9, G1-2, H1-8].

Q37: Please tell us more about your training and experience concerning your answer that you "have family with ADD – worked in health care with fetal alcohol syndrome."  Have you received other training in the areas of mental health? [Please follow up].

**Juror 225**. ███████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Standard Questionnaire, Question 37:  I cannot be fair in a case involving a foreign national.  Tell us more about your views on that?

Case Specific Questionnaire:

Q28A:  Views on the death penalty, "I'm all for it."  Describe what you mean by that.

Q28B: "I believe that if you kill then you should be killed."  [**The defense moves to challenge this juror for cause based upon this response**.  To the extent that any follow-up is necessary, please follow up with general voir dire outline questions E8-9, G1-2, and H1-8.

Q29: "If you kill then you should spend all of the time and not be let out for no reason."  Please follow up with general voir dire outline F1-3.

Q32:  you answered "h", none of these reflects your opinions on the death penalty.  Please describe what your opinion is.

**Juror 226**. ████████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q18A: "Dylann Roof went into Bible study at the church – sat with members – then before leaving shot 9 people. Then fled the scene and was captured later in another town. Heard he admitted to the crime." Describe for us what you recall hearing, and when you have heard discussion of this case. Does anything that you heard cause you to have any opinions about the guilt or innocence of Dylann Roof, or what penalty he should receive?

Q18B: "I believe that the reasoning behind him doing this could have been mis-lead hatred. But even though forgiveness was and should have been given, there are always consequences for our actions – whether good or bad." Does your understanding of the facts that you discuss here cause you to hold any opinion about Dylann Roof's guilt or the punishment he should receive?

Q19: You state that you have discussed with others about this case or the defendant, Dylann Roof, and described: the sadness it brings to our community and the sadness of hate and how it effects others. Can you tell us more about that? [follow up on any issues of guilt or penalty].

Q28A: "I am not opposed to the death penalty. However, there are some instances where more of a benefit / closure (punishment) may come from spending your life behind bars with a lack of freedom." Please tell us more about this opinion.

Q28B: "The Bible states that we are given choices. However, we are also responsible to the consequences of our actions." Tell us what you mean by this. How important are your religious beliefs in influencing your beliefs about the death penalty?

Q29: "However, there are times when I feel that they live better as a prisoner than a free man." Please tell us your views in general about a sentence of life in prison. [As necessary, please ask questions from general voir dire outline F1-3].

Q33: After all that we have asked you and that you have heard about the case, do you presently hold any opinion about whether or not Dylann Roof should receive the death penalty?

Q37: You have listed experience with the conditions of Down Syndrome, Autism and ADD. Please tell us about those experiences. Recognizing that all persons are different, will you be able to set any personal experiences aside, and weigh any expert testimony as it is received in this trial?

**Juror 227**. ▇▇▇▇▇▇▇▇

After the general outline is followed, please conduct follow-up inquiry on the following questions:

From the Standard Questionnaire:

Q47: "I am care taker for my mother and her two mentally disable brothers." [Please follow up on ability to serve].

From the case specific questionnaire:

Q28A: "I believe that if warranted, and no remorse is shown and individual lose their life." Please explain that more for us. For you, if you were to find that the defendant is guilty of intentional, premeditated murder, and that he has not shown remorse, is death the only appropriate punishment? [If necessary, please follow up with E8-9, G1-2 and H1-4].

Q28B: "My moral belief that any individual guilty of a crime should repent and ask for forgiveness." If you were to find that a person who is guilty of intentional murder does not repent and ask for forgiveness, again, for you, would death be the only appropriate punishment? [Please follow up].

Q29: Views regarding life without possibility of parole: "If rehabilitation and greater lesson of understanding can happen but only if person is remorseful and truly sorry." Please tell us more about that. For you, if you were to be convinced that a person was guilty of intentional murder, but did not express remorse, would life be an inappropriate sentence, and would death be the only appropriate punishment?

Q37: You have expressed experience with persons with the disabilities listed in both 37A and 37B. Can you describe that for us? Would you be able to weigh evidence from a psychologist and psychiatrist, and be able to set aside your personal life's experience, and weigh the evidence as it may be admitted in this trial?

Q40: "I believe hate is a learned behavior and as long as person ask for forgiveness and sincere, soul could be saved." For you, would this be an important consideration in weighing the penalties of life and death? Could you please explain? And that would be important to you, wouldn't it, the issue of remorse?

Q44: "My grandfather and uncles are clergy and the thought that something could have happened to them makes me sad." Sir, do you think that this might weigh heavily on your mind if you are called to serve as a juror and hear the evidence in this case? [Please follow up].

**Juror 231**. ██████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q4:     Please tell us more about your duties at work.

Q28A:  "I honestly feel that no one has the right to decide whether another person should live or die so to an extent I am impartial about the death penalty for murder because I don't see the justice in a life for a life."  [Please follow up with general voir dire outline Section I. 1-3].

Q32: You have answered both b and c to this question.  Please tell us more about that. So, I take it you could, after hearing all of the evidence in a case, consider voting to impose the death penalty if you believed that the facts and the law in a particular case called for it?

**Juror 232**. ██████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

**From the Standard Questionnaire:**

Q30:  You answered the question about having been a victim of a crime, and described an event.  You may wish to answer this privately, and you may do so.  You answered that you were robbed at gun point in Savannah, Georgia and that the assailant was never found.  Can you please share more with us about that event? [Please follow-up as to whether it would affect her in this trial].


**From the Case Specific Questionnaire:**

Q7: Son is a deputy with Beaufort County.  How long has he been a Sheriff's Officer?  Do you speak with him about his job much?  Would you give a law enforcement officer the same credibility assessment as any other witness?

Q11: Again, she discusses having been robbed at gun point in Savannah in 1997.  [Please follow up if any further discussion is necessary].

Q18A: You described that you have seen "what was on television and people asking for prayers for the families."  Please tell us more about what you recall.  [please follow up].

Q18B: You answered that your thoughts about Dylann Roof are that "it's very sad."  Can you tell us more about what you mean by that, or what you were thinking about?  [Please conduct any necessary follow-up].

Q28A:  You answered that you had no views on the death penalty as a punishment for murder.  Have you given that question more thought since filling out the questionnaire?  Can you share any thoughts with us?

Q29: Likewise, you answered that you have no thoughts about life without the possibility of parole.  Have you given this more thought since filling out your questionnaire?  [Please follow up with general voir dire outline, questions F2-4].

Q37: Please tell us more about the mental health trainings that you attend as Guardian ad Litem for the State?  Would you have any problem weighing expert testimony as it may be received in the course of this trial, even if it calls for you to set aside any personal experience?

**Juror 242**. ████████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q17:  You answered that you have some personal knowledge about the case, in that the "defendant purchased ticket to Plantation that my mom works at before murders; someone I know went to school with him in high school I think."  [Please conduct follow up regarding this personal effect on this juror].

Q18: You describe that you have heard that this is a "hate crime which led to murders of individuals within the AME church in downtown Charleston;" and that "was quiet and respectful in high school."  Can you tell us more about this? Has this information caused you to have any opinions about guilt or innocence in this case, or about the penalty that should be received?

Q19: You describe having talked to co-workers in the case.  Can you recall more about what was said? [Conduct any necessary follow-up].

Q28A and B:  Please tell us more about these views that you have expressed here. Can you tell us more about your beliefs on the death penalty? [If necessary, please follow up with general voir dire outline questions E1-9; G1-2; H1-8].

**Juror 244**. █████████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q19:  Can you please tell us more about any conversations you have had about the case, and how they may have affected or influenced you? [Please conduct any necessary follow-up].

Q28A: You said that your views about the death penalty are that it is "supported dependent upon circumstances."  Can you please tell us more about what those circumstances might be, to you? [If the circumstances he discusses includes questions about guilt beyond a reasonable doubt, self-defense, insanity, heat of passion or other defenses to the crime of murder, please follow up with general voir dire outline questions E1-9, G1-2, H1-4].

Q28B: "Strictly personal belief that certain punishments fit certain crimes."  Please explain more about what you mean by that.  [If necessary, please follow up with general voir dire outline, section E8-9; G1-2; H1-4].

Q29: Please follow up with general voir dire outline section F1-3.

**Juror 215**. █████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q18A:  "What he did was awful." Please describe more about that.  Do you presently hold an opinion about whether Dylann Roof is guilty? Or what penalty he should receive based upon what you have seen, heard and read about this case?

Q18B: "The lives that he took, for no reason is unforgiveable."  Please tell us more about what you are thinking.  [Please follow-up as above].

Q26: You describe that you or a member of your immediate family were "very hurt" by this incident.  Please tell us more about that.  [Please follow up as above].

Q28A: You left this question blank.  I am going to follow up and ask you some questions about the death penalty.  [Please conduct follow-up inquiry with general voir dire outline Section E1-9; G1-2; and H1-8].

Q30 and 31:  Let's talk a bit more about these.  You rate yourself a 7 on a scale of 1-7, and you answered all of the questions in section 31 "yes."  Does this mean that, I can fairly take it from your responses, that if a person is guilty of committing an intentional murder, that his life should be forfeited as well?  So, if you and eleven other jurors convicted a defendant of an intentional murder, committed with no justification or excuse, do you think that the only appropriate penalty for that kind of crime is death?  And for you, would that be pretty much automatic?

Q33A: After having thought about this some more, do you presently hold an opinion that Dylann Roof should receive the death penalty?  Or, tell me what you were thinking when you state "such an awful crime so many lives were taken for no reason" in response to Question 33A.  [Please follow up].

**Juror 259**. ████████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q18A: "That Dylann Roof went into a church downtown Charleston for a bible study. Then murdered 9 Black people. Then he walked out of church and police caught him a day later in North Carolina." Tell us more about this. Where did you receive this news? How did this affect you? Do you presently hold any opinions about whether Dylann Roof is guilty of this act? Do you presently hold any opinions about what punishment Dylann Roof should receive? [Please follow up].

Q18B: "My thoughts immediately were how can someone do this and here we go again." Tell me what you mean by "here we go again." Does this cause you to form any opinions about whether Dylann Roof is guilty or what punishment he should receive?

Q28A: "I am for the death penalty if they are guilty of any crime that warrants it. Such as taking the life of another person." Tell us more about that. For you, if the person is guilty of intentional murder – no justification, no excuse, the person is in fact guilty – is death the appropriate penalty for that kind of killing? [Please follow up as necessary with general voir dire outline questions E8-9; G1-2; H1-4].

Q29: "I also believe life without parole if we "the jury" can't come to an agreement about death." Please describe that in more detail. [Follow-up as necessary with questions F1-3 from general voir dire outline].

Q31A, B: You answered yes to questions 31A and B – that is, if you were to find that the defendant is guilty of intentionally murdering another person – and in fact intentionally murdering multiple people – for you, then, the death penalty should always be imposed? So, death is the automatic punishment if in fact you and eleven other jurors were to find the defendant guilty beyond a reasonable doubt of intentional murder?

**Juror 261**. ▮▮▮▮▮▮▮

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q28A:  Your response was "any view that I may have is determined by the facts of the case and what this state law requires."  Ma'am, I appreciate your answer.  I was wondering if you might tell us, though, just a little bit about your beliefs on capital punishment in general?  Please follow up, if necessary, with general voir dire outline questions E1-9, and questions H1-8.

Q29:  Your response was "my views depends on the crime and the laws of our state. Also the evidence provided to me."  Again, I was wondering if you could just tell us about your beliefs on life without parole as a punishment for the crime of murder?  Please follow up, if necessary, with questions F. 1-3.

Q30:  Tell me what you were thinking as you circled "5" in response to question 30?

**Juror 271.** ███████████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q18A: "I have heard that Dylann Roof went into a AME Church, sat through the entire bible study. He then joined them for a prayer meeting. He killed 9 people and left 3 living." Do you remember where you heard this? Can you tell us more about what you may have heard. Did anything you heard cause you to form an opinion about Dylann Roof's guilt or innocence or the punishment he should receive?

Q18B: "I think that Dylann Roof should get the toughest punishment for this case. Those 9 people didn't do anything to him for him to sit in front of them and execute them the way he did." Can you share with us more about what you feel? Does this mean that you hold the present belief that Dylann Roof should get the death penalty, as the "toughest punishment for this case"? [Follow up if necessary].

Q19: You have answered that you have spoken about this case or Dylann Roof "at church during group forums before this time." Can you share with us what you have spoken about? [Please follow up as necessary].

Q24: You have answered that you know Reverend Depayne Middleton-Doctor, in that "my mother sang on the choir with her. We both attended Mt. Moriah where Rev. Doctor attended about 2 years ago." Please share more with us about the victim, Reverend Depayne Middleton-Doctor. Ma'am, if you were called to serve as a juror in this case, you may have to look at graphic and disturbing evidence surrounding the murder of Reverend Depayne Middleton-Doctor and 8 other members of the Bible study group, and of the terror that the three surviving witnesses lived through. Might that be difficult for you, especially given your personal relationship, to sit through such a trial? Would that grief be at the front of your mind as the evidence comes in? In light of that, would you like to be excused from this trial?

Q28A: "I feel that a murder in this capacity that the death penalty is appropriate. If a person kills more than 2 people they should get the death penalty or if they tortured someone they should get the death penalty." So, I thank you for your honesty. So, for you, at this time, do you hold the opinion that the death penalty is the only appropriate penalty for the murder of these 9 people? [If necessary, please follow up with E8-9; G1-2].

Q31B, C: The death penalty should always be imposed when someone commits multiple intentional murders; or intentional murder because of race? Yes. "If you intentionally kill more than one person you don't deserve your life. You have no remorse for human life. In America we have the right to be free. It isn't fair to kill someone based on their color." Thank you for your honesty, ma'am. So, for you, if you and eleven other jurors found

28

the defendant guilty of multiple intentional murders, the only appropriate punishment is death? And you feel strongly about that? [If necessary, follow up with E8-9; G1-2].

Q33A:  Ma'am, in answer to question 33A, you have made marks in both yes and no, but seem to be indicating "no." But your answer is "Dylann should have to suffer for what he did."  Does this mean that your honest opinion at this time is that Dylann Roof should get the death penalty in this case?

**Juror 273**. ███████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q11: "1974, my brother was murdered." The Standard Questionnaire reflects that her brother's name was Greg Arnold. (Q30). Ma'am, I need to ask some questions about your response to Question 11, but would you like to speak with me privately about this? Given that your brother was the victim of murder, might it be difficult for you to sit on a case involving nine violent murders? Would your brother's murder weigh heavily on your mind as you hear and see rather graphic evidence in this case? [please follow up as necessary].

Q28A and B: "I am neither for or against the death penalty." Sources of your beliefs? "I don't know." Ma'am, have you given any further thought to the response to this question since you have filled out your case specific questionnaire? Can you share those with us? [Follow up, if necessary, with sections E, F, G and H from general voir dire outline].

Q29: "In some instances I don't believe parole should be given if the crime was deliberate or extremely brutal." Can you tell us what you mean by that? [Follow up, if necessary, with section E, F, G and H of the general voir dire outline.

Q45: "I served as a juror on a capital murder case. The defendant was found guilty and given the death penalty." [Please follow up]. Where? When? What court? Anything stand out in your mind from that process? If you were seated in the defendant's chair, would you, knowing all that you know and given all of your life's experiences, want you as a juror in this case?

**Juror 276**. █████████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q7B / Q45: Tell me about your law practice. [Conduct any necessary follow-up questions regarding her request for an exemption].

Q17 / Q25:  Would your knowledge of Mr. Roof's aunt, uncle and cousins who attend your church, and the fact that your son is close friends with Mr. Roof's cousin, affect your ability to fairly and deliberate the issues in this case?

Q28A: "I believe it is appropriate in certain cases; although I also have difficulty reconciling that level of violence with my own religious beliefs."  Please tell us more about that.  Do you have a set of "certain cases" in mind where you feel the death penalty is appropriate?  Please follow up as necessary with general voir dire outline sections E1-9, G1-2, H1-8.

Q28B: "Constitutional law; Bible."  What principles in constitutional law inform your beliefs about the death penalty? And the Bible?  Can you fairly apply the instructions as I give them to you to the facts in this case and issue a fair and impartial verdict?

Q29B:  You have answered that life without the possibility of parole as punishment for murder "is an appropriate penalty in certain cases."  Can you tell us more about that?

Q34:  You have indicated that persons close to you may be critical or disappointed in a death verdict in this case.  Knowing that, would you be able to reach a fair and independent decision with regard to the issue of guilt or innocence in this case; and, if necessary, as between the penalties of life imprisonment without release or the death penalty?

**Juror 277**. ████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q28A: "I think it is an appropriate punishment for murder but it ultimately depends upon the situation or reason for the murder."  Please tell us more about that.  What kind of reasons for murder would warrant the death penalty?  As appropriate, please follow up with general voir dire outline sections E, G and H.

Q29:  "It just depends upon the situation of the murder, or intent.  If the defendant shows any remorse for their crime if convicted."  For you, is remorse a key component to whether you would consider a life sentence?  If there is no remorse shown, would death be the more appropriate penalty in your opinion? Do you feel strongly about that?  [If appropriate, please follow up with F2-4, G1-2 and H1-4 from the general voir dire outline].

**Juror 278**. █████████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Note: Standard Questionnaire answered "no" to question 31 (whether he has been charged with an offense other than a traffic offense); charged with driving under the influence; convicted by guilty plea of a misdemeanor "implied consent violation" in 2008-10-06.

From case specific questionnaire:

Q10:  "Placed French flag on porch after Paris shootings."  Tell us more about that.

Q18A: read meeting accounts and attended the Memorial Service where President Obama spoke.  Tell us about that event and its impact upon you.

Q18B:  Thoughts on Dylann Roof are "that he committed a horrible crime, but that he is entitled to the presumption of innocence and a fair and impartial trial."  Tell me more about the first part of that sentence – that he committed a horrible crime.  Do you currently believe that Dylann Roof is guilty based upon the information you have received to date?  Thoughts on the penalty that he should receive?

Q28A:  "believe in the death penalty in the most heinous cases involving violent and premeditated death of another person."  For you, if a person is guilty of the premeditated, intentional murder of one or more human beings, is death, then, the only appropriate penalty?  [Please follow up as necessary with sections E, G, H from the general voir dire outline].

Q28B:  "personal feelings from a lifetime of following judicial proceedings, reading various op-ed pieces pro and con, the expense of keeping someone alive vs. execution, discussions in law school constitutional law class."  Please tell us more about that.  Is the cost of keeping someone alive an important part of your consideration of the death penalty?  [Please follow up as necessary with sections E, G and H].

Q29:  You answered that life without possibility of parole as a punishment for murder: "I'm ok with this if the facts merit it – crime of passion, not pre-mediated, heat of moment crimes."  So, for you, if the defendant is in fact guilty of intentional, premeditated – not crime of passion, not "heat of moment," no duress, no alibi – guilty of intentional, premeditated killing of another, for you, death is the only appropriate punishment?  [Follow up as necessary with E8-9; G1-2; H2-4].

Q31B, C and D: you checked "yes" that the death penalty should always be imposed for multiple murderers and when someone commits an intentional murder because of race or color?  And that is how you feel? You feel strongly about that?  In fact, you explained:  "I don't think someone can be spared their own life when they have intentionally killed

many people, or when race or religion are the reasons for killing.  Our constitution and society are premised on free rights of assembly, practice of religion and guarantee of non-discrimination because of race.  If someone intentionally kills others in violation of those rights, I believe they have given up their own right to live, if so convicted."  So, what you're telling us is that death is the automatic punishment for that kind of killer?

**Juror 284**. █████████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q13: On the issue of gun control, you noted "as long as you are a law abiding citizen without a violent nature I do not see a need for gun control. However, any mental disorder or violent past in a person's history should be subject to gun control laws." Can you tell me more about your views on this?

Q19: Regarding having spoken about Dylann Roof, you stated that you have had conversations "only in how much of a terrible person could commit such a crime." Can you tell us more about that? Has the information you have reported hearing from the news or other sources caused you to form an opinion regarding the guilt or innocence of Dylann Roof, or what penalty he should receive?

Q28A: Regarding your views on the death penalty, you state: "If a person takes a life without it being out of self preservation (cold blood), then the death penalty is what that person deserves."

Do you believe that the death penalty should always be imposed for any defendant who intentionally kills a person or persons without any legal excuse or justification (for example, not insane, not self-defense, not acting under the heat of passion, not duress, no reasonable doubt about guilt)? [Follow up as necessary with general voir dire outline questions E8-9; G1-2; H1-8].

Q28B: Regarding the sources of your beliefs about the death penalty, you answer "The bible says it best." Can you tell us what the bible says about the death penalty that informs your answer? [if eye for an eye, life for a life, please follow up with general voir dire outline questions E8-9; G1-2; H1-4].

Q29: Your response regarding life without the possibility of parole as a punishment for murder is "why waste tax payer dollars?"

Does this mean, sir, that for you, life without parole is not the appropriate punishment upon conviction for a premeditated, intentional killing of one or more people? Do you believe that life imprisonment without possibility of release could eve be a severe enough punishment for a person who is found guilty of intentional murder? Or multiple intentional murders?

In the federal system, a "life" sentence means life in prison without the possibility of release. That is, if sentenced to life, the defendant will remain in prison until he dies. Do you have any doubts about whether this is truly the case? Please explain.

Q30:  In response to this question, you circled a 7, indicating that the death penalty should be imposed whenever the defendant has been convicted of intentional murder. Please tell us a bit more about why you feel that way.

Q31B:  You answered that the death penalty should always be imposed when someone commits multiple intentional murders.   Please tell us a bit more about why you feel that way.

Q31D:  You answered that the death penalty should always be imposed when someone intentionally murders another person while the victim is exercising his or her religious beliefs.  Your answer was:  "If you murder someone outside of defending your life or the life of a family member or an innocent victim.  Then it is murder in cold blood which is a justification of the death penalty."

So, for you, the a defendant who is guilty of the premeditated, intentional murder of another human being, without justification or excuse – no self-defense or defense of another – automatically warrants the death penalty.

**Juror 289**. ████████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

Q24:  You wrote, on question 24, that "Cynthia Hurd and I work together at John L. Dart Library for some years about 18 years ago."  Can you tell us more about your work with her? How long did you work together?

This case involves allegations about the murder of the nine victims at Emanuel AME Church, and may involve rather graphic and disturbing evidence from the crime scene, including evidence depicting Cynthia Hurd after she was killed.  Having known her, do you think it would be difficult for you to view such evidence, and make it hard for you to serve as a juror?  Would your relationship with her make this case a particularly difficult one upon which to serve as a juror?

Q28:  Regarding your views on the death penalty, you wrote "I have none."  Can you tell us, have you thought a bit more about this since filling out your questionnaire?  Do you have any beliefs at all about the death penalty that you can share with us?

Q29:  Regarding your views on life without parole as a sentence for murder, you wrote "none."  Have you thought a bit more about this since filling out your questionnaire?  Do you have any beliefs at all about a life sentence that you can share with us?

Q30:  On question 30, you circled a "5," indicating your opinion about the death penalty. Can you explain that answer for us?

Q31B:  You indicated that the death penalty should always be imposed when someone commits multiple intentional murders.  Do you still feel that way?  Tell us about that.

You explained:  "I think that a person who kills like that have a lot of time to think about what he or she is doing but when you kill a group of people with no justice that should be impose."  Do you mean by that that the death penalty should be imposed in that situation – the killing of multiple people?

**Juror 302**. ███████████

After the general outline is followed, please conduct follow-up inquiry on the following questions:

From the standard questionnaire:

Question 1:  "I have chronic back pain, and need a decent chair with a back for support.  I cannot sit in a hard chair for long, unless there was a pillow of sorts (which I could bring."  Please follow up.

Q16 / Q11 (standard questionnaire):  Describe for us your experience and duties with the Town of Mount Pleasant Police (1988-92); Augusta-Richmond County Sheriff's Department (1992-2001); Isle of Palms Police Department (2001-2003).  How might that experience affect you if you are called upon to serve as a juror in a case with such allegations of violence?

Q30:  You were assaulted by 4 men while working as a law enforcement officer in August, GA.  Crushed your L-5 vertebrae 5%, and separated your right shoulder causing temporary nerve damage to your right elbow.  How might that experience affect you if you are called upon to serve as a juror in a case with such allegations of violence?

From the case specific questionnaire:

Q7:  During the last year, you worked at a Richmond County Jail.  Do you have regular contact with inmates?  Tell us about your duties.  [Please conduct any necessary follow-up].

Q18B: Can you tell us what thoughts you might have about Dylann Roof based on the facts of the incident that you have heard, read and seen?

Q28A:  Regarding your views on the death penalty, you wrote: "I believe it is warranted in certain circumstances."  Can you tell us more about what you are thinking?  [Follow up as necessary with general voir dire outline E1-9, G1-2; H1-8].

Q28B: You answered: "From the time I spent as a law enforcement officer, I've witnessed the aftermath of what things people can do to one another. Some things I've learned have circumstances that do not warrant the harshest punishment, and some that do."  Have you formed a belief or opinion about which things do, and which do not, warrant the harshest punishment?  Can you explain that some more?

Q29: "Again, it depends on the circumstances leading up to and during the commission of the murder.  This is one possible sentence for someone who takes another life." Can you tell us more about your basic beliefs about the sufficiency of life imprisonment as a punishment for murder?

Q30:  In answer to question 30, you rate yourself a 5 on the death penalty scale. Can you explain what you were thinking in assigning yourself this rating?

**Juror 315.** ████████████

\*\* This juror indicates that his wife is a cousin of two victims in this case: Susie Jackson and Tywanza Sanders. (Q24). He indicates he has personal knowledge about the case and attended a funeral for the victims (Q17), which took place at the Emmanuel AME Church (Q27).

The juror indicates he has no views on the death penalty (Q28) or on a life sentence (Q29) and did not respond to Q32. Please follow up in detail with questions from the general outline, sections E, F, G and H.

**Juror 318.** ███████████

Q28A&B:  "I have uncertain feelings and thoughts about the death penalty.  I don't have a strong opinion one way or the other.  It depends on the case at hand.  I am Catholic.  I believe in life but I also believe in the consequences for your actions whatever that may be."  Tell us more about that.  Would you have any trouble following the law as I instruct you in this case?  If necessary, please follow up with general voir dire questions section I 1-3.

Q34:  "I hope I could be fair.  I have a large strong Catholic family.  It might be difficult."  Would you be able to set aside any concerns you have about issues outside of the evidence you hear in this case and be fair and impartial based on the law as I instruct you?

Q37:  You indicated you have some family members with mental health issues.  Can you tell us more about that?  If you were to hear testimony regarding mental health issues in this case, would you be able to set aside what you know from your personal life, and weigh any evidence or testimony as it comes in during this case?

**Juror 323.** ▮▮▮▮▮

Q19:  You indicated you have had "discussions with friends, family and patients" about this case or the defendant.  Can you tell us more about that?  Have you expressed any opinions to others about whether the defendant is guilty of this crime or what his punishment should be?

Q28:  You indicated "the media" as the source of your views about the death penalty. Can you tell us more about that?  Follow up, as necessary, with questions from the general voir dire outline section E and G.

Q29:  Please follow up with questions from the general voir dire outline section F.