IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 2:15-CR-00472-RMG |
| | ) | |
| v. | ) | **UNDER SEAL** |
| | ) | |
| DYLANN STORM ROOF | ) | |
| _____ | ) | |

**GOVERNMENT'S RESPONSE TO THIS COURT'S ORDER (DKT. NO. 627)
ON COMPETENCY-RELATED ISSUES**

The government respectfully files this response to this Court's order to brief the

following three issues: (1) the standard for competency to stand trial; (2) whether the use by

Defendant of expert mental health testimony during the competency hearing affects the use of

such information at trial; and (3) whether the use by Defendant of expert mental health testimony

during the competency hearing should cause the Court to reconsider its ruling closing the

competency hearing.

**I.      The Two-Factor Standard for Competency is Well Established**

The Due Process Clause requires that a criminal defendant have the mental capacity to

participate in legal proceedings brought against him.  The Supreme Court has long established

that to be competent to stand trial, a defendant need only have (1) a "sufficient present ability to

consult with his lawyer with a reasonable degree of rational understanding," and (2) "a rational

as well as factual understanding of the proceedings against him."  *Dusky v. United States*, 362

U.S. 402, 402 (1960) (per curiam).

18 U.S.C. § 4241(d) incorporates this constitutional standard.  *United States v.*

*Broncheau*, 645 F.3d 676, 686 (4th Cir. 2011).  Under the terms of this statute, a defendant may

be found incompetent if the defendant proves, by a preponderance of the evidence, that he "is

presently suffering from a mental disease or defect rendering him mentally incompetent to the

extent that he is unable to understand the nature and consequences of the proceedings against

him or to assist properly in his defense."  18 U.S.C. § 4241(d); *see United States v. Robinson*,

404 F.3d 850, 856 (4th Cir. 2005) (placing the burden of proof on the defendant); *United States*

*v. Speelman*, 7:15-CR-69, 2016 WL 3129180, at * 6 (E.D.N.C. June 2, 2016) (same).

As the Supreme Court has declared, "[r]equiring that a criminal defendant be competent

has a modest aim: it seeks to ensure that he has the capacity to understand the proceedings and to

assist counsel."  *Godinez v. Moran*, 509 U.S. 389, 402 (1993).  In making the competency

determination, the court is only required to ensure that the defendant "had the *capacity* to

understand, the *capacity* to assist, and the *capacity* to communicate with his counsel."  *Bell v.*

*Evatt*, 72 F. 3d 421, 432 (4th Cir. 1995) (emphasis in original).  It is not, however, "required to

determine whether the defendant actually acted in accordance with his ability."  *United States v.*

*Fair*, 246 Fed. App'x 238, 239 (4th Cir. 2007).

In determining whether a defendant is competent, courts weigh several factors, including

the defendant's ability to communicate with the court and others; the defendant's irrational

behavior; and any mental health evaluations.[1]  As part of this weighing process, the trial court's

own observations of the defendant and his communications are often critical in making the final

---

[1] The Defendant appears to conflate the standards for a procedural competence claim, *i.e.*, when a trial court must order a competency hearing, with a substantive claim of a finding of incompetence. (Def.'s Supp. Reply to Govt.'s Resp. to Def.'s Proposed Procedures, Dkt. No. 607, at 2-3.)  Defendant suggests that *Drope* stands for the proposition that *any* of these factors requires a "further inquiry." *Drope*, however, only addressed a procedural claim of competency, holding that one of these factors may trigger a court's obligation to order a competency hearing. Similarly, the Defendant also attempts to rely upon *Odle v. Woodford*, 238 F.3d 1084, 1089 (9th Cir. 2001), as explaining substantive competency when that case merely addressed the *procedural* failure to hold any hearing. To establish a procedural incompetency claim, a defendant "need not demonstrate on appeal that he was in fact incompetent, but merely that the district court should have ordered a hearing to determine the ultimate fact of competency." *United States v. Fauntleroy*, 508 Fed. App'x 238, 241 (4th Cir. 2013).

determination of a defendant's competence. *See United States v. West*, 877 F.2d 281, 285 n.1 (4th Cir 1989) (upholding district court's denial of competency motion by defendant whom it had observed in prior hearings); *United States v. Jones*, 642 F.3d 1151, 1161 (D.C. Cir. 2011) (holding that district court could rely on its own observations to conclude that a defendant's conduct was a result of his "obstinancy," not mental incapacity); *United States v. Nichols*, 56 F.3d 403, 411 (2d Cir. 1995) (holding that trial court was "entitled to rely on his own observations and questioning of [the defendant]" in reaching conclusion that the defendant's "noncooperation at trial was a 'deliberate and calculated act'").

As the Fourth Circuit has repeatedly emphasized, "not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." *Burket v. Angelone*, 208 F.3d 172, 192 (4th Cir. 2000) (internal quotation marks omitted); *see also Beck v. Angelone*, 261 F.3d 377, 388 (4th Cir. 2001).[2] Accordingly, the Fourth Circuit has found that defendants with diagnosable mental disabilities or illnesses, low IQ scores, and difficulty expressing themselves are nevertheless competent to stand trial. *See Beck*, 261 F.3d at 388-89; *see also Burket*, 208 F.3d at 192 ("[N]either low intelligence, mental deficiency, nor bizarre, volatile, or irrational behavior can be equated with mental incompetence to stand trial."); *Speelman*, 2016 WL 3129180, at * 6 (same).

If a defendant has a diagnosed mental condition, the critical inquiry is whether, and if so to what extent, that condition affects his competence to stand trial. *Cf. United States v. Lee*, 106

---

[2] One court has defined rationality under the *Dusky* standard as requiring that "a defendant have some ability to confer intelligently, to testify coherently, to follow and evaluate the evidence presented, and have some awareness of the significance of the proceeding and some ability to understand the charges against him the defenses available to him, and the basic elements of a criminal trial." *United States v. Merriweather*, 921 F. Supp. 2d 1265, 1303 (S.D. Ala. 2013).

F.3d 393, 1997 WL 54292, at *1 (4th Cir. 1997) (noting that the defendant's medical condition could cause "a range of effects from severe to nonexistent" on his ability to understand the proceedings). Importantly, competence is a factual finding made by the Court, and it is required to independently assess the defendant's competence to stand trial even where contrary or competing medical opinions exist. *See Maggio v. Fulford*, 462 U.S. 111, 117 (1983) (per curiam) (1983) (upholding trial court's decision to place little weight on an "unimpeached" psychiatric evaluation and to rely on its observations of the defendant to find him competent); *Bryson v. Ward*, 187 F.3d 1193, 1203-04 (10th Cir. 1999) (holding that trial court could rely on its own observations to determine competency in a capital case and was not required to consider medical affidavit submitted by the defendant).

For example, in *United States v. Rodriguez*, several experts diagnosed the defendant as having autism spectrum disorder with accompanying intellectual and language impairments, but disagreed about the degree to which those issues affected his competency to stand trial. Case No. 14-20877-CR, 2015 WL 6964671, at *9 nn. 11-12; *id.* at **13-14 (S.D. Fla. Nov 10, 2015). In finding that the defendant was competent, the court reviewed the medical expert opinions, the facts of the case showing the defendant's intellectual capabilities, and the defendant's responses to questioning during the competency hearing. *See id.* at *14; *see also Edwards v. Roper*, No. 4:06-CV-1419, 2009 WL 3164112 (E.D. Mo. 2009) (rejecting claim that a potential diagnosis of Asperger's syndrome required a finding of incompetence where the trial court's observations of the defendant did not show any impairment). In other words, all of the evidence bearing on a

defendant's competence, not merely an expert's identification of a specific mental illness,

controls this Court's determination of a defendant's competency to stand trial.[3]

### 1. Competency Requires Only that the Defendant Has the Ability, Not the Willingness, to Consult with Counsel

Section 4241 requires a court to determine whether the defendant is "unable . . . to assist

properly in his defense" because of a mental disease or defect.  The ability "to assist properly in

his defense" requires only that the defendant possess the "sufficient present ability to consult

with his lawyer with a reasonable degree of rational understanding."  *Dusky*, 362 U.S. at 402.

The defendant need not have a sophisticated understanding of or ability to argue complex legal

concepts.  *See United States v. Hogan*, 986 F.2d 1364, 1372-73 (11th Cir. 1993).  Instead, the

phrase "to assist in his defense" simply refers to "such phases of a defense as a defendant usually

assists in such as accounts of the facts, names of witnesses, etc."  *See United States v. Perez*, 603

F.3d 44, 48 (D.C. Cir. 2010).[4]

The defendant's *ability*, not his willingness, to consult with counsel is all that Section

4241 and the Constitution require.  *See, e.g.*, *United States v. Battle*, 613 F.3d 258, 263 (D.C.

Cir. 2010) ("The relevant legal question is not whether appellant *will* assist properly in his

defense, but whether he is able to do so.") (internal quotations omitted).  Thus, a breakdown in

---

[3] The Court need not make a determination of whether the defendant actually has any diagnosable mental illness by concluding that regardless of any potential diagnosis, the defendant is capable of understanding the proceedings and consulting with counsel.

[4] By the nature of the relationship, ability to assist in this context means nothing more than the ability consult or communicate with counsel. A defendant need not be capable of actively assisting in the trial proceeding by questioning witnesses or making legal argument. Indeed, the courts have made clear that the capability to actively particulate in trial activities – such as understanding complex legal concepts or conducting an effective cross-examination – are not required to be competent to waive the right to counsel. *See Godinez v. Moran*, 509 U.S. 389, 400 (1993) ("a criminal defendant's ability to represent himself has no bearing upon his competence to choose self-representation"); *United States v. Bernard*, 708 F.3d 583 (4th Cir. 2013) ("[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself.").

communications between counsel and client, standing alone, is insufficient.  Instead, a defendant must prove that the breakdown has been caused by an inability to communicate due to a mental disease or defect, not merely a defendant's voluntary refusal to communicate.  *See United States v. Nichols*, 56 F.3d 403, 412 (2d Cir. 1995) (holding that existence of paranoid delusions alone is insufficient to find that the defendant is not capable of consulting with counsel; "[t]he mental illness must deprive the defendant of the ability of consult with his lawyer with a reasonable degree of rational understanding") (internal quotations omitted)); *United States v. Merriweather*, 921 F. Supp. 2d 1265, 1289, 1304-06 (N.D. Ala. 2013) (holding that "there is a difference between actual mutism and selective silence").

A refusal to cooperate with counsel – even if motivated by reasons that seem unreasonable to defense counsel – does not render a defendant mentally incompetent to stand trial.  *See, e.g., Nichols*, , 56 F.3d at 411 (upholding district court's competency finding where a defendant who refused to participate in trial proceedings because he considered the trial a "lost cause"); *United States v. Merritt*, 14-cr-02147, 2016 WL 3179464, at **4-8 (D. Az. Mar. 24, 2016) (holding that defendant was *able* to assist his counsel despite his "utter refusal" to cooperate with counsel based on strong religious beliefs); *United States v. Tefsa*, 404 F. Supp. 1259, 1270 (E.D. Pa. 1975) (rejecting defense counsel's claim that the defendant was incompetent even if his refusal to cooperate with counsel was based on cultural and social norms or served as a "face-saving device").  A criminal defendant's distrust or substantial disagreement with counsel is not unusual, and a refusal to acquiesce to defense counsel's advice does not render a defendant incapable of consulting with his defense counsel.  *United States v. Ghane*, 593 F.3d 775, 781 (8th Cir. 2010) (reversing a district court's finding that the defendant was incompetent, and stating that "[p]ro se filings and interruptions generally reflect a defendant who

disagrees with his attorney's handling of his case, but disagreement with one's attorney does not make one mentally unable to consult with him"); *United States v. Moussaoui*, 591 F.3d 263, 293–94 (4th Cir. 2010) (finding no error in district court's determination that defendant was competent despite his pleading guilty against the advice of counsel); *cf. United States v. Grimes*, 173 F.3d 634, 636 (7th Cir. 1999) (upholding trial court's finding of competence where, inter alia, "he is suspicious of his lawyers (nothing unusual about that!)").[5]

To the contrary, a defendant's ability to consider strategic choices, or even develop his own defense strategy, is itself evidence that he is able to assist in his defense. *See Perez*, 603 F.3d at 47; *United States v. Leggett*, 162 F.3d 237, 243 (3d Cir. 1998) (finding defendant competent where, *inter alia*, he discharged counsel because he did not believe counsel adequately pursued his preferred defense strategy); *United States v. Lambros*, 65 F.3d 698, 701-02 (8th Cir. 1995) (holding that a defendant who demonstrated that he could be an "advocate for his own interests" was competent, even though he had paranoid delusions that an electronic device had been implanted in his head). That a defendant may choose to pursue "an inadvisable strategy" is not evidence that he is incompetent to stand trial. *Perez*, 603 F.3d at 48; *see also Gonzales v. Walker*, 02-cr-02279, 2010 WL 3893577, at *19, 21 (N.D. Cal. Sept. 30, 2010) (a defendant's refusal to respond to defense counsel before and during trial because he "wanted to

---

[5] In *Schriro v. Landrigan*, 550 U.S. 465, 479 (2007), the Supreme Court relied upon the defendant's affirmative decision to not present any mitigation evidence to determine that there could be no prejudice under *Strickland* for an inadequate mitigation investigation because the defendant would have refused to permit the introduction of mitigation evidence in any event. This holding necessarily adopts the proposition that the defendant may – at least for non-tactical reasons – prohibit a defense from being presented. Without that necessary premise, the Court could not have found that the failure to investigate mitigation would necessarily lack prejudice. As such, the mere refusal to permit mitigation evidence that is inconsistent with the strategic aims of the defendant and the message he intends to stand by cannot form the basis of a finding of incompetence.

[confess] his way" rather than mount a defense does not constitute an *inability* to communicate with counsel). As the Seventh Circuit has noted, "persons of unquestioned competence have espoused ludicrous legal positions, but the articulation of unusual legal beliefs is a far cry from incompetence." *United States v. Alden*, 527 F.3d 653, 660 (7th Cir. 2008).

Moreover, although defense counsel's observations about their interactions with the defendant is a relevant consideration, a court is not constrained to blindly accept assertions by defense counsel that their client lacks competence to assist in the defense, especially where the court's own observations of the defendant belie such claims. *See Bryson v. Ward*, 187 F.3d 1193, 1203-04 (10th Cir. 1999) (upholding trial court's competency determination in a capital case, despite defense counsel's repeated assertions that the defendant was delusional and unable to communicate with counsel, because a transcript of the competency hearing showed that the defendant "responded rationally, coherently, and lucidly to the court's questions"); *United States v. Maxton*, 13-cr-00411, 2013 WL 6800695, at *2 (D. Colo. Dec. 24, 2013). The Court, not defense counsel, makes the determination whether the defendant is able to communicate and assist in his defense.

### 2. Section 4241 Requires a Showing that a Defendant Has an Understanding of the Nature and Consequences of the Proceedings

The Fourth Circuit has held that a defendant satisfies the second factor of Section 4241, i.e., he possesses "a rational as well as factual understanding of the proceedings against him," if he is able to provide lucid responses to questions by the Court or evaluators about the roles of the court, the charges, the nature of the proceedings, the evidence, and the consequences of conviction. *See, e.g.*, *Burket*, 208 F.3d at 192 (noting that defendant's "lucid" responses showing an understanding of the proceedings); *Beck*, 261 F.3d at 387 (same); *Perez*, 603 F.3d at 47; *see also Leggett*, 162 F. 3d at 244 (finding that a defendant's understanding of the elements of legal

8

waiver indicate the requisite understanding of the nature and consequences of the proceedings).

Courts may also look to a defendant's activities outside of the courtroom, including his

interactions with others and his ability to read and write, to bolster the conclusion that he

possesses "a rational as well as factual understanding of the proceedings against him." *Dusky*,

362 U.S. at 402; *see also Merriweather*, 921 F. Supp. 2d at 1306-07.  A defendant need not

exhibit a perfect understanding of the proceedings to be competent to stand trial.  *Cf. Diop v.

Lynch*, 807 F.3d 70 (4th Cir. 2015 (holding that the "Supreme Court has cautioned against

flyspecking the [factfinder's] questions or quibbling with the quality of respondent's answers"

when making competency determinations).

### 3.  The Competency Standard for Capital Cases is the Same as the Standard in Non-Capital Cases

Although unclear, the defendant seems to suggest that a heightened competency standard

should apply in capital cases.  *See* (Def.'s Supp. Reply to Govt.'s Resp. to Proposed Procedures,

Dkt. No. 607, at 3 n.1 (indicating intent to call a "legal expert" to testify about the capacities a

defendant must have "in a capital case").)  This is not the law of the Supreme Court or the Fourth

Circuit.  *See, e.g.*, *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (in a capital case, relying on

*Dusky* standard); *Beck*, 261 F.3d at 387 (analyzing competency claim under *Dusky* standard); *see

also Bryson*, 187 F.3d at 1201 (same).  Indeed, *Dusky*, the seminal case establishing the

competency standard, is a capital case, and this Court should be guided by its own analysis of

binding precedent of the Supreme Court and Fourth Circuit in determining the defendant's

competence to stand trial in this case.

The Court should not permit the defense to call experts to offer legal opinions. *Cf.

Adalman v. Baker*, *Watts, & Co.*, 807 F.2d 359, 366 (4th Cir. 1986). The defendant claims that

other courts have employed "legal experts," citing two district court cases.  In both cases,

however, the lawyer-witnesses met with the defendant and reported to the court their own observations of the defendant's demeanor and ability to communicate with them. *See Merriweather*, 921 F. Supp. 2d at 1290 (testimony by lay, not expert, witness about the defendant's statements and speech during a meeting that lasted several hours); *Duhon*, 104 F. Supp. 2d at 676 (witness describing the defendant as "more or less . . . a bump on a log"). In neither case did the lawyer-witnesses testify about the standards of competency for capital defendants or provide an expert opinion about how a defendant's specific condition might affect his attorney-client relationship.

## II.     The Use by the Defendant of Mental Health Evidence at the Competency Hearing

This Court requested that the parties brief whether the defendant's use of mental health evidence at the competency hearing affects the government's ability to use the court-appointed examiner's report at trial. The government's position is that it does not. The circumstances under which the government may introduce information from a court-ordered competency examination should be unaffected by the use of mental health evidence in a competency hearing. *Cf. Estelle v. Smith*, 451 U.S. 454 (1981). [6]

## III.     This Court Should Reconsider Its Ruling to Close the Competency Hearing

The Court ordered the parties to brief whether it should reconsider closing the competency hearing if the defendant uses expert mental health testimony. For the reasons stated in its prior briefing, the government's position continues to be that the competency hearing should not be closed.

Moreover, this Court ordered the courtroom to be closed in part because the defendant "may disclose matters to the examiner . . . that would otherwise never be disclosed in a criminal

---

[6] It is the government's understanding that the defendant was not provided a *Miranda* warning before he participated in the evaluation.

trial because of his Fifth Amendment right to remain silent." (Order, Dkt. No. 624, at 3.) Unlike

the court-ordered evaluation, the defendant's presentation of testimony by his own mental health

experts does not implicate the Court's concerns about information protected by the Fifth

Amendment. The defendant's statements to his own experts are not covered by the Fifth

Amendment privilege against self-incrimination. *Estelle*, 451 U.S. at 465-68. Thus, the Court

should not close the hearing for those portions of the hearing addressing any evidence the

defendant chooses to offer beyond the Court's own competency experts.

                                  Respectfully submitted,

                                  BETH DRAKE
                                  ACTING UNITED STATES ATTORNEY

                                  s/  Julius N. Richardson
                                  Julius N. Richardson
                                  Assistant United States Attorney
                                  1441 Main Street, Suite 500
                                  Columbia, SC 29201
                                  (803) 929-3000
November 17, 2016

11