1        IN THE UNITED STATES DISTRICT COURT
        FOR THE DISTRICT OF SOUTH CAROLINA
2              CHARLESTON DIVISION

3  UNITED STATES OF AMERICA       :
                                  :
4            vs.                  :
                                  :
5  DYLANN STORM ROOF              :    2:15 - CR - 472

6

7        Status Conference in the above matter held Wednesday,

8   November 16, 2016, commencing at 11:59 a.m., before the

9   Hon. Richard M. Gergel, in chambers, United States

10  Courthouse, 83 Meeting St., Charleston, South Carolina,

11  29401.

12

13  APPEARED ON BEHALF OF THE UNITED STATES:

14   JAY N. RICHARDSON, ESQ., 1441 Main St., Columbia, SC.

15   NATHAN WILLIAMS, ESQ., P.O. Box 978, Charleston, SC.

16   STEPHEN J. CURRAN, ESQ., 601 D Street NW, Washington, DC.

17

   APPEARED ON BEHALF OF THE DEFENSE:
18
    DAVID I. BRUCK, ESQ., Washington & Lee School of Law,
19   Lexington, VA.

20   KIMBERLY C. STEVENS, ESQ., 1070-1 Tunnel Rd., Asheville, NC.

21   SARAH S. GANNETT, ESQ., 850 W. Adams St., Phoenix, AZ.

22

23
        REPORTED BY DEBRA L. POTOCKI, RMR, RDR, CRR
24     Official Court Reporter for the U.S. District Court
                     P.O. Box 835
25              Charleston, SC  29402
                   843/723-2208

1          THE COURT:  I have a motion from the defense for a

2     continuance beyond Thursday.  I haven't heard a date yet,

3     we'll hear about that -- on the competency hearing.

4        First of all, what date are you asking for?

5          MR. BRUCK:  Well, it's a two-part request.  If the

6     Court were to treat this report as we think it should be, as a

7     screening assessment, the next step is to send our client to

8     the BOP for --

9          THE COURT:  I'm not inclined to do that.  What's your

10    next proposal?

11         MR. BRUCK:  We did not have a date in mind.  We would

12    be helped by Monday, the 28th.  I'm sorry, the 21st.  But our

13    proposal -- I mean, we'd be helped by six hours more time.

14    Our request is to give us through Thanksgiving, and come back

15    on the 28th.

16         THE COURT:  Okay.  So is it Monday -- you're asking

17    me --

18         MR. BRUCK:  We are asking for --

19         THE COURT:  Competency on Monday?

20         MR. BRUCK:  No, we're asking for Thanksgiving and the

21    28th.

22         THE COURT:  Now you're asking for the 28th.

23       Government's view?

24         MR. RICHARDSON:  We oppose it.  We think it's time to

25    move forward.  We think in particular -- we've tried to convey

3

1    this in some of the filings we've made, but I don't think I

2    can do it adequately in words -- the frustration and the pain

3    that this is causing a great number of those victims.

4              THE COURT:  Listen, I get it.  Okay?  I put it in

5    words.  I get it.  Everybody is doing their job here, right?

6              MR. RICHARDSON:  That's not a critique.

7              THE COURT:  Let me tell you something, defense has a

8    heck of a problem on their hands, management problems.  In

9    fact, I want to let everybody know that after the meeting here

10   today I'm going to excuse the Government lawyers to have a

11   conversation with defense counsel about this.  And I get it.

12   Okay?  Well, I'm going to -- we're going to have the

13   competency hearing Monday morning at 9:00 o'clock.  And we're

14   going to commence, assuming that if and when he is found -- if

15   he were to be found competent, on Monday the 28th we will

16   reconvene individual voir dire.  Okay?  Of course, that

17   conditioned on the decision on competency.  And that will give

18   the defense an opportunity to have the Thanksgiving holiday

19   for preparation for that.  Okay?

20             MR. BRUCK:  Thank you.

21             THE COURT:  Now, secondly, I think we have a

22   difference from the parties in the standard for competency.

23   And I want y'all to brief that.  Don't write me a Law Review

24   article, give me the major cases, what your view of the scope

25   of competency is.  Okay?  I want both sides by noon on Friday.

4

1    Okay?  Don't bust the computer writing me something long; I'm

2    more interested in the most salient cases and your reasoning

3    about what that is.  Because I think y'all have a very

4    different view, and I think it's important that I have the

5    best thinking of everybody on that.

6        Folks, I just do not know how I address this --

7    Dr. Ballenger's testimony, which is necessarily the beginning,

8    I would think, of the competency hearing, in public.  I just

9    don't know how I do that and preserve any semblance of a fair

10   trial.  Much of this evidence, frankly, is going to come out

11   at trial in other ways.  I read Estelle as saying the

12   competency report does not, if you don't have a Fifth

13   Amendment -- you haven't been Mirandized, I have problems with

14   that coming out.  And this is one of the burdens that defense

15   has, is that this is not the first place or time that the

16   defendant has expressed many of these same thoughts, okay?  So

17   it's not like it's not -- it may not in some ways or some part

18   come out, but it's not going to come out through the

19   competency report.  And I want Dr. Ballenger to feel fully

20   free to be questioned and examined by both parties, and I just

21   don't know how to have a robust competency hearing without it

22   being closed.  So I am going to close it.

23       I know that that's not a popular decision by some.  I am

24   going to ask the Government that to the extent you don't feel

25   too enthusiastic about beating the Court up about that, that

1    our integrity, the integrity of the Court is important.  The

2    victims, everyone else needs to have confidence in our system.

3    And we're not hiding anything or keeping anything secret.

4    Y'all are going to be there, I mean, it's -- but there's just

5    some things, and a competency determination is not guilt and

6    innocence, a completely different set of issues.  And so to

7    the extent you don't need to stir that up, Mr. Richardson, I

8    would just say I get it, I know the Government's view, I

9    respect the Government's view, we're right literally -- we're

10    now talking about one week before I'm going to have to do

11    individual voir dire, and I just think --

12            MR. RICHARDSON:  We certainly accept that ruling,

13    Your Honor.

14            THE COURT:  You understand what I'm saying.

15            MR. RICHARDSON:  I do, Your Honor.

16            THE COURT:  So I think we need to have a -- and I am

17    not going to tell y'all how to do it, but I do think defense

18    has a burden.  Mr. Bruck, just the procedure is going to be

19    you're going to go first.  I would recommend, I'm not going to

20    insist, you do it the way you want to, I think Dr. Ballenger

21    ought to take the stand.  I'd like to ask him a few questions

22    to clarify exactly what he's telling us, and then you have at

23    it and the Government have at it.

24            MR. BRUCK:  He would be the Court's witness, or we

25    should call him?

1          THE COURT:  You have the burden.  I just think it

2     would be helpful to -- I have a few questions for him just to

3     clarify, and then -- but this is y'all's hearing and you've

4     got the burden, okay, by a preponderance of the evidence, as

5     you have pointed out, that's the standard.  But the question

6     is, what is competence.  And I think that's an important --

7     that's why I'm having y'all brief it.  And ultimately the

8     Court has to make that legal determination.

9          Are there matters that the parties need to bring up to me

10     at this time?  First the defense.

11          MR. BRUCK:  Yes, we have two things, Your Honor.  One

12     is a request.  And, you know, it is responsive to what

13     Mr. Richardson said about the victims.  Obviously they have

14     far more contact with and information about the anguish that

15     this whole process is causing to the families than we do.  But

16     we know enough to know that this is -- that one of the things

17     that is happening is a perception in the community that this

18     is all manipulation and trickery by the defense or by the --

19     foot dragging and --

20          THE COURT:  Part of it is uncertainty.  And one of

21     the intents I'm having by giving specific dates for things, is

22     that we eliminate that uncertainty.  Okay?

23          MR. RICHARDSON:  That is a significant part of it.

24          THE COURT:  And let them have the holiday without --

25     Thanksgiving without, you know, coming and splitting it up

1    with the jury selection.  It's not a bad plan.  I mean, it's

2    not what I wanted to do, I wanted to start on November 7th,

3    but, you know, there are things we have to address, and that's

4    what we're doing, and I think we've done them in an efficient

5    way.

6         And, you know, you've got to say that Dr. Ballenger wrote

7    a very extensive report and a very quick turnaround, and did,

8    I thought, a very interesting job.  I'll hear from each side

9    about what they think of that, but that's -- but, you know,

10   just the fact that he did it and was able to get it done to

11   keep our -- to basically keep our schedule going here, which

12   I'm attempting to do.  I want to proceed.

13        Yes.  Okay.  And so I know you're suggesting that --

14             MR. BRUCK:  I mean, I think this is a teachable

15   moment when the Court issues an order explaining what has

16   happened.

17             THE COURT:  I am entering an order today explaining

18   the nature of competency hearings and why they are not in

19   public.  And I'm not having you do that, I'm going to take --

20   I'll be the target on this, but I think it's an important

21   thing to explain what competency is and why it's not, in my

22   opinion, in this case -- Some cases on competency it's not a

23   big deal, competency hearings can be in public, wouldn't be a

24   big deal.  Just the nature of this.  And I didn't make this

25   decision until I read Dr. Ballenger's report.  I wanted to

1    see, so much of his report is going to rely on what the

2    defendant told him, which is not Mirandized, okay?  So that's

3    the concern I have.  And I read Estelle to say that that's not

4    something that ought to be in the case unless they open the

5    door raising certain defenses.

6        Yes.

7        MR. BRUCK:  Well, without presuming to tell the Court

8    what else ought to be in the order, we would hope that it also

9    explained the nature of this issue and why this is something

10    that is simply part of the process, rather than something

11    which --

12        THE COURT:  I think everybody will feel like it's a

13    fair order.

14        MR. BRUCK:  Oh, I know it will be fair.

15        THE COURT:  I'm just trying to -- because I have, you

16    know, deeply -- no one can sit in these courtrooms and not be

17    deeply moved by these victims sitting there, right?  Y'all,

18    everybody feels that way.

19    So what we're just trying to do is there is a process,

20    people don't know the details of criminal litigation, they

21    thank God they don't have to have much experience with it, and

22    particularly in a capital case.  And we're going to -- in the

23    end, we have to do it right.  And I put this in the order, we

24    do nobody favors by doing it wrong, right?  There's no

25    constituency in messing this up, right?  So anyway.

1          MR. BRUCK:  If I can make a suggestion.  Two issues

2     that I don't think are understood, and maybe the Government's

3     taken care of this, but I think there are many many people who

4     don't understand that this does not involve a defense or

5     beating the charges or pleading insanity or any of that.  It

6     is simply the ability of the person to stand trial.

7     Because --

8          MR. RICHARDSON:  Which is effectively a defense to

9     standing trial.

10         MR. BRUCK:  Well, you know, I think you understand.

11         THE COURT:  People are going to have different

12    perceptions, Mr. Bruck, about both the timing of it -- and I

13    can't explain the letter, right?  I can't -- I can't really do

14    that.  But, you know, I can't change the facts that it was

15    done on the morning of jury selection.  And that leaves, you

16    know, a reasonable person could come up and infer from that

17    things that would be negative for the defense.  I can't stop

18    that, okay?  That's just the chronology of events.

19         MR. BRUCK:  Okay.  The other thing is that given the

20    evidence that we are desperately attempting to marshal, or

21    were for tomorrow, now for Monday, we could envision this

22    might be a two-day hearing.  If that's something you just

23    wanted to --

24         THE COURT:  I'm fine with that.  I mean, we'll do

25    what we can do.  Part of the briefing is to focus on what

1    competency is.  That's one of the important things.  This is

2    not insanity lite.  Okay?  This is not a back door to

3    insanity.  This is a different issue.  And I think it will be

4    helpful making everybody sit down and focus on what the law

5    actually is on competency, and what issues we have, and I

6    don't want the case to run off on an insanity claim, because

7    that's not what's at issue.

8              MR. BRUCK:  I appreciate that.  I could still see two

9    or perhaps even part of a third day.  I don't know yet, I

10   mean --

11             THE COURT:  Do you mind disclosing, or you'd rather

12   not disclose the nature of the witnesses you're planning to

13   call?

14             MR. BRUCK:  We have to decide whether we're going to

15   call -- whether we're going to disclose evidence that is

16   protected under 12.2.  Those questions were -- those issues

17   were prepared and those witnesses give their work in

18   anticipation of different issues, but it's the same young man,

19   and many of the same mental health issues.  And we, you know,

20   we don't want to do that, but we feel like this may be, for

21   reasons that get to my last item, this may be the last chance

22   that we have to present any mental health evidence on his

23   behalf.

24        And that brings me to the third -- to my last point.

25             THE COURT:  Let me just go back.  Whether you elect

1    to use evidence protected now by 12.2, is entirely the

2    defense's call.

3            MR. BRUCK:  We understand that.

4            THE COURT:  And your decision to provide that to

5    Dr. Ballenger was a defense call.

6            MR. BRUCK:  Yes.

7            THE COURT:  Okay?  I respected, for the reasons you

8    just articulated, why you might want to do it, but no one --

9    the Court is not requiring you to do that, the prosecutor is

10   not pushing you to do that, no one is seeking access to that.

11   And, you know, that is -- I just want to make clear that's

12   your call.

13           MR. BRUCK:  We know that.

14           THE COURT:  Okay.

15           MR. BRUCK:  My point was just this young man's real

16   mental condition is central to the question of competency, as

17   well as to, if he is found competent and tried, the punishment

18   that he will receive.  They are not -- they are different

19   issues, but they are not unrelated obviously.

20           THE COURT:  They're not unrelated, but I want you to

21   focus on what are the elements under 4241 of what competency

22   is.  We're not running afield on things that don't relate to

23   that standard.

24           MR. BRUCK:  Of course.  That -- So I mean --

25           THE COURT:  By the way, I would consider Rule 12.2, I

1     don't know what your evidence is, I haven't seen it any more

2     than the State -- the Government has.  But you know, I would

3     think that mental health mitigation evidence would be vastly

4     broader than competency evidence.

5              MR. BRUCK:  Yes, it can be.  Okay.  So to answer your

6     question, we see the possibility, although we haven't made the

7     decision, of calling expert testimony.  And we've already

8     placed the Government on notice that we have an expert witness

9     who is an attorney who would testify concerning the tasks that

10    competency involves in a capital case.  That would not be

11    extremely lengthy testimony, but we think it's an issue which

12    is too often missed.

13             THE COURT:  Do not have him lecture me what the legal

14    standard is.  I don't need him.  You are fully competent, Mr.

15    Bruck, that you and Mr. Richardson and y'all's team can do

16    that.  I don't normally take legal argument from the witness

17    stand.

18             MR. BRUCK:  Well --

19             MR. RICHARDSON:  We may add that to the briefing,

20    Your Honor, because the Fourth Circuit doesn't permit you to

21    take --

22             THE COURT:  I don't intend to take it.  Don't worry.

23             MS. GANNETT:  That's not the intent of that witness'

24    testimony.

25             MR. BRUCK:  Right.

1          THE COURT:  As much as I enjoyed law school, I don't

2     need law professors to lecture me on what the law is.

3          MR. BRUCK:  Well, Miss Gannett is putting him up, and

4     perhaps -- I mean, we can brief it.  That is certainly not

5     what he would be doing.  This goes to the question of the

6     tasks of -- that are required of a defendant to assist

7     counsel.  And it is a matter of experience and observation

8     that is beyond the scope of courts, most lawyers, and we think

9     it will be helpful to the Court.

10          THE COURT:  I'm glad to hear that specifically; let's

11     not belabor the point.

12          MR. BRUCK:  Right.

13          THE COURT:  I'm not inexperienced in litigation.

14     Okay?

15          MR. BRUCK:  No, we certainly appreciate that, and

16     that is not -- in terms of what would take two or two and half

17     days, that's not a very big piece of it at all.  We're talking

18     about mental health evidence that is relevant to the issue of

19     competency.

20          THE COURT:  Okay.

21          MR. BRUCK:  The last issue that we need to alert you

22     to as not news, but we have every reason to believe that the

23     client intends to ask to represent himself and discharge

24     counsel.  And that --

25          THE COURT:  Well, that has been raised by you on an

1    ex parte -- you've now mentioned it; I would not have

2    mentioned it otherwise -- and Dr. Ballenger mentioned it in

3    his.  And I have detected a pattern that when the defendant

4    says he might do something, that sure enough, the wave lands

5    on the beach soon thereafter.

6        I don't think you mind me telling them that you told me

7    that you had been told that the letter was coming, though he

8    had not -- Mr. Bruck was unaware it had been written, and that

9    best we could time it, it was when Mr. Bruck was meeting with

10   me, it was being delivered.  So, you know, I'm not surprised

11   that that has come up.  There are a number of issues raised,

12   Mr. Bruck, in that about the relationship that I want to meet

13   with you privately about.  I don't think it's appropriate for

14   the Government to be here for that discussion.

15       Okay.  Anything else you want to raise with me, because

16   I'm going to turn to Mr. Richardson.

17            MR. BRUCK:  No, sir.

18            THE COURT:  Mr. Richardson.

19            MR. RICHARDSON:  Two things that come up, just based

20   on the issues that were raised.  One, we would request some

21   reasonable notice about experts and what they're going to

22   testify to, and at least the names of who's being called, the

23   witnesses.

24            THE COURT:  Mr. Bruck, what's your reaction to that?

25            MR. BRUCK:  Disclosing the names of the witnesses to

1    the victims?  I'm sorry.

2              MR. RICHARDSON:  To me.

3              THE COURT:  To Mr. Richardson.

4              MR. BRUCK:  Our witnesses.

5              THE COURT:  Yes, notice of experts you intend to call

6    at the competency hearing.  Is there any reason why you could

7    not disclose that noon on Friday?

8              MR. BRUCK:  No.

9              THE COURT:  I'm going to direct you to -- I'll enter

10   a brief sealed order that says that, that each to disclose to

11   the other any experts you intend -- just the name.  You want

12   to say a one sentence nature of the -- so you can get an idea

13   what the nature of the testimony is going to be?

14             MR. RICHARDSON:  Yes, Your Honor.  And we'd ask it

15   not to be limited to experts.  I think to the extent that

16   there are fact witnesses, I don't know that there will be, but

17   to the extent there are fact witnesses, we'd ask that at least

18   just have some notice that that was going to be the case.

19             THE COURT:  How do you feel about that, Mr. Bruck?

20             MR. BRUCK:  We can do that.

21             MR. RICHARDSON:  And the second issue that was raised

22   is to the extent --

23             THE COURT:  And that's for both sides now.

24             MR. RICHARDSON:  Yes, Your Honor.  We did that

25   already.

1          THE COURT:  Okay.

2          MR. RICHARDSON:  We will also ensure that it's a

3   complete one by Friday.

4       To the extent that the defense intends to offer their own

5   mental health experts, those are not compelled statements, and

6   I think Estelle doesn't apply, and I think the Court at least

7   needs to consider the context of whether there's a basis in

8   which to close that portion of the hearing, understanding that

9   Dr. Ballenger's scenario is a slightly different question.

10          THE COURT:  When Ballenger testifies, I will not have

11   that issue.  Obviously this is the first I've heard that other

12   witnesses are being offered.  I think the better way to do

13   this, Mr. Richardson, very frankly, because how do I know

14   what's coming next, is -- and my plan is, and I say it in an

15   order, I think filed this morning, I'm not sure y'all have

16   seen it, in which I say we're going to release redacted

17   transcripts.  But I just can't predict what's coming and what

18   would be admissible and not admissible, sitting there.  And I

19   just don't want to be opening and closing my hearing.  It's

20   just going to be chaotic.  But you are correct, and Mr. Bruck

21   knows this, that the moment you start introducing evidence of

22   mental health issues, then you get into Cheever and all these

23   other cases that talk about that, then it's all fair game.  So

24   I just -- you know.  And I have got to, you know, I've got to

25   say that, you know, of course that is -- Anyway, I'll have to

1    sort all that out and hear y'all out.  What I don't like is

2    when I haven't dealt with admissibility issues and disclosure

3    issues, and to have it come in live when the world watching is

4    a kind of difficult thing to do.  So I think the middle ground

5    is yes, if it's releasable, we'll release a redacted

6    transcript.  I don't, at least as to Dr. Ballenger right this

7    moment, what I have, that would fall within Estelle.  At this

8    moment.

9        And I think, Mr. Bruck, you need to be conscious that when

10    you start putting in other evidence, that may have

11    consequences.  I haven't ruled yet, I have to hear what it's

12    going to be.  And those other cases don't deal with offering

13    the evidence in a competency hearing, it involves opening in a

14    criminal trial.  So I've got to consider the implications of

15    that as well, if you hear what I'm saying.

16        MR. BRUCK:  And the bind this creates for us is it's

17    one of the situations where we really can't present our case

18    without some basis for knowing the extent of the risk we're

19    running.

20        THE COURT:  Well, you know, the point is I can't make

21    a ruling now because I don't know what's going to be offered

22    and how it's going to be offered and the purpose it's going to

23    be offered, all that, I just don't know.  And it would be

24    difficult to know in the abstract, because I don't know what

25    you're offering.

1          MS. GANNETT:  Would the Court entertain an ex parte

2     proffer of the evidence --

3          THE COURT:  No.

4          MS. GANNETT:  -- so we could have a ruling?

5          THE COURT:  No.  No.  No.  You know, if you want to

6     address on Friday, here's the only thing that I think we

7     could -- is whether the offering in a competency hearing

8     changes the sort of analysis that say Cheever would have,

9     because it's not offered in the middle of a trial.  That issue

10    would be the only one that I think that I could potentially

11    address.  Because if it's fact specific, case specific, issue

12    specific, it's very hard to rule in advance on that.  And

13    we're not turning -- now y'all want a trial within a trial

14    within a trial.  No, we're not doing that.

15        But I want to say again to y'all, be cognizant of the

16    focus of competency.  This is not an insanity claim.

17          MR. BRUCK:  Well, we appreciate that, but I think

18    Dr. Ballenger's report illustrates, I think much more than it

19    should have, but nevertheless it illustrates how

20    extraordinarily prejudicial and inflammatory evidence

21    marshaled on -- ostensibly on the issue of competency can turn

22    out to be.

23          THE COURT:  Well, I've got to be honest.  Most of

24    what you describe, at least I regard it as inflammatory, I had

25    previously read in jailhouse writings and the letter to

1    prosecutors.  So I mean, yes, I agree with you, but I've

2    already ruled, at least as to the jailhouse writings, that

3    it's admissible.  So I'm just -- I agree, but your client

4    keeps, you know, making nonprivileged statements, as he seems

5    resolved to do.

6              MR. RICHARDSON:  Just the issue on the Friday

7    briefing, which I think is intended to be a legal briefing --

8              THE COURT:  Correct.

9              MR. RICHARDSON:  -- would the Court like for that to

10   be under seal or not?

11             THE COURT:  Yes.

12             MR. RICHARDSON:  Under seal?

13             THE COURT:  Because it may necessarily discuss --

14             MR. RICHARDSON:  I don't -- I'm not taking a

15   position, I'm just --

16             THE COURT:  If you want to submit something with a

17   proposed redaction, I'm glad to consider it.

18             MR. RICHARDSON:  That's more just an informational,

19   I'm not trying to take a position on that.

20             THE COURT:  Yeah.

21             MR. RICHARDSON:  And then the last thing I'll just

22   leave, just because it came up, obviously we have not had an

23   opportunity to fully go through and think about the right of

24   self-representation issue.  But we do believe that under the

25   Fourth Circuit's case law, that the same standard of

1    competency applies to that decision as to the competency to

2    stand trial.  I believe it's U.S. v. Bernard.  But the Fourth

3    Circuit, I think, has been pretty clear that Edwards doesn't

4    change the competency standard.

5                THE COURT:  For self-representation?

6                MR. RICHARDSON:  Correct.  It was also addressed, I

7    believe, briefly last year in the Fourth Circuit in a case,

8    U.S. v. Williams.  Williams is unpublished; I believe Bernard

9    is published, maybe around 2013.  I could have the name

10   slightly off.

11               THE COURT:  That's self-representation under Edwards.

12               MR. RICHARDSON:  What the standard is for evaluating.

13   We may well have cited that in a different context in one of

14   our briefs, but that's not coming to me at the moment.

15               THE COURT:  Okay.  Anything further?

16               MR. BRUCK:  Miss Gannett has one other thing.

17               THE COURT:  Yes, ma'am.

18               MS. GANNETT:  Your Honor, if I could just be heard

19   briefly on the issue of the rulings related to the scope of

20   the disclosures we make in the competency hearing.  The

21   difficulty is that if we're supposed to disclose to the

22   Government what witnesses we plan to call by Friday, and

23   present those witnesses on Monday, but we are to brief the

24   issues also concurrently by Friday for the Court's ruling at

25   some time, I suppose over the weekend, the schedule is a

1    little too tight for us to make those decisions.  It's the

2    same sort of problem --

3            THE COURT:  So you want the briefs in Thursday at

4    5:00 o'clock then?

5            MS. GANNETT:  Well, I don't want to push the schedule

6    any more than --

7            THE COURT:  I'm glad to accommodate you.  My guys

8    were up here until 2:00 o'clock last night.

9            MS. GANNETT:  Yeah, well, we were too, as the Court

10   may have noticed.  But I think that we need to have those

11   decisions made in advance of the hearing.

12           THE COURT:  So the briefs would be at 5:00 o'clock

13   Thursday, and the disclosure of witnesses, 3:00 o'clock on

14   Friday.  Give us a little bit of time to --

15           MS. STEVENS:  And that would follow the Court's

16   order, the Court's ruling.

17           THE COURT:  I'll address it.

18           MS. GANNETT:  Thank you, Your Honor.

19           THE COURT:  But I keep saying to y'all, don't turn --

20   look at what competency is.  And this sort of free-wheeling

21   discussion of mental health issues that don't relate to --

22   look at the elements of 4241, folks, I'm just saying to you.

23   And I'm not going to let the hearing go on interminably on

24   issues that I don't believe relate to competency.  And I don't

25   hesitate to stop the witnesses' testimony, if you go beyond

1   that.  So I would have anybody you want to testify to look at

2   those standards, because I'm going to question them about do

3   they understand the charges, does he understand the charges,

4   does he understand the proceedings, does he have the present

5   capacity to assist counsel?  I mean, those are the issues.

6   Okay?

7       Anything further?  Have y'all seen this order I wrote this

8   morning, entered this morning about I rejected the special

9   procedures?

10          MR. BRUCK:  Yes.

11          MR. RICHARDSON:  Yes.

12          THE COURT:  Y'all have seen that.  Y'all whacked me

13  for not having given it to you because we didn't release it

14  after 7:00 o'clock last night, we had it ready, but I didn't

15  have anybody here to file it, so we did it first thing this

16  morning.

17      Why don't I excuse Government counsel, and I'll remain

18  with defense counsel.

19      By the way, folks, Dr. Wagner and Ballenger are only

20  available on Monday, so whatever testimony they'll have to be

21  offered on Monday.

22

23      (Conference concluded at 12:29 p.m.)

24

25

1                          REPORTER'S CERTIFICATION

2

3          I, Debra L. Potocki, RMR, RDR, CRR, Official Court

4     Reporter for the United States District Court for the District

5     of South Carolina, hereby certify that the foregoing is a true

6     and correct transcript of the stenographically recorded above

7     proceedings.

8

9

10

      S/Debra L. Potocki
11    _____

12    Debra L. Potocki, RMR, RDR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25