# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| United States of America, | Criminal No. 2:15-472-RMG |
| v. | **MEMORANDUM OPINION UNDER SEAL** |
| Dylann Storm Roof. | |

This matter came before the Court on Defendant's motion to proceed *pro se*. (Dkt. No. 666.) On November 28, 2016, after a *Faretta* hearing, the Court granted Defendant's motion and appointed previous defense counsel as standby counsel. This Opinion memorializes the Court's reasons for granting the motion.

## I.  Background

Defendant Dylann Roof is accused of killing nine persons and attempting to kill three other persons at Mother Emanuel. He was indicted on various federal charges on July 22, 2015, and on May 24, 2016, the Government served notice of intent to seek the death penalty. (Dkt. Nos. 1, 164.) The Court appointed David I. Bruck, an attorney with extensive trial and appellate experience in capital cases, as lead counsel for Defendant on July 23, 2015. (Dkt. No. 11.) The Court thereafter approved additional trial counsel (hereinafter, together with Mr. Bruck, "Defense Counsel") and a variety of expert witnesses to assist in the defense.

On November 5, 2016, the Court learned Defendant had written an unsolicited letter to the prosecution, in which he disavowed what he understood to be Defense Counsel's plan to introduce mental health mitigation evidence in the sentencing phase of his trial. (Dkt. Nos. 545, 546.) Defendant stated that he had only recently learned of the proposed defense because "my attorneys purposely kept me in the dark." (Dkt. No. 546.) On November 6, 2016, Defense Counsel moved to delay jury selection and to conduct an *ex parte* hearing to "permit the Court and counsel to

address the disruption in the attorney-client relationship that the letter reveals." (Dkt. No. 544 at 1.) Defense Counsel argued Defendant's letter "raises serious questions regarding Defendant's competency." (*Id.* at 3.) After conferring with the parties, the Court postponed jury selection and held an *ex parte* hearing with Defendant and Defense Counsel. Defendant expressed his opposition to a mental health defense, and he explained that he had tried to persuade his attorneys not to present such a defense, and that, because he was unable to persuade them, he felt his best option was to send a letter to the prosecutors to sabotage any mental health mitigation defense. (Dkt No. 652 at 15, 17, 24.) Defendant stated he would rather face the death penalty than have mental health mitigation evidence offered to the jury. (*Id.* at 13.) Defendant was then excused from the hearing, and Defense Counsel expressed concern about his competence to stand trial. In light of the lenient standard for ordering a competency evaluation and the information provided by Defense Counsel, the Court decided to appoint an examiner to assess Defendant's competency and to conduct a full competency hearing. (Dkt. No. 559.)

The court-appointed examiner submitted his report on November 15, 2016, and the Court held a two-day competency hearing on November 21–22, 2016, receiving live and written testimony from eight witness as well as voluminous documentary exhibits. (Dkt. No. 657 at 2.) At the conclusion of the hearing, Defendant asked the Court, "Is there any way that someone could write a document that would take away all responsibility from my lawyers, but still keep them as my lawyers and then they could do whatever I say, but they wouldn't have any responsibility, and then I could sign it[?]" (Competency Hr'g Tr., Nov. 22, 2016, at 266–67.) After the Court informed Defendant that counsel have a professional obligation to present an effective defense, Defendant replied "Okay. But I also have a right to represent myself." (*Id.* at 268.) Defendant indicated that if he represented himself he would not cross-examine witnesses or present any

defense at all. (*Id.* at 268–70.). He would simply do nothing. The Court advised Defendant that it would "hear you out" if he made a motion to represent himself, but that the lack of wisdom in his suggested course of action "would weigh heavily against [Defendant] having the capacity" to represent himself.[1] (*Id.*)

> After the hearing, the Court made the following conclusions of law:
>
> 1.     Defendant does not suffer from any mental disease or defect which renders him unable to understand the nature and consequences of the proceedings against him.
>
> 2.     Defendant does not suffer from any mental disease or defect which renders him unable to assist properly in his defense.
>
> 3.     Defendant is competent to stand trial under the standards set forth in 18 U.S.C. § 4241.

(Dkt. No. 656 at 21–22.) Two days later, on November 27, 2016, Defendant moved to represent himself at trial. (Dkt. No. 666.) The following day, the Court held a *Faretta* hearing. In open court, Defendant confirmed his desire to represent himself. (Dkt. No. 627 at 3.) The Court then examined Defendant, asking a series of questions ensuring Defendant understood the charges against him, the possible consequences of his decision to forego representation by experienced counsel, and the Court's view that his decision was unwise. (*Id.* at 3–9.) Defendant's answers confirmed that his decision was made knowingly and intelligently. (*Id.*) He also confirmed that his decision was voluntary and made after due consideration, that believes he has the capacity to represent himself, and that he was prepared immediately to proceed with jury selection and trial. (*Id.*) At the conclusion of the examination, the Court found Defendant had made a clear and

---

[1] In light of the legal standards discussed in this Opinion, *infra*, the Court has reconsidered that statement. A competent defendant with the capacity to self-represent may make the decision to self-represent, even if he intends to make decisions regarding which defenses to assert which may be unwise.

unequivocal waiver of this right to counsel and of his desire to represent himself; that his decision was made knowingly, intelligently, and voluntarily; that his decision was timely; and that has the capacity to represent himself. (*Id.* at 9.) The Court again admonished Defendant that his decision was "strategically unwise." (*Id.*) Defendant nonetheless again confirmed—unambiguously—his knowing and intelligent decision to represent himself. The Court then granted Defendant's motion.

## II. Legal Standard

A criminal defendant has a Sixth Amendment right to self-representation. *Faretta v. California*, 422 U.S. 806 (1975). The Sixth Amendment provides the accused with both the fundamental right to counsel and "the correlative right to dispense with a lawyer's help." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942). "To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. . . . Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense." *Faretta*, 422 U.S. at 820. "The right to defend is personal," and so "*Faretta* establishes that the right to counsel is more than a right to have one's case presented competently and effectively." *Id.* at 834; *Jones v. Barnes*, 463 U.S. 745, 759 (1983) (Brennan, J., dissenting). Therefore, "forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Faretta*, 422 U.S. at 817. An erroneous denial of a request under *Faretta* to self-represent is a structural error in the trial requiring automatic reversal of the verdict. *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984).

A defendant must be competent to stand trial to be competent to waive his right to counsel, but "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Godinez*, 509 U.S. at 399. Generally, "a criminal defendant's ability to represent himself has no bearing upon his competence to *choose* self-representation." *Id.* at 400. The Supreme Court has more recently

modified that rule by holding the "Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so." *Indiana v. Edwards*, 554 U.S. 164, 177–78, (2008). That narrow exception permits courts "to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id.* at 178.

A competent defendant's assertion of his constitutional right to self-representation must be "(1) clear and unequivocal, (2) knowing, intelligent, and voluntary, and (3) timely." *United States v. Frazier-El*, 204 F.3d 553, 558 (4th Cir. 2000). Courts examine defendants in a *Faretta* hearing to confirm that waivers are clear, unequivocal, knowing, intelligent, and voluntary. *See Raulerson v. Wainwright*, 469 U.S. 966, 971 (1984) (Marshall, J., dissenting from denial of certiorari); Federal Judges Benchbook § 1.02(c). "[A] waiver of counsel [is] intelligent when the defendant knows what he is doing and his choice is made with eyes open." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004) (internal quotation marks omitted). The defendant "must be warned specifically of the hazards ahead . . . he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing." *Id.* at 88–89 (internal quotation marks omitted). The assertion is timely if made "before meaningful trial proceedings have begun." *United States v. Hilton*, 701 F.3d 959, 965 (2012). If made after the start of meaningful trial proceedings, the decision to grant a request for self-representation is within the discretion of the trial court. *Id.* The right to self-representation may not "be used as a tactic for delay; for disruption; for distortion of the system; or for manipulation of the trial process." *Frazier–El*, 204 F.3d at 560 (citations omitted); *see also United States v. Singleton*, 107 F.3d 1091, 1096 (4th Cir. 1997) (allowing that untimely requests to self-represent "may be denied, limited, or conditioned").

Finally, trial courts "may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *McKaskle*, 465 U.S. at 176 (internal quotation marks omitted). Standby counsel, however, must permit the defendant "a fair chance to present his case in his own way." *Id.* "[T]he right to speak for oneself entails more than the opportunity to add one's voice to a cacophony of others." *Id.* at 177.

### III. Discussion

Defendant moved to self-represent to prevent the presentation of mental health mitigation evidence. (*See* Dkt. No. 556 at 12; Competency Hr'g Tr., Nov. 22, 2016, at 268–70.) The Supreme Court addressed the ability of a capital defendant to self-represent to prevent the presentation of mitigation evidence in *Godinez v. Moran*. There, the defendant was sentenced to death after discharging his attorneys and pleading guilty to "prevent the presentation of mitigation evidence at his sentencing." *Godinez*, 509 U.S. at 392. The Supreme Court held that a defendant competent to stand trial is competent to choose self-representation—even if that choice would be "ultimately to his own detriment." *Id.* at 399–400 (internal quotation marks omitted); *cf. Schriro v. Landrigan*, 550 U.S. 465, 478–79 (2007) (adopting implicitly the proposition that the defendant may choose not to present a mitigation defense when holding it "not objectively unreasonable . . . to conclude that a defendant who refused to allow the presentation of any mitigating evidence could not establish *Strickland* prejudice based on his counsel's failure to investigate further possible mitigating evidence"). There is no question that a capital defendant competent to stand trial may represent himself at trial, if he has the mental capacity to do so and if asserts his right to do so in a clear, unequivocal, knowing, intelligent, voluntary, and timely manner.

-6-

After a thorough examination, the Court found Defendant competent to stand trial two days before he asserted his right to represent himself. (Dkt. No. 559.) His competency to stand trial is not now an issue before the Court. After Defendant moved to represent himself, the Court promptly examined him in a *Faretta* hearing held on November 28, 2016. Under the Court's examination, Defendant confirmed that:

- he desired to represent himself;

- he understood the charges and possible penalties, including the death penalty;

- he understood his appointed counsel are highly experienced capital defense lawyers with skills and expertise well exceeding his own;

- he understood and had carefully considered the Court's belief that his decision to represent himself was unwise;

- he had given due thought and consideration to his decision;

- his decision was made freely and voluntarily;

- he had no doubts about his capacity to represent himself or competency to make this decision; and

- he was ready immediately to proceed with jury selection and trial if allowed to represent himself.

(Dkt. No. 627, at 3–9.) While repeatedly asking Defendant to confirm his desire to represent himself, the Court closely observed Defendant's demeanor. Defendant was alert, focused, and confident as he expressed his resolve to represent himself. Moreover, although Defendant's assertion of his right to represent himself likely was very unwise, it was not a decision suddenly or rashly made. Rather, it was consistent with his letter to the prosecution written before November

5, 2016,[2] his statements to the Court on November 7, 2016, and his statements to the Court on November 22, 2016. (See Dkt. Nos. 545, 556 at 11–24, Competency Hr'g Tr., Nov. 22, 2016, at 268–70.) After the Court again warned Defendant that he was unwise to proceed *pro se* in a capital case, Defendant again unambiguously confirmed his knowing and intelligent decision to represent himself. (Dkt. No. 672 at 9–10.) The Court therefore found Defendant's assertion of his right to self-represent was clear, unequivocal, knowing, intelligent, and voluntary.

Defendant's assertion of his right to self-represent perhaps could have been seen as untimely because it occurred after "meaningful trial proceedings" commenced. Jury selection is a very meaningful trial proceeding, and jury selection in this case began on September 26, 2016—two months before Defendant asserted his desire to represent himself. (*See* Dkt. No. 434.) When a defendant requests to represent himself after the commencement of meaningful trial proceedings, the trial court has discretion to grant or deny the request. *Hilton*, 701 F.3d at 965. But that discretion is not boundless—the defendant's constitutional right to represent himself must be respected. The decision whether to allow the defendant to exercise that right is within the Court's discretion in the sense that the defendant may not exercise his rights abusively and the Court has discretion to decide what is or is not an abuse. *See id.* Here no facts suggest Defendant's motion is "a tactic for delay; for disruption for distortion of the system; or for manipulation of the trial process." *See Frazier-El*, 204 F3d at 560 (citations omitted). Defendant—motivated by disdain for a defense based on mental health evidence—reacted immediately when he learned Defense Counsel intended to present such evidence. In response to Defendant's attempts to prevent the presentation of such evidence, Defense Counsel moved for a competency evaluation. That

---

[2] The Court learned of the letter on November 5, 2016 but circumstances indicate it was written on an earlier day. (*See* Dkt. No. 546.)

motion—which Defendant himself opposed—is the only cause of delay in the proceedings. (*See* Dkt. No. 665 (Defense Counsel stating that "we—against his wishes—delayed the start of trial to pursue a competency hearing").) In seeking to represent himself, Defendant indicated that he was prepared to proceed immediately with jury selection and trial. (Dkt. No. 672 at 8.) The Court therefore could find no cause to deny Defendant's motion as untimely. (*Id.* at 9 (finding decision to self-represent is timely).)

Finally, the Court also inquired into Defendant's mental capacity to represent himself. Defendant asserted that he has the capacity to represent himself, including the capacity to make motions, objections, and arguments in open court. (*Id.* at 7–8.) Based on Defendant's responses and on the Court's own observations of Defendant's courtroom interactions over several weeks, the Court found Defendant has the mental capacity to represent himself. (*Id.* at 9; *see also* Competency Hr'g Tr., Nov. 22, 2016, at 92–94, 160 (the Court describing Defendant as "cogent and articulate" when he addressed the Court on November 7, 2016, and observing that "[t]his defendant has extremely high IQ, there is not a cognitive impairment, and I have observed him communicate with his lawyers . . . .").)

Defendant's decision to forego the services of the nation's foremost capital defense attorneys is, in the Court's view, unwise, but the law does not permit the Court to reject Defendant's assertion of his constitutional right to represent himself because it is foolhardy. *Godinez*, 509 U.S. at 400; *Faretta*, 422 U.S. at 834. Because Defendant is competent to stand trial and has the capacity to self-represent, and because he timely asserted his right to self-representation clearly, unequivocally, knowingly, intelligently, and voluntarily, the Court granted Defendant's motion. The Court appointed Defense Counsel as standby counsel without objection

from Defendant, who in fact requested that Defense Counsel remain seated with him in the courtroom at counsel's table. (Dkt. No. 672 at 10.)

## IV. Conclusion

For the foregoing reasons, the Court granted Defendant's motion to represent himself (Dkt. No. 666) by oral order of November 28, 2016 (Dkt. No. 672 at 10).

Richard Mark Gergel
United States District Court Judge

November 29, 2016
Charleston, South Carolina