IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

**FILED UNDER SEAL**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:15-CR-472 |
| | ) | |
| DYLANN STORM ROOF | ) | |

**SECOND MOTION FOR ADDITIONAL VOIR DIRE QUESTIONS**

The defendant, by and through stand-by counsel, requests that the Court modify its questioning to address concerns identified by the Supreme Court in *Morgan v. Illinois*, 504 U.S. 719 (1992). We note that the rate of jury qualification between November 28 and November 29 nearly tripled, and we are concerned based on a comparison of the transcripts that this may be attributable, at least in part, to the form of the questioning. By this pleading the defendant does not seek to revisit any jurors whose questioning is complete. He simply seeks to ensure that during the remainder of the jury selection process, the Court's voir dire examination of prospective jurors succeeds in exposing, whenever possible, disqualifying views that jurors actually hold.

The defendant makes the following requests:

(1) The Court has frequently begun its questioning by comparing for jurors their answers on Question 31 with their answers on other questions and requiring them to explain inconsistencies. Although we agree that this is an important inquiry, we are

1

concerned that starting here may put jurors on the defensive, making it less likely that they will share their opinions fully and freely. We suggest instead that the Court begin with Question 28 and the follow-up suggested to that question in our general voir dire outline. This questioning is more open-ended and should reveal more information about jurors' opinions. Alternatively, the Court may wish to inquire:

- When determining the punishment for a defendant guilty of multiple intentional murders, is the background of the defendant relevant?
- Could you meaningfully consider a life without the possibility of release sentence for someone who has been convicted of multiple, intentional murders?

(2)  The Court has been inquiring of jurors regarding their confidence in their ability to "follow the law." This is the type of question that the Supreme Court rejected in *Morgan*, *see* 504 U.S. at 735, in favor of questions like those on the questionnaire and included in the defense's general voir dire outline. As we have discussed in our prior jury selection filings (Dkt. Nos. 313 & 523), follow-the-law questions encourage jurors to respond with what they perceive to be socially appropriate answers, rather than sharing their views. As the Court has correctly observed, the goal of voir dire should be for jurors to speak openly and honestly, so that the parties and the Court may accurately assess their qualification to serve.

(3)  The Court has asked several jurors whether they could "listen" to all the evidence. It is important to emphasize for jurors, however, that the "consideration" of mitigation evidence required by *Lockett v. Ohio*, 438 U.S. 586 (1978), and its progeny, is

2

more than a passive willingness to "listen" to the defendant present his case. As used by the Supreme Court, the term "consider" means to actively take into account, "enter into the decision" or "weigh in the balance." *See Eddings v. Oklahoma*, 455 U.S. 104, 114 (1982) ("[the jurors] may determine the weight to be given relevant mitigating evidence . . . [b]ut they may not give it no weight by excluding such evidence from their consideration.").

    (4)  We request that the Court try to use open-ended questions, to prevent the possibility that jurors will be led to answers they believe the Court prefers them to give. Although the defendant did not object, we note this example from the questioning on November 29.  Juror Number 208 stated, "I believe that if you do a horrific tragedy to someone else, that the death penalty should be imposed." Tr. 11/29/16 at 209.  The defendant requested that the Court follow up by inquiring, "if someone commits multiple intentional murders, or a murder because of the victim's race, does that, does that automatically mean that it's horrific?" *Id.* at 214.  The Court, however, offered qualifying language that suggested a different answer was preferred:  "In that situation would the death penalty be the automatic result or would you be -- or would you need to weigh all of the facts in the record, all of the aggravating and mitigating circumstances before you made the decision?"  *Id.* at 215.  The Court continued to lead the juror away from a disqualifying answer:  "I also take it murder in your view would be a horrific act?

3

. . . Whether that in fact merits the death penalty, would be something you need to hear all the evidence before you made that decision?" *Id*. at 216.[1]

(5) The Court has been framing its questions around the importance of all the "facts and evidence presented" in aggravation and mitigation. We believe that several of the jurors questioned so far also would have benefited from the information that a death sentence is never required under the law unless the juror finds for herself that the aggravating factors sufficiently outweigh the mitigating factors to justify a death sentence. *See* Dkt. Nos. 380, 472.

(6) Finally, the defendant requests that the Court avoid, to the extent possible directive or leading questions. Such questions typically yield no real additional information about what a juror actually thinks, but simply generate support for the conclusion that is unmistakably suggested by the questions themselves. For this reason, they are not the best use of the Court's time, and do nothing to ensure that only unbiased jurors are qualified. To the extent that such questions are useful to double-check that the court has correctly discerned the juror's views, they should be employed only after the

---

[1] The questioning about the "evidence" around "murder" also begs the question whether the juror understood that the Court was referring to intentional murder (with no defense). *See* Dkt. No. 313.

juror has revealed, in response to non-directive and non-leading questions, what those views actually are.

        Respectfully submitted,

        DYLANN STORM ROOF

        s/ *Sarah S. Gannett*
        Sarah S. Gannett
        Assistant Federal Public Defender
        Federal Public Defender for the District of Arizona
        850 W. Adams Street, Suite 201
        Phoenix, AZ 85007
        602-382-2862
        sarah_gannett@fd.org

        David I. Bruck
        Washington & Lee School of Law
        Lexington VA 24450
        540-458-8188
        bruckd@wlu.edu

        Kimberly C. Stevens
        Capital Resource Counsel
        Assistant Federal Public Defender for the
        District of Oregon
        1070-1 Tunnel Road, Suite 10-215
        Asheville, NC 28805
        336-788-3779
        kim_stevens@fd.org

        Emily C. Paavola
        900 Elmwood Ave., Suite 200
        Columbia, SC 29201
        803-765-1044
        Emily@justice360sc.org

        Stand-by Counsel for Dylann S. Roof