IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | Criminal No.: 2:15-472-RMG |
| v. ) | |
| ) | **ORDER** |
| Dylann Storm Roof, ) | (Under Seal) |
| ) | |

This matter is before the Court on Defendant's motion in limine seeking to exclude statements Defendant made to ▮▮▮ at the Sherriff Al Cannon Detention Center (ACDC). (Dkt. No. 358 at 21–23). For the reasons discussed below, the motion is granted to the extent it relates to the statements Defendant made to ▮▮▮.

**Background**

After his arrest, Defendant was detained in the ACDC. Jail staff placed him on suicide watch when he arrived at the ACDC. On June 19, 2015, ▮▮▮ talked to Defendant to determine whether he needed to remain on suicide watch, and ultimately kept him on mental health observation. (Dkt. No. 425 at 5). ▮▮▮ took notes of ▮▮▮ interview with Defendant. (Dkt. No. 358-6). In addition to Defendant's medical history, ▮▮▮

On August 3, 2015, Defendant was again placed on suicide watch after he sent a letter to his sister containing a transcription from a book in which the protagonist commits suicide. ▮▮▮ again met with Defendant "to determine whether he needed to remain on suicide watch." During the suicide evaluation, Defendant told ▮▮▮

1

▇▇▇▇▇▇ Defendant now seeks to exclude the comments Defendant made to ▇▇▇▇▇▇ (Dkt. No. 358).

## Discussion

In *Jaffee v. Redmond*, the Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." 518 U.S. 1, 15 (1996). Accordingly, ▇▇▇▇ notes from ▇ interviews with Defendant are protected by patient-psychotherapist privilege if (1) ▇ ▇▇ is licensed; (2) the communications were made in the course of treatment; and (3) the communications were confidential.

The first two factors are clearly satisfied here. ▇▇▇▇ is board certified in general psychiatry (Dkt. No. 386 at 114), and ▇ tells the inmates on suicide watch who ▇ interviews "that ▇ is there for treatment." (Dkt. No. 425-7 at 3). Whether the communications are confidential, however, is requires a closer analysis.

Government attorneys interviewed ▇▇▇▇ over two days in August 2016. (Dkt. No. 425-7). The notes from that interview outline ▇▇▇▇ general practice for interviewing inmates placed on suicide watch:

> The inmate discussions with the psychologist are conducted in the jail cell or at the medical center. The discussion[s] are private, but can be possibly overheard by the guards who are present for security/safety requirements. These discussions are securely placed in electronic medical records. The treatment/medication is the only information that [is] seen by other CCSO staff. ▇▇▇ believes that these notes are only able to be seen by medical personnel. ▇▇▇ tells inmates anything they say about harming themselves or others will be told to correctional staff. ▇▇▇ does not specifically say that their conversations are confidential, but ▇ does tell inmates that ▇ is there for treatment. ▇▇▇ tells the inmates that talking to ▇ is voluntary, and they have the option not to talk to ▇

2

(*Id.* at 3). Nothing in these notes, the parties' briefing, or ▇ testimony during a suppression hearing regarding suicide watch (Dkt. No. 386) suggests that ▇ did not follow these procedures on June 19 and August 3.

Although ▇ does not tell inmates on suicide watch that their conversations are confidential *per se*, she does tell them that the conversations are private. Furthermore, ▇ qualifies this privacy only by telling prisoners that their statements involving self-harm or harm to others will told to correctional staff.

Here, Defendant made no statements regarding harming himself or prospective harm to others. Furthermore, the conversations occurred when Defendant was alone, with the exception of a nearby guard who may have overheard portions of the conversations. To the extent that a guard may have been able to overhear portions of their conversations does not destroy confidentiality; instead it is a reflection of the fact that the prison setting may not often allow for traditional one-on-one patient-therapist meetings. The Court finds that the conversations in question satisfy the third prong of the *Jaffee* test and that Defendant's June 19 and August 3 statements to ▇ are covered by the patient-psychotherapist privilege.

## Conclusion

For the abovementioned reasons, the Court GRANTS Defendant's motion in limine seeking to exclude statements Defendant made to ▇ at the Sherriff Al Cannon Detention Center (ACDC). (Dkt. No. 358 at 21–23).

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Court Judge

November 29, 2016
Charleston, South Carolina

3