IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

**FILED UNDER SEAL**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:15-CR-472 |
| | ) | |
| DYLANN STORM ROOF | ) | |

**DEFENDANT'S MOTION TO MAINTAIN UNDER SEAL CERTAIN DOCUMENTS CONTAINING PRIVATE AND/OR PRIVILEGED MATERIALS**

The defendant, through counsel, responds here to the Court's orders in Docket Nos. 883 & 910 requesting briefing "on the issue whether [certain] documents, identified by entry number, should be unsealed entirely, partially unsealed (redacted), or remain under seal." Dkt. No. 883 at ¶ 1. Given that many of the documents in question relate to non-dispositive matters on which sufficient information has been provided to the public already, and that these documents contain privileged and highly sensitive materials of the sort maintained under seal by other courts in similar cases, the defendant moves to maintain them under seal. We attach as Exhibit 1 a list of thirty-eight documents (and exhibits) that we propose remain sealed.

We attach as Exhibit 2 a list of forty-eight documents with respect to which the defendant does not object to unsealing. We attach as Exhibit 3 a list of ten documents with respect to which the defendant does not object to unsealing, except that we request the names of experts and tests be redacted, since that information was not presented at

trial.[1] *See infra* Parts V & VI. We attach as Exhibit 4 a list of seven documents to which the defendant does not object to unsealing, except that we request that private and privileged material be redacted. We attach redacted versions as Exhibits 5-11.

We are thus requesting that of the sealed and redacted documents at issue, the Court leave 33 documents (out of nearly 1000 docket entries) under seal, along with five video exhibits. This request is made for four primary reasons:

(1) The documents and exhibits contain sensitive and protected health information relating to the defendant's family members, as well as the defendant;

(2) They contain attorney-client, work-product, and psychotherapist-patient privileged information;

(3) Unsealing undermines the defendant's right of self-representation by allowing competency motions the defendant opposed and the Court denied to trump the *pro se* defendant's own decision about release of private health information and other sensitive and private material (much of it protected attorney-client communication, and all of it defense work product, or derived therefrom); and

(4) They involve material that would have been protected from disclosure under Federal Rule of Criminal Procedure 12.2(c)(3), but for the litigation surrounding the defendant's competency.

Since the proceedings and documents at issue were not dispositive, and since the public will be well-informed by the combination of the Court's disclosures to date and those

[1] We have not provided redacted versions of these documents, but are will do so upon request.

proposed here, the law does not require and the Court should not compel further disclosure.[2]

In filing this motion, the defense acknowledges the Court's order in Dkt. No. 928, "declin[ing] Defendant's request to redact non-privileged materials from the Court's orders or the parties' legal briefs." We provide here supplemental authority for maintaining under seal or redacting the privileged and sensitive but non-privileged materials at issue.

## I. The Court has discretion to maintain documents under seal.

The Supreme Court recognizes a general right to inspect and copy judicial records and documents. "It is uncontested, however, that the right to inspect and copy judicial records is not absolute." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978). The Court has discretion to determine which parts of the record should remain under seal, in view of the facts and circumstances of the case and the difficulty of redacting embedded privileged and sensitive information. *See Doe v. Public Citizen*, 749 F.3d 246, 256 (4th Cir. 2014). In exercising its discretion, the Court may consider a variety of options, including "giving the public access to some of the documents or releasing a redacted version of the documents …." *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 429 (4th Cir. 2005). The important point is that the Court

[2] We note that, should any member of the public be dissatisfied with the Court's rulings, remedies are available, and that reviewing courts may unseal additional materials in the future, if necessary, on motion of counsel or interested parties. The Court may therefore exercise its discretion with due caution at this time.

balance the interests involved. *Cf. In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 295 (4th Cir. 2013).

When the Supreme Court has disapproved sealing orders, it has been only because the orders at issue were overbroad. *See United States v. Smith*, 776 F.2d 1104, 1112-1113 (3d Cir. 1985) (citing cases). There is no risk of that here. *Compare Doe*, 749 F.3d at 254 (noting that the entire action occurred under seal and numerous documents remained sealed and not even reflected on the public record). The Court has already unsealed numerous documents, and we propose unsealing many more. The combined unsealed documents will provide a full and fair picture of the proceedings. *Cf. Perez-Guerrero v. U.S. Atty Gen.*, 717 F.3d 1224, 1236 (11th Cir. 2013) (approving sealing of selected documents containing sensitive information). In particular, we note that the majority of our requests to maintain sealing concern the competency proceedings; the Court's orders in Dkt. Nos. 656 and 881, which we propose for unsealing (with limited redactions) adequately outline for the public the evidence and arguments on this issue.

Maintaining certain documents under seal would not be unprecedented. Other courts in similarly high-profile capital cases also have decided that full public access to the docket was not required under the particular facts and circumstances. *See, e.g., United States v. McVeigh*, 119 F.3d 806 (1997) (approving district court order declining to unseal various materials). *See also United States v. Tsarnaev*, No. 13-10200-GAO (D. Mass.) (maintaining multiple docket entries – including Rule 12.2 filings – under seal following notice of appeal).

Before turning to the separate categories of documents and exhibits involved, we must acknowledge that the authority cited above does not definitively resolve the questions presented here. But that is because no prior case involves facts like these. The bulk of the questions now before the Court concern whether to unseal documents and exhibits that defense counsel introduced, or caused to be introduced, in the course of litigating the question of the defendant's mental capacity to stand trial and to represent himself. Defense counsel made these efforts over their client's strenuous objections. Disregarding a client's wishes in this way is the ethical and constitutional duty of all defense counsel who entertain a good-faith basis for questioning their client's competency. But it should be kept in mind that in making the difficult decision to override their client's wishes, defense counsel are not truly acting as "agents" of the client. It is not fair to bind the client to accept public disclosure of confidential and privileged information simply because defense counsel offered such information in the course of competency proceedings. And giving too much weight to the normal presumption in favor of public disclosure would have the regrettable result of impeding the exercise of counsel's constitutional and ethical obligation to raise and litigate good-faith issues of competency. It is problematic enough for defense counsel to override their client's wishes by raising an issue of competency when one exists. But in this special context, the damage to the attorney-client relationship should at least be mitigated by judicial sensitivity to the question of public disclosure once the competency hearings are over. Indeed, such sensitivity is essential if the criminal justice system is to operate effectively in cases involving evidence of mental illness and disability. Put differently,

the general presumption in favor of unsealing documents and exhibits should be at its weakest in cases involving competency litigation that has been instigated by defense counsel over a defendant's objections, and in which the defendant's most important evidentiary privileges – respecting confidential attorney-client communications, attorney work product, and self-incrimination – are effectively suspended. We ask the Court to keep this very unusual setting in mind when considering the individual and public interests at stake in connection with the categories of evidence discussed below.

## II. Video recordings of the defendant's jail visits with family members should remain sealed.

During the competency hearings, defense counsel offered five video recordings of visits between the defendant and his family that were made pursuant to routine security procedures at the Charleston County Detention Center.[3] At the time of the competency hearings, the government had listed all of the jail visit recordings in its possession as possible penalty-phase evidence, and the defendant had filed a *pro se* motion to exclude them. Dkt. No. 722. Ultimately, however, the government did not offer any of the visit videos at either stage of the proceedings. As for defense counsel's use of the recordings

[3]Defense Exhibit 11 from the November 22, 2016 competency hearing includes three family visit videos that defense counsel offered on the issue of the defendant's mental condition and competence to stand trial. Tr. 11/22/2016 at 6-7, 244. One of these videos was also contained in Defense Exhibit 10, which included all of the materials furnished by the defense to Dr. Ballenger during the course of his initial competency evaluation in November, together with a jail-visit video that the government had provided to Dr. Ballenger. Two more videos, made on December 18 and 27, 2017, and were produced by counsel during the January 2 competency hearing. These videos were reviewed in their entirety by the Court during the midday recess, Tr. 1/2/2017 at 137, and were discussed at length by Dr. Loftin. *Id.* at 142-163. Although the Court stated that the latter two videos "are going to be made part of the record," *id.* at 126, the transcript does not reflect exhibit numbers for these videos.

at the competency hearings, the defendant himself strenuously objected to their relevance and admissibility, and once they were offered and admitted, he repeatedly pleaded with the Court to protect the privacy of his family by leaving the video recordings under seal. On November 22, at the conclusion of the first competency hearing, the defendant attempted to explain that the videotapes should not have been admitted because they did not reliably show his behavior or mental condition:

> I told you before that at the jail you are not allowed a visit with your parents except on video, or anybody, so, you know, the fact that my attorneys want to present these videos, I just -- I have a real issue with that because there is no way to visit them at all. I mean, I can understand a phone call because then you would still be able to have a visit. But the only problem with this is I haven't been able to talk to my parents about my crime openly or anything like that since I have been arrested, and it's a pretty, you know, serious thing, you know, and I haven't been able to really explain it to them. And it's -- I'm sure it's left them with a lot of questions.
>
> The other thing I want to say about that is that my lawyers are trying to make it out to seem like my behavior in these videos, like the ones they just gave to you, is my natural behavior. It isn't. I know I'm being watched.
>
> THE COURT: Is that affecting your behavior?
>
> THE DEFENDANT: Absolutely. In a different way.

Tr. 11/22/2016 at 257-58. At the January 2 competency hearing, the defendant twice urged the Court not to expose videos of his family's visits to public view:

> [N]ot only does it invade my privacy, which I understand I don't have a right to, but it invades the rights of the privacy of the people visiting me. You can say they don't have a reasonable expectation of privacy when they are coming to visit you at the jail, but that is for purposes of the security of the jail. They have a reasonable expectation when they are visiting at the jail that their visits won't be disseminated. That is my objection.
>
> * * * *

> It just seems the idea that someone has no other way to visit their family members and that could be uploaded to the court website, for example, from this competency hearing, and then put on The *Post and Courier's* website, like they did with my confession. It just seems unprecedented.
>
> Tr. 1/2/2017 at 126-27, 217.

While defense counsel did not agree with our client's view of the relevance of the videos, we certainly agree that they should not be made public. Doing so would violate the privacy of the defendant's mother, father, grandparents, and sisters (one of whom is a minor), and compromise the defendant's right to self-representation. Moreover, as the videos did not serve as a basis for either the court evaluator's findings or this Court's competency orders, there is no substantial reason why they should be publicly released.

We acknowledge that visitors in the Charleston County Detention Center are warned that their visits are being recorded. As the defendant's motion to suppress noted, however, there is a difference between recording for security purposes and unlimited dissemination of recordings simply because portions of them may have arguably become relevant in court proceedings. *See* Dkt. No. 722 at 3-4. A defendant's family members should not be forced, as the price of visiting their son, grandson, or brother, to risk having every moment of their visits with him disseminated on-line to satisfy the curiosity of millions of people around the world. This is particularly so when neither the defendant nor his relatives sought public attention for family members at any time during these proceedings. To the contrary, the defendant chose to represent himself in part *to avoid* having his family summoned to testify on his behalf, and his family limited themselves to

two respectful written statements expressing their sorrow, remorse, and sympathy for the victims of his crime.

The unfairness of placing these private visits on public display is compounded by the restraints under which the defendant's family's interactions with him occurred. Just like the defendant, his family members knew that they could not discuss his charges or crimes, and so were largely confined to conversations on topics that, out of context, most observers would find inappropriately trivial given the nature and magnitude of the defendant's crimes. Thus public disclosure of these recorded interactions would be especially likely to subject family members to widespread condemnation, humiliation and scorn which they do not deserve. Under all of these circumstances, including the limited relevance of the video recordings to any fact at issue, the reasons to protect the privacy of the family members depicted in the jail visit videos far outweigh any public interest in the videos' dissemination.

Other courts have taken account of the privacy rights of individuals other than the defendant when considering the right of public access to judicial documents. *See e.g., Times Mirror Co. v. United States*, 873 F.2d 1210, 1216 (9th Cir.1989) (maintaining search warrant materials under seal); *United States v. Schlette*, 842 F.2d 1574, 1582, 1585 (9th Cir.1988) (authorizing release of presentence report, but subject to redaction to protect sensitive information); *Smith*, 776 F.2d at 1113-14, 1115 (maintaining under seal bill of particulars naming unindicted co-conspirators).[4] The Court would be well within

[4] This rationale also supports maintaining under seal the interim witness and exhibit lists.

its discretion to maintain under seal these video recordings, which were – at best – tangential to the competency determination and which directly implicate the privacy interests of the defendant's family members.

Moreover, and as discussed further below, *infra* Part IV, the failure to maintain the video recordings under seal would undermine the defendant's right to self-representation. The Court determined the defendant was competent to make the decision whether information his counsel had gathered in his defense would be introduced into evidence and made public. He elected not to introduce any testimony or other evidence from his family. Unsealing the video recordings would deprive the defendant of the right to control release of the information – a right the Court determined was his to exercise, and on which he relied in his decision-making at trial. Decisions made by his counsel in pursuit of a motion we initiated but which the Court deemed ultimately to have no merit, would effectively override the defendant's own wishes despite his having chosen to self-represent.

## III. Sensitive and protected health information of the defendant's family members should remain under seal.

The defense expert reports and the competency hearing transcripts refer to sensitive and protected health information about the defendant's family members, including:

- Discussion of [redacted] (Tr. 11/22/2016 at 53-58);
- Discussion of [redacted] (*id.* at 53);

- Discussion of the defendant's family's personal and medical history (*e.g.*, Dkt. No. 832-1 at 10-15;[5] Dkt. No. 832-2 at 5; Dkt. No. 832-3 at 10-11);
- Grand jury testimony and interviews by family members (*e.g.*, Dkt. 832-3 at 15-16);
- Descriptions of the defendant's social interactions with family members and friends (*e.g.*, Dkt. No. 832-1 at 21-25, 29-33, 38-40, 47-48);

The Court may maintain under seal this type of sensitive and protected health information. *See United States v. Dillard*, 795 F.3d 1191, 1205-06 (10th Cir. 2015) (approving sealing of "highly personal and private medical information"). *See also supra* Point II (discussing protecting privacy of individuals). Doing so is especially appropriate here, when the defendant's family's personal and medical histories do not appear to have been central to the findings of the court evaluator or to the Court's competency ruling, and were not introduced at trial.

**IV. The defense expert reports should be maintained under seal.**

Rather than redacting the expert reports to protect the information described in Part III, the Court should maintain the four reports (Dkt. Nos. 832-1, 2, 3, & 4) under seal, out of concern not only for the defendant's family's privacy, but also to protect the attorney-client privilege, the work-product privilege, the psychotherapist-patient privilege, the defendant's right against self-incrimination under Federal Rule of Criminal

[5] Names of persons other than the defendant appear throughout Dkt. No. 832-1. If the Court determines to release this document, we request an opportunity to redact it to remove the names of these individuals.

Procedure 12.2 and the Fifth Amendment, and the defendant's Sixth Amendment right to self-representation. These reports never would have been introduced but for defense counsel's motion for a second competency hearing, made over the defendant's objection, and counsel's insistence – also over his objection – that they be considered by the Court and its evaluator. They contain attorney-client, work-product, and psychotherapist-patient privileged material that otherwise would not have been made public, due to the defendant's withdrawal of his notice of intent to introduce expert evidence of a mental disease or defect under Rule 12.2. The defendant should not have to endure their public disclosure now, despite his timely objection at a point in the proceedings when the Court had ruled he was competent to represent himself.

The Court did not rely on the reports in issuing its competency orders. Rather, the orders reveal that the Court substantially rejected the information provided by the defense experts, in favor of that provided by Dr. Ballenger. *See* Dkt. No. 656 at 15-16, 20-22; Dkt. No. 881 at 11-14, 16-18. However, the orders summarize the defense expert presentations in enough detail that the public can understand from the Court's orders the essentials of counsel's position on competency. Since what the defense experts offered was not dispositive, further detail need not be made public now. *See Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1162 n.8 (10th Cir. 2016) ("[T]he public's interest in access to judicial records is lessened when the contents are not used to determine the litigant's substantive legal rights.").

The Court will recall that the defendant personally objected to introduction of the reports. Tr. 1/3/17 at 19-20. In fact, the defendant objected to holding a second

competency hearing at all. Tr. 1/3/17 at 6. Instead, he wished to proceed directly to the penalty phase, *pro se*. *Id.* The Court held the hearing, and accepted the reports, but permitted the defendant to participate on his own behalf. Tr. 1/3/17 at 5, 20. If it were to release these reports, however, the Court would erode the right of self-representation that the defendant sought to exercise through all of the proceedings that followed the jury's guilty verdicts.

As the Court noted in granting the defendant's request to represent himself:

- "Defendant moved to self-represent to prevent the presentation of mental health mitigation evidence." Dkt. No. 691 at 6.

- "Defendant -- motivated by disdain for a defense based on mental health evidence -- reacted immediately when he learned Defense Counsel intended to present such evidence." Dkt. No. 691 at 8.

- "Defendant seeks to preserve his reputation even at the cost of having the death penalty imposed." Dkt. No. 881 at 9.

A decision to unseal the reports would undermine the very purpose of the defendant's decision to represent himself, and so would contravene *Faretta's* recognition that "forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Faretta v. California*, 422 U.S. 806, 817 (1975). All of the mental health evidence the defendant sought to suppress would be revealed, at a time when the defendant's convictions and sentences are on appeal and not yet final. This would also raise significant Rule 12.2[6] and Sixth Amendment questions, since the reports were offered by attorneys whom the defendant did not then wish to have

[6] The Rule 12.2 issues are addressed further in Parts V and VI.

representing him, at a time when the Court found him competent to proceed on his own. These questions may be avoided by maintaining the documents under seal.

Should the Court determine to release the reports – which are extensive – we request an opportunity to suggest redactions.

## V. The transcripts of the competency hearings should be maintained under seal.

The competency pleadings and transcripts are replete with material derived from the defendant's privileged interactions with his attorneys and defense mental health professionals and/or from materials prepared by his attorneys and defense mental health professionals in anticipation of the penalty phase of his capital trial. They contain:

- Direct quotations of statements by the defendant to his counsel;
- Direct quotations of statements by the defendant to mental health professionals retained by the defense (all but one of whom – Dr. William Stejskal – were retained with a view to developing mental health mitigation evidence that the defendant ultimately never offered);
- Assessments based on statements by the defendant to his counsel and mental health professionals retained by the defense, prepared at the request of defense counsel; and
- Discussion of interviews of the defendant by court-appointed experts based on those materials.[7]

[7] Here, we refer to Dr. Ballenger's interviews of the defendant, and the testimony about them. These interviews are organized around defense counsel's affidavits, which recount the defendant's statements to them. *See, e.g.*, Dkt. No. 648 at 27-28, 32-36; Dkt. No. 858 at 3-15;

This content is either attorney-client, work-product, or psychotherapist-patient privileged. *See United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (outlining elements to attorney-client privilege); *United States v. Kendrick*, 33l F.2d 1l0 (4th Cir. 1964) (en banc) (distinguishing between client statements and observations about client); *In re Grand Jury Proceedings, Thurs. Special Grand Jury Session Sept. Term, 1991*, 33 F.3d 342, 348 (4th Cir. 1994) (defining work product); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983–84, 986 (4th Cir.1992) (noting that work product need not be the product of an attorney); *United States v. Bolander*, 722 F.3d 199, 223 (4th Cir. 2013) (recognizing that psychotherapist-patient privilege may apply to mental health expert where timely asserted). The privileged materials were disclosed by counsel over the defendant's objection, Dkt. No. 882 at 131; Dkt. No. 880 at 5-6, 19-20, and solely for the purpose of the competency proceedings, Dkt. No. 578 at 1, 3-6; Dkt. No. 832 at 2. Further disclosure is neither appropriate nor necessary. *Cf.* Dkt. No. 880 at 130 (The Court: "We do not need to unseal [Dr. Dietz's report]. It will be available if the Fourth Circuit wishes to see it.").

The privileges at issue here are deeply rooted in our legal tradition and exist to permit the free flow of information between professionals, their clients/patients, and each other. *See generally* Geoffrey C. Hazard, Jr., "An Historical Perspective on the Lawyer-Client Privilege", 66 Cal. L. Rev. 1061 (1978); *Jaffee v. Redmond*, 518 U.S. 1 (1996).

---

Dkt. No. 882 at 93-94; Dkt. No. 880 at 22 ("I based my examination in my report on the issues raised in that motion [identifying the specific instances since November 22nd that counsel believe indicated that the defendant was not competent].").

Here, the defendant had every expectation that his communications with counsel and his medical and mental health experts (whom he believed to be assessing him for Hashimoto's Disease and other disorders that did not include those identified at the competency hearings, *see* Dkt. 707 at 264) would remain confidential. By his objections, he endeavored to prevent their disclosure, and when he ultimately discussed them, he did so only after counsel's disclosures compelled him to do so. *Cf. United States v. Byers*, 740 F.2d 1104, 1112-13 (D.C. Cir. 1984) (en banc).

Before unsealing the competency transcripts (or any of the materials underlying them, including the court expert reports), the Court would be required to identify what material in them derives from privileged information, and should be protected from public disclosure on that basis. *See* Dkt. No. 910 (ordering redaction of material that was protected under patient-psychotherapist privilege); *Kastigar v. United States*, 406 U.S. 441 (1912); *United States v. Squillacote*, 22l F3d 542, 558-61 (4th Cir. 2000). This effort need not be undertaken here, however, since the Court's orders on competency have already been released, and these adequately inform the public of the content of the proceedings.

## VI. Confidential Rule 12.2 materials should be maintained under seal.

The defendant withdrew his notice of intent to introduce expert evidence of a mental disease or defect. *See* Dkt. No. 823. Federal Rule of Criminal Procedure 12.2 is designed to prevent disclosure of mental health evidence unless the defendant elects to proceed with a mental disease or defect defense or mitigation case. *See* Fed. R. Crim. P. 12.2(c)(2-4). In accord with the Rule, any documents containing information regarding

the parties' respective mental health investigations that were directed to developing sentencing evidence should be maintained under seal. This has been the practice in other federal capital cases, including *United States v. Tsarnaev*, 13-CR-10200-GAO (D. Mass.). In the alternative, counsel have recommended unsealing those Rule 12.2 documents that are legal, rather than factual, in nature, and/or may be easily redacted. *See* Exhibit 3.

## VII. Discovery and other non-privileged materials that were never disclosed during trial should remain under seal.

Documents included in discovery but never introduced in court should not be publicly accessible. *See United States v. Kravitz*, 706 F.3d 47, 54 (1st Cir. 2013) ("[D]iscovery, whether civil or criminal, is essentially a private process because the litigants and the court assume that the sole purpose of discovery is to assist trial preparation."); *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) ("Historically, discovery materials were not available to the public or press."). Dkt. Nos. 832-1 & 832-3 (expert reports attached to the second competency motion by counsel) contain an extensive list of discovery materials, and should not be disclosed. The same rationale that permits protecting discovery materials also supports protecting sensitive, non-privileged material that – while not technically "discovery" – nonetheless was not disclosed at trial. *E.g.*, Dkt. Nos. 478, 513, 543, 545, 546, 563, and all video recordings from the Charleston County Detention Center.[8]

[8] Disclosing the interim witness lists, in particular, would risk the privacy and reputations of individuals whose identities are otherwise not a part of the public record and who may not welcome association with the defense.

## CONCLUSION

For these reasons, the defendant requests that the competency and mental-health-related documents and exhibits, and other documents listed in Exhibit 1, remain under seal. The Court has already released to the public the bulk of the extensive record in this case. In light of the summary of the competency proceedings already made available, maintaining these documents under seal will protect important interests with minimal effect on the public's common-law or constitutional rights of access. To the extent that the Court denies our requests to leave the above-listed documents under seal, we request that the public versions be redacted as attached.

Respectfully submitted,

s/ *Sarah S. Gannett*
Sarah S. Gannett
Assistant Federal Public Defender
Federal Public Defender for the District of Arizona
850 W. Adams Street, Suite 201
Phoenix, AZ 85007
602-382-2862
sarah_gannett@fd.org

s/ *David I. Bruck*
David I. Bruck
Washington & Lee School of Law
Lexington VA 24450
540-458-8188
bruckd@wlu.edu

Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender for the
District of Oregon
1070-1 Tunnel Road, Suite 10-215
Asheville, NC 28805
336-788-3779

kim_stevens@fd.org

Emily C. Paavola
900 Elmwood Ave., Suite 200
Columbia, SC 29201
803-765-1044
Emily@justice360sc.org

Attorneys for Dylann S. Roof