IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| United States of America, | ) | Criminal No. 2:15-472-RMG |
|---|---|---|
| v. | ) | **ORDER AND OPINION** |
| Dylann Storm Roof. | ) | |

Defendant Dylann Roof was convicted of 33 federal offenses arising from his attack on Mother Emanuel AME Church in Charleston, South Carolina on June 17, 2015. He was sentenced to death on January 11, 2017. On April 10, 2017, Defendant pleaded guilty to murder charges in state court arising from the same attack. Before Defendant was sentenced in this case, many documents and hearing exhibits were sealed to protect Defendant's right to a fair trial. After sentence was imposed, the Court ordered the parties to brief whether certain documents should now be unsealed. (Dkt. No. 883.) The parties have filed briefs responsive to that order. The Government argues all documents should be unsealed. Defendant agrees many documents should be unsealed but argues that many other documents should remain sealed, or should be redacted.

For the reasons set forth below, the Court unseals certain documents, orders certain documents to remain under seal, and orders Defendant to submit proposed redactions for certain documents.

I. **Legal Standard**

"The right of public access [to judicial records] derives from two independent sources: the First Amendment and the common law." *In re United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013). The distinction between these two rights of access is significant because "the common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." *Id.* (internal quotation

marks omitted). However, "[f]or a right of access to exist under either standard . . . the document must first qualify as a judicial record." *Mortgage Grp., LLC v. Stonegate Mortgage Corp.*, No. 5:14-cv-310-F, 2016 WL 3030166, at *6 (E.D.N.C. May 25, 2016); *accord In re United States for an Order*, 707 F.3d at 290. If a document is not a judicial record, no right of access attaches, and the Court need only find good cause to seal the document. *E.g., Johnson v. Ford Motor Co.*, No. 3:13-cv-6529, 2015 WL 1781886, at *2 (S.D.W. Va. Apr. 15, 2015); *Ohio Valley Envtl. Coal. v. Elk Run Coal Co.*, 291 F.R.D. 114, 124 (S.D.W. Va. 2013).

Whether a document is a judicial record is a question of law. *In re United States for an Order*, 707 F.3d at 290. Any judicially authored or judicially created document is a judicial record. *Id.* Documents that are filed with the court are judicial records if "they play a role in the adjudicative process, or adjudicate substantive rights." *Id.*; *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access."). Documents "filed with the objective of obtaining judicial action or relief," such as pleadings and motions, are judicial records. *In re United States for an Order*, 707 F.3d at 291. Documents considered by a judicial officer in adjudicating substantive rights such as evidentiary exhibits are also judicial records. *See id.*

"[T]he First Amendment provides a right of access only to *particular* judicial records and documents." *Id.* at 290 (4th Cir. 2013) (emphasis in original). To determine whether the First Amendment provides a right of access, courts employ the "experience and logic" test. *Id.* at 291. This test asks "(1) whether the place and process have historically been open to the press and general public, and (2) whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* (internal quotation marks omitted). A First Amendment

right of access attaches only if both prongs are satisfied. *Id.* A First Amendment right of access also "extends to materials submitted in conjunction with judicial proceedings that themselves would trigger the right to access." *Doe v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir. 2014). In other words, if a right of access attaches to a particular hearing, it also attaches to documents filed in relation to that hearing. *See In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986). When the First Amendment right of access applies, the Court can restrict access only if necessary to protect a compelling interest and if the denial of access is narrowly tailored to serve that interest. *Doe v. Pub. Citizen*, 749 F.3d at 266.

If only the common law right of access applies to judicial documents, which is rare in a criminal proceeding, the Court must find that the public's right of access is heavily outweighed by countervailing interests. *Id.* "Some of the factors to be weighed in the common law balancing test include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." *Virginia Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (internal quotation marks omitted).

## II. Discussion

The parties agree that many sealed documents should be unsealed. Defendant requests that 33 documents remain under seal and that seven documents be substantively redacted. Defendant also requests that five video exhibits remain under seal. The asserted bases for sealing those documents are 1) they contain private health information about Defendant's family members, 2) they contain attorney-client, work-product, and psychotherapist-patient privileged information, 3) release of those documents would undermine Defendant's right of self-representation because Defendant objected to hiscounsel's position that he was not competent, and 4) they include

-3-

material that would have been protected from disclosure under the Federal Rules of Criminal Procedure but for the litigation of Defendant's competency.

A.  Modification of the Record

Before considering Defendant's arguments on unsealing documents, the Court makes certain necessary modifications to the record in this case. The Court admits as exhibits to the competency hearing held on January 2, 2017 the video recording of the visitation on December 18, 2016, as Defendant's exhibit 4, and the video recording of the visitation on December 27, 2016, as Defendant's exhibit 5. These videos were produced by Defendant's counsel for the Court's consideration and the Court stated on the record that these videos would be made part of the record. (Dkt. No. 880 at 126.)

The Court strikes exhibit 10 to the competency hearing held on November 21–22, 2016. Exhibit 10 included all materials Defendant's counsel furnished to Dr. James Ballenger, the court-appointed competency examiner, and a visitation video provided by the Government (that video is also included in Defendant's exhibit 11). Defendant provided exhibit 10 "so that we simply have this in the record as to—so that the record will be complete." (Dkt. No. 882 at 129.) The Court did not review or consider exhibit 10 in adjudicating Defendant's competency. Rather, exhibit 10 was admitted "only for the purpose of [establishing] documents that Dr. Ballenger received." (Dkt. No. 292 at 6.)

The Court reconsiders admission of exhibit 10 because Dr. Ballenger's report lists the records he examined in preparing his report clearly and particularly and the parties do not contest the accuracy of that list. Those records, however, are extremely voluminous. To adjudicate Defendant's competency, the Court relied on Dr. Ballenger's report and on his testimony, on the reports and testimony of Defendant's experts, on the argument of counsel and the evidence presented in support of that argument, and on the Court's own observations of Defendant. The

Court did not conduct an independent examination of the underlying medical and other records that the Court appointed Dr. Ballenger to review, yet that is what inclusion of those materials as evidence may imply.

B.  **Documents the Parties Agree Should Be Unsealed**

The parties agree that many sealed documents should be unsealed. Defendant, however, proposes that the names of experts and of medical tests be redacted from ten documents that he agrees should otherwise be unsealed, because those experts and tests were never offered as evidence at trial. The Court declines to redact those documents. Six of the documents in question are orders of the Court or briefs regarding court orders. (Dkt. Nos. 480, 485, 487, 490, 507, 593.) Court orders and briefing seeking or opposing court orders are judicial records subject to a First Amendment right of public access. *In re United States for an Order*, 707 F.3d at 290–91. One document is a letter requesting a hearing transcript copy that mentions the name "Dr. Stejskal." (Dkt. No. 580.) Dr. Stejskal testified at the November 21–22, 2016 competency hearing. The Court sees no reason to redact the name of a testifying expert witness. Further, the purpose of the letter was to seek a court order regarding a transcript. Another document is a letter that mentions MMPI and PAI personality tests. (Dkt. No. 582.) The Court sees no reason to redact the names of common personality tests. One document is a letter naming expected witnesses at the November 21–22, 2016 competency hearing, with attached expert reports. (Dkt. No. 646.) Again, the Court sees no reason to redact the names of expert witnesses who testified at an evidentiary hearing. The final document is another letter that mentions the name of Dr. Maddox, another expert who provided testimony at the competency hearing. (Dkt. No. 662.) The Court declines to redact her name.

## C. Rule 12.2 Materials

Defendant argues that Rule 12.2 of the Federal Rules of Criminal Procedure prevents disclosure of mental health evidence unless the defendant elects to proceed with a mental health defense or mitigation case. Defendant argues that because he withdrew his Rule 12.2 notice, his Rule 12.2 materials should remain under seal. The Court does not agree with Defendant's interpretation of Rule 12.2. Rule 12.2 does not require (or authorize) the Court to seal mental health materials that Defendant filed or entered into evidence. Rather, it provides that if notice is given of intent to introduce expert evidence on mental health in mitigation, the Government has a right to its own examination of the defendant's mental health. The rule further provides that "[t]he results and reports of any examination conducted solely under Rule 12.2(c)(1) after notice under Rule 12.2(b)(2)" "must be sealed" until the Defendant makes a final decision to present mental health mitigation evidence. Fed. R. Crim. P. 12.2(c)(2). The phrase "solely under Rule 12.2(c)(1) after notice under Rule 12.2(b)(2)" excludes the competency evaluation in this case because it was conducted on Defendant's motion (*see* Dkt. No. 559), not on the Government's motion after a notice of intent to introduce mental health mitigation evidence under Rule 12.2(b)(2).

There was an examination of Defendant under Rule 12.2(c)(1) after notice under Rule 12.2(b)(2) in this case. That report was not a part of the competency proceedings in this case, and, in accordance with Rule 12.2(c)(2), it remains sealed. But Rule 12.2 does not protect evidence admitted at a hearing on defense counsel's motion that Defendant was incompetent to stand trial. Further, Rule 12.2 only requires sealing of the "results and reports" of an examination—not pre-examination notices filed under Rule 12.2, pre-examination litigation regarding examination procedures, the Defendant's voluntary statements to the Government regarding his experience in the examination (*i.e.*, Dkt. No. 545), or references to such statements in subsequent judicial documents.

The Court, however, concludes that Defendant's supplements to his Rule 12.2 notice are not judicial documents and therefore there is no right of public access to them. Documents filed with the court are judicial records only if "they play a role in the adjudicative process, or adjudicate substantive rights." *In re United States for an Order*, 707 F.3d at 290; *Amodeo*, 44 F.3d at 145 ("[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access."). Defendant's supplemental information regarding tests was provided to allow the Government to arrange for Rule 12.2 examination of appropriate scope, not to seek relief from the Court.

### D. Defendant's Right of Self-Representation

Defendant argues unsealing documents related to his competency to stand trial would infringe his right of self-representation because he did not want his attorneys to present evidence suggesting that his is mentally incompetent. But Defendant's attorneys placed Defendant's competency—both to stand trial and to represent himself—at issue during their representation of Defendant. No authority supports sealing evidence or judicial documents associated with the determination that Defendant is competent, even if the Defendant subsequently fires his attorneys for suggesting that he is not competent. To the contrary, there is a manifest public interest in the evidence supporting the judicial determination that a capital defendant, now sentenced to death, was in fact competent to stand trial. *Walter v. Georgia*, 467 U.S. 39, 46 (1984) (observing public access to criminal proceedings is essential so "that the public may see [the defendant] is fairly dealt with and not unjustly condemned"). The Court therefore rejects Defendant's assertion that competency-related documents must remain sealed to protect his right of self-representation.

The Court understands that Defendant does not wish to have this material unsealed, but Defendant's wishes are entitled to no weight. To deny public access to court filings, Defendant must show that public access would violate some legally protected interest. *Doe v. Pub. Citizen*,

749 F.3d at 266; *Virginia Dep't of State Police*, 386 F.3d at 575. The right of self-representation is a legally protected interest, but a defendant's right of self-representation is his right to control the presentation of his defense. In this case, it was Defendant's right not to present a mental health mitigation defense to the jury. That right was respected: over the objection of his appointed counsel, no mental health mitigation defense was presented. Defendant offers no authority for, and the Court cannot agree with, the position that the Sixth Amendment creates a privacy interest in evidence and argument regarding a defendant's competency to stand trial if the Defendant objects to having his competency questioned.

E.   **Privilege Claims**

Defendant argues that four expert reports (Dkt. Nos. 832-1, 832-2, 832-3, 832-4) should remain under seal because they contain attorney-client, work-product, and psychotherapist-patient privileged information. The Court finds that argument to be without merit. Any attorney-client, work-product, or psychotherapist-patient privacy protections were waived when the reports were offered as Defendant's evidence. *See* Fed. R. Evid. 502(a) (intentional disclosure "made in a federal proceeding" waives attorney-client privilege and work-product protection); *United States v. Bolander*, 722 F.3d 199, 223 (4th Cir. 2013) ("[W]aiver may occur when the substance of therapy sessions is disclosed to unrelated third parties. . . ."). These documents might not have been admissible as evidence in a criminal trial, where there potentially would have been Fifth Amendment issues. *Cf. Simmons v. United States*, 390 U.S. 377, 394 (1968). Now, however, that Defendant has been convicted of all federal and state charges related to the attack on Mother Emmanuel, Fifth Amendment issues are moot because evidence in the criminal cases is now closed.[1]

---

[1] The Court recognizes the possibility that appeals of or collateral attacks on the convictions might result in a new trial. That possibility exists until Defendant's death. But the public's First

F.  **Third-Party Privacy Interests**

Defendant argues that unsealing some documents in this case would violate protected third-party privacy interests. Third parties may have legally protected privacy interests that outweigh the right of public access to court filings. *See Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988) (holding district court should have determined whether the right of access outweighed public policy expressed in a Maryland statute protecting medical records); *see also United States v. Dillard*, 795 F.3d 1191, 1205–06 (10th Cir. 2015) ("[T]he privacy interest inherent in personal medical information can overcome the presumption of public access."). The Court finds that disclosure of the discussion of Defendant's family's personal and medical history would violate a compelling privacy interest that outweighs the public's right of access to that information. Defendant's family members were not charged with any involvement with Defendant's crimes, and their personal and medical histories were not evidence at trial nor were they the basis for any judicial action regarding Defendant's competency. The Court found Defendant competent based on the reports and testimony of the court-appointed examiner, which were based on the examiner's examination of Defendant, and on the Court's own direct observations of Defendant. Personal details about Defendant's family merely appeared as background information in certain reports. The Court therefore finds the public interest in those details to be minimal compared to the substantial interest in protecting highly sensitive personal information such as medical records from publicity. *Cf. Whalen v. Roe*, 429 U.S. 589, 600 (1977). The Court further finds that redaction of those details from documents is narrowly tailored to protect that compelling interest. *Cf. Doe v. Pub. Citizen*, 749 F.3d at 266. Documents therefore will be redacted to prevent

---

Amendment right of access to capital criminal proceedings does not allow the Court to seal every judicial document that would be potentially inadmissible as evidence at a hypothetical future trial until Defendant's death.

disclosure of personal information about Defendant's family. The Court, however, does not find cause to seal descriptions of Defendant's broad "social interactions with family members and friends" where those descriptions do not involve highly sensitive details of third-party personal or medical histories. (*See* Dkt. No. 941 at 11.)

Defendant argues release of Defendant's interim witness lists would "risk the privacy and reputations of individuals . . . who may not welcome association with the defense." (*Id.* at 17 n.8.) The Court does not reach that privacy argument because the Court concludes that, like Defendant's supplements to his Rule 12.2 notice, Defendant's interim witness lists are not judicial documents and therefore there is no right of public access to them. *See In re United States for an Order*, 707 F.3d at 290; *Amodeo*, 44 F.3d at 145. The Court will only unseal Defendant's final witness list Defendant filed and any witness lists used in voir dire.

Defendant raises special privacy concerns regarding video recordings of jail visitations with his family. Visits at the Charleston County Detention Center, where Defendant was incarcerated, are made via videoconferencing equipment. Inmates and visitors are warned that their visits are recorded. (Dkt. No. 722 at 2.) During the competency hearings, defense counsel offered as evidence five video recordings of visits between Defendant and his family at the Charleston County Detention Center. (Competency Hr'g Ex. 11, Nov. 22, 2016 (three videos); Competency Hr'g Exs. 4, 5, Jan. 2, 2017.)

Generally, family members have a strong privacy interest in their domestic relations. *Hodge v. Jones*, 31 F.3d 157, 163 (4th Cir. 1994) ("[T]he sanctity of the family unit is a fundamental precept firmly ensconced in the Constitution and shielded by the Due Process Clause of the Fourteenth Amendment" [and] "[T]he individual privacy cases have focused primarily on shielding . . . the individual interest in avoiding disclosure of personal matters . . . .") (internal

quotation marks omitted)). That privacy interest, however, is waived when family members voluntarily proceed with a video meeting after being warned that the meeting is being recorded by governmental authorities. The Court therefore unseals the four videos with adult family-members that were offered as evidence on behalf of Defendant.

One visitation video, however, includes Defendant's minor sister. (Competency Hr'g Ex. 4, Jan. 2, 2017 (video of visit of December 18, 2016).) The privacy interests of a minor are especially compelling. *See Globe Newspaper Co. v. Super. Ct. Norfolk Cty.*, 457 U.S. 596, 607. 2d 248 (considering "safeguarding the physical and psychological well-being of a minor" to be a "compelling" interest); *Webster Groves Sch. Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1375 (8th Cir. 1990) (noting the "strong public policy favoring the special protection of minors and their privacy where sensitive and possibly stigmatizing matters are concerned"). In this case, however, the Court finds Defendant's minor sister knowingly and intelligently waived her privacy interests, and that any privacy interests she could not waive because she was then sixteen years old are outweighed by the public's interest in evidence about the competency of a capital defendant to stand trial. Defendant's sister asked Defendant, "When do they show these videos in court . . . the ones they're recording right now?" Defendant replied, "I can't talk about it." She then asked, "Are they gonna?" and Defendant replied, "I'm trying to stop them." (Competency Hr'g Ex. 4 at 24:26–24:40, Jan. 2, 2017.) Her statements show that she was fully aware that the visitation was being recorded and that she *expected* it to be available to the public as evidence in this case. Because she is a minor, her actions and statements are not, standing alone, necessarily sufficient to waive her privacy interests. But at the second competency hearing, Defendant had the burden to show some change in his competency since the November 21–22, 2016. His only evidence was video of visitations on December 18 and December 27, 2016. Defendant's experts opined that

Defendant was not competent based on their review of these two videos. (Dkt. No. 880 at 14.) The public's First Amendment right of access to evidence challenging the competency of a capital defendant—a challenge to the integrity of the proceeding that ultimately sentenced Defendant to death—is more compelling than the privacy interests of a sixteen year old who intelligently expected the video of her jailhouse interaction with Defendant to be made public. *See Walter*, 467 U.S. at 46.

The Court, however, sees no requirement for online dissemination of any visitation videos. The Clerk will not provide copies or permit the public to make copies of the visitation videos.

### G.     Hearing Exhibits Other than Videos

The Court will not unseal hearing exhibits that are duplicates of documents filed electronically via ECF. Those documents are or will be available to the public electronically via PACER, whereas the exhibits are hardcopy paper documents in the possession of the Clerk of Court. Making hardcopy documents available when electronic copies are already available would impose a useless burden on Court staff, especially for those documents requiring redaction.

#### 1.     *November 21–22, 2017 Competency Hearing*

Defendant's exhibit 1 is an email chain in the nature of a discovery request, and Defendant's exhibit 7 is a similar SMS text message. Discovery requests are not traditionally available to the public, but there is a public right of access when they are presented to the Court to support a motion, so the Court unseals these exhibits. *See In re Wash. Post Co.*, 807 F.2d at 390. The Court unseals Defendant's exhibits 2 and 3 because they are copies of publicly available documents. Defendant's exhibits 12, 13, 14, 15, 16, 17, 21, 22, and 23 are declarations by Defendant's experts, the curricula vitarum of Defendant's experts, and lists of materials considered by Defendant's experts, which the Court unseals.

Defendant's exhibits 5, 9, 19, and 21 are sets of medical records. Defendant's exhibit 8 is a set of arrest and medical records regarding Defendant's incarceration at the Charleston County Detention Center. These records appear to contain information requiring redaction, such as social security numbers and third-party personal information. The Court directs Defendant to propose redactions as described in this Order, *infra*.

Defendant's exhibits 4 and 18 are transcripts of grand jury proceedings, which the Court declines to unseal. *See* Fed. R. Crim. P. 6(e)(3)(E). Court's exhibits 1, 2, 3, 4, and Government's exhibit 1 are filed on ECF as document numbers 658, 649, 650, 651, and 545, respectively. The Court therefore does not unseal these documents.

There was no exhibit 6 at this hearing. (Dkt. No. 882 at 232.)

**2.** *January 2, 2017 Competency Hearing*

Court's exhibit 1, Defendant's exhibit 2, and Defendant's exhibit 1 are filed on ECF as document numbers 858, 840, and 840-1, respectively, so the Court does not unseal these documents. The Court unseals Defendant's exhibit 3, which is a list of draft questions for a witness at this hearing.

**H. Redactions**

Defendant requests the opportunity to propose redactions to certain expert reports (Dkt. Nos. 832-1, 832-2, 832-3, 832-4). Defendant may propose redactions to those medical reports, to the reports of the court-appointed examiner, to transcripts of the competency hearings, to Defendant's exhibits 5, 8, 9, 19, and 21 from the November 21–22, 2016 competency hearing, and to Defendant's briefs regarding unsealing documents (Dkt. Nos. 939, 941). The Court unseals the Government's brief regarding unsealing documents (Dkt. No. 940). Proposed redactions should be consistent with this Order and should not attempt to re-litigate rulings with which Defendant disagrees. Proposed redactions should be filed under seal as applied redactions and additionally

emailed to the Court's ECF email address as unapplied redactions in text-searchable PDF documents.

Further, the attachment to Defendant's supplement to his motion to continue the competency hearing (Dkt. No. 617) appears to be a redacted version of a confidential report from a different case. (*See* Dkt. No. 941-1 at 2.) Defendant is directed, by April 25, 2017, to identify to the Court the case in which the report was filed and to inform Court whether the report is under seal in that case.

### III. Conclusion

The Court therefore:

1. **ADMITS** the video recording of the visitation on December 18, 2016 as Defendant's Exhibit 4 to the competency hearing held on January 2, 2017, and the video recording of the visitation on December 27, 2016, as Defendant's Exhibit 5 to the competency hearing held on January 2, 2017;

2. **STRIKES** exhibit 10 of the competency hearing held on November 21–22, 2016 from the record; and

3. **UNSEALS** the following documents: Dkt Nos. 273, 274, 316, 479-2, 480, 482, 485, 487, 490, 492, 496, 500, 503, 505, 506, 507, 520, 526, 545, 546, 560, 562, 563, 569, 576, 577, 578, 580, 582, 584, 586, 593, 594, 595, 596, 598, 600, 603, 607, 609, 613, 615, 620, 621, 628, 631, 633, 639, 640, 642, 643, 646, 647, 656, 662, 667, 678, 685, 686, 691, 697, 699, 742, 743, 756, 759, 770, 800, 806, 829, 836, 840, 881, 915, 940, and the attachments thereto;

4. **UNSEALS** the following documents but not their attachments: Dkt. Nos. 617, 832;

5. **UNSEALS** November 21–22, 2016 competency hearing exhibits 1, 2, 3, 7, 11, 12, 13, 14, 15, 16, 17, 21, 22, and 23, and January 2, 2017 competency hearing exhibits 2, 4, and 5;

6. **ORDERS** that the Clerk of Court will not provide copies of, or permit unauthorized persons to make copies of, November 21–22, 2016 competency hearing exhibit 11 or January 2, 2017 competency hearing exhibits 4 or 5; and

7. **ORDERS** Defendant to provide proposed redactions consistent with this Order by April 25, 2017 for the following documents: 556, 629, 648, 649, 652, 687, 707, 832-1, 832-2, 832-3, 832-4, 858, 880, 882, 939, 941, and the attachments thereto.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

April 11, 2017
Charleston, South Carolina