UNITED STATES DISTRICT COURT
DISTICT OF SOUTH CAROLINA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | **Case No. 2:15-CR-00472-RMG** |
| v. ) | |
| ) | |
| **DYLANN STORM ROOF,** ) | |
| ) | |
| *Defendant.* ) | |
| _____) | |

# MEMORANDUM IN SUPPORT

Mr. Roof's application for relief from his conviction and death sentence pursuant to 28 U.S.C. § 2255 is due on or before July 21, 2025 (a date the government has agreed to, though they have since attempted to rescind that agreement and insist the deadline is April 17, 2025). In order to effectively prepare and present this application, Mr. Roof respectfully submits that initial discovery is necessary at this time.

Mr. Roof seeks authorization to engage in limited discovery targeted to uncover facts relevant to specific claims that Mr. Roof's counsel is investigating and anticipates raising in his § 2255 motion. Specifically, Mr. Roof seeks this Court's authorization to serve the following subpoenas and the Requests for Production:[1]

---

[1] This is an initial discovery request. Post-conviction counsel currently seeks authorization to conduct discovery prior to filing the § 2255 motion. Post-conviction counsel anticipate seeking authorization to conduct additional discovery at a later time.

1

1. Subpoena to Lexington County Sheriff's Department for public records that have not been provided to undersigned counsel due to a broken microfiche machine.[2]

2. Subpoenas to Court Reporters Amy Diaz and Debbie Potocki for any existing audio tapes of the pretrial and trial proceedings. Order for any audio recordings in the possession of the Court.

3. Requests for Production from the Department of Justice FBI records as follows:

    a. Handwritten or contemporaneous notes for any and all interviews conducted by the FBI in the course of their investigation in FBI case 44A-CO-6460937.

    b. Audio and/or video recordings of any and all interviews conducted by the FBI in the course of their investigation in FBI case 44A-CO-6460937.[3]

    c. Copies of any and all text messages between Paige Sinclair, Hastings Mann and Bennett Roof obtained by the FBI in the course of their investigation in FBI case 44A-CO-6460937.[4]

    d. FD-302 of Hiram "Thomas" Wages.[5]

---

[2] As noted below, counsel has been requesting these records for twenty-three months.

[3] The FBI's interview of Christopher "Chris" Kimrey is one of the few witness interviews, other than jail witnesses and victims, in which the audio recording was shared with the trial team in discovery. The 20-minute audio recording of the FBI interview of Mr. Kimrey resulted in a one-page FD-302 that failed to capture important information from the interview. For example, the one-page FD-302 fails to mention Kimrey's belief that Joseph "Joey" Meek, Jr. was active in the Klan, with Lexington County having the biggest Klan presence in all of South Carolina. The FD-302 does not mention that Shane Kimrey introduced Chris Kimrey to Dylann Roof and to Joey Meek. It fails to mention that Chris Kimrey lived in a tent outside the Meek residence. It does not mention that Shane Kimrey knew Joey Meek and Dylann Roof for several years prior to Shane killing himself in May 2015. The FD-302 did not reflect Chris Kimrey's statement that Chris snorted meth and that his brother Shane smoked meth. Given the discrepancies between the audio file and the one-page FD-302 for the FBI's interview of Chris Kimrey, the audio and/or video recordings for all interviews conducted by the FBI are relevant and necessary.

[4] Paige Mann showed the FBI drug-related text messages between her and Benn Roof. However, the fact that she showed them messages is not mentioned in her FD-302's.

[5] Hiram "Thomas" Wages resided at 630 Elm Ave., Columbia, SC and was a neighbor to the Roof family who lived at 611 Elm Ave, Columbia, SC. Our own investigation has revealed that Wages had been interviewed by the government. However, there is no record of this interview in discovery. Given that Wages was a neighbor to the Roof family and owned property with Dylann Roof's only maternal uncle, Carson Cowles, it is highly likely that he was interviewed by the FBI.

2

   e. Any and all FD-302s for FBI interviews with David Wayne Sprayberry.[6]

### A. Mr. Roof has shown good cause for his discovery requests.

As part of his § 2255 motion, Mr. Roof will raise claims about the ineffective assistance of counsel in pretrial and trial investigation and development of facts. Specifically, trial counsel failed to hire the appropriate experts and to understand Mr. Roof's impairments in order to present them to the Court. The records requested are related to these claims.

Pursuant to the Rules Governing Section 2255 Proceedings for the United States District Courts, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." R. 6. Good cause is established "where specific allegations . . . show reason to believe that [the movant] may, if the facts are fully developed, be able to demonstrate" that he is entitled to relief. *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997). Discovery is appropriate even if the allegations are, as they were in *Bracy*, "quite speculative." 520 U.S. at 905; *see also Rippo v. Baker*, 580 U.S. 285 (2017) ("The *Bracy* petitioner argued that a judge who accepts bribes to rule in favor of some defendants would seek to disguise that favorable treatment by ruling against

---

[6] Mr. Sprayberry reported to Mr. Roof's current legal team that he spoke with the FBI on multiple occasions. Only one FD-302, however, was provided in trial discovery.

3

defendants who did not bribe him. We explained that despite the 'speculative' nature of that theory, the petitioner was entitled to discovery because he had also alleged specific facts suggesting that the judge may have colluded with defense counsel to rush the petitioner's case to trial.") (internal citation omitted).

Mr. Roof's discovery requests satisfy the good cause standard because his specific allegations show reason to believe that when the facts are fully developed he will be entitled to relief. The specific allegation Mr. Roof is investigating and intends to plead is that his trial counsel provided ineffective assistance.

On its face, this allegation is more than just speculative. Mr. Roof had a difficult relationship with his trial counsel from the beginning. Trial counsel sought to present mental health evidence, over the objections of their client and without his consent. Thus, Mr. Roof was ultimately forced to represent himself, despite his marked inability to effectively choose a jury, object, and present evidence in his own defense. Counsel failed to understand their client's impairments and failed to present them to this Court. All of the requested discovery will shed light on Mr. Roof's impairments.

The discovery Mr. Roof seeks would provide Mr. Roof's post-conviction counsel with information about the trial proceedings, Mr. Roof's own background, and the FBI's investigation into his friends and family that are relevant to the investigation necessary to raise these claims.

### 1. *Lexington County Sheriff's Department records*

Mr. Roof requested records from the Lexington County Sheriff's Department on March 17, 2023. The department initially stated that the records could not be provided because the microfiche machine was broken. Additional records were requested in December 2023, but were still unavailable due to the department's broken microfiche machine. In February and March 2024, the department communicated that the machine was still broken and may or may not be fixed. In July 2024, post-conviction counsel offered to pay for an outside vendor to copy the records. In October 2024, post-conviction counsel was informed that a new microfiche machine had been ordered. Just in the last few weeks, the department has communicated they are "working" on the requests.

The requested Lexington County Sheriff's Department records are all records relevant to understanding Mr. Roof's life, his background, his impairments and his family history—information that is critical in capital cases. These records would have been available to trial counsel but were not sought or obtained by them.

### 2. *Audio Recordings from pretrial and trial proceedings*

The requested audio tapes were made by the Court Reporters during pretrial and trial proceedings. One of two Court Reporters contacted by post-conviction counsel has indicated that she has audio recordings from the proceedings in this

5

matter.[7] The Clerk of Court could also be in possession of audio recordings, but is unwilling to look in the basement for any such recordings absent an Order from the Court. The audio recordings are highly relevant to claims about Mr. Roof's ability to represent himself as they will reveal Mr. Roof's pauses or stutters not otherwise captured on the cold transcript of the proceedings. Armed with new evidence about Mr. Roof and his impairments that has become available to post-conviction counsel, these recordings take on critical importance in Mr. Roof's case.

### 3. FBI Records

Finally, the requested FBI records correspond to interviews with people that personally knew Mr. Roof and would have conveyed their knowledge and impressions of him at the time. This information is highly relevant to demonstrating trial counsel's failures to understand their own client's impairments and to present those to this Court.

### B. This Court can, and should, authorize discovery before Mr. Roof files his § 2255 motion.

While there is no question that a court may authorize discovery in § 2255 proceedings, some courts have held that discovery can be authorized only after the § 2255 motion is filed. *See, e.g.*, *United States v. Cuya*, 964 F.3d 969, 974 (11th Cir. 2020). Despite these cases (none of which are binding on this Court) the text

---

[7] Despite best efforts, counsel has not been able to confirm whether the Court is in possession of copies of these audio recordings.

of Rule 6 makes clear that the Court can authorize discovery before the § 2255 motion is filed.

When a court is supposed to act *only after* the § 2255 motion is filed, the Rules makes that clear. Rule 6 contains no such restriction. Unlike Rule 7, which governs expansion of the record after the motion is filed, or Rule 8, which governs evidentiary hearings after the motion is filed, Rule 6 does not require the court to wait until after the § 2255 motion is filed to decide whether to authorize discovery.

Rule 7 states that "*[i]f the motion is not dismissed*, the judge may direct the parties to expand the record by submitting additional materials relating to the motion." R. 7 (emphasis added). Rule 8 states, "*[i]f the motion is not dismissed,* the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." R. 8 (emphasis added). The possibility of dismissal refers to Rule 4, which states that, after the motion is filed, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." R. 4(b). Accordingly, pursuant to Rules 7 and 8, a court may order expansion of the record and an evidentiary hearing only after the motion is filed and the court conducts a preliminary review pursuant to Rule 4.

Unlike Rules 7 and 8, Rule 6 *does not* include the caveat "if the motion is not dismissed." Rule 6 states, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." R. 6. Accordingly, Rule 6 does not require the court to wait until after the § 2255 motion is filed to authorize discovery.

Moreover, the actions contemplated by Rules 7 and 8 by their nature require the court to review the motion and responsive filings, but authorizing discovery pursuant to Rule 6 does not. Rule 7 permits the court to "direct the parties to expand the record by submitting additional materials relating to the motion." R. 7. For this rule to apply, there must be a record to expand, meaning the motion must have been filed. Rule 8 requires the court to "review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." R. 8. For this rule to apply, there must be an answer and other materials to review, meaning the motion must have been filed.

Rule 6, by contrast, requires the court to review not the § 2255 motion, but the moving party's proposed discovery requests and the reasons for the requests. To that end, Rule 6 requires the party seeking authorization for discovery to specify what discovery is sought and provide reasons for the discovery requests.

By directing the court's attention to the proposed discovery requests themselves and the reasons for them—and not directing the court's attention to the motion or the record—Rule 6 makes clear that the court does not need to review the motion, responsive filings, or record.

In addition to the text and structure of the Rules, the nature of § 2255 proceedings—more specifically, differences between § 2255 proceedings and § 2254 proceedings—necessitate discovery before a § 2255 motion is filed. Proceedings under § 2255 are not like proceedings under § 2254. In § 2254 cases, which challenge convictions from state courts, the federal court merely serves as a final check. When a § 2254 petition is filed, the conviction has already been upheld in initial-review collateral proceedings in the state court. *See* § 2254(b). The federal court is limited to assessing, essentially, whether there was a flagrant violation of the Constitution that the state court was made aware of but unreasonably ignored. *See* § 2254(d). Factual development takes place prior to federal § 2254 proceedings, in the initial-review collateral proceedings in state court. *See* § 2254(e)(2); *Shoop v. Twyford*, 142 S. Ct. 2037, 2043-44 (2022). And the record in federal § 2254 proceedings is limited to what was before the state court. *See Shoop*, 142 S. Ct. at 2043-44.

Section 2255 proceedings, by contrast, are initial-review collateral proceedings—analogous not to § 2254 proceedings, but to the initial-review

9

collateral proceedings that come before a federal § 2254 case. *See* § 2255(a), (b). Because they are initial-review collateral proceedings, § 2255 proceedings are the only collateral proceedings where factual development can take place (in fact they are the *only* collateral proceedings at all—for federal convictions, there is no equivalent to the final check that § 2254 affords state prisoners). Additionally, claims that are not raised in the initial § 2255 motion may be permanently forfeited. *See* § 2255(h). That risk of forfeiture makes it necessary to conduct discovery before filing the § 2255 motion, in order to investigate potential claims that must be raised in the § 2255 motion.

    For these reasons, it is appropriate for a court to order discovery in a § 2255 case prior to the § 2255 motion being filed, if the movant shows good cause.

    Therefore, for the reasons discussed above, Mr. Roof has shown good cause for his discovery requests, and the Court should authorize Mr. Roof to conduct this limited discovery prior to filing his § 2255 motion.

Respectfully submitted,

_/s/Angela Elleman_
Angela S. Elleman
Chief, § 2255 Unit
Indiana Federal Community Defenders
111 Monument Circle, Suite 3200
Indianapolis, IN   46204
Phone: 317-383-3520
E-Mail: angie_elleman@fd.org

_/s/ Jill E.M. HaLevi_
Jill E.M. HaLevi
Mediation and Legal Services
102 Broad Street, Suite C
Charleston, SC 29401
843-819-0557
E-Mail: jill@charlestonmediator.com

Dated: February 25, 2025