IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CR NO. 2:15-cr-00472-RMG |
| v. | ) | |
| | ) | |
| DYLANN STORM ROOF | ) | |
| | ) | |
| | ) | |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to this Court's August 11, 2026, Order (Dkt. No. 1129) directing the Government to file a motion for summary judgment and to supplement its previously filed Response to Defendant's § 2255 motion (Dkt. No. 1087), the United States respectfully submits this supplemental memorandum and a contemporaneously filed motion for summary judgment.

## STANDARD OF REVIEW

### DENIAL OF § 2255 RELIEF WITHOUT AN EVIDENTIARY HEARING AMOUNTS TO SUMMARY JUDGMENT

Under 28 U.S.C. § 2255, movants may attack criminal judgments by asserting they were "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A court need not conduct an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Flood*, 188 F.4th 250, 257 (4th Cir. 2026) (quoting 28 U.S.C. § 2255(b)). The court reviews "the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 [to expand the record] to determine whether an evidentiary hearing is warranted." *Id.* at 258 (relying on the Rules Governing § 2255

Proceedings, Rule 8(a)). In undertaking the analysis, it draws all reasonable inferences in the movant's favor. *Id.* at 259. However, it should "not look beyond the record or speculate in the convicted person's favor when deciding whether such a showing exists." *Id.* at 258. It also should not weigh evidence or make credibility determinations. *Id.* at 259. But a court should not accept allegations that are "contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *United States v. Regenos*, 405 F.3d 691, 694 (8th Cir. 2005). "Where, as here, the judge considering the § 2255 motion also conducted the trial, the judge may rely on his or her recollections of the trial." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *see also United States v. Lee*, No. 2:18-cr-264-RMG, 2022 WL 1217260, at *5 (D.S.C. Apr. 25, 2022).

The required analysis resembles the procedures governing summary judgment under Federal Rule of Civil Procedure 56. *Flood*, 188 F.4th at 258. Under Rule 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Like a court considering a Rule 56 motion informed by pre-trial discovery, a judge "deciding a § 2255 motion also considers the briefs and expanded record before proceeding to an evidentiary hearing." *Flood*, 188 F.4th at 258. Thus, when a court denies a § 2255 motion without an evidentiary hearing, its decision amounts to summary judgment for the Government. *Id.* at 259.

## ARGUMENT

## THE RECORD PRECLUDES § 2255 RELIEF AND ENTITLES THE GOVERNMENT TO SUMMARY JUDGMENT

### I. Claim One: [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

## II. Claim Two: [redacted]

[redacted]

[redacted]

[redacted]

## III. Claim Three: Whether trial counsel were ineffective because they chose not to investigate potential communication deficits in order to prevent Defendant from asserting his Sixth Amendment right to self-representation (Dkt. No. 1077 at 48)

For his third claim, Defendant asserts that trial counsel were ineffective for failing to consult with a speech language pathologist and present evidence of Defendant's auditory processing disorder and pragmatic communication dysfunction to persuade the Court that he lacked the capacity to represent himself. (Dkt. No. 1077 at 48-103.) Even accepting the accuracy of Defendant's experts' diagnoses of auditory processing disorder and pragmatic communication dysfunction (Dkt. No. 1087 at 126 n.27), Defendant is not entitled to relief on this claim. As set out in the Government's Response (Dkt. No. 1087 at 128-53), trial counsel did not render deficient performance, and Defendant cannot establish prejudice. Accordingly, the Government is entitled to summary judgment.

## IV. Claim Four: Whether trial counsel were ineffective for invoking Defendant's right to speedy trial as part of a deliberate trial strategy (Dkt. No. 1077 at 103)

In Claim Four, Defendant asserts that trial counsel were ineffective for invoking his right to a speedy trial. (Dkt. No. 1077 at 103-19.) The facts underlying this claim, including the timeline of proceedings and trial counsel's reasons for doing so (Dkt. No. 1087 at 153-60; *see, e.g.*, Dkt. No. 1077-5 at 2) are undisputed. Accordingly, there is no genuine dispute of material fact precluding summary judgment for the Government on this claim. For the reasons set out in the Government's Response (Dkt. No. 1087 at 153-69), namely, trial counsel did not render deficient performance and Defendant cannot establish prejudice, the Government is entitled to summary

judgment on this claim.

## V. <u>Claim Five: Whether trial counsel were ineffective for taking a measured approach to the mitigation investigation (Dkt. No. 1077 at 119)</u>

In Claim Five, Defendant alleges that trial counsel were constitutionally ineffective because they lied to him about their intention to present an autism-based mitigation theory. (Dkt. No. 1077 at 119-31.) He argues that the perfidy destroyed their relationship and compelled his decisions to appear pro se and forgo mitigation. (Dkt. No. 1077 at 139-42.) Defendant's allegation is belied by the record, and his factual assertions do not state a claim that merits relief. (Dkt. No. 1087 at 215-18.) Thus, the Government is entitled to summary judgment.

### A. Claim Five is belied by the record, which establishes that trial counsel did not lie to Defendant.

#### 1. No lying

This Court's findings, and counsel's contemporaneous assertions, foreclose Defendant's claim of dishonesty. Defendant, after undergoing a government mental health examination, wrote a letter to the prosecution in which he accused his counsel of concealing their plan to introduce mental health evidence in mitigation. (Dkt. No. 545.) He wrote, "[W]hat my lawyers are planning . . . is a lie and will be said without my consent." (Dkt. No. 545 at 2.) Trial counsel "categorically denied" that they lied to Defendant and characterized his assertions as "demonstrably untrue." (Dkt. Nos. 648-2 at 16; 652 at 25-27.) Trial counsel planned to investigate mitigation and later reveal their strategy to Defendant with the assistance of his family and experts. (Dkt. Nos. 665 at 4; 629 at 5-6, 9-13.) [redacted] Indeed, their experts later cited Defendant's concerns about his thyroid condition as [redacted] t

[redacted] While counsel shielded their goal of presenting the experts' findings in mitigation, Mr. Bruck told Defendant they needed to "explore everything." (Dkt. No. 1077-5 at 4.) [redacted]

**2. No relationship destruction attributable to dishonesty**

Moreover, the record does not establish that any supposed dishonesty undermined counsel's relationship with Defendant, who repeatedly sought to maintain a relationship with them, if only on his terms. Defendant even asked the Court whether he could sign a document that would let him keep the attorneys but require them to follow his mitigation directions. (Dkt. No. 707 at 279.) He asked the Court to allow trial counsel to speak for him during voir dire and continued to consult with them as standby counsel during that process. (Dkt. No. 919 at 10.) He also asked the Court to reappoint trial counsel to represent him during the guilt phase. (Dkt. No. 911 at 3-4, 7-9.) [redacted]

**B. Defendant fails to identify a factual dispute material to any valid claim for relief.**

Though Defendant now asserts that counsel's dishonesty with him led to a breakdown in their relationship and his eventual decision to represent himself, the record belies his supposed motives and, by extension, any basis for relief.

Defendant decided to represent himself to prevent any mental health presentation. He declared to this Court, on the record, that he preferred death to being labeled autistic. (Dkt. No. 652 at 12-13.) He told the Court he did not "want anybody to think I have any mental problems because I don't." (Dkt. No. 707 at 273.) And he repeatedly expressed his desire not to be thought of as mentally ill. (*Id.*; Dkt. No. 880-1 at 209.)

The Court informed Defendant that trial counsel had plenary discretion whether to present evidence of his autism. (Dkt. No. 652 at 18-19.) Defendant decided to represent himself when he realized he could not prevent the lawyers from pursuing a mental health mitigation theory, regardless of what they had told him beforehand. (Dkt. Nos. 691 at 6; 881 at 15; Br. of Appellant at 107, *United States v. Roof*, No. 17-3 (4th Cir. Jan. 28, 2020).) At the end of his first competency hearing, he told the Court that he did not know how he would cooperate with his attorneys "after today, after *all the other things that they have said about me. The other allegations of different mental problems*, it's just, it's not going to happen." (Dkt. No. 707 at 284-85) (emphasis added).) Defendant clarified that he did not want anyone to think he committed the crime due to a mental problem. (Dkt. Nos. 648-2 at 41; 707 at 273.) Defendant deliberately forsook a mental health defense because of his deep ideological commitment to white supremacy and his unwavering desire to ensure that nothing would "discredit[] the reason why I did the crime." *United States v. Roof*, 10 F.4th 314, 348 (4th Cir. 2021).

Defendant could have presented mental health evidence without counsel because the

attorneys obtained permission to have the experts finish their reports for Defendant's use, but he decided to forgo them. (Dkt. No. 979 at 2.) Additionally, Defendant could have presented non-mental health evidence, but he did not want to do that, either. The § 2255 motion catalogs several witnesses listed by the defense before trial and available for Defendant's presentation with the assistance of standby counsel. (Dkt. Nos. 912 at 17; 563 at 5-7.) Defendant also received a Court admonition that he could subpoena witnesses and present evidence with standby counsel's assistance. (Dkt. No. 912 at 17.) But in November 2016, Defendant told the Court he had "no real defense," that he did not "want any defense," and that the only defense he wanted to present was one that would "just make it worse" because it would "aggravate things." (Dkt. No. 652 at 9, 12, 22-24.) Echoing Defendant's acknowledgement, trial counsel reported that Defendant had said "he doesn't want us to do anything" apart from presenting statistics of black-on-white crime. (Dkt. No. 652 at 35, 37.) Immediately before the penalty phase, Defendant reiterated that he did not intend to offer evidence. (Dkt. No. 912 at 22.)

In short, Defendant fired his attorneys and abandoned a mitigation case to serve his own views and goals. His relationship with the attorneys, and his trust in their representations to him, did not meaningfully inform his decision. Accordingly, the central factual allegation in this claim for relief—counsel's supposed dishonesty—lacks any demonstrable materiality. This Court should grant summary judgment to the Government on this issue.

## VI. **Claim Six: Whether Defendant was constructively deprived counsel when he chose to represent himself (Dkt. No. 1077 at 131)**

As his sixth claim, Defendant alleges that he was constructively denied his right to counsel due to a breakdown in the attorney-client relationship. (Dkt. No. 1077 at 131-51.) The facts underlying this claim, such as Defendant's statement that he was communicating with his attorneys, are undisputed. (*See* Dkt. No. 652 at 24.) For the reasons set out in the Government's

Response (Dkt. No. 1087 at 182-202), Defendant is not entitled to relief, and the Government is entitled to summary judgment.

Despite Defendant's assertion, a hearing "to finally assess the full extent of the attorney-client breakdown" is not necessary. (Dkt. No. 1077 at 148.) Defendant's argument on this front is premised on his assertion that "the trial court failed to conduct the constitutionally required inquiry." (Dkt. No. 1077 at 148.) As explained in the Government's Response, the Court was not required to inquire further into the attorney-client relationship. (Dkt. No. 1087 at 200-02.) In support of his contrary argument, Defendant cites *Holloway v. Arkansas* and *United States v. Mullen* (Dkt. No. 1077 at 146), but both cases are inapposite. *See Holloway v. Arkansas*, 435 U.S. 475, 481-84 (1978) (holding that court "failed either to appoint separate counsel or to take adequate steps to ascertain whether the risk [of a conflict of interest] was too remote to warrant separate counsel" in case where one codefendant argued that his lawyer's representation "was ineffective because of a conflict between the interests of his two clients," as lawyer also represented another codefendant); *United States v. Mullen*, 32 F.3d 891, 893-96 (4th Cir. 1994) (analyzing reasons for defendant's dissatisfaction with his lawyer where retained attorney filed motion to withdraw and defendant filed motion to replace attorney with a court-appointed one and noting that this inquiry is necessary to determine "whether good cause for substitution of counsel exists").

Moreover, even assuming the Court was required to inquire into this issue, it did so. (*See* Dkt. No. 1087 at 201-02; *see also, e.g.*, Dkt. No. 652 at 3-25 (discussing Defendant's letter with him).) Because there is no genuine dispute of material fact and Defendant is not entitled to relief on this claim, the Court should grant summary judgment in the Government's favor.

## VII. <u>Claim Seven: Whether trial counsel were ineffective for pursuing mental health mitigation as part of a strategy to maximize the possibility of a life sentence (Dkt. No. 1077 at 151)</u>

For his seventh claim, Defendant alleges that trial counsel were constitutionally ineffective for focusing on autism to the exclusion of mitigation theories based on Defendant's youth, background, other mental health conditions, or lack of dangerousness. (Dkt. No. 1077 at 174-75, 178, 187-88.) Defendant's allegation is unsupported by the record, and he can identify no genuine issue of material fact. Accordingly, the Government is entitled to summary judgment.

**A. Claim Seven is unsupported by the record.**

**1. Trial counsel selected mitigation theory after investigation**

Defendant killed nine worshippers because of their race. (Dkt. Nos. 893 at 80-82; 899 at 1123-25.) Faced with formidable aggravation, trial counsel investigated a mitigation theory that explained Defendant's conduct as a product of something other than bad character, identifying experts who would testify that he suffered from significant mental disorders. (Dkt. Nos. 1077 at 51-53; 707 at 25; 832-6; 832-7; 832-8; 1077-2 at 4-5; 1077-4 at 1.) [redacted], but the Court observed that no competent lawyer would acquiesce to him in this regard. (Dkt. No. 707 at 285.) The Court advised Defendant that trial counsel, not a criminal defendant, enjoys full control over the selection of mitigation evidence. *See Roof*, 10 F.4th at 352.

**2. Defendant elected to proceed pro se**

After learning he could not control the selection of mitigation theories, Defendant voluntarily elected to proceed pro se. The Court repeatedly explained that he would take responsibility for his sentencing proceeding and only his decisions would matter. Defendant repeatedly stated that he understood. (Dkt. Nos. 912 at 17; 919 at 3-9.) [redacted]

[redacted]

### B. Defendant can identify no genuine dispute of material fact for relief.

With the foregoing record, Defendant can identify no genuine dispute of material fact that would preclude summary judgment for the Government. Any argument that counsel lied to Defendant is insufficient. As outlined above, counsel did not lie to Defendant. (Dkt. Nos. 648-2 at 16; 652 at 25-27; 665 at 3-4; 629 at 5-6, 9-13; 1077-5 at 4.) And there is no evidence in the record to indicate that an attorney's supposed perfidy caused [redacted] Nor has he provided any declaration saying so. (Dkt. Nos. 1077-5–1077-47, 1077-5, 1077-71–1077-74, 1077-94–1077-102, 1077-176–1077-181.) Assuming Defendant could point to a whit of evidence to support such an allegation, the assertion would not amount to a material dispute: if Defendant felt his counsel misled him that they would present evidence that he found palatable, he had every opportunity to present it when he took on his own representation. He did not do so and cannot identify any logical reason why counsel's supposed failings would have motivated that decision after their departure from the case.

Because Defendant cannot show any dispute of material fact, the Court should grant summary judgment to the Government on this issue.

## VIII. <u>Claim Eight: Whether trial counsel were ineffective for not ensuring that Defendant was present during non-critical stages of the case (Dkt. No. 1077 at 171)</u>

In his eighth claim, Defendant alleges that trial counsel were ineffective for not ensuring his presence at five hearings in November 2016. (Dkt. No. 1077 at 171-77.) There is no factual dispute as to this claim; the only issues are whether counsel rendered deficient performance in not insisting that Defendant be present (and relatedly, whether Defendant was required to be present at these hearings), and whether Defendant suffered any prejudice due to his absence. (*See, e.g.*, Dkt. No. 629 (transcript from November 2, 2016); Dkt. No. 686 (transcript from November 16,

2016); Dkt. No. 687 (transcript from November 16, 2016); Dkt. No. 988 (transcript from November 17, 2016); Dkt. No. 991 (transcript from November 18, 2016).) As a matter of law, however, Defendant's right to be present was not implicated by these hearings. (Dkt. No. 1087 at 208-12.) Because counsel was not deficient and because Defendant has failed to establish any prejudice resulting from his absence (*see* Dkt. No. 1087 at 207-12), the Government is entitled to summary judgment on this claim.

## IX. Claim Nine: Whether trial counsel were ineffective for not seeking a change of venue (Dkt. No. 1077 at 197)

Defendant argues that his attorneys were ineffective for failing to move for a change of venue. (Dkt. No. 1077 at 197-216.) The facts underlying this claim, such as counsel's belief "that an impartial jury [could] be selected from" Area C, are undisputed. (Dkt. No. 249 at 2; Dkt. No. 1087 at 213-15.) For the reasons set out in the Government's Response (Dkt. No. 1087 at 215-43), the Government is entitled to summary judgment on this claim.

Defendant argues (Dkt. No. 1077 at 217) that he "is entitled to discovery and a hearing on this issue" because one juror indicated in her questionnaire that she was "disgusted that anyone could commit such an act of violence" (Dkt. No. 1077-217 at 8), which, according to Defendant, establishes that she harbored "actual prejudice" against him (Dkt. No. 1077 at 216). Defendant's assertion that this establishes "actual prejudice" warranting discovery and a hearing is misguided. (Dkt. No. 1077 at 216-17.)[1] "To demonstrate actual prejudice, the defendant must show that a prospective juror has formed [a] pre-trial opinion that the defendant is guilty and cannot lay aside his impression or opinion and render a verdict based on the evidence presented in court." *United States v. Higgs*, 353 F.3d 281, 308 (4th Cir. 2003) (citation omitted). This same juror indicated,

[1] Separately, Defendant is not entitled to discovery and a hearing because he cannot establish that counsel rendered deficient performance.

just three questions later, that she could set aside anything she had previously seen, read, or heard about the case and decide it based solely on the evidence presented in court and the judge's instructions on the law. (Dkt. No. 1077-217 at 9.) She also confirmed that no information that she had received from any source would prevent her from being a fair and impartial juror. (Dkt. No. 1077-217 at 10.) This juror was also questioned thoroughly by the Court during voir dire (Dkt. No. 974 at 135-48), including about her statement of disgust, and she repeatedly confirmed that she could disregard any prior information and decide the case based on the evidence (Dkt. No. 974 at 138, 141-42, 144-45).

Moreover, this juror's sentiment could, and likely would, exist within a venire from anywhere in the country given the brutality of Defendant's crimes. This necessarily blunts Defendant's ability to demonstrate that this juror's sentiment established actual prejudice in this case.

The record conclusively shows that Defendant is not entitled to relief on this issue, and summary judgment in the Government's favor is appropriate. *See Higgs*, 353 F.3d at 309 (holding that defendant did not establish actual prejudice where seated jurors "who had some knowledge of the case stated that they could decide the case based solely on the evidence presented at trial").

## X. <u>Claim Ten: Whether this Court should have struck certain venire members (Dkt. No. 1077 at 217)</u>

Defendant argues that his right to an impartial jury was violated because this Court did not strike three potential jurors for cause due to their views on the death penalty. (Dkt. No. 1077 at 217-41.) There is no factual dispute as to this claim, which is based on the jurors' questionnaire responses and the voir dire proceedings. As set out in the Government's Response, these materials show that Defendant is not entitled to relief for a number of reasons: his claim is procedurally barred, he cannot establish cause and prejudice, he waived his right to challenge these jurors, no

unqualified person served on the jury, and this Court did not abuse its discretion in finding these three jurors qualified to serve. (Dkt. No. 1087 at 243-57.) Accordingly, the Government is entitled to summary judgment on this claim.

## XI. Claim Eleven: Whether trial counsel were ineffective because counsel adduced a statement on cross-examination and timely failed to object (Dkt. No. 1077 at 241)

Defendant next argues that trial counsel were ineffective based on counsel's cross-examination of Government witness Felicia Sanders and his failure to timely object to parts of her testimony. (Dkt. No. 1077 at 241-50.) The facts underlying this claim, including the transcript of Sanders' testimony, are undisputed. (Dkt. Nos. 893 at 89-90; 1087 at 257-67.) Although Defendant highlights Mr. Bruck's co-counsel's belief that he should not have cross-examined Ms. Sanders (Dkt. No. 1077 at 244-45), such disagreement is immaterial. *See, e.g.*, *Strickland v. Washington*, 466 U.S. 668, 689 (1984) ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."). Defendant cannot identify any genuine dispute of material fact as to this claim. Because, as explained in the Government's Response (Dkt. No. 1087 at 257-70), counsel made a reasonable strategic decision regarding Ms. Sanders, and because Defendant did not suffer prejudice from that decision (Dkt. No. 1087 at 261-70), the Government is entitled to summary judgment on this claim.

## XII. Claim Twelve: Whether trial counsel were ineffective for failing to make different arguments to dismiss the indictment (Dkt. No. 1077 at 250)

For his twelfth claim, Defendant argues that trial counsel were ineffective for failing to adequately pursue dismissal of the charges against him. (Dkt. No. 1077 at 250-306.) Specifically, he contends that "[e]ach of" his charges is "constitutionally infirm" and "the entire federal case" would have been dismissed had counsel not been deficient in their arguments that (1) the § 924 counts should have been dismissed because §§ 247(a)(2) and 249 do not qualify as crimes of

violence; (2) § 924 is void for vagueness; (3) § 249 violates the First Amendment; (4) Congress lacked the authority to enact § 247(a)(2) under the Commerce Clause and § 249 under the Thirteenth Amendment, and these statutes are unconstitutional on their face and as applied to Defendant; and (5) convicting Defendant of the § 924(j) counts and the predicate crimes of violence violates the Double Jeopardy Clause. (Dkt. No. 1077 at 250.) As explained in the Government's Response, most of these predicate arguments underlying counsel's alleged ineffectiveness were already considered and rejected by the Fourth Circuit on direct appeal. (Dkt. No. 1087 at 271, 287-291.) Therefore, the Government is entitled to judgment as a matter of law. Moreover, Defendant's arguments involve legal issues, as do the related sub-arguments, such as whether trial counsel's arguments on these fronts constituted ineffective assistance. *See, e.g.*, *Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995) (rejecting argument that counsel was ineffective "because he followed a long-standing and well-settled rule of South Carolina criminal law—even when that rule was under attack in the United States Supreme Court at the time of trial"). Because there is no genuine dispute of material fact, and for the reasons set out in the Government's Response (Dkt. No. 1087 at 270-333), Defendant is not entitled to relief. Summary judgment in the Government's favor is appropriate.

## XIII. Claim Thirteen: Whether appellate counsel were ineffective on direct appeal (Dkt. No. 1077 at 306)

For his thirteenth claim, Defendant argues that appellate counsel were ineffective on direct appeal for similar reasons underlying his claim that trial counsel were ineffective for failing to make different arguments to dismiss the indictment. (Dkt. No. 1077 at 306-20.) As with his claim regarding trial counsel, resolution of this claim regarding appellate counsel turns on legal issues. There is no genuine dispute of material fact, and, for the reasons set out in the Government's Response (Dkt. No. 1087 at 333-43), Defendant is not entitled to relief. The Court should grant

summary judgment in the Government's favor.

**XIV. Claim Fourteen: Whether the elements clause of § 924 is unconstitutionally vague (Dkt. No. 1077 at 320)**

Claim Fourteen involves a legal issue: whether the elements clause of § 924 is unconstitutionally vague. (Dkt. No. 1077 at 320-34; Dkt. No. 1087 at 343-45.) As explained in the Government's Response, Defendant is barred from raising this claim because he failed to raise this issue at trial or on direct appeal, and he offers no argument suggesting there is cause or prejudice to excuse the default. (Dkt. No. 1087 at 343-44.) Additionally, the Fourth Circuit has squarely decided this issue against Defendant. (Dkt. No. 1087 at 344-45); *United States v. Green*, 67 F.4th 657, 670 (4th Cir. 2023). Because there is no genuine dispute of material fact with respect to this claim, and because the Government is entitled to judgment as a matter of law, summary judgment for the Government is appropriate.

**XV. Claim Fifteen: Whether Defendant's convictions are valid under current law (Dkt. No. 1077 at 335)**

Claim Fifteen involves the legal validity of Defendant's convictions; specifically, whether his convictions under §§ 247 and 249 are crimes of violence and the corresponding effect on his convictions under § 924 (Dkt. No. 1077 at 335-42), whether § 249 violates the First Amendment (Dkt. No. 1077 at 342-43), and whether some of his convictions violate the Double Jeopardy Clause (Dkt. No. 1077 at 343). As explained in the Government's Response, these claims are procedurally barred because Defendant failed to raise them at trial or on direct appeal, while others were considered and rejected on direct appeal. (Dkt. No. 1087 at 345-47.) Even if considered on the merits, these challenges are foreclosed by binding case law. (Dkt. No. 1087 at 345.) Because there is no genuine dispute of material fact as to this claim, and because the Government is entitled to judgment as a matter of law, summary judgment for the Government is appropriate.

**XVI. Claim Sixteen: Whether the method of execution violates the Eighth Amendment (Dkt. No. 1077 at 344)**

Defendant next claims that his eventual execution will violate the Eighth Amendment based on the Government's current protocols. (Dkt. No. 1077 at 344-63.) As set forth in the Government's Response, challenges to methods of execution are not cognizable in § 2255 proceedings; they must be raised under 28 U.S.C. § 2241. (Dkt. No. 1087 at 347.) Additionally, Defendant has not yet been scheduled for execution. For want of any material dispute of facts concerning the procedural failings of Defendant's claim, the Court should grant summary judgment to the Government on this issue.

**XVII. Claim Seventeen: Whether the Eighth Amendment categorically exempts a 21-year-old offender from the imposition of the death penalty (Dkt. No. 1077 at 364)**

In Claim Seventeen, Defendant claims that the holding in *Roper v. Simmons*, 543 U.S. 551 (2005), barring executions for those under the age of 18, should be extended to those who are 21 and younger. (Dkt. No. 1077 at 364-78.) This issue was considered, and rejected, by the Fourth Circuit on direct appeal. And as the Fourth Circuit recognized, it is up to the Supreme Court, not the lower courts, to decide whether to modify the "line" drawn in *Roper*. *Roof*, 10 F.4th at 379-80. Accordingly, the Government is entitled to judgment as a matter of law, and the Court should grant summary judgment to the Government on this issue.

**XVIII. Claim Eighteen: Whether the death penalty is unconstitutional (Dkt. No. 1077 at 378)**

For Claim Eighteen, Defendant argues that the death penalty is *per se* unconstitutional because it is arbitrarily implemented. (Dkt. No. 1077 at 378-82.) As set forth more fully in the Government's Response, capital punishment is constitutional as a matter of law. (Dkt. No. 1087 at 353-56.) Moreover, Defendant failed to raise this baseless claim on direct appeal. And, when he raised the issue to this Court before trial, this Court properly rejected it. (Dkt. No. 539.) Because

there is no genuine dispute as to any material fact, the Government is entitled to judgment as a matter of law on this issue.

## XIX. Claim Nineteen: Whether this Court should have recused itself and whether Defendant's trial counsel were ineffective for failing to move for recusal (Dkt. No. 1077 at 382)

Defendant claims that his due process rights were violated because this case was assigned to the presiding judge and that trial counsel were ineffective for not seeking the presiding judge's recusal. (Dkt. No. 1077 at 382-88.) The facts underlying this claim are undisputed, and, for the reasons set out in the Government's Response (Dkt. No. 1087 at 356-74), Defendant is not entitled to relief.

Contrary to Defendant's assertion (Dkt. No. 1077 at 382), the presiding judge was not assigned to this case because he "really want[ed] to" hear it; Judge Wooten submitted a sworn statement in which he stated that "[a]ll criminal cases, including" this one, were "routinely assigned," and that neither the presiding judge nor any other judge had any "role" in the assignment of Defendant's case. (Dkt. No. 1051 at 1.) But even accepting Defendant's allegation that this Court "really wanted" to hear Defendant's case, a bare expression of interest in hearing a case does not establish bias or an appearance of bias. Interest in presiding over a particular case suggests nothing more than interest in doing one's job—not bias toward one side or the other. Further, Defendant cannot identify any instances of bias by the presiding judge. For example, he cites (Dkt. No. 1077 at 385) a law student's observation that this Court had an "attitude of "This is my courtroom, my way, my rules," but this does not establish bias. *See Liteky v. United States*, 510 U.S. 540, 555-56 (1994) ("*Not* establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's

ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune."). Nor do Defendant's other examples. (Dkt. No. 1077 at 385-387; Dkt. No. 1087 at 364-372); *see also Liteky*, 510 U.S. at 550-551 (stating that even a judge's "ill dispos[ition] towards the defendant" that has "properly and necessarily been acquired in the course of proceedings" is insufficient to demonstrate bias or the appearance of bias). Similarly, counsel was not ineffective for failing to move for this Court's recusal, and Defendant cannot establish prejudice. (Dkt. No. 1087 at 372-374). Finally, as further support for these conclusions, the Government notes that since the filing of its Response, Defendant's most recent effort at seeking this Court's recusal has failed. Defendant's sixth attempt, a petition for a writ of certiorari, was denied by the Supreme Court on October 5, 2026. *Roof v. USDC SC*, --- S. Ct. ----, 2026 WL 2976453 (Oct. 5, 2026).

Because Defendant is not entitled to relief on this claim, summary judgment in the Government's favor is warranted.

## CONCLUSION

For the foregoing reasons, there is no genuine dispute of material fact as to any of Defendant's claims, and the Government is entitled to judgment as a matter of law. Accordingly, this Court should deny Defendant's § 2255 motion and grant summary judgment to the Government.

Respectfully submitted,

BRYAN P. STIRLING
United States Attorney

s/ Katherine McCallister
Katherine McCallister
Attorney
U.S. Department of Justice
Civil Rights Division
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 746-9558
Katherine.McCallister@usdoj.gov

Channell V. Singh
Trial Attorney
U.S. Department of Justice
Criminal Division
Capital Case Section
1301 New York Avenue, NW, 5th Floor
Washington, D.C. 20530
(202) 203-9203
Channell.Singh2@usdoj.gov

November 12, 2026